UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH           )
      Plaintiff,        )
                      )
                      )
v.                      )     CIVIL NO. 07-1064 (RJL)
                      )
FEDERAL BUREAU OF INVESTIGATION )
      Defendant.      )

**MOTION FOR SUMMARY JUDGMENT FOR
DEFENDANT FEDERAL BUREAU OF INVESTIGATION**

Pursuant to Fed. R. Civ. P. 56, defendant, the Federal Bureau of Investigation (FBI), a

sub-component of the United States Department of Justice, respectfully moves for summary

judgment. As grounds for this motion, defendant asserts that there are no genuine issues of

material fact and that it is entitled to judgment as a matter of law.[1] A memorandum of

---

[1] Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse

points and authorities, a statement of genuine issues of material fact not in dispute, and a

proposed order granting the relief sought are attached hereto.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____/s/_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.  Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov

party.  Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH                              )
      Plaintiff,                       )
                                       )
                                       )
v.                                        )     CIVIL NO. 07-1064 (RJL)
                                       )
FEDERAL BUREAU OF INVESTIGATION )
      Defendant.                       )

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

1.     By letter dated September 21, 2004, to Federal Bureau of Investigation Headquarters ("FBIHQ"), plaintiff submitted a Freedom of Information / Privacy Act ("FOIA/PA") request for all records that include his name from every retrievable source.  Plaintiff requested information from every system of records to include computers and electronic surveillance ("ELSUR").  Plaintiff advised the FBI of his willingness to pay reasonable copying fees for the requested records.  First Declaration of David Hardy (1st Hardy Decl.), ¶ 5

2.     By letter dated September 29, 2004, FBIHQ acknowledged receipt of plaintiff's FOIA/PA request and assigned it FOI/PA Request No. 1005633.  Id., ¶ 6.

3.     By letter dated March 15, 2005, to FBIHQ, plaintiff followed up on FOIA/PA Request No. 1005633, stating that he had not received any information and requested that the FBI explain the delay. Id., ¶ 8.

4.      By letter dated April 13, 2005, plaintiff advised FBIHQ that he still had not received any information.  Plaintiff advised FBIHQ of the importance of the information and requested the FBI to expedite his request. Id., ¶9.

5.      By letter dated April 14, 2005, FBIHQ advised plaintiff that a search of the automated indices of the Central Records System ("CRS") as well as the Electronic Surveillance ("ELSUR") indices at FBIHQ located no records responsive to his FOIA/PA request.  FBIHQ advised plaintiff that although no main file records responsive to his FOIA/PA request were located in its automated indices, he was entitled to file an administrative appeal to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). Id., ¶10

6.      By letter dated April 28, 2005, plaintiff appealed the FBI's action to OIP. Id., ¶ 11.

7.      By letter dated May 11, 2005, OIP acknowledged receipt of plaintiff's appeal and assigned it Appeal No. 05-1679. Id., ¶12.

8.      By letter dated August 25, 2005, OIP advised plaintiff that after discussions between FBI personnel and a member of the OIP staff, the FBI had conducted a further search and located records responsive to his request.  OIP advised plaintiff of its decision to remand his request for processing of these responsive records.  OIP stated that the FBI would send the releasable portions of the records directly to him.  Plaintiff was advised of his right to appeal to OIP  if dissatisfied with the FBI's ultimate action on these records.  OIP also advised plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B) if dissatisfied with its action on his appeal. Id., ¶13.

9.      By letter dated August 31, 2005, to FBIHQ, plaintiff requested all information that pertained to him from the FBI's CRS files, ELSUR indices and all legal and illegal methods used to gather information on himself.  Plaintiff requested FBIHQ to expedite his request.  Plaintiff enclosed a copy of OIP's response letter dated August 25, 2005.

Id., ¶ 14.

10.     By letter dated August 29, 2005, to OIP, plaintiff requested an update on Appeal No. 05-1679. Id., ¶15

11.     By letter dated September 16, 2005, OIP responded to plaintiff that his appeal had been adjudicated on August 25, 2005 and provided a copy of the response letter.

Id., ¶ 16.

12.     By letter dated October 27, 2005, plaintiff advised FBIHQ that he had yet to receive any records.  Plaintiff also requested "all fabricated information made against him by FBI Special Agent ("SA") Charles Wilcox."  Plaintiff provided his new address. Id., ¶17.

13.     By letter dated November 24, 2005, plaintiff advised OIP that he had sent a registered letter to the FBI with his new address.  Plaintiff again sought expedition of his request.  Plaintiff requested all information using any Data Mining Technology Software like the "Verity K2 Enterprise" software, communications including e-mails between any FBI agents with local law enforcement officials or informants regarding himself, any documents pertaining to any investigation that mentioned his name or alias, as well as all behavioral science analyses on himself.   Plaintiff inquired about administrative remedies and options available to him before seeking a judicial review. Id., ¶18.

14.     By letter dated December 9, 2005, OIP responded to plaintiff's letter,  which again requested expedition of his remanded request.  OIP advised plaintiff that although its office had handled his appeal, his request had been remanded to the FBI for further processing.  Plaintiff was advised that DOJ regulations required requests for expedited processing to be made to the proper component.  OIP advised plaintiff that since the FBI was handling his request, the FBI would be the proper component to receive such a request.  OIP advised that if the FBI denied a request for expedited processing, he could appeal to OIP.  OIP also advised that some of the information requested in his November 24, 2005 letter appeared to have exceeded the scope of FOIPA Request No. 1005633.  OIP advised plaintiff that to get additional information he would need to submit a new request  to the FBI.  Further, OIP advised plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(6)(E)(iii). Id., ¶19.

15.     By letter dated May 24, 2006, plaintiff provided FBIHQ with a new address. Id., ¶20.

16.     By letter dated August 21, 2006, plaintiff advised OIP of his unsuccessful attempts to obtain his information under FOIA/PA since 2004.  Plaintiff appealed for help in obtaining all information pertaining to himself. Id., ¶21.

17.     By letter dated October 25, 2006, OIP advised plaintiff that the FBI was currently processing his remanded request.  OIP stated that it could not provide a specific time when plaintiff could expect a response from the FBI.  OIP advised plaintiff  to communicate directly with the FBI  concerning the status of his request.  OIP also advised plaintiff that if he remained dissatisfied with the action of the FBI, he could seek judicial review. Id., ¶22.

4

18.    By letter dated October 30, 2006, to FBIHQ,  plaintiff requested the status of his

FOIA/PA request and noted that he originally requested the information in 2004. Id., ¶23.

19.    By letter dated December 12, 2006, FBIHQ advised plaintiff that a search of indices of

the CRS at FBIHQ had located information which appeared to be responsive to his FOIA/PA

request.  FBIHQ stated that the material however, was currently unavailable and had been placed

on "special locate."  FBIHQ advised that if and when it verified that the information was

pertinent to his request, it would notify plaintiff.  Further, plaintiff was advised of his right to

appeal. Id., ¶24.

20.    By letter dated November 28, 2007, FBIHQ released to plaintiff 390 pages out of a total

of 904 pages reviewed in response to his FOIA Request No.1005633-002.  Plaintiff was advised

that certain information in the documents was exempt from disclosure pursuant to Exemptions

(b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D) of the FOIA.  FBIHQ advised plaintiff of his right

to appeal.  Plaintiff was advised that pursuant to 28 C.F.R.§§ 16.11 and 16.49, there is a

duplication fee of ten cents per page for every page released over 100 pages.  Accordingly,

FBIHQ requested that plaintiff remit payment in the amount of $29.00 (twenty-nine dollars) for

this release.  Plaintiff was advised that the records contained a copy of an identification record or

"Rap Sheet" that was being released as it existed when placed in the FBI's Central Records

System ("CRS")[2] files and that it may not reflect current information.  Further, plaintiff was

provided with instructions as set forth in Attorney General Order 556-73 to obtain an up-to-date

copy of the "Rap Sheet."  Lastly, plaintiff was advised that numerous duplicate documents had

---

[2]An explanation of the CRS is contained in ¶¶ 25 through 30 of the First Hardy
Declaration.

been processed, and that in an effort to minimize the cost to plaintiff and the FBI, only those documents containing additional information were released.  Second Declaration of David Hardy (2nd Hardy Decl.), ¶6.

21.    The FBI recently examined the previously processed records, and determined that in certain instances exemptions (b)(7)(C) should be withdrawn and in other instances exemptions should be added.  2nd Hardy Decl., ¶7.

22.    The WFO main file 26B-WF-48866 and  BAFO main file 26-BA-56765 were recently released to plaintiff in conjunction with this declaration.  These investigative files pertain to the theft of an aircraft which led to a guilty plea and sentencing of Roger Scot Snyder, the pilot of said aircraft. Plaintiff was a passenger on this flight and was indicted of conspiracy to import cocaine and passport fraud.  Of the total 904 responsive pages contained in these files: 84 pages are being fully released, 317 pages are being released with redactions, 81 pages are being withheld in full, 392 pages are withheld as duplicate documents, and 30 pages have been referred to other government agencies for direct response to plaintiff. Id., ¶ 8.

23.    Every effort was made to provide plaintiff with all reasonably segregable portions of material.  To further describe the withheld information could identify the protected material, thus negating the purpose of the exemptions. Id., ¶ 9.

REFERRAL OF DOCUMENTS

24    The FBI forwarded a referral to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE"), U. S. Department of Treasury ("DOT")  on or about November 29, 2007, consisting of two pages which originated with that agency.   2nd Hardy Decl., ¶57.

6

25.    On November 29, 2007, ATFE's Disclosure Division processed a referral from FBI of 2 pages based upon a FOIA request by Plaintiff. Declaration of Averill P Graham (Graham Decl.), ¶4.

26.    By letter dated January 14, 2008, ATFE's Disclosure Division responded to Plaintiff and denied the request pursuant to 5. U.S.C.  § 552(b)(3) of the Consolidated Appropriations Act, Public Law 108-447. Id. ¶5.

27.    By letter dated February 8, 2008, the FBI forwarded a referral to Drug Enforcement Administration ("DEA") consisting of two pages which originated with that agency.  These pages were referred for direct response to plaintiff of which DEA withheld internal phone numbers pursuant to 5. U.S.C.  § 552(b)(2) and withheld identities of two third parties pursuant to 5. U.S.C. § 552(b)(7)(C).  2nd Hardy Decl., ¶58; Declaration of William C. Little (Little Decl.),  ¶11.

28.    The FBI forwarded a referral to U.S. Citizenship and Immigration Services ("CIS") on or about November 29, 2007, consisting of twenty pages which originated with that agency.  These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.  2nd Hardy Decl., ¶59.

29.    In a letter dated November 29, 2007, the FBI, forwarded Plaintiffs October 30, 2006, FOIA request and 20 pages to ICE for review, determination of disclosure, and direct response to the Plaintiff.  Gloria Marshall Declaration (Marshall Decl.), ¶6.

30.    An acknowledgment letter was sent on December 12, 2007  to the Plaintiff informing him that ICE received Plaintiff's FOIA request and referred documents from the FBI, and that ICE would process the request according to the order in which it was received.  Marshall Decl., ¶7.

31.    After  review of the 20 pages referred to the ICE by the FBI, ICE made the following

7

determinations: six (6) pages were released in part with redactions made pursuant to exemptions (b)(2), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the Privacy Act (PA); three (3) pages were released in full; and the remaining eleven 11 pages were withheld in their entirety pursuant to exemptions (b)(2), (b)(5), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the PA. Marshall Decl., ¶8.

32.    ICE responded to Plaintiff's request by releasing nine (9) pages of releasable records in a letter, dated December 20, 2007. Id., ¶9.

33.    Exercising due diligence ICE reexamined its original disclosure determinations and determined that nine (9) of the eleven (11) pages withheld in their entirety should have been released in part. Id., ¶10.

34.    In a letter, dated February 27, 2008,  ICE made a second disclosure to Plaintiff releasing nine (9) pages in part with redactions pursuant to exemptions (b)(2), (b)(7)(C) of the FOIA as a supplemental release to its December 20, 2007 release. . Id., ¶11.

35.    By letter dated January 23, 2008, the FBI forwarded a referral to Department of Justice, Civil Division ("DOJ") consisting of six pages which originated with that agency.  These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel. 2nd Hardy Decl. ¶ 60.

36.    On January 25, 2008, EOUSA  received those six pages  about disclosure, and responded directly to Mr. Singh.  John Kornmeier Declaration (Kornmeier Decl.), ¶ 4.

37.    After having reviewed the document, EOUSA, by letter dated January 28, 2008 informed Mr. Singh that it was withholding the document in full; see Exhibit A for a copy of this letter. Kornmeier Decl., ¶5.

38.     The document that EOUSA withheld is a six page plea agreement letter from the U.S. Attorney's Office to attorneys of a third party. The plea agreement letter is unsigned by the third party. Mr. Singh provided no release or Privacy Act Waiver from the third party.  Id., ¶6.

39.     EOUSA asserts exemption (b)(7)(C) of the FOIA to withhold this document. Id., ¶7.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____/s/_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH                          )
    Plaintiff,                       )
                                     )
                                     )
v.                                    )          CIVIL NO. 07-1064 (RJL)
                                     )
FEDERAL BUREAU OF INVESTIGATION )
    Defendant.                       )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR DEFENDANT FEDERAL BUREAU OF INVESTIGATION

### INTRODUCTION

Defendant Federal Bureau of Investigation ("FBI"), a component of the United States Department of Justice ("DOJ"), through the undersigned counsel, respectfully moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff, *pro se* prisoner, brought this civil action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, with regard to the processing of plaintiff's FOIA requests by FBI. As demonstrated by the attached declaration of David Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), FBI, defendant conducted reasonable searches and properly invoked and justified its reliance on FOIA Exemptions 6, 7(C), when it released to plaintiff all reasonably segregable information that was not exempt from public disclosure by law and that would not violate the personal privacy of third parties. Thus, there are no genuine issues of material fact, and defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). For the reasons set forth below, summary judgment for defendant should be granted.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

By letter dated September 21, 2004, to Federal Bureau of Investigation Headquarters ("FBIHQ"), plaintiff submitted a Freedom of Information / Privacy Act ("FOIA/PA") request for all records that include his name from every retrievable source.  Plaintiff requested information from every system of records to include computers and electronic surveillance ("ELSUR").  Plaintiff advised the FBI of his willingness to pay reasonable copying fees for the requested records.  First Declaration of David Hardy (1st Hardy Decl.), ¶ 5

By letter dated September 29, 2004, FBIHQ acknowledged receipt of plaintiff's FOIA/PA request and assigned it FOIPA Request No. 1005633.  Id., ¶ 6.

By letter dated March 15, 2005, to FBIHQ, plaintiff followed up on FOIPA Request No. 1005633, stating that he had not received any information and requested that the FBI explain the delay. Id., ¶ 8.

By letter dated April 13, 2005, plaintiff advised FBIHQ that he still had not received any information.  Plaintiff advised FBIHQ of the importance of the information and requested the FBI to expedite his request. Id., ¶9.

By letter dated April 14, 2005, FBIHQ advised plaintiff that a search of the automated indices of the Central Records System ("CRS") as well as the Electronic Surveillance ("ELSUR") indices at FBIHQ located no records responsive to his FOIA/PA request.  FBIHQ advised plaintiff that although no main file records responsive to his FOIA/PA request were located in its automated indices, he was entitled to file an administrative appeal to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). Id., ¶10

2

By letter dated April 28, 2005, plaintiff appealed the FBI's action to OIP.

Id., ¶ 11.

By letter dated May 11, 2005, OIP acknowledged receipt of plaintiff's appeal and

assigned it Appeal No. 05-1679. Id., ¶12.

By letter dated August 25, 2005, OIP advised plaintiff that after discussions between FBI

personnel and a member of the OIP staff, the FBI had conducted a further search and located

records responsive to his request.  OIP advised plaintiff of its decision to remand his request for

processing of these responsive records.  OIP stated that the FBI would send the releasable

portions of the records directly to him.  Plaintiff was advised of his right to appeal to OIP  if

dissatisfied with the FBI's ultimate action on these records.  OIP also advised plaintiff of his

right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B) if dissatisfied with its

action on his appeal. Id., ¶13.

By letter dated August 31, 2005, to FBIHQ, plaintiff requested all information that

pertained to him from the FBI's CRS files, ELSUR indices and all legal and illegal methods used

to gather information on himself.  Plaintiff  requested FBIHQ to expedite his request.  Plaintiff

enclosed a copy of OIP's response letter dated August 25, 2005.

Id., ¶ 14.

By letter dated August 29, 2005, to OIP, plaintiff requested an update on Appeal No. 05-

1679. Id., ¶15.

By letter dated September 16, 2005, OIP responded to plaintiff that his appeal had been

adjudicated on August 25, 2005 and provided a copy of the response letter.

Id., ¶ 16.

By letter dated October 27, 2005, plaintiff advised FBIHQ that he had yet to receive any records.  Plaintiff also requested "all fabricated information made against him by FBI Special Agent ("SA") Charles Wilcox."  Plaintiff  provided his new address. Id., ¶17.

By letter dated November 24, 2005, plaintiff advised OIP that he had sent a registered letter to the FBI with his new address.  Plaintiff again sought expedition of his request.  Plaintiff requested all information using any Data Mining Technology Software like the "Verity K2 Enterprise" software, communications including e-mails between any FBI agents with local law enforcement officials or informants regarding himself, any documents pertaining to any investigation that mentioned his name or alias, as well as all behavioral science analyses on himself.   Plaintiff inquired about administrative remedies and options available to him before seeking a judicial review. Id., ¶18.

By letter dated December 9, 2005, OIP responded to plaintiff's letter,  which again requested expedition of his remanded request.  OIP advised plaintiff that although its office had handled his appeal, his request had been remanded to the FBI for further processing.  Plaintiff was advised that DOJ regulations required requests for expedited processing to be made to the proper component.  OIP advised plaintiff that since the FBI was handling his request, the FBI would be the proper component to receive such a request.  OIP advised that if the FBI denied a request for expedite processing, he could appeal to OIP.  OIP also advised that some of the information requested in his November 24, 2005 letter appeared to have exceeded the scope of FOIPA Request No. 1005633.  OIP advised plaintiff that to get additional information he would need to submit a new request  to the FBI.  Further, OIP advised plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(6)(E)(iii). Id., ¶19.

4

By letter dated May 24, 2006, plaintiff provided FBIHQ with a new address. Id., ¶20.

By letter dated August 21, 2006, plaintiff advised OIP of his unsuccessful attempts to obtain his information under FOIA/PA since 2004. Plaintiff appealed for help in obtaining all information pertaining to himself. Id., ¶21.

By letter dated October 25, 2006, OIP advised plaintiff that the FBI was currently processing his remanded request. OIP stated that it could not provide a specific time when plaintiff could expect a response from the FBI. OIP advised plaintiff to communicate directly with the FBI concerning the status of his request. OIP also advised plaintiff that if he remained dissatisfied with the action of the FBI, he could seek judicial review. Id., ¶22.

By letter dated October 30, 2006, to FBIHQ, plaintiff requested the status of his FOIA/PA request and noted that he originally requested the information in 2004. Id., ¶23.

By letter dated December 12, 2006, FBIHQ advised plaintiff that a search of indices of the CRS at FBIHQ had located information which appeared to be responsive to his FOIA/PA request. FBIHQ stated that the material however, was currently unavailable and had been placed on "special locate." FBIHQ advised that if and when it verified that the information was pertinent to his request, it would notify plaintiff. Further, plaintiff was advised of his right to appeal. Id., ¶24.

By letter dated November 28, 2007, FBIHQ released to plaintiff 390 pages out of a total of 904 pages reviewed in response to his FOIA/PA Request No.1005633-002. Plaintiff was advised that certain information in the documents was exempt from disclosure pursuant to Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D) of the FOIA/PA. FBIHQ advised

5

plaintiff of his right to appeal.  Plaintiff was advised that pursuant to 28 C.F.R.§§ 16.11 and

16.49, there is a duplication fee of ten cents per page for every page released over 100 pages.

Accordingly, FBIHQ requested that plaintiff remit payment in the amount of $29.00 (twenty-

nine dollars) for this release.  Plaintiff was advised that the records contained a copy of an

identification record or "Rap Sheet" that was being released as it existed when placed in the

FBI's Central Records System ("CRS")[3] files and that it may not reflect current information.

Further, plaintiff was provided with instructions as set forth in Attorney General Order 556-73 to

obtain an up-to-date copy of the "Rap Sheet."  Lastly, plaintiff was advised that numerous

duplicate documents had been processed, and that in an effort to minimize the cost to plaintiff

and the FBI, only those documents containing additional information were released.  Second

Declaration of David Hardy (2nd Hardy Decl.), ¶6.

The FBI recently examined the previously processed records, and determined that in

certain instances exemptions (b)(7)(C) should be withdrawn and in other instances exemptions

should be added.  2nd Hardy Decl., ¶7.

The WFO main file 26B-WF-48866 and  BAFO main file 26-BA-56765 were recently

released to plaintiff in conjunction with this declaration.  These investigative files pertain to the

theft of an aircraft which led to a guilty plea and sentencing of Roger Scot Snyder, the pilot of

said aircraft. Plaintiff was a passenger on this flight and was indicted of conspiracy to import

cocaine and passport fraud.  Of the total 904 responsive pages contained in these files: 84 pages

are being fully released, 317 pages are being released with redactions, 81 pages are being

---

[3]An explanation of the CRS is contained in ¶¶ 25 through 30 of the First Hardy
Declaration.

withheld in full, 392 pages are withheld as duplicate documents, and 30 pages have been referred to other government agencies for direct response to plaintiff. Id., ¶ 8.

Every effort was made to provide plaintiff with all reasonably segregable portions of material.  To further describe the withheld information could identify the protected material, thus negating the purpose of the exemptions. Id., ¶ 9.

REFERRAL OF DOCUMENTS

The FBI forwarded a referral to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE"), U. S. Department of Treasury ("DOT") on or about November 29, 2007, consisting of two pages which originated with that agency.   2nd Hardy Decl., ¶57.

On November 29, 2007, ATFE's Disclosure Division processed a referral from FBI of 2 pages based upon a FOIA request by plaintiff.  Declaration of Averill P Graham (Graham Decl.), ¶4.

By letter dated January 14, 2008, ATFE's Disclosure Division responded to plaintiff and denied the request pursuant to 5. U.S.C.  § 552(b)(3) of the Consolidated Appropriations Act, Public Law 108-447.  Id. ¶5.

By letter dated February 8, 2008, the FBI forwarded a referral to Drug Enforcement Administration ("DEA") consisting of two pages which originated with that agency.  These pages were referred for direct response to plaintiff of which DEA withheld internal phone numbers pursuant to 5. U.S.C.  § 552(b)(2) and withheld identities of two third parties pursuant to 5. U.S.C. § 552(b)(7)(C).  2nd Hardy Decl., ¶58; Declaration of William C. Little, (Little Decl.), ¶11.

7

The FBI forwarded a referral to U.S. Citizenship and Immigration Services ("CIS") on or about November 29, 2007, consisting of twenty pages which originated with that agency. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel. 2nd Hardy Decl., ¶59.

In a letter dated November 29, 2007, the FBI, forwarded Plaintiff's October 30, 2006, FOIA request and 20 pages to ICE for review, determination of disclosure, and direct response to the Plaintiff. Gloria Marshall Declaration (Marshall Decl.), ¶6. On December 12, 2007, an acknowledgment letter was sent to the Plaintiff informing him that ICE received Plaintiff's FOIA request and referred documents from the FBI, and that ICE would process the request according to the order in which it was received. Marshall Decl., ¶7.

After review of the 20 pages referred to the ICE by the FBI, ICE made the following determinations: six (6) pages were released in part with redactions made pursuant to exemptions (b)(2), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the Privacy Act (PA); three (3) pages were released in full; and the remaining eleven 11 pages were withheld in their entirety pursuant to exemptions (b)(2), (b)(5), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the PA. Marshall Decl., ¶8.

ICE responded to Plaintiff's request by releasing nine (9) pages of releasable records in a letter, dated December 20, 2007. Id., ¶9. Exercising due diligence ICE reexamined its original disclosure determinations and determined that nine (9) of the eleven (11) pages withheld in their entirety should have been released in part. . Id., ¶10. In a letter, dated February 27, 2008,  ICE made a second disclosure to plaintiff releasing nine (9) pages in part with redactions pursuant to

8

exemptions (b)(2), (b)(7)(C) of the FOJA as a supplemental release to its December 20, 2007 release. Id., ¶11.

By letter dated January 23, 2008, the FBI forwarded a referral to Department of Justice, Civil Division ("DOJ") consisting of six pages which originated with that agency. 2nd Hardy Decl. ¶ 60. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel. Id. On January 25, 2008, EOUSA received those six pages about disclosure, and responded directly to Mr. Singh. John Kornmeier Declaration (Kornmeier Decl.), ¶ 4.

EOUSA, by letter dated January 28, 2008 informed Mr. Singh that it was withholding the document in full; see Exhibit A for a copy of this letter. Kornmeier Decl., ¶5. The document that EOUSA withheld is a six page plea agreement letter from the U.S. Attorney's Office to attorneys of a third party. The plea agreement letter is unsigned by the third party. Mr. Singh provided no release or Privacy Act Waiver from the third party. Id., ¶6. EOUSA asserts exemption (b)(7)(C) of the FOIA to withhold this document. Id., ¶7.

## II.  ARGUMENT

## A.    SUMMARY JUDGMENT STANDARD

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c); Alveska Pipeline Serv. Co, v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment). The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. §

9

552(a)(4)(B); <u>Department of Justice v. Reporters Comm. For Freedom of the Press</u>, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.  <u>Oglesby v. Department of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>see</u> <u>Hayden v. National Security Agency</u>, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are sufficient, it need not inquire further. <u>See</u> <u>Halperin v. CIA</u>, 629 F.2d 144, 148 (D.C. Cir. 1980); <u>see</u>, <u>e.g.</u>, <u>Pub. Citizen v. Dep't of State</u>, 276 F.3d 634, 645 (D.C. Cir. 2002) (finding agency's affidavits sufficiently detailed to support Exemption 1 withholding and determining that subsequent release of some previously classified information was not evidence of bad faith); <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 837 (D.C. Cir. 2001) (applying <u>Halperin</u> standard to waiver issue and finding that Department of State adequately explained how national security concerns were not undermined -- and Exemption 1 was not waived -- by display of intelligence photographs to United Nations Security Council representatives from other countries).  Because defendant here has released all non-exempt responsive documents on claims challenged by the plaintiff, summary judgment should be granted.

**B.  DEFENDANT HAS ADEQUATELY JUSTIFIED ITS WITHHOLDING OF RECORDS.**

**1.  The Records of DEA and ICE-DHS Are Exempt From the Privacy Act Disclosure Provisions (j)(2).**

The contents of reports sought by plaintiff are exempt from the Privacy Act's disclosure provision.  Subsection (j)(2) of the Privacy Act allows an agency by regulation, to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

Pursuant to this authority, the agencies whose principal function is law enforcement, exempted from Privacy Act disclosure the following record systems. 28 C.F.R. § 16.81.

A two-page "Cable" from DEA to FBI, which is in memorandum format to convey Intelligence information about a stolen aircraft and  ICE-DHS  investigatory reports which reveal investigatory efforts to prevent, control and reduce crime or apprehend criminals is found in the record system and is thus exempt from disclosure pursuant to Exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2). See Little Decl.,  ¶¶ 14-15, 18; 28 C.F.R.§ 16.98; Marshall Decl. ¶ 18; see Title 5 U.S.C. 301.

## 2.  Defendant Has Justified its Invocation of Freedom of Information Act Exemptions

### a. The FBI's Assertion of FOIA Exemption (b)(1) Was Proper

Exemption (b)(1) provides that FOIA's disclosure requirements do not apply to records that are:

> (A)  specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and

> (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C.§ 552(b)(1).  As the D.C. Circuit has explained, exemption (b)(1) "establishes a specific

11

exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." Riquelme v. CIA 453 F. Supp. 2d 103, 107 (D.D.C. 2006).  The applicable executive order currently in effect is Executive Order No. 12958, reprinted in 60 Fed. Reg. 19825 (1995).  As demonstrated below and in the attached Hardy Declaration, the document requested by plaintiff was properly withheld under Executive Order No. 12958 and, thus, FOIA exemption (b)(1).

In determining whether an agency has fully discharged its obligations under FOIA, a district court reviews an agency's determinations de novo.  5 U.S.C. §552(a)(4)(B); Loving v U.S. Dept. of Defense, 496 F. Supp 2d 101, 105-106 (D.D.C. 2007).  In exemption (b)(1) cases, however, "courts must 'recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record.'"  Salisbury v. United States, 690 F.2d 966, 970 (D. C. Cir. 1982) (quoting S. Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)); Armstrong v. Executive Office of the President , 97 F.3d 575, 580-81 (D.C. Cir . 1996) (finding that although district court may have erred by not explaining reasons for using in camera affidavit, any such error was ""harmless" because agency adequately explained why it could not release withheld information).  Thus, the D.C. Circuit has held that courts must give "substantial weight" and "utmost deference," while conducting a de novo review of agency determinations, that information requested under FOIA is classified and barred from disclosure.  Salisbury. at 970 ("[C]ourts are to 'accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.'"); see also Wolf v CIA, 473 F.3d 370, 374 (D.C. Cir.2007); see also Spirko v. USPS, 147 F.3d 992, 997 (D.C. Cir. 1998) (explaining that district

12

court should first consider agency affidavits before resorting to in camera review).

The agency's affidavit(s) merely must demonstrate that 1) the agency followed proper classification procedures and 2) that, by its description, the document logically falls within the claimed exemption. Salisbury, 690 F.2d at 970-72; Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir.1981); Hayden v. National Security Agency/Central Security Service, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).  Once this burden is met, courts must "not ... conduct a detailed inquiry to decide whether [they] agree[] with the agency's opinions." Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir 1980).  As the D.C. Circuit has explained, judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." Id.  If the agency's affidavits describe the withheld information and the justification for withholding with "reasonable specificity, demonstrating a logical connection between the information and the claimed exemption," and "if the affidavits evidence neither bad faith on the part of the agency nor a conflict with the rest of the record," the agency is entitled to summary judgment. Id. at 147-48; see also Military Audit Project, 656 F.2d at 738; Accuracy in the Media v. Nat.l Transp. Safety Bd., 2006 WL 827060 (D.D.C. 2006).  In this case, the detailed declaration of David M. Hardy more than satisfies the FBI's burden under FOIA exemption (b)(1). Mr. Hardy is the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.  Second Declaration of David M. Hardy ( "2nd Hardy Decl.") at ¶ 1.  As a senior FBI official, and pursuant to a written delegation of authority in accordance with Executive Order 12958, Mr. Hardy holds original classification authority to the Top Secret level. Id. at ¶ 2.  Mr. Hardy is authorized to review FBI information and make classification decisions as

13

to whether and to what degree information meets the standards for classification under Executive Order 12958.  Id.

Pursuant to that authority, and the procedures for classification set out by Executive Order 12958, Mr. Hardy has determined that the document at issue meets the standards for classification under Executive Order 12958.  As described in his declaration, the document withheld discloses information falling within at least one of the seven categories for classified information listed in section 1.4 of Executive Order 12958, specifically " . . . intelligence sources or methods. . . ."  Id. at § 1.4(c); Hardy Dec. at ¶¶ 16-20.

Specifically, disclosure of this information could permit a hostile analyst to correlate the documents and whatever information that can be gleaned from the documents. 2nd Hardy Decl., ¶18.  By matching source identifiers the source could be publically identified which will limit that source's effectiveness and have a chilling effect on the FBI's ability to recruit future sources. Id. Disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, can reasonably be expected to cause current and potential intelligence sources to fear that their identities will be publicly revealed at some point, in spite of the FBI's present express or implied assurance of confidentiality. Id, ¶ 19. The disclosure of a source's identity could jeopardize the physical well-being of the source's family or associates or subject them to public ridicule and/or ostracism. Id.

Accordingly, because the document is in fact properly classified pursuant to the applicable Executive Order, the information is exempt from the mandatory disclosure provisions of the FOIA.  See Salisbury, 690 F.2d at 970-72.  Therefore, this Court should grant the defendant summary judgment.

14

  **b.**  **ATFE, DEA, and ICE-DHS Properly Applied Exemption 2**

   Title 5, United States Code, Section 552 (b)(2) ( Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  ICE has asserted Exemption 2 of the FOIA as to internal agency codes.   Gloria L. Marshall Decl. ¶¶ 12-14.

   Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  Voinche v. FBI, 46 F. Supp 2d 26, 30 (D.D.C. 1999).

   ICE-DHS has asserted Exemption (low) (b)(2) of FOIA as to internal agency codes that appear on printouts from the Immigration and Naturalization Services Central Index System that are responsive to Plaintiff's request. Specifically, ICE exempted from disclosure the following types of codes that appeared in records: case/file/identification numbers, source symbol numbers case program codes, and other administrative codes. Marshall Decl, ¶ 13. The codes appearing on the printouts are used for the purposes of indexing storing, locating, retrieving and distributing information in ICE investigative files. Id. While these codes have internal significance they are trivial in nature and bear no relation to the substantive contents of the records. Id.  There is no public interest in the release of these internal agency codes. Id.

   Similarly, DEA asserted Exemption low (b)(2) as to internal phone numbers in communication correspondence between defendant FBI and DEA. See Willlium C. Little Declaration (Little Decl.).

   Exemption 2 of the FOIA exempts from mandatory disclosure records "related solely to

the internal personnel rules and practices of an agency." 5 U.S.C. § 552 (b)(2).  The information

need not be actual rules or practices; agencies can invoke Exemption 2 for matters *related* to rules

and practices as well.  Larson v. Department of State, 2005 WL 3276303, 14 (D.D.C. 2005).

Exemption 2 envelops two discrete categories of information.  Moayedi v. Customs and Border

Protection, 510 F.Supp 2d 73 84-85, (D.D.C.2007).  They include (a) internal matters of a

relatively trivial nature (sometimes referred to as "low 2" information); and (b) more substantial

internal matters, the disclosure of which would risk circumvention of a legal requirement

(sometimes referred to as "high 2" information).  Id.  The Supreme Court construed Exemption 2

to protect internal agency matters so routine or trivial that they could not be "subject to . . . a

genuine and significant public interest."  Department of the Air Force v. Rose, 425 U.S. 352, 369

(1976).  As such, Exemption 2 relieves agencies of the burden of assembling and providing access

to any "matter in which the public could not reasonably be expected to have an interest."  Id. at

369-70.

        A variety of information qualifies as predominantly internal under Exemption 2.  See

PHE, Inc. v. United States Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (exempting general

guidelines for conducting investigations).  This includes information pertaining to violator and

informant codes that could lead to the impairment of FBI investigations.  Albuquerque Publishing

Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989) ("The public has no legitimate

interest in gaining information that could lead to the impairment of FBI investigations.")

        The ICE-DHS properly invoked Exemption (low) and (high) (b)(2) to these agency codes,

including distribution and apprehension codes.  Marshall Decl., ¶ 14. Some of these codes serve a

dual purpose. Id.  Aside from the purposes of indexing, storing, locating, retrieving and

distributing information, these codes also indicate various aspects of the enforcement case, such as the type and location of the case: whether or not the subject should undergo close inspection; and the distribution of information relating to the case, which would indicate the scope and relative size of the investigation in terms of agency resources, types of activity being investigated, location of investigative efforts, and techniques to access agency information.  Id. The disclosure of these codes could, along with the database function commands, assist third parties in deciphering the meanings of the codes, which could potentially impede an ongoing investigation as well as pose a danger to ICE personnel.  Id. The disclosure could also assist unauthorized parties in gaining improper access to computer systems and enable them to navigate the system.  Id. Such improper access would reveal sensitive law enforcement information relating to ongoing investigations and could result in the alteration or deletion of valuable information contained in the system.  Id. Accordingly, these codes are properly withheld under both the low (b)(2) and the high (b)(2) exemption.

### c. Defendant FBI and the ATFE Properly Applied FOIA Exemption (b)(3)

Exemption (b)(3) of the FOIA exempts from mandatory disclosure matters that are:

[s]pecifically exempted from disclosure by statute provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . . .

5 U.S.C. §552 (b)(3).  The only issues presented in an exemption (b)(3) claim are the existence of a qualifying disclosure-prohibiting statute, and the logical inclusion of the withheld information within the scope and coverage of that statute.  Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1284 (D.C. Cir.  1983).  As with exemption (b)(1) claims, courts evaluating exemption (b)(3) claims must accord substantial weight to the agency's judgment with respect to the national

17

security considerations at issue.  Nat'l Sec. Archive Fund v. CIA, 402 F.Supp 211, 216 (D.D.C

2005); Gardels v. CIA, 689 F.2d at 1104-05 ("substantial weight" must be accorded to an

Agency's determinations on exemption (b)(3) claims); Phillippi v. CIA, 655 F.2d 1325, 1332

(D.C. Cir. 1981) (CIA affidavits on exemption (b)(3) claims are to be accorded "substantial

weight"); Halperin v. CIA, 629 F.2d at 147-48. Accord Ferry v. CIA, 458 F. Supp. 644 (S.D.N.Y.

1978) ("The CIA has greater expertise as to what kind of intelligence-gathering disclosures would

reveal intelligence sources and methods.").

In the instant case, the ATFE's reliance on FOIA Exemption (b)(3) emanates from the

Consolidated Appropriations Act of 2005, Pub. L. No 108-447, 118 Stat. 2809 and /or the

Consolidated Appropriations Act of 2008, Pub. L. No 110-161, Firearms Transaction Records,

which contains restrictions on the release of trace data and records required to be kept under 18

U.S.C. 923(g). While the FBI's reliance for withholding federal grand jury subpoenas lies in Rule

6(e) of the Federal Rules of Criminal Procedure.  See Fund for Constitutional Gov't v. National

Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981) (the scope of the secrecy that must

be afforded grand jury material "is necessarily broad" and "encompasses not only the direct

revelation of grand jury transcripts but also the disclosure of information which would reveal the

identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the

investigation, the deliberations or questions of the jurors, and the like") (internal quotations

omitted); Greenberg v. United States Dep't of Treasury, 10 F.Supp.2d 3, 27-28 (D.D.C. 1998).

In the instant case, as discussed in detail in both ATFE's Averill Graham Declaration and

FBI's David Hardy Declaration, Congress has expressly prohibited ATFE from releasing Firearms

Transaction Records, Graham Decl at ¶¶ 6-10,  and it is well established that Rule 6(e) embodies

broad protection for the secrecy of the grand jury proceedings. Hardy Decl. at ¶¶ 22-24.
Accordingly, such records were properly withheld.

### d.    Defendant FBI and ICE-DHS  Properly Invoked FOIA Exemption (b)(6)

FOIA exemption (b)(6) provides for the withholding of matters contained in "personnel
and medical files and similar files the disclosure of which would constitute a clearly unwarranted
invasion of personal privacy." 5 U.S.C. §552(b)(6). In a definitive opinion on the meaning of the
term "similar files," the Supreme Court held that exemption (b)(6) "` [was] intended to cover
detailed Government records on an individual which can be identified as applying to that
individual.'" Judicial Watch Inc. V. Dept of Commerce, 337 F.Supp 2d 146, 176 (D.D.C. 2004)
(citing Department of State v. Washington Post Co., 456 U.S 595, 602 (1982) (quoting H.R. Rep.
No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428));
New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).  This broad
construction of "similar files" was necessary in view of Congress's primary purpose in enacting
exemption 6, which was "to protect individuals from the injury and embarrassment that can result
from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

ICE-DHS has invoked exemption (b)(6) in this case to withhold information concerning
personnel or medical files and similar files. Gloria Marshall Decl. at ¶6. FBI withheld documents
that contained names and identifying information of FBI Special agents and support personnel;
third party informants; third parties; and other governmental personnel.  As the information in
question can "be identified as applying to [a particular] individual," Washington Post Co., 456
U.S. at 602, the information is contained in files that satisfy the threshold requirement of
exemption (b)(6) as defined by the Supreme Court.

19

Once it is established that the withheld information meets the threshold requirement of exemption (b)(6), a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires balancing of the individual interest in privacy against public interest in disclosure. See Billington v Dept of Justice, 245 F.Supp 2d 79, 85 (D.D.C. 2003);  Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) (Reporters Committee); Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976). The limiting language concerning "clearly unwarranted" invasion of personal privacy, "strikes a proper balance" between protection of an individual's right of privacy and preservation of the public's right to Government information by excluding those kinds of files the disclosure of which might harm the individual." Department of the Air Force v. Rose, 425 U.S. at 372 (citations omitted).

The first step in assessing the propriety of a withholding of information under exemption (b)(6) requires an identification of the privacy interest at issue. See Reporters Committee,489 U.S. at 763.  In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information.  See Schell v. Department of Health & Human Services, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v. Department of Housing and Urban Development, 746 F.2d 1, 3 (D.C. Cir. 1984). Here, such a privacy interest clearly exists because the information withheld consists of the names of those who are still subjects of investigation. See Marshall Decl. at ¶16.  Reed v. NLRB, 927 F.2d 1249, 1252 (D.C. Cir. 1991) ("Exemption 6 protects 'Excelsior' lists [names and addresses of employees eligible to vote in union representation elections] as a category."); SafeCard Servs. v. SEC, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991) (holding "categorically that, unless access to the

names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"); Johnson v. Comm'r, 239 F. Supp. 2d 1125, 1137 (W.D. Wash. 2002) (allowing categorical withholding of any identifying information about third parties and witnesses, as well as any information that they provided to IRS), aff'd on other grounds, 68 Fed. Appx. 839 (9th Cir. 2003) (Exemption 7(C)); Grove v. Dep't of Justice, 802 F. Supp. 506, 511 (D.D.C. 1992) (Categorical balancing is appropriate for " information concerning criminal investigations of private citizens.") (Exemption 7(C)).

Once a privacy interest has been found to exist, a determination regarding whether information has been properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989). If a document invades a third party's privacy, and does not contain official information shedding light on government functions, it may be withheld. Id. at 774.

In this action, it is clear that the information withheld by the FBI or ICE-DHS under FOIA exemption (b)(6) would shed no light on the performance of governmental duties. The purpose of the FOIA, 5 U.S.C. § 552, is to "facilitate public access to Government documents [and] to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Beck v. Department of Justice, 997 F.2d 1489, 1490 (D.C. Cir. 1993) (citations omitted). Plaintiff's apparent interest in mounting a collateral attack on his criminal conviction does not create any cognizable public interest and cannot outweigh Watson's and Chambers' strong interests in maintaining the privacy of any investigative records that may pertain to them. See Id. at 1494.

21

The Second Circuit noted under similar circumstances that "[i]n this weighing process, it must be remembered that it is the interest of the general public, and not that of the private litigant, that must be considered." Brown. v. FBI, 658 F.2d 71, 75 (2d Cir. 1981).   Even if the Court were to somehow determine that there is a small amount of public interest in disclosure of the personal information of the third parties at issue, the balance of interests would still tilt heavily against disclosing this third-party information. Gloria Marshall Decl. at ¶ 16; David Hardy Decl.¶¶ 27-34.

Accordingly, the defendant has demonstrated that it properly withheld information that would constitute a clearly unwarranted invasion of personal privacy. Therefore, FOIA exemption (b)(6) was properly invoked and summary judgment on this issue should be granted in favor of the defendant.

### e. EOUSA, DEA,  and ICE-DHS All Invoked Exemption (b)(7)(C ) Properly

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  See Robinson v. Attorney Gen. of the United States, No. 06-2050, 2008 WL 391244 (D.D.C. Feb. 14, 2008).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. Dep't of Justice, 284 F.3d 172, 176-77 (D.C.Cir.2002) (citations and internal quotations omitted).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's right

of access to information in government files.  See, e.g., U.S. Dept. of Justice v. Reporters

Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under

Exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the

light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than

on the particular purpose for which the document is being requested."  Reporter's Committee, 489

U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the

operations or activities of the government "falls outside the ambit of the public interest that the

FOIA was enacted to serve."  Id. at 775.  That public interest is to "shed[] light on an agency's

performance of its statutory duties."  Id. at 772.  The plaintiff bears the burden of establishing that

the "public interest in disclosure is both significant and compelling in order to overcome legitimate

privacy interests."  Perrone v. FBI, 908 F. SUPP. 24, 26 (D.D.C. 1995), citing Senate of Puerto

Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Exemption 7(C) consistently has been held to protect the identities of suspects and other

persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations.  Reporters Committee, 489 U.S. at 780; Computer Professionals for

Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v.  Dept.  of

Justice, 906 F.2d 779, 781 (D.C. Cir.  1990)).  Indeed, an agency may categorically assert

23

Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law

enforcement files in such a way as to associate them with criminal activity. Reporters Committee,

489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir.

1995); SafeCard Services, 926 F.2d at 1206.

The records deemed responsive to the plaintiff's FOIA request are a six page plea

agreement referred by defendant to EOUSA, John Kornmeier Decl. ¶¶ 7-9; ICE withheld

interagency reports containing names of special agents and third parties mentioned in investigatory

files Marshall Decl. ¶17; and DEA withheld two third party names from the second page of an

intra-agency correspondence, Little Declaration. The records were compiled during a law

enforcement investigation involving the plaintiff and several third parties. Id. 5 U.S.C. § 552

(b)(7)(C) sets forth an exemption for records or information compiled for law enforcement

purposes the disclosure of which could reasonably be expected to constitute an unwarranted

invasion of personal privacy. These files contain names and other identifying information which

would reveal the identity of and disclose personal information about individuals who were

involved or associated with the plaintiff. The individuals are protected from the disclosure of their

identities. Id..

In making the determination to withhold this information, the FBI attempted to balance the

individuals' privacy interests against any discernible public interest in disclosure of the

individuals' identities. In this instance, the privacy interests outweighed any potential public

interest. Thus, disclosure of certain identities would be an unwarranted invasion of their personal

privacy. Id. There is no public interest to be served by releasing the identities of third parties

from this internal law enforcement investigation. See, Beck v. Department of Justice, 997 F.2d at

1490.

### f.        Defendant FBI Properly Invoked Exemption (b)(7)(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure: could reasonably be expected to disclose

the identity of a confidential source which furnished information on a confidential basis.  5 U.S.C.

§ 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's

channels of confidential information."  See Cofield v. City of La Grange, 913 F. Supp 608, 618,

D.D.C. 1996)(citing Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986)).[4]

FBI has adequately justified its invocation of (b)(7)(D) concerning confidential source

information from an investigation of the theft of an aircraft for which Roger Scot Snyder was

indicted and charged.  Hardy Decl., ¶¶ 37, 50-56.   These individuals were expressly assured

confidentiality in their identities and the information they provide to the FBI.

In this matter, plaintiff was involved in a matter investigated by the law enforcement where

he was a passenger during the theft of an aircraft.  Hardy Decl., ¶¶ 37, 50-56. Given the nature of

the investigation, it can also be inferred that the individuals who provided information about the

plaintiff or others would fear for their safety, if their identities or the information they provided

was revealed.  Hardy Decl., ¶¶ 50-56. Therefore, information about the confidential informants

and information were properly withheld.

---

[4] The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp.
956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp.
705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that
the information was provided in confidence or in trust, with the assurance that it would not be
disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir.
1990).  As such, "the question is not whether the requested document is of the type that the
agency usually treats as confidential, but whether the particular source spoke with an
understanding that the communication would remain confidential."  United States Dep't of
Justice v. Landano, 508 U.S. 165, 172 (1993).

C.    **SEGREGABILITY**.

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>."

<u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C.

Cir. 1999).  The FOIA requires that if a record contains information that is exempt from

disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5

U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260

(D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements".  <u>Mead Data</u>,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover,

the agency is not required to "commit significant time and resources to the separation of disjointed

words, phrases, or even sentences which taken separately or together have minimal or no

information content."  <u>Mead Data</u>, 566 F.2d at 261, n.55.

In this case, FBI has demonstrated with reasonable specificity that all reasonably

segregable information has been released.  The declarations of David Hardy, FBI; Averill Graham,

ATFE; Gloria Marshall, ICE-DHS;  John W. Kornmeier, EOUSA and William C. Little, Jr. DEA

describe in detail the non-segregable information, and the reasons why partial releases cannot be

made.  In sum, the  FBI has properly responded to plaintiff's FOIA request and has provided

plaintiff with all of the reasonably segregable nonexempt information to which he is entitled.

### III.  CONCLUSION

For the foregoing reasons, defendant FBI respectfully requests entry of summary judgment.

A proposed order setting forth the relief requested is attached.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney

_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.  Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 Benton.Peterson@usdoj.gov

27

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing  was served upon plaintiff by depositing a copy of it in the U.S.

Mail, first class postage prepaid, addressed to:

> Satinam Singh
> Inmate #79538
> Northwest State Correctional Facility
> 3649 North Newton Road
> Swanton, Vt. 05488

on March 5, 2008

_____/s_____
BENTON G. PETERSON
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH                          )
     Plaintiff,                      )
                                     )
                                     )
v.                                    )     CIVIL NO. 07-1064 (RJL)
                                     )
FEDERAL BUREAU OF INVESTIGATION )
     Defendant.                      )


ORDER

This matter having come before the Court on the Federal Bureau of Investigation's Motion for

Summary Judgment and attachments and having considered any opposition thereto and the entire

record herein, and finding that no agency records have been improperly withheld, it is hereby

     ORDERED that Defendant's motion for summary is GRANTED; and it is

further

     ORDERED that this action DISMISSED WITH PREJUDICE.



_____
UNITED STATES DISTRICT JUDGE



29

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH                              )
      Plaintiff,                    )
                       )
                       )
v.                                        )          CIVIL NO. 07-1064 (RJL)
                       )
FEDERAL BUREAU OF INVESTIGATION )
      Defendant.                    )

**STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

      Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

 1.    By letter dated September 21, 2004, to Federal Bureau of Investigation Headquarters ("FBIHQ"), plaintiff submitted a Freedom of Information / Privacy Act ("FOIA/PA") request for all records that include his name from every retrievable source.  Plaintiff requested information from every system of records to include computers and electronic surveillance ("ELSUR").  Plaintiff advised the FBI of his willingness to pay reasonable copying fees for the requested records.  First Declaration of David Hardy (1st Hardy Decl.), ¶ 5

2.    By letter dated September 29, 2004, FBIHQ acknowledged receipt of plaintiff's FOIA/PA request and assigned it FOI/PA Request No. 1005633.  Id., ¶ 6.

3.    By letter dated March 15, 2005, to FBIHQ, plaintiff followed up on FOIA/PA Request No. 1005633, stating that he had not received any information and requested that the FBI explain the delay. Id., ¶ 8.

4.      By letter dated April 13, 2005, plaintiff advised FBIHQ that he still had not received any information.  Plaintiff advised FBIHQ of the importance of the information and requested the FBI to expedite his request. Id., ¶9.

5.      By letter dated April 14, 2005, FBIHQ advised plaintiff that a search of the automated indices of the Central Records System ("CRS") as well as the Electronic Surveillance ("ELSUR") indices at FBIHQ located no records responsive to his FOIA/PA request.  FBIHQ advised plaintiff that although no main file records responsive to his FOIA/PA request were located in its automated indices, he was entitled to file an administrative appeal to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). Id., ¶10

6.      By letter dated April 28, 2005, plaintiff appealed the FBI's action to OIP. Id., ¶ 11.

7.      By letter dated May 11, 2005, OIP acknowledged receipt of plaintiff's appeal and assigned it Appeal No. 05-1679. Id., ¶12.

8.      By letter dated August 25, 2005, OIP advised plaintiff that after discussions between FBI personnel and a member of the OIP staff, the FBI had conducted a further search and located records responsive to his request.  OIP advised plaintiff of its decision to remand his request for processing of these responsive records.  OIP stated that the FBI would send the releasable portions of the records directly to him.  Plaintiff was advised of his right to appeal to OIP  if dissatisfied with the FBI's ultimate action on these records.  OIP also advised plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B) if dissatisfied with its action on his appeal. Id., ¶13.

9.      By letter dated August 31, 2005, to FBIHQ, plaintiff requested all information that

pertained to him from the FBI's CRS files, ELSUR indices and all legal and illegal methods used

to gather information on himself.  Plaintiff requested FBIHQ to expedite his request.  Plaintiff

enclosed a copy of OIP's response letter dated August 25, 2005.

Id., ¶ 14.

10.      By letter dated August 29, 2005, to OIP, plaintiff requested an update on Appeal No. 05-

1679. Id., ¶15

11.      By letter dated September 16, 2005, OIP responded to plaintiff that his appeal had been

adjudicated on August 25, 2005 and provided a copy of the response letter.

Id., ¶ 16.

12.      By letter dated October 27, 2005, plaintiff advised FBIHQ that he had yet to receive any

records.  Plaintiff also requested "all fabricated information made against him by FBI Special

Agent ("SA") Charles Wilcox."  Plaintiff provided his new address. Id., ¶17.

13.      By letter dated November 24, 2005, plaintiff advised OIP that he had sent a registered

letter to the FBI with his new address.  Plaintiff again sought expedition of his request.  Plaintiff

requested all information using any Data Mining Technology Software like the "Verity K2

Enterprise" software, communications including e-mails between any FBI agents with local law

enforcement officials or informants regarding himself, any documents pertaining to any

investigation that mentioned his name or alias, as well as all behavioral science analyses on

himself.   Plaintiff inquired about administrative remedies and options available to him before

seeking a judicial review. Id., ¶18.

14.     By letter dated December 9, 2005, OIP responded to plaintiff's letter, which again requested expedition of his remanded request.  OIP advised plaintiff that although its office had handled his appeal, his request had been remanded to the FBI for further processing.  Plaintiff was advised that DOJ regulations required requests for expedited processing to be made to the proper component.  OIP advised plaintiff that since the FBI was handling his request, the FBI would be the proper component to receive such a request.  OIP advised that if the FBI denied a request for expedited processing, he could appeal to OIP.  OIP also advised that some of the information requested in his November 24, 2005 letter appeared to have exceeded the scope of FOIPA Request No. 1005633.  OIP advised plaintiff that to get additional information he would need to submit a new request to the FBI.  Further, OIP advised plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(6)(E)(iii). Id., ¶19.

15.     By letter dated May 24, 2006, plaintiff provided FBIHQ with a new address. Id., ¶20.

16.     By letter dated August 21, 2006, plaintiff advised OIP of his unsuccessful attempts to obtain his information under FOIA/PA since 2004.  Plaintiff appealed for help in obtaining all information pertaining to himself. Id., ¶21.

17.     By letter dated October 25, 2006, OIP advised plaintiff that the FBI was currently processing his remanded request.  OIP stated that it could not provide a specific time when plaintiff could expect a response from the FBI.  OIP advised plaintiff to communicate directly with the FBI concerning the status of his request.  OIP also advised plaintiff that if he remained dissatisfied with the action of the FBI, he could seek judicial review. Id., ¶22.

18.    By letter dated October 30, 2006, to FBIHQ,  plaintiff requested the status of his

FOIA/PA request and noted that he originally requested the information in 2004. Id., ¶23.

19.    By letter dated December 12, 2006, FBIHQ advised plaintiff that a search of indices of

the CRS at FBIHQ had located information which appeared to be responsive to his FOIA/PA

request.  FBIHQ stated that the material however, was currently unavailable and had been placed

on "special locate."  FBIHQ advised that if and when it verified that the information was

pertinent to his request, it would notify plaintiff.  Further, plaintiff was advised of his right to

appeal. Id., ¶24.

20.    By letter dated November 28, 2007, FBIHQ released to plaintiff 390 pages out of a total

of 904 pages reviewed in response to his FOIA Request No.1005633-002.  Plaintiff was advised

that certain information in the documents was exempt from disclosure pursuant to Exemptions

(b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D) of the FOIA.  FBIHQ advised plaintiff of his right

to appeal.  Plaintiff was advised that pursuant to 28 C.F.R.§§ 16.11 and 16.49, there is a

duplication fee of ten cents per page for every page released over 100 pages.  Accordingly,

FBIHQ requested that plaintiff remit payment in the amount of $29.00 (twenty-nine dollars) for

this release.  Plaintiff was advised that the records contained a copy of an identification record or

"Rap Sheet" that was being released as it existed when placed in the FBI's Central Records

System ("CRS")[2] files and that it may not reflect current information.  Further, plaintiff was

provided with instructions as set forth in Attorney General Order 556-73 to obtain an up-to-date

copy of the "Rap Sheet."  Lastly, plaintiff was advised that numerous duplicate documents had

---

[2]An explanation of the CRS is contained in ¶¶ 25 through 30 of the First Hardy
Declaration.

been processed, and that in an effort to minimize the cost to plaintiff and the FBI, only those

documents containing additional information were released.  Second Declaration of David Hardy

(2nd Hardy Decl.), ¶6.

21.    The FBI recently examined the previously processed records, and determined that in

certain instances exemptions (b)(7)(C) should be withdrawn and in other instances exemptions

should be added.  2nd Hardy Decl., ¶7.

22.    The WFO main file 26B-WF-48866 and  BAFO main file 26-BA-56765 were recently

released to plaintiff in conjunction with this declaration.  These investigative files pertain to the

theft of an aircraft which led to a guilty plea and sentencing of Roger Scot Snyder, the pilot of

said aircraft. Plaintiff was a passenger on this flight and was indicted of conspiracy to import

cocaine and passport fraud.  Of the total 904 responsive pages contained in these files: 84 pages

are being fully released, 317 pages are being released with redactions, 81 pages are being

withheld in full, 392 pages are withheld as duplicate documents, and 30 pages have been referred

to other government agencies for direct response to plaintiff. Id., ¶ 8.

23.    Every effort was made to provide plaintiff with all reasonably segregable portions of

material.  To further describe the withheld information could identify the protected material, thus

negating the purpose of the exemptions. Id., ¶ 9.

## REFERRAL OF DOCUMENTS

24    The FBI forwarded a referral to the Bureau of Alcohol, Tobacco, Firearms, and

Explosives ("ATFE"), U. S. Department of Treasury ("DOT")  on or about November 29, 2007,

consisting of two pages which originated with that agency.   2nd Hardy Decl., ¶57.

6

25.    On November 29, 2007, ATFE's Disclosure Division processed a referral from FBI of 2 pages based upon a FOIA request by Plaintiff. Declaration of Averill P Graham (Graham Decl.), ¶4.

26.    By letter dated January 14, 2008, ATFE's Disclosure Division responded to Plaintiff and denied the request pursuant to 5. U.S.C.  § 552(b)(3) of the Consolidated Appropriations Act, Public Law 108-447. Id. ¶5.

27.    By letter dated February 8, 2008, the FBI forwarded a referral to Drug Enforcement Administration ("DEA") consisting of two pages which originated with that agency.  These pages were referred for direct response to plaintiff of which DEA withheld internal phone numbers pursuant to 5. U.S.C.  § 552(b)(2) and withheld identities of two third parties pursuant to 5. U.S.C. § 552(b)(7)(C).  2nd Hardy Decl., ¶58; Declaration of William C. Little (Little Decl.),  ¶11.

28.    The FBI forwarded a referral to U.S. Citizenship and Immigration Services ("CIS") on or about November 29, 2007, consisting of twenty pages which originated with that agency.  These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.  2nd Hardy Decl., ¶59.

29.    In a letter dated November 29, 2007, the FBI, forwarded Plaintiffs October 30, 2006, FOIA request and 20 pages to ICE for review, determination of disclosure, and direct response to the Plaintiff.  Gloria Marshall Declaration (Marshall Decl.), ¶6.

30.    An acknowledgment letter was sent on December 12, 2007  to the Plaintiff informing him that ICE received Plaintiff's FOIA request and referred documents from the FBI, and that ICE would process the request according to the order in which it was received.  Marshall Decl., ¶7.

31.    After  review of the 20 pages referred to the ICE by the FBI, ICE made the following

determinations: six (6) pages were released in part with redactions made pursuant to exemptions (b)(2), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the Privacy Act (PA); three (3) pages were released in full; and the remaining eleven 11 pages were withheld in their entirety pursuant to exemptions (b)(2), (b)(5), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the PA. Marshall Decl., ¶8.

32.    ICE responded to Plaintiff's request by releasing nine (9) pages of releasable records in a letter, dated December 20, 2007. Id., ¶9.

33.    Exercising due diligence ICE reexamined its original disclosure determinations and determined that nine (9) of the eleven (11) pages withheld in their entirety should have been released in part. Id., ¶10.

34.    In a letter, dated February 27, 2008,  ICE made a second disclosure to Plaintiff releasing nine (9) pages in part with redactions pursuant to exemptions (b)(2), (b)(7)(C) of the FOIA as a supplemental release to its December 20, 2007 release. . Id., ¶11.

35.    By letter dated January 23, 2008, the FBI forwarded a referral to Department of Justice, Civil Division ("DOJ") consisting of six pages which originated with that agency.  These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel. 2nd Hardy Decl. ¶ 60.

36.    On January 25, 2008, EOUSA  received those six pages  about disclosure, and responded directly to Mr. Singh.  John Kornmeier Declaration (Kornmeier Decl.), ¶ 4.

37.    After having reviewed the document, EOUSA, by letter dated January 28, 2008 informed Mr. Singh that it was withholding the document in full; see Exhibit A for a copy of this letter. Kornmeier Decl., ¶5.

38.    The document that EOUSA withheld is a six page plea agreement letter from the U.S. Attorney's Office to attorneys of a third party. The plea agreement letter is unsigned by the third party. Mr. Singh provided no release or Privacy Act Waiver from the third party.  Id., ¶6.

39.    EOUSA asserts exemption (b)(7)(C) of the FOIA to withhold this document. Id., ¶7.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH  CONTRERAS, Bar # 434122
Assistant United States Attorney


_____/s/_____
BENTON G. PETERSON,  Bar #1029849
Assistant United States Attorney

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH                          )
      Plaintiff,                      )
                                )
                                )
v.                                   )          CIVIL NO. 07-1064 (RJL)
                                )
FEDERAL BUREAU OF INVESTIGATION )
      Defendant.                     )

ORDER

This matter having come before the Court on the Federal Bureau of Investigation's Motion for

Summary Judgment and attachments and having considered any opposition thereto and the entire

record herein, and finding that no agency records have been improperly withheld, it is hereby

     ORDERED that Defendant's motion for summary is GRANTED; and it is

further

   ORDERED that this action DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE

29

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SATNAM SINGH, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-01064 (RJL) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate

General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of

Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1,

1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely

worked with FOIA matters. I am also an attorney who has been licensed to practice law in the

State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 208

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct and manage responses to requests

for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial

decisions and Presidential and Congressional directives.  My responsibilities also include the

review of FBI information for classification purposes as mandated by Executive Order 12958, as

amended [1], and the preparation of affidavits/declarations in support of Exemption 1 claims

asserted under the FOIA.[2]  I have been designated by the Attorney General of the United States as

an original classification authority and a declassification authority pursuant to Executive Order

12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon

my personal knowledge, upon information provided to me in my official capacity, and upon

conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware

of the treatment which has been afforded the FOIA request of plaintiff Satnam Singh for access

to records pertaining to himself.

(4)    The FBI identified 904 pages of documents responsive to plaintiff's FOIA

request from one Washington Field Office ("WFO") main file 26B-WF-48866, and one

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

2

Baltimore Field Office ("BAFO") main file 26-BA-56765 (which was consolidated into 26-BA-80228).[3] After reviewing and processing these documents, on November 28, 2007, the FBI released to plaintiff 390 of 904 pages of responsive material with redactions taken pursuant to 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D).

(5)    The purpose of this declaration is to provide the Court and plaintiff with an explanation of the procedures used in the review and processing of the FBI records which are responsive to his FOIA request. In accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides a justification for the information in these FBI records which was withheld from disclosure pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D).

### ADDITIONAL CORRESPONDENCE[4]

(6)    By letter dated November 28, 2007, FBIHQ released to plaintiff 390 pages out of a total of 904 pages reviewed in response to his FOIA Request No.1005633-002. Plaintiff was advised that certain information in the documents was exempt from disclosure pursuant to Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D) of the FOIA. FBIHQ advised plaintiff of his right to appeal. Plaintiff was advised that pursuant to 28 C.F.R.§§ 16.11 and 16.49, there is a duplication fee of ten cents per page for every page released over 100 pages. Accordingly,

---

[3] An explanation of the FBI's search results pertaining to plaintiff's FOIA request is contained in ¶¶ 36 through 38 of the **First Declaration of David M. Hardy**, dated September 5, 2007; hereinafter **"First Hardy Declaration."**

[4] Previous correspondence is addressed in ¶¶ 5 through 24 of the **First Hardy Declaration.**

FBIHQ requested that plaintiff remit payment in the amount of $29.00 (twenty-nine dollars) for this release. Plaintiff was advised that the records contained a copy of an identification record or "Rap Sheet" that was being released as it existed when placed in the FBI's Central Records System ("CRS")[5] files and that it may not reflect current information. Further, plaintiff was provided with instructions as set forth in Attorney General Order 556-73 to obtain an up-to-date copy of the "Rap Sheet." Lastly, plaintiff was advised that numerous duplicate documents had been processed, and that in an effort to minimize the cost to plaintiff and the FBI, only those documents containing additional information were released. **(See Exhibit A.)**

## EXPLANATION OF THE FORMAT UTILIZED FOR THE JUSTIFICATION OF DELETED MATERIAL

(7)    During the preparation of this declaration, the FBI examined the previously processed records, and determined that in certain instances exemptions (b)(7)(C) should be withdrawn[6] and in other instances exemptions should be added[7].

---

[5]An explanation of the CRS is contained in ¶¶ 25 through 30 of the **First Hardy Declaration.**

[6]The FBI has withdrawn Exemptions (b)(6)-4 and (b)(7)(C)-4 in instances in which it was cited to protect the name of plaintiff's co-conspirator, Roger Scot Snyder where he is either listed as a subject or in the context of his prosecution for interstate transportation of the stolen aircraft. (**See Exhibit B**, pages 8-9, 12, 15, 17, 28-29, 32, 40, 45, 61-62, 65, 68, 70, 72-73, 75-76, 154-155, 159, 160-162, 164, 165, 169, 171-173, 182, 184, 186, 188, 190, 192, 199, 205, 214, 219, 222, 225, 227, 230, 249, 252, 254, 261, 264, 266, 268, 272, 302, 312-313, 352, 356, 368, 371, 374-376, 389, 395, 399, 411, 419, 449, 451, 453, 455, 457-458, 463, 467, 470, 472, 475, 484, 489, 499, 502, 602, 609, 616, 632-633, 639, 650, 652, 655-656, 659-660, 762, 821-822, 826, 901, and 904. Exemption (b)(2) is being withdrawn in two instances in which it was previously cited inadvertently. (**See Exhibit B**, pages 576 and 616.) An FBI classification expert has determined that some information previously withheld pursuant to Exemption (b)(1) could be released. (**See Exhibit B**, page 33.) Exemption (b)(7)(D)-2 is being withdrawn in two instances in which it was previously cited to protect the name and workplace of an individual who

4

(8)     Attached as **Exhibit B** is a copy of the processed WFO main file 26B-WF-48866

and BAFO main file 26-BA-56765 as they are now being released to plaintiff in conjunction with

this declaration. These investigative files pertain to the theft of an aircraft which led to a guilty

plea and sentencing of Roger Scot Snyder, the pilot of said aircraft. Plaintiff was a passenger on

this flight and was indicted of conspiracy to import cocaine and passport fraud . Of the total 904

responsive pages contained in these files: 84 pages are being released in their entireties, 317 pages

are being released with redactions, 81 pages are being withheld in full, 392 pages are withheld as

duplicate documents, and 30 pages have been referred to other government agencies for direct

response to plaintiff. Additionally, each withholding of information has a coded exemption

adjacent to it that details the nature of the information being withheld pursuant to the provisions of

the FOIA, as well as a numerical designation which more specifically identifies the exact nature of

the withheld information. For example, on Page 8 of **Exhibit B,** Exemption (b)(7)(C)-1 is cited to

protect information at the bottom of the page. The "(b)(7)(C)"designation refers to exemption

(b)(7)(C) of the FOIA concerning unwarranted invasion of personal privacy. The numerical

designation "1" following the (b)(7)(C) narrows the category of protected information from the

main category to the more specific subcategory of "Names and/or Identifying Data of FBI Special

---

provided information that was released, under an express assurance of confidentiality. (**See
Exhibit B**, pages 44 and 468.)

    [7] Exemption (b)(7)(C)-1 is being withdrawn in one instance in which it was cited
inadvertently and (b)(7)(D)-1 has been added to further protect an individual who provided
information to the FBI under an implied assurance of confidentiality. (**See Exhibit B,** page 234.)
The FBI is releasing segregable portions of a Federal Grand Jury Subpoena and a transcript
which were withheld in their entirety. (**See Exhibit B:** pages 13, 769, and 803.)

Agents and Support Personnel." These coded categories are used to assist the Court and plaintiff
in their review of the FBI's withholding of information in these records.

(9)    Every effort was made to provide plaintiff with all reasonably segregable portions of
material. To further describe the withheld information could identify the protected material, thus
negating the purpose of the exemptions. A listing of the exemption categories and justifications
for the withheld information are discussed below.

## SUMMARY OF JUSTIFICATION CATEGORIES

(10)    Listed below are the categories used to explain the FOIA exemptions asserted to
withhold protected material.

| **Category (b)(1)** | **Classified Information** |
|---|---|
| (b)(1) | Information Properly Classified by an FBI Classification Authority Pursuant to Executive Order 12958, As Amended. |
| **Category (b)(3)** | **Protected by Statute** |
| (b)(3) | Federal Grand Jury Information (Rule 6(e) of the Federal Rules of Criminal Procedure) |
| **Category (b)(6)** | **Clearly Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 | Names and/or Identifying Information of FBI Special Agents ("SAs") and Support Personnel. (Cited in conjunction with (b)(7)(C)-1.) |
| (b)(6)-2 | Names and/or Identifying Information of Third Parties who Provided Information to the FBI. (Cited in conjunction with (b)(7)(C)-2.) |
| (b)(6)-3 | Names and/or Identifying Information of Third Parties Merely Mentioned. (Cited in conjunction with (b)(7)(C)-3.) |
| (b)(6)-4 | Names and/or Identifying Information of Third Parties who |

6

were of Investigative Interest to the FBI and/or Other Law Enforcement Entities. (Cited in conjunction with (b)(7)(C)-4.)

| | |
|---|---|
| (b)(6)-5 | Names and/or Identifying Information of Non-FBI Federal Government Personnel (Cited in conjunction with (b)(7)(C)-5.) |
| (b)(6)-6 | Names and/or Identifying Information of Local, State, and/or Foreign Law Enforcement Personnel. (Cited in conjunction with (b)(7)(C)-6.) |
| **Category (b)(7)(C)** | **Unwarranted Invasion of Personal Privacy** |
| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents ("SAs") and Support Personnel. (Cited in conjunction with (b)(6)-1.) |
| (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties who Provided Information to the FBI. (Cited in conjunction with (b)(6)-2.) |
| (b)(7)(C)-3 | Names and/or Identifying Information of Third Parties Merely Mentioned. (Cited in conjunction with (b)(6)-3.) |
| (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties who were of Investigative Interest to the FBI and/or Other Law Enforcement Entities. (Cited in conjunction with (b)(6)-4.) |
| (b)(7)(C)-5 | Names and/or Identifying Information of Non-FBI Federal Government Personnel (Cited in conjunction with (b)(6)-5.) |
| (b)(7)(C)-6 | Names and/or Identifying Information of Local and/or Foreign Law Enforcement Personnel. (Cited in conjunction with (b)(6)-6.) |
| **Category (b)(7)(D)** | **Confidential Source Material** |

(b)(7)(D)-1[8]                          Names, Identifying Data and/or Information Provided by
                                        Individual(s) to the FBI Under an Implied Assurance of
                                        Confidentiality

(b)(7)(D)-3                             Investigative Information Compiled by a Foreign Law
                                        Enforcement Agency and Provided to the FBI Under
                                        an Implied Assurance of Confidentiality.

## APPLICATION OF FOIA EXEMPTION (b)(1) AND E.O. 12958, AS AMENDED

(11)    5 U.S.C. § 552 (b)(1) exempts from disclosure those records that are: "(A)

specifically authorized under criteria established by an Executive Order (E.O.) to be kept secret in

the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to

such Executive Order. . . ."

(12)    Before I consider an Exemption (b)(1) claim for withholding of agency records, I

determine whether the information contained in those records is information that satisfies the

requirements of E.O. 12958, as amended, which governs the classification and protection of

information that affects the national security,[9] and complies with the various substantive and

procedural criteria of the Executive Order.. E.O. 12958, as amended on March 25, 2003, is the

Executive Order that currently applies to the protection of national security information.  I am

bound by the requirements of E.O. 12958, as amended, when making classification determinations.

(13)    For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in

---

[8] Exemption category (b)(7)(D)-2 has been withdrawn as explained in footnote six,
**supra**.

[9] Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national
defense or foreign relations of the United States."

E.O. 12958, as amended, § 1.1 (a):

> (a) an original classification authority is classifying the information;

> (b) the information is owned by, produced by or for, or is under the control of the United States Government;

> (c) the information falls within one or more of the categories of information listed in § 1.4 of this order; and

> (d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(14)    All information which I determined to be classified and which is under the control of the United States government, is marked at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage ("Secret") to national security. See E.O. 12958, as amended, § 1.2 (a)(2). In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 12958, as amended, must be followed before information can be considered to be properly classified, such as, proper identification and marking of documents. I made certain that all procedural requirements of E.O. 12958, as amended, were followed in order to ensure that the information was properly classified. In particular, I made certain that:

> (a) each document was marked as required and stamped with the proper classification designation;[10]

> (b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 12958, as

---

[10] E.O. 12958, as amended, §§ 1.6 (a)(1)-(5).

9

amended, § 1.5 (b), and which portions are unclassified;[11]

(c) the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;

(d) the declassification policies set forth in E.O. 12958, as amended, § 3.1 were followed; and

(e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

## FINDING OF DECLARANT REGARDING EXEMPTION (b)(1)

(15)    With the above requirements in mind, I personally and independently examined the information withheld from the plaintiff pursuant to FOIA Exemption 1.  I determined that the classified information continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 12958, as amended, § 1.4, category (c) intelligence sources, as the unauthorized disclosure of this information could reasonably be expected to cause serious damage to the national security.

## INTELLIGENCE SOURCE

(16)    An intelligence source that requires continued classification is an individual who provided or is currently providing information that pertains to national security matters, the disclosure of which could reasonably be expected to result in damage to the FBI's intelligence and counterintelligence- gathering capabilities.

(17)    My review disclosed that the classified information withheld on pages 32 and 33

---

[11]  E.O. 12958, as amended, § 1.6 (c).

contains a numerical designator, which serves as a singular identifier for an intelligence source utilized to provide information on a specific individual or organization determined to be of national security interest. A singular identifier is any word, term or phrase which could identify an intelligence source either released by itself or in the aggregate. This includes code names of sources, other code names, numerical designators and file numbers. A singular identifier is used in lieu of the true identity of a source. A numerical designator is assigned to this specific source and is unique to and solely used for this source. The numerical designator is assigned sequentially and is usually prefixed with the geographic location of the FBI office from which the source is operated.

(18)    Disclosure of this information could permit a hostile analyst to correlate the documents and whatever information that can be gleaned from the documents. By matching source identifiers, such as file numbers and numerical designators, with bits and pieces of information one can discern the true identity of the intelligence source. Public identification of a source will limit that source's effectiveness and have a chilling effect on the FBI's ability to recruit future sources.

(19)    Disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, can reasonably be expected to cause current and potential intelligence sources to fear that their identities will be publicly revealed at some point, in spite of the FBI's present express or implied assurance of confidentiality. The disclosure of a source's identity could jeopardize the physical well-being of the source's family or associates or subject them to public ridicule and/or ostracism.

(20)    It is my determination that the intelligence source numerical designator is properly

11

classified at the "Secret" level, and withheld pursuant to E.O. 12958, as amended, § 1.4 (c), and

exempt from disclosure pursuant to FOIA Exemption 1.  **(See Exhibit B, pages 32 and 33.)**

### DEFENDANT'S BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(21)    The information withheld in this case pursuant to Exemption 1 was examined in

light of the body of information available to me concerning the national defense and foreign

relations of the United States. This information was not examined in isolation. Instead, each piece

of information was evaluated with careful consideration given to the impact that disclosure of this

information would have on other sensitive information contained elsewhere in the United States

intelligence community's files, including the secrecy of that other information. Equal consideration

was given to the impact that other information, either in the public domain or likely known or

suspected by present or potential adversaries of the United States, would have upon the

information I examined, and upon attempts by a hostile entity to analyze such information.

(22)    In those instances where, in my judgment, the disclosure of this information could

reasonably be expected to cause serious damage to the national security, and its withholding

outweighed the benefit of disclosure, I exercised my prerogative as an original classification

authority and designated that information as classified in the interest of national security, and

invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the

withheld classified information were prepared with the intent that they be read with consideration

given to the context in which the classified information is found. This context includes not only

the surrounding unclassified information, but also other information already in the public domain,

as well as information likely known or suspected by hostile intelligence entities. It is my judgment

12

that any greater specificity in the descriptions and justifications set forth with respect to the redacted intelligence source information could reasonably be expected to jeopardize the national security of the United States.

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(23)     5 U.S.C. § 552 (b)(3) exempts from disclosure information:

specifically exempted from disclosure by statute . . . provided that such statute

(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

## (b)(3)     Federal Grand Jury Information Withheld Pursuant to Rule 6(e)
## of the Federal Rules of Criminal Procedure

(24)     Exemption (b)(3) has been asserted to withhold from disclosure Federal Grand Jury ("FGJ") subpoenas and information which explicitly discloses matters occurring before a FGJ. This information has been withheld in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure. It is well-established that Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of the inner workings of federal grand juries. Specifically, the names and identifying information of individuals who were subpoenaed to testify before a FGJ of the District of Maryland or the District of Columbia, and information that identifies specific records subpoenaed by the FGJ, were withheld pursuant to this exemption. Exemption (b)(3) is cited on the following pages of Exhibit B: 12-13, 453, 485-488, 669, 762, and 769-802.

## EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

13

(25)    5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such
information would constitute a clearly unwarranted invasion of personal privacy.

(26)    In asserting this exemption, each piece of information was scrutinized to determine

the nature and strength of the privacy interest of any individual whose name and/or identifying

information appeared in the documents at issue.  In withholding the information, each individual's

privacy interest was balanced against the public's interest in disclosure.  In making this analysis,

public interest information was determined to be information which would shed light on the FBI's

performance of its mission to protect and defend the United States against terrorist and foreign

intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide

leadership and criminal justice services to federal, state, municipal, and international agencies and

partners.  In each instance where information was withheld, it was determined that individual

privacy rights outweighed the public interest.

<u>**(b)(6)-1**</u>              <u>**Names and/or Identifying Information of FBI Special Agents**</u>
                          <u>**and Support Personnel**</u>

(27)    Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1 to

protect the names and identifying data of FBI Special Agents (SAs) who were responsible for

conducting, supervising, and/or maintaining the investigative activities reported in this theft of

aircraft investigation.  Aside from the names of SAs, the FBI also protected their social security

numbers.  Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs

may seriously impair their effectiveness in conducting future investigations.  The privacy

consideration also protects SAs from unnecessary, unofficial questioning as to the conduct of an

14

investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official

inquiries into violations of various criminal statutes and national security cases. They come into

contact with all strata of society and conduct searches and make arrests, both of which result in

reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a

person targeted by such law enforcement action to carry a grudge which may last for years, and to

seek revenge on the SAs involved in the investigation. The publicity associated with the release of

the identity of an FBI Special Agent in connection with a particular investigation could trigger

hostility towards the SA by persons investigated. Accordingly, there is a strong privacy interest in

the identities of the SAs that were involved in this investigation. Balancing that privacy interest

against the public interest in disclosure, the FBI determined that disclosure of the names and social

securities numbers of FBI SAs would not shed light on the operations and activities of the FBI.

    (28)    The names of FBI support personnel have also been withheld pursuant to exemption

(b)(6)-1. Support personnel are assigned to handle various tasks such as searching the CRS,

following leads, retrieving reports from the FBI's intelligence data systems, serving subpoenas and

other duties relating to FBI investigations. These individuals are in positions to access information

concerning official law enforcement investigations. They could, therefore, become targets of

harassing inquiries for unauthorized access to FBI investigations if their identities were released.

Similarly, there is a substantial privacy interest in the identities of these FBI support employees.

After balancing this privacy interest against the public interest in disclosure, the FBI found no

legitimate public interest that outweighed this privacy interest because the identities of FBI SAs

and support employees would not shed light on the operations and activities of the FBI. Therefore

disclosure would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6)-1 has been cited in conjunction with Exemption (b)(7)(C)-1 on the following pages of Exhibit B: pages 8, 12, 17, 28-29, 32, 39-40, 44-45, 61-62, 65-66, 70-73, 75-76, 154-155, 157-159, 161-162, 164, 169, 171-173, 176, 182, 184, 186, 188, 190, 192, 195-197, 199, 205, 214-215, 219, 221-225, 227-229, 249, 252, 254, 257, 261, 264, 266, 268, 272, 274, 276, 283-184, 302, 304, 312, 332, 349, 352, 356, 368-369, 371, 374-376, 384, 389, 393, 399, 401, 403, 405, 411, 419, 428, 430, 432, 434-435, 449, 451, 453, 455, 457, 467, 470, 472, 475, 477-480, 483-486, 488-490, 492, 495, 499-500, 503, 506-512, 514-515, 518-519, 525, 530, 532-533, 543, 545-548, 573, 575-577, 579-583, 594, 602-604, 611, 616, 632-633, 639, 649-652, 655-656, 659-660, 668-670, 672, 698, 762, 821-823, 827, 833, 845, 898, 901-902, and 904.

### (b)(6)-2      Names and or Identifying Information of Third Parties Who Provided Information to the FBI

(29)    Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2 to protect the names, home and work addresses, dates of birth and other identifying data of individuals who assisted the FBI by providing information concerning the theft of the aircraft which led to a guilty plea and sentencing of Roger Scot Snyder, the pilot of said aircraft.

(30)    Information provided by individuals during an interview is one of the most productive investigative tools utilized by law enforcement agencies. The largest roadblock to successfully obtaining the desired information through an interview is the fear by the interviewee of his or her identity possibly being exposed and, consequently, being harassed, intimidated or threatened with legal or economic reprisal or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that their identities will be held in the strictest

16

confidence. The FBI has attempted to release all segregable portions of the information provided by these individuals without revealing their identities. The continued access to persons willing to provide pertinent facts bearing on a particular investigation outweighs any benefits derived from releasing the identities of these individuals. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who provided information to the FBI. Therefore disclosure would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6)-2 has been cited in conjunction with Exemption (b)(7)(C)-2 on the following pages of Exhibit B: pages 28, 44, 176-177, 181, 195, 220, 226, 230-234, 249, 251, 257, 261-263, 284, 303-304, 312, 352, 398-405, 407-408, 410-411, 413-417, 419, 421-427, 458-462, 468, 473, 477, 479-484, 486-488, 492-495, 506-507, 509-514, 518-533, 577-578, 583, 602-609, 611-615, 639, and 668-669.

### (b)(6)-3        Names and/or Identifying Information of Third Parties Merely Mentioned

(31) Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3 to protect the names, addresses, telephone numbers and other information which could identify individuals who are only incidentally mentioned in these records. To release the identities of these third parties who are merely mentioned in an investigation would not shed any light on the FBI's performance of its statutory duties with respect to this theft investigation. However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on them and/or their family members. The mention of their names in the context of an FBI investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely in

17

mentioned in these investigative records because it would not shed light on the operations and

activities of the FBI. Therefore disclosure would constitute a clearly unwarranted invasion of

personal privacy. Exemption (b)(6)-3 has been cited in conjunction with Exemption (b)(7)(C)-3

and appears on the following pages of Exhibit B: 18, 28, 39-42, 171, 180, 206-207, 212, 215, 217,

220, 224, 226, 231, 237-238, 261, 264-266, 283-284, 349-350, 356-357, 369, 371-373, 396, 407,

410, 413-414, 418, 423, 426-427, 451, 456, 465-466, 473-474, 479-481, 483, 491, 495, 497, 500,

507, 509, 514, 516, 519-522, 524-529, 532, 535, 541, 544, 549-554, 556, 559-562, 564-566, 568,

571-576, 578, 581, 583-589, 594, 604, 607-608, 611-612, 614-615, 617-618, 641, 803, 846, and

898.

### (b)(6)-4    Names and/or Identifying Information of Third Parties Who Were of Investigative Interest to the FBI, Local and/or Foreign Law Enforcement Entities

(32) Exemption (b)(6)-4 has been asserted in conjunction with Exemption (b)(7)(C)-4 to

protect the identities and/or personal and non-public information of several third-party individuals

in whom the FBI, the Frederick City, Maryland, Police Department, and/or a foreign authority had

an investigative interest during this investigation. The personal information about these third-party

individuals includes aliases, Social Security numbers, addresses, and descriptive data such as

gender, race, height and weight, eye and hair color, date and place of birth, and other information

which links them to the theft investigation and/or other criminal activities. Being linked with any

law enforcement investigation carries a strong negative connotation. To release the identities of

these individuals to the public as subjects or suspects in an FBI investigation could subject them to

harassment or embarrassment, as well as undue public attention. Additionally, the disclosure of

18

this personal information could be a clearly unwarranted invasion of privacy, especially in light of the fact that Roger Scot Snyder was indicted and convicted of this theft investigation. Indeed, the information being released concerning Mr. Snyder in this investigation is limited to information which is publicly available through court records. In balancing the privacy interest in this information against the public interest in disclosure, the FBI found no legitimate public interest in releasing personal, non-public information concerning these individuals who were of investigative interest to the FBI; such a disclosure would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6)-4 has been cited in conjunction with Exemption (b)(7)(C)-4 on the following pages of Exhibit B: pages 158-159, 166-168, 171, 180-181, 199-201, 205-209, 211-216, 220, 222-223, 225-228, 230-232, 235-237, 251-252, 254, 263, 266-268, 272, 280-284, 305, 356, 374, 389-393, 395-397, 413-417, 419, 434, 455-460, 463-465, 467, 469-474, 480-482, 490-497, 506, 508, 515-517, 519-524, 531, 534-535, 537-540, 542-544, 552-553, 555-562, 564-572, 576-577, 581-584, 587-588, 594, 616-618, 633, 639, 657, 661, 667, 672-673, 762, 821, 823, 825, 827, and 898.

### (b)(6)-5    Names and/or Identifying Information of Non-FBI Federal Government Personnel

(33)    Exemption (b)(7)(C)-5 has been asserted in conjunction with (b)(7)(C)-5 to withhold the names and identifying information of other federal government law enforcement personnel who assisted in this investigation. The relevant inquiry here is whether public access to this information would constitute a clearly unwarranted invasion of personal privacy. Disclosure of this identifying information could subject these law officials to unauthorized inquires and harassment which could constitute an unwarranted invasion of their personal privacy. The rational

19

for protecting non-FBI law enforcement officials is the same as that for FBI employees. In

balancing the legitimate privacy interests against any public interest in disclosure, the FBI has

determined that disclosure of this information would not shed light on the operations and activities

of the federal government. Therefore disclosure would constitute a clearly unwarranted invasion of

personal privacy. Exemption (b)(6)-5 has been cited in conjunction with Exemption (b)(7)(C)-5 on

the following pages of Exhibit B: 182, 197-198, 210, 215, 393-394, 449, 478, 490, 494-495, 501,

503, 576, 579, 604, 611, 669, and 833.

### (b)(6)-6    Names and/or Identifying Information of Local and a Foreign Law Enforcement Personnel

(34)    Exemption (b)(6)-6 has been asserted in conjunction with Exemption (b)(7)(C)-6 to

withhold the names, identification numbers, and telephone numbers of members of the Frederick

City, Maryland, Police Department, and a foreign authority who assisted or investigated in

conjunction with the FBI in this investigation. These law enforcement officers were acting in their

official capacities by assisting the FBI in this investigation of plaintiff and other subjects. Release

of the identities of these individuals could subject them to unofficial inquiries and/or harassment

not anticipated by their contact with the FBI, thus resulting in a clearly unwarranted invasion of

personal privacy. The rationale for protecting the identities of FBI personnel, as discussed in ¶¶

29 and 30, supra, also pertains to the identities of these local and/or a foreign law enforcement

personnel. Balancing the strong privacy interest in this information against the public interest in

disclosure, the FBI determined that there is no legitimate public interest to be served in releasing

the identities of these local law enforcement personnel because release would not shed light on the

operations and activities of the FBI. Therefore disclosure would constitute a clearly unwarranted

invasion of personal privacy. Exemption (b)(6)-6 has been cited in conjunction with Exemption

·(b)(7)(C)-6 on the following pages of Exhibit B: 40, 76, 157, 181-182, 184, 186, 188, 190, 209,

267-268, 370, 393, 471, 495, 506, 515-517, 525, 533, 543-545, 547-548, 551-553, 555-561, 563-

576, 579-582, 587, 589, 594, 602, 617, 641, 668, 670-673, 821, 827, and 845-846.

## EXEMPTION 7
## EXEMPTION 7 THRESHOLD

(35)    Exemption 7 of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See

5 U.S.C. § 552 (b)(7). In this case, the harm that could reasonably be expected to result from

disclosure concerns invasion of personal privacy and revealing the identity of confidential sources.

(36)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must

first demonstrate that the records or information at issue were compiled for law enforcement

purposes. Law enforcement agencies such as the FBI must demonstrate that their records at issue

are related to the enforcement of federal laws and that enforcement activity is within the law

enforcement duty of that agency.

(37)    The records at issue in this case were compiled for law enforcement purposes as a

result of the theft of an aircraft for which Roger Scot Snyder was indicted and charged. Thus, there

is no doubt that this investigation falls within the law enforcement duties of the FBI. This

investigation was conducted pursuant to 18 U.S.C. § 2312. Investigators learned that the aircraft

was stolen from Frederick, Maryland and its identification numbers partially removed. The aircraft

was flown by Roger Scot Snyder from Leesburg, Virginia to Miami and subsequently to Aruba

21

with plaintiff as a passenger. Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether its disclosure could reasonably be expected to "constitute an unwarranted invasion of personal privacy," or "disclose the identity of a confidential source."

## FOIA EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(38)    5 U.S.C. § 552(b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

(39)    When withholding information from disclosure pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual mentioned in the documents at issue. The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States and to provide leadership and criminal justice services to federal, state, municipal and international agencies and partners. In this case, every effort has been made to release all reasonably segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in these documents. As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)(C).

22

(40)    At the time that these records were reviewed, the FBI considered the passage of time and its effect on the privacy interests of third-party individuals in balancing the privacy and the public interest in disclosure. It was determined that the privacy interests are as strong and pertinent now as when the records were created in the 1980's, and that there is no public or historical interest in these records which would outweigh the privacy interests of these third-party individuals. Publicly known information contained in these records concerning co-subject of file is being released to plaintiff as this information is available through Court records.

(41)    Every effort has been made to release all segregable information contained in these records without invading the privacy interests of third-party individuals named in these records. As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)(C).

### (b)(7)(C)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(42)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1 to protect the names and identifying data of FBI Special Agents (SAs) who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this theft of aircraft investigation. Aside from the SAs names, the FBI also protected their social security numbers. Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs may seriously impair their effectiveness in conducting future investigations. The privacy considerations also protect SAs from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into violations of various criminal statutes and national security cases. They come into

23

contact with all strata of society and conduct searches and make arrests, both of which result in

reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a

person targeted by such law enforcement action to carry a grudge which may last for years, and to

seek revenge on the SAs involved in the investigation. The publicity associated with the release of

the identity of an FBI Special Agent in connection with a particular investigation could trigger

hostility towards the SA by persons investigated. Accordingly, there is a strong privacy interest in

the identities of the SAs that were involved in this investigation. Balancing that privacy interest

against the public interest in disclosure, the FBI has determined that disclosure of the names and

social securities numbers of FBI SAs would not shed light on the operations and activities of the

FBI.

(43)    The names of FBI support personnel have also been withheld pursuant to

Exemption (b)(7)(C)-1. Support personnel are assigned to handle various tasks such as searching

the CRS, following leads, retrieving reports from the FBI's intelligence data systems, serving

subpoenas and other duties relating to FBI investigations. These individuals are in positions to

access information concerning official law enforcement investigations. They could, therefore,

become targets of harassing inquiries for unauthorized access to FBI investigations if their

identities were released. Similarly, there is a substantial privacy interest in the of these FBI support

employees. After balancing this privacy interest against the public interest in disclosure, the FBI

found no legitimate public interest that outweighed this privacy interest because the identities of

FBI SAs and support employees would not shed light on the operations and activities of the FBI.

Thus, release could constitute an unwarranted invasion of privacy. Exemption (b)(7)(C)-1 has

24

been cited in conjunction with Exemption (b)(6)-1 on the following pages of Exhibit B: 8, 12, 17,

28-29, 32, 39-40, 44-45, 61-62, 65-66, 70-73, 75-76, 154-155, 157-159, 161-162, 164, 169, 171-

173, 176, 182, 184, 186, 188, 190, 192, 195-197, 199, 205, 214-215, 219, 221-225, 227-229, 249,

252, 254, 257, 261, 264, 266, 268, 272, 274, 276, 283-184, 302, 304, 312, 332, 349, 352, 356, 368-

369, 371, 374-376, 384, 389, 393, 399, 401, 403, 405, 411, 419, 428, 430, 432, 434-435, 449, 451,

453, 455, 457, 467, 470, 472, 475, 477-480, 483-486, 488-490, 492, 495, 499-500, 503, 506-512,

514-515, 518-519, 525, 530, 532-533, 543, 545-548, 573, 575-577, 579-583, 594, 602-604, 611,

616, 632-633, 639, 649-652, 655-656, 659-660, 668-670, 672, 698, 762, 821-823, 827, 833, 845,

898, 901-902, and 904.

### (b)(7)(C)-2     Names and or Identifying Information of Third Parties Who Provided Information to the FBI

(44)     Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2 to

protect the names, home and work addresses, dates of birth and other identifying data of

individuals who assisted the FBI by providing information concerning the theft of the aircraft

which led to a guilty plea and sentencing of Roger Scot Snyder, the pilot of said aircraft.

(45)     Information provided by individuals during an interview is one of the most

productive investigative tools utilized by law enforcement agencies. The largest roadblock to

successfully obtaining the desired information through an interview is the fear by the interviewee

of his or her identity possibly being exposed and, consequently, being harassed, intimidated or

threatened with legal or economic reprisal or possible physical harm. In order to surmount these

obstacles, persons interviewed must be assured that their identities will be held in the strictest

confidence. The FBI has attempted to release all segregable portions of the information provided by these individuals without revealing their identities. The continued access to persons willing to provide pertinent facts bearing on a particular investigation outweighs any benefits derived from releasing the identities of these individuals. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who provided information to the FBI. Thus, release could cause an unwarranted invasion of privacy. Exemption (b)(7)(C)-2 has been cited in conjunction with Exemption (b)(6)-2 on the following pages of Exhibit B: 28, 44, 176-177, 181, 195, 220, 226, 230-234, 249, 251, 257, 261-263, 284, 303-304, 312, 352, 398-405, 407-408, 410-411, 413-417, 419, 421-427, 458-462, 468, 473, 477, 479-484, 486-488, 492-495, 506-507, 509-514, 518-533, 577-578, 583, 602-609, 611-615, 639, and 668-669.

### (b)(7)(C)-3    Names and/or Identifying Information of Third Parties Merely Mentioned

(46) Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemption (b)(6)-3 to protect the names, addresses, telephone numbers and any other information which could identify individuals who are only incidentally mentioned in these records. To release the identities of these third parties who are merely mentioned in an investigation would not shed any light on the FBI's performance of its statutory duties with respect to this theft investigation. However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on them and/or their family members. The mention of their names in the context of an FBI investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely

mentioned in this investigation because it would not shed light on the operations and activities of the FBI. Exemption (b)(7)(C)-3 has been cited in conjunction with Exemption (b)(6)-3 on the following pages of Exhibit B: 18, 28, 39-42, 171, 180, 206-207, 212, 215, 217, 220, 224, 226, 231, 237-238, 261, 264-266, 283-284, 349-350, 356-357, 369, 371-373, 396, 407, 410, 413-414, 418, 423, 426-427, 451, 456, 465-466, 473-474, 479-481, 483, 491, 495, 497, 500, 507, 509, 514, 516, 519-522, 524-529, 532, 535, 541, 544, 549-554, 556, 559-562, 564-566, 568, 571-576, 578, 581, 583-589, 594, 604, 607-608, 611-612, 614-615, 617-618, 641, 803, 846, and 898.

### (b)(7)(C)-4    Names and/or Identifying Information of Third Parties Who Were of Investigative Interest to the FBI , Local and/or Foreign Law Enforcement Entities

(47) Exemption (b)(7)(C)-4 has been asserted in conjunction with Exemption (b)(6)-4 to protect the identities and/or personal and non-public information on several third-party individuals in whom the FBI, Frederick City, Maryland Police Department, and/or a foreign authority had an investigative interest during this investigation. The personal information about these third-party individuals includes aliases, Social Security numbers, addresses, and descriptive data such as gender, race, height and weight, eye and hair color, date and place of birth, and other information which links them to the theft investigation and/or other criminal activities. Being linked with any law enforcement investigation carries a strong negative connotation. To release the identities of these individuals to the public as subjects or suspects in an FBI investigation could subject them to harassment or embarrassment, as well as undue public attention. Additionally, the disclosure of this personal information would be a clearly unwarranted invasion of privacy, especially in light of the fact that Roger Scot Snyder was indicted and convicted of this theft investigation. Indeed, the

27

information being released concerning Mr. Snyder of this investigation was limited to information which is publicly available through court records. In balancing the privacy interest in this information against the public interest in disclosure, the FBI found no legitimate public interest to be by releasing personal, non-public information concerning these individuals who were of investigative interest to the FBI. Thus, release could cause an unwarranted invasion of privacy. Exemption (b)(7)(C)-4 has been cited in conjunction with Exemption (b)(6)-4 on the following pages of Exhibit B: 158-159, 166-168, 171, 180-181, 199-201, 205-209, 211-216, 220, 222-223, 225-228, 230-232, 235-237, 251-252, 254, 263, 266-268, 272, 280-284, 305, 356, 374, 389-393, 395-397, 413-417, 419, 434, 455-460, 463-465, 467, 469-474, 480-482, 490-497, 506, 508, 515-517, 519-524, 531, 534-535, 537-540, 542-544, 552-553, 555-562, 564-572, 576-577, 581-584, 587-588, 594, 616-618, 633, 639, 657, 661, 667, 672-673, 762, 821, 823, 825, 827, and 898.

### (b)(7)(C)-5    Names and/or Identifying Information of Non-FBI Federal Government Personnel

(48)    Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 to withhold the names and identifying information of other federal government law enforcement personnel who assisted in this investigation. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these law officials to unauthorized inquires and harassment which could constitute an unwarranted invasion of their personal privacy. The rationale for protecting non-FBI law enforcement officials is the same as that for FBI employees. In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that disclosure of this information would not shed light on the operations and activities

28

of the federal government. Exemption (b)(7)(C)-5 has been cited in conjunction with Exemption (b)(6)-5 on the following pages of Exhibit B: 182, 197-198, 210, 215, 393-394, 449, 478, 490, 494-495, 501, 503, 576, 579, 604, 611, 669, and 833.

### (b)(7)(C)-6    Names and/or Identifying Information of Local and Foreign Law Enforcement Personnel

(49)    Exemption (b)(7)(C)-6 has been asserted in conjunction with Exemption (b)(6)-6 to withhold the names, identification numbers, and telephone numbers of members of the Police Department, of Frederick City, Maryland and a foreign authority who assisted or investigated in conjunction with the FBI in this investigation. These law enforcement officers were acting in their official capacities by assisting the FBI in this investigation of plaintiff and other subjects. Release of the identities of these individuals could subject them to unofficial inquiries and/or harassment not anticipated by their contact with the FBI, thus resulting in an unwarranted invasion of personal privacy. The rationale for protecting the identities of FBI personnel, as discussed in ¶¶ 29 and 30, supra, also pertains to the identities of these local and/or foreign law enforcement personnel. Balancing the strong privacy interest in this information against the public interest in disclosure, the FBI determined that there is no legitimate public interest to be served in releasing the identities of these local law enforcement personnel because release would not shed light on the operations and activities of the FBI. Thus, release could cause an unwarranted invasion of privacy. Exemption (b)(7)(C)-6 has been cited in conjunction with Exemption (b)(6)-6 on the following pages of Exhibit B: 40, 76, 157, 181-182, 184, 186, 188, 190, 209, 267-268, 370, 393, 471, 495, 506, 515-517, 525, 533, 543-545, 547-548, 551-553, 555-561, 563-576, 579-582, 587, 589, 594, 602, 617, 641, 668, 670-673, 821, 827, and 845-846.

## FOIA EXEMPTION (b)(7)(D)
## CONFIDENTIAL SOURCE MATERIAL

(50) 5 U.S.C. § 552(b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .
> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by criminal law enforcement authority in the course of a
> criminal investigation, or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source . . .

(51)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common definition of the term. They provide information under express

assurances of confidentiality. Other individuals are interviewed under an implied assurance of

confidentiality or under circumstances from which assurance of confidentiality can be inferred.

These persons are considered to be confidential sources since it is believed that they furnish

information only with the understanding that their identities and the information provided by

them will not be divulged outside the FBI.

(52)    Releasing singular information provided by these confidential sources could likely

reveal their identities. The release of a source's identity to the public would forever eliminate

that source as a future means of obtaining information. Additionally, when the identity of one

confidential source is revealed, that revelation has a chilling effect on the activities and

cooperation of other confidential sources. It is only with the understanding of complete

confidentiality that the aid of such sources can be enlisted, and only through this assurance of

confidentiality that these sources can be persuaded to continue providing valuable assistance in

the future. Accordingly, the identities of these confidential sources and any specific information

provided by them which could identify them has been properly withheld from disclosure pursuant

to exemption (b)(7)(D).

### (b)(7)(D)-1    Information Provided by Third Parties to the FBI
### Under an Implied Assurance of Confidentiality

(53)    Exemption (b)(7)(D)-1 has been asserted to protect the names, identifying data

and singular information provided by third parties to the FBI during the course of the

investigation into plaintiff's activities, under an implied grant of confidentiality. These third

parties provided information concerning the criminal activities of plaintiff and/or other subjects

who were of interest to the FBI or other law enforcement agencies. These third-party sources

provided specific detailed information that was singular in nature concerning the criminal

activities involving plaintiff, his associates, and/or other subjects relevant to this investigation.

As a result of the information provided, a co-conspirator pled guilty to theft of an aircraft and

plaintiff was convicted of a passport violation, 18 U.S.C.§ 1542. The disclosure of the identities

of these individuals could have retaliative consequences. These third parties provided

information of value to the FBI concerning this crime and/or other criminal activity for which

plaintiff and associates have or have not been convicted of, and in doing so, have placed

themselves in harm's way should plaintiff or his associates become aware of their cooperation

with the FBI.

(54)    Because plaintiff was indicted on a narcotics smuggling charge, the third parties

who provided information to the FBI expect their identities and any singular information they

provided to be withheld from the general public. Due to the extremely violent nature associated

31

with narcotics smuggling crimes, these third parties were afforded an implied assurance of confidentiality. These third parties would reasonably and justifiably fear violent reprisals or retaliation by plaintiff and/or the other subjects of this investigation. Accordingly, it is reasonable to infer that each of the third parties that provided information to the FBI did so under circumstances from which an assurance of confidentiality is implied.

(55)    The information the third parties provided under an implied assurance of confidentiality warrants the protection of the third party names as well as the singular information they provided. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(D)-1. Exemption (b)(7)(D)-1 has been cited on the following pages of Exhibit B: pages 180-181, 220, 226, 231-234, 303-304, 352, 398-405, 407-408, 410-411, 413-419, 421-427, 459-462, 479-484, 492-494, 506-507, 519-533, 580, 602, 604-609, 611-615, and 668-669.

**(b)(7)(D)-3**          **Investigative Information Compiled by a Foreign Law Enforcement Agency and Provided to the FBI Under an Implied Assurance of Confidentiality.**

(56)    Exemption (b)(7)(D)-3 has been asserted to protect investigative reports and investigative information provided to the FBI by a foreign authority with the expectation and understanding that these confidential investigative reports and information would not be disclosed outside the FBI. These confidential investigative reports and information concern the investigation of Satnum Singh for narcotics smuggling via a stolen aircraft. This foreign law enforcement agency provided valuable information from their records which materially assisted the FBI in its investigation. If the FBI were to disclose these confidential investigative reports

32

and information to the public, the cooperative relationship established by the FBI with this and other foreign agencies would be severely damaged and perhaps, extinguished. Release of these reports and information could also have a chilling effect on the current and future cooperation of other law enforcement agencies with the FBI, inasmuch as they would have little or no faith in the FBI's ability to maintain their investigative reports and information in confidence. Thus, these confidential investigative reports and information have been withheld from disclosure. Exemption (b)(7)(D)-3 has been cited on the following pages of Exhibit B: pages 180-182, 184, 186, 188, 190, 192, 200-201, 206-209, 212, 219-220, 226, 236, 255, 283-284, 390-393, 396, 451, 456, 464, 491-493, 495, 506, 515-517, 525, 533, 543-545, 548-553, 555-572, 579-582, 587-590, 594, 602, 617-618, 641-642, 668, 670-673, 681-684, 827, and 845-846.

## REFERRAL OF DOCUMENTS

(57)    By undated letter [12], the FBI forwarded a referral to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE"), U. S. Department of Treasury ("DOT"). on or about November 29, 2007, consisting of two pages which originated with that agency. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.

(58)    By letter dated February 8, 2008, the FBI forwarded a referral to Drug Enforcement Administration ("DEA") consisting of two pages which originated with that agency. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.

---

[12]The referral was forwarded without a date due to administrative error.

33

(59)    By undated letter [13], the FBI forwarded a referral to U.S. Citizenship and Immigration Services ("CIS") on or about November 29, 2007, consisting of twenty pages which originated with that agency. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.

(60)    By letter dated January 23, 2008, the FBI forwarded a referral to Department of Justice, Civil Division ("DOJ") consisting of six pages which originated with that agency. These pages were referred for direct response to plaintiff and a Vaughn Index will be provided to the Court by defendant's counsel.

---

[13]See footnote 12, **supra**.

## CONCLUSION

(61)    Plaintiff has been provided all responsive records pursuant to his FOIA requests to the FBI. Each document was individually reviewed for segregability of non-exempt information and it was determined that all reasonably segregable information has been released to plaintiff. As demonstrated above, the only information withheld by the FBI consists of information which is properly classified under E.O. 12953, as amended, protected by statute, the disclosure of which could constitute a clearly unwarranted (and/or) unwarranted invasion of privacy, and information provided to the FBI under an implied assurance of confidentiality.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A and B** attached hereto are true and correct copies.

Executed this _29th_ day of February, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SATNAM SINGH, | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 07-01064 (RJL) |
| v. | ) |
|  | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

# EXHIBIT A



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

MR SATNAM SINGH
NO 79538
NORTHWEST STATE CORRECTIONAL FACILITY
3649 LOWER NEWTON ROAD
SWANTON, VT 05488

November 28, 2007

Subject: SINGH, SATNAM

FOIPA No. 1005633- 002

Dear Mr. Singh:

    The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☒(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☒(b)(3) __Rule 6(e) FRCP__ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

902 **page(s)** were reviewed and 390 **page(s)** are being released.

☒  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☒  referred to the OGA for review and direct response to you.

    ☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s).

Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
 Dissemination Section
Records Management Division

Enclosures (4)

Enclosed are documents from FBI files 26B-BA-80228, Sections 1-3, and WF 26B-48866, Sections 1-2. Pursuant to Title 28, Code of Federal Regulations, Section 16.11, there is a fee of ten cents per page for duplication. No fees are assessed for the first 100 pages. Please submit a check or money order in the amount of **$29.00** payable to the Federal Bureau of Investigation within 45 days of the date of the letter. To insure proper identification of your request, please include the FOIPA request number **1005633-002** with your payment.

The enclosed documents from our Central Records System (CRS) files contain a copy of an identification record or "rap Sheet." We have released this "rap sheet" as it existed when it was placed in the CRS files; it may or may not reflect current information. If you desire an up-to-date copy of this "rap sheet," please comply with the enclosed instructions set forth in Attorney General Order 556-73. Fingerprint impressions are needed for comparison with records in the Criminal Justice Information Services (CJIS) Division (formerly known as Identification Division) to insure that an individual's record is not disseminated to an unauthorized person.

For your information, numerous documents in the field office files that were processed were duplicate documents. To minimize costs to both you and the Federal Bureau of Investigation, these duplicate documents have not been considered for release unless additional information was included on the duplicate document.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH,                              )
                                          )
                                          )
                                          )
                                          )
          Plaintiff,                      )
                                          ) Civil Action No. 07-01064 (RJL)
          v.                              )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
                                          )
          Defendant.                      )
                                          )

# EXHIBIT B

# (PAGES 1-181)

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  | Section 552 |  | Section 552a |
|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) |  | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__7__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 1 through SINGH 7 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee   X
X    for this page       X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| X☒X AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | X☒X UNCLAS |

Date ___5/4/88___

```
TO:        SAC, BALTIMORE (26B-56765)(SQ 10)

FROM:      SAC, PITTSBURGH (26B-R-16)(RUC)

SUBJECT:   ROGER SCOT SNYDER;
           UNSUB, aka
           ANTONIO MICHAEL DE SILVA, aka
           Singh DeSilva, Singh Da Silva,
           Salvatore DeSilva, John Marshall Guattery;
           THEFT OF PIPER SARATOGA SINGLE
           ENGINE AIRCRAFT,
           AIRCRAFT SERIAL NUMBER 32R8213016,
           ENGINE SERIAL NUMBER L21585-48A
           TAIL NUMBER N8006Q,
           FROM FREDERICK, MARYLAND AIRPORT,
           3/18-19/88;
           ITSA; GUN CONTROL ACT OF 1968,
           ITSP, PASSPORT MATTER, FPC- GCM;
           OO:  BA


           Re BAairtel to Director, dated 4/27/88.


           Pittsburgh indices negative regarding above subjects.
```

26B-56765-64

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

MAY 10 1988

```
(2) Baltimore
 1 - Pittsburgh,
KLN/kln
 (3)
```

b6 -1
b7C -1

Approved: _____ Transmitted _____ Per _____
(Number)    (Time)

SINGH-8

1-336 (Rev. 10-26-79)



# FEDERAL BUREAU OF INVESTIGATION

Washington, D. C. 20537

**REPORT**

of the

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

## LATENT FINGERPRINT SECTION
## IDENTIFICATION DIVISION

YOUR FILE NO.    26B-56765 (SQ 10) (P)           5/13/88
FBI FILE NO.
LATENT CASE NO.   C-73823

TO: SAC, Baltimore

      ROGER SCOT SNYDER;
      UNSUB, aka
      Antonio Michael DeSilva, etc.;
      THEFT OF PIPER SARATOGA SINGLE
      ENGINEER AIRCRAFT
RE: AIRCRAFT SERIAL NUMBER 32R8213016
      ENGINE SERIAL NUMBER L21585-48A
      TAIL NUMBER N8006Q
      FROM FREDERICK, MARYLAND AIRPORT
      3/18-19/88;
      ITSA; GUN CONTROL ACT OF 1968;
      ITSP; PASSPORT MATTER; FPC - GCM

REFERENCE:     Airtel 4/27/88
EXAMINATION REQUESTED BY:  Baltimore
SPECIMENS:
           Forty-seven cartridges, Q1 through Q47
           Four magazines

      The requested latent print examination was conducted, but no
latent prints of value were detected.

      The result of the laboratory examination and the disposition of
the specimens will be furnished in a separate report.

SINGH-9

*THIS REPORT IS FURNISHED FOR OFFICIAL USE ONLY*        FBI/DOJ

DA-26B-56765-65 HP

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__2__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 10 through SINGH 11 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

**Memorandum** 



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

To : **SAC, BALTIMORE (26B-56765)(SQ 10)(P)**     Date  **5/27/88**

From : **SA** [                    ]      b6 -1
                                          b7C -1

Subject: **ROGER SCOT SNYDER,
ET AL;
ITSA;
OO: BALTIMORE**

        <u>Attached is a subpoena for</u> [                                    ]

[                              ]     b3

<u>LEAD</u>

    <u>BALTIMORE DIVISION</u>

        <u>At Cockeysville, Maryland:</u>

        **Serve subpoena.**

2 - Baltimore
JED:bc
(2)



        b6 -1
        b7C -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS



AO 110 (Rev. 10/82)

## SUBPOENA TO TESTIFY BEFORE GRAND JURY

| **United States District Court** | DISTRICT<br>Maryland | |
|---|---|---|
| TO: | | SUBPOENA FOR<br><br>- ☐ Person<br>☒ Document or Object |

**YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the location, date, and time specified below to testify before the Grand Jury in the above entitled case.

| PLACE | | COURTROOM |
|---|---|---|
| United States Attorney's Office<br>820 U.S. Courthouse<br>101 W. Lombard Street<br>Baltimore, Maryland 21201 | b3 | 820 |
| | | DATE AND TIME<br><br>10:00 a.m. |

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):[1]

IN LIEU OF PERSONAL APPEARANCE, YOU MAY COMPLY WITH THIS SUBPOENA BY
TURNING THE REQUESTED DOCUMENTS OVER TO THE AGENT SERVING THIS SUBPOENA.

☐ Please see additional information on reverse

---

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK<br>JOSEPH A. HAAS | DATE<br>May 23, 1988 |
|---|---|
| (BY) DEPUTY CLERK<br>*Stephanie V. Hopkins* | |
| This subpoena is issued on application<br>of the United States of America by:<br>Breckinridge L. Willcox<br>United States Attorney | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>Peter M. Semel  *Pm5*<br>Assistant United States Attorney<br>820 United States Courthouse<br>101 W. Lombard Street<br>Baltimore, MD 21201-2692 (301)539-2940 |

1) If not applicable, enter "none."

SINGH-13



**U.S. Department of Justice**



*United States Attorney*
*District of Maryland*

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

*United States Courthouse, Eighth Floor*          301/539-2940
*101 West Lombard Street*                         FTS/922-4822
*Baltimore, Maryland 21201-2692*

May 23, 1988

TO THE RECIPIENT OF THIS SUBPOENA:

Pursuant to an official criminal investigation of a suspected felony being conducted by the United States Attorney's Office, it is requested that your company furnish on _____Tuesday, June 7, 1988_____ certain records, as detailed on the attached subpoena. You have the right to present the records directly to the Grand Jury. If you choose to waive that right, you may turn over the described records to the agent who served you the subpoena prior to your date of appearance.

You are requested not to disclose the existence of this subpoena for a period of 90 days from the date of this request. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law.

If you have any questions regarding this subpoena, you may call the undersigned at 301/539-2940.

Thank you for your cooperation in this matter.

Very truly yours,

Breckinridge L. Willcox
United States Attorney

By: _____

Peter M. Semel
Assistant United States Attorney

Attachment

SINGH-14

**REPORT**
of the



**FEDERAL BUREAU OF INVESTIGATION**    DUPE
**WASHINGTON, D. C. 20535**    May 26, 1988

To:  SAC, Baltimore (26B-56765) (SQ 10)

FBI FILE NO.

LAB. NO.    80502011 S TH

Re:  ROGER SCOT SNYDER;
UNSUB, aka
Antonio Michael DeSilva, aka;
THEFT OF PIPER SARATOGA SINGLE

(RE:  CONTINUED BELOW)

Examination requested by:    Addressee

Reference:    Communication dated April 27, 1988

Examination requested:    Firearms - Fingerprint

Specimens received    May 2, 1988

(RE:  CONTINUED)

ENGINE AIRCRAFT,
AIRCRAFT SERIAL NUMBER 32R8213016,
ENGINE SERIAL NUMBER L21585-48A,
TAIL NUMBER N8006Q,
FROM FREDERICK, MARYLAND AIRPORT,
3/18-19/88;
ITSA, GUN CONTROL ACT OF 1968;
ITSP, PASSPORT MATTER, FPC - GCM;

OO:  Baltimore

Specimens:

Q1-Q12    Twelve cartridges removed from ALSO SUBMITTED 1 magazine

Q13-Q23   Eleven cartridges removed from ALSO SUBMITTED 2 magazine

Q24-Q35   Twelve cartridges removed from ALSO SUBMITTED 3 magazine

Q36-Q47   Twelve cartridges removed from ALSO SUBMITTED 4 magazine

Page 1                                          (over)

SINGH-15

FBI/DOJ
BA-26B-56765-68

ALSO SUBMITTED:

        1.  Magazine

        2.  Magazine

        3.  Magazine

        4.  Magazine

Result of examination:

      Specimens Q1 through Q47 are 9mm Luger cartridges
which were manufactured by Israel Military Industries.  The
color designator used on the nose of the bullet portion of these
cartridges indicates that it has been loaded to obtain higher
pressure levels for use in 9mm carbines as opposed to pistols.
It should be noted that specimen Q1 was separated into its component
parts during the Laboratory examination.

      The results of the requested latent fingerprint
examination will be reported separately.

      Specimens Q1 through Q47 and the ALSO SUBMITTED items
are being returned to the Baltimore Division under separate
cover by United Parcel Service.

Page 2
80502011 S TH

SINGH-16

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

-DUPE-

Date  5-23-88

TO:      SAC, BALTIMORE (26B-56765)

FROM:    SAC, SAN FRANCISCO (26B-52034)(P)(SQ. 4)

SUBJECT:  ROGER SCOT SNYDER;
          UNSUB, aka
          Antonio Michael DeSilva, aka
          Singh DeSilva, Singh Da Silva,
          Salvatore DeSilva, John Marshall Guattery;
          THEFT OF PIPER SARATOGA SINGLE
          ENGINEER AIRCRAFT,
          AIRCRAFT SERIAL NUMBER 32R8213016,
          ENGINE SERIAL NUMBER L21585-48A,
          TAIL NUMBER N8006Q,
          FROM FREDERICK, MARYLAND AIRPORT,
          3/18-19/88;
          ITSA, GUN CONTROL ACT OF 1968,
          ITSP, PASSPORT MATTER, FPC-GCM
          OO:  BALTIMORE

Title marked "Change" to add aliases of Antonio Michael DeSilva, Singh DeSilva and Salvatore DeSilva to title.

          Re Baltimore airtel to the Bureau, dated 4-27-88.

          San Francisco indices have been searched regarding
captioned subject with negative results.

LEAD

     SAN FRANCISCO

          AT SAN FRANCISCO, CALIFORNIA:  Will continue to contact
Latin American Consulate  Representatives in an effort to obtain
information on subject De Silva.

2 - Baltimore
2 - San Francisco
SA/bfo
(4)

Approved: _____  Transmitted _____
                                        (Number)    (Time)

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

MAY 2 6 1988

☆U.S. GPO: 1997 — 181-48/

26-56765-69

b6  -1
b7C -1

MORE

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_9_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH 18 through SINGH 27_

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOI

# Memorandum



To : SAC, BALTIMORE (26B-56765) (SQ 10) (P) Date  6/6/88

From : SA [                    ]

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

b6 -1
b7C -1

Subject : ROGER SCOT SNYDER;
ET AL;
ITSA; NARCOTICS; PM
OO: BA

    According to the most recent interview of [          ]
[                                                    ] no longer lives in
Frederick, Md., and contact with his listed telephone
number indicates that the new subscriber has received
a lot of calls from persons trying to reach him.  MVA
records show [                                          ]
[                                                      ] There
is no indication that citation [          ] was issued to
him, but it should also be reviewed.

b6 -2,3
b7C -2,3

LEADS:

BALTIMORE DIVISION

    At Annapolis, Maryland

    Will, at Annapolis Court House, review and
obtain copies of citations [          ] [              ]
Soundex number is [              ] DOB [        ]

b6 -3
b7C -3

(3) - Baltimore
JED:bjm
(3)



SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

JUN 08 1988

26B-56765-73

b6 -1
b7C -1

SINGH-28

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

X   AIRTEL

6/9/88

TO:      SAC, WMFO (26B-48866)

FROM:    SAC, BALTIMORE (26B-56765) (SQ 10) (P)

SUBJECT: ROGER SCOT SNYDER;
         ET AL;
         ITSP; NARCOTICS MATTER; PM
         OO: BA

b6 -4
b7C -4

         Enclosed for WMFO is the original and one copy
of FD-302 of ▢

         SA ▢            should read and initial    b6 -1
the original copy of the enclosed FD-302 and return it  b7C -1
to Baltimore.

LEADS:

   WMFO

      At WDC

      Will initial and return original FD-302.


2 - WMFO (Enc. 2)
2 - Baltimore
JED:bjm
(4)

b6 -1
b7C -1

26B-56765

SEARCHED
INDEXED
SERIALIZED
FILED

SINGH-29

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_2_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
   *SINGH  30  through  SINGH  31*

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
XX   Airtel

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date 6/16/88

DATE: 08-16-2007
CLASSIFIED BY 60324 AUC BAW/STP/CLS
DECLASSIFY ON: 25X 3.5(1)
08-16-2032

TO:       SAC, BALTIMORE (26B-56765)

FROM:     SAC, LOS ANGELES (26B-75523) (C-2) (RUC)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SUBJECT:  UNSUB, aka;
          ROGER SCOT SNYDER;
          ANTONIO MICHAEL DE SILVA, aka;
          Singh De Silva:
          Singh Da Silva;
          Salvatore De Silva;
          John Marshall Guattery;
          THEFT OF PIPER SARATOGA SINGLE ENGINEER AIRCRAFT;
          AIRCRAFT SERIAL NUMBER 32R8213016;
          ENGINE SERIAL NUMBER L21585-48A;
          TAIL NUMBER N8006Q;
          FROM FREDERICK, MARYLAND AIRPORT;
          3/18-19/88;
          ITSA, GUN CONTROL ACT OF 1968;
          ITSP; PASSPORT MATTER; FPC-GCM;
          OO: Baltimore

DATE: 01-08-2008
CLASSIFIED BY 65179DMH/HKG/CH
REASON: 1.4 (C)
DECLASSIFY ON: 01-08-2033

        Re Baltimore airtel dated 4/27/88.

        Enclosed is photograph of subject previously provided
by Baltimore.                                               b1

        Los Angeles checked with [          ] in attempt
to identify captioned subject.  Source was familiar with a
SILVA who had stolen an airplane in Nicaragua and flew it to
Honduras approximately four months ago.  After viewing enclosed

2 - Bureau
② - Baltimore (Encl. 1)
4 - Los Angeles

CRJ/tb
(6)

26B-56765-77

Approved: _____   Transmitted _____
                            (Number)

b6 -1
b7C -1

SECRET

SINGH-32

JUL 01 1988

○ U.S. GPO: 1987 — 181-486

SECRET

26B-75523

photograph, source advised that this is not the same individual he knows.

After viewing the photograph [          ] stated (S) b1
he believes the subject to be a Columbian.  Based on the subject's
hairstyle, source believes subject has been in the U.S. for
a long time.  He stated that ponytails or buns are a U.S. phenomenum
as South American males consider them to be indicative of women
and homosexuals.

As all logical investigation have been completed,
Los Angeles has placed this matter in RUC status.

- 2* -

SECRET



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

SINGH -34

Antonio Michael DeSilva

? ? ? ?

SINGH-35

-BACK OF PHOTO-

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_3___ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH 36 through SINGH 38_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOI

0-9 (Rev. 8-16-79)

 

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

TRANSMIT VIA: _____ **AIRTEL** _____

CLASSIFICATION: _____      **DATE:** _____6/29/88_____

b6 -1
**FROM:** Director, FBI     b7C -1          **INDICES SEARCH**

**TO:** SAC, Baltimore          ☑ GENERAL          ☑ FOIMS
        Attention: SA [        ]
                                            ☑ NEGATIVE          ☐ NEGATIVE
                        46-0-439
SATNAM SINGH, AKA      203-0-66             ☐ SEE ATTACHED S.S.   ☐ SEE ATTACHED S.S.
JOHN MARSHALL GUATTERY
INTERPOL - FPC        199-1462-1802
OO: FBIHQ    b6 -3                         SEARCH BY             ☑ SEARCH BY MQB
             b7C -3    24-56765 *

        Enclosed for Baltimore are two copies of documents
received from Interpol Singapore concerning captioned subject.

        Baltimore is requested to advise FBIHQ of the outcome
of this investigation so that the authorities in Singapore may be
advised.

        Response should reach FBIHQ, Office of Liaison and
International Affairs (OLIA), Interpol/FPC Unit, by COB 8/29/88
for dissemination to Interpol Singapore.

Enclosure

b6 -1
b7C -1

26B-56265-81
SEARCHED ___ INDEXED ___
SERIALIZED ___ FILED ___
JUL 05 1988

b6 -1
b7C -1

SINGH-39

FBI/DOJ

# Memorandum



| | | |
|---|---|---|
| To : | SAC, BALTIMORE (26B-56765) (SQ. 10) (P) | Date 7/13/88 |

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

From : SA [ ]

b6 -1
b7C -1

Subject : ROGER SCOTT SNYDER;
ET AL;
ITSA; NARCOTICS; PM
OO: BA

Reference memo of SA [ ] dated 6/6/88.

b6 -1
b7C -1

Attached hereto are copies of Maryland Automated Traffic System printout for citation numbers [ ] [ ] and [ ] issued to [ ] on 9/6/86.

b6 -3
b7C -3

b6 -6
b7C -6

The above was provided by [ ] District Court of Maryland, Maryland Automated Traffic System, 1748 Forest Drive, Annapolis, Maryland, on 6/30/88. [ ] advised the location of the citations was Carroll Parkway at College Avenue and they were issued by Frederick City Police Officer with identification number 0181 at 6:22 p.m. on 9/6/86.

It is noted on the printout that [ ] was operating a [ ] with Maryland registration [ ] not further described.

b6 -3
b7C -3

(2) Baltimore
HFH:saw
(2)



26B-56765-82

SEARCHED____ INDEXED____
SERIALIZED____ FILED____

JUL 1 4 1988

FBI — BALTIMORE

SINGH-40

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

$\cancel{2}$    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | Section 552 | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) ⟵3 | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) ⟵3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH 41_ _through_ _SINGH 42_ _____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

☑ The following number is to be used for reference regarding these pages: _____

SINGH - 43

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X No Duplication Fee    X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription _____ 7/15/88

    On April 1, 1988, [_____] (Protect), [_____]
[_____] Marathon, Florida, advised that her
records revealed a lodging record in the name of JOHN GUATTERY,
98 North Bedford, Arlington, Virginia, 22201, for the night of
March 20, 1988. [_____] advised that GUATTERY checked into THE
RODEWAY INN on March 20, 1988, listing a party of two on his
*registration card, and checked out on March 21, 1988.*  The
records reflected that GUATTERY stayed in room number 122 and
made long distance calls as follows:

b6 -2
b7C -2

| Date | Time | Telephone Number |
|---|---|---|
| March 20, 1988 | 4:31 P.M. | 1-800-992-7433 |
| March 20, 1988 | 8:59 P.M. | 703-525-1837 |
| March 21, 1988 | 1:00 A.M. | 703-525-1837 |
| March 21, 1988 | 10:02 A.M. | 305-526-5307 |
| March 21, 1988 | 10:15 A.M. | 703-521-4501 |

| | | | |
|---|---|---|---|
| Investigation on 4/1/88 | at | Marathon, Florida | BA26B-56765 84<br>Miami 26B-46386 KP<br>File # |
| b6 -1<br>b7C -1  SA [_____] | UGS:pcp | | Date dictated 7/15/88 |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-44

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ ____ AIRTEL ____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Date  7/20/88

```
 1   TO:      SAC, BALTIMORE (26B-56765) (SQ. 10)

 2   FROM:    SAC, MIAMI (26B-46386) (RUC)

 3   ROGER SCOT SNYDER;
     UNSUB, aka
 4   ANTONIO MICHAEL DESILVA, aka
     Singh DeSilva, Singh Da Silva,
 5   Salvatore DeSilva, John Marshall Guattery;
     THEFT OF PIPER SARATOGA SINGLE
 6   ENGINE AIRCRAFT,
     AIRCRAFT SERIAL NUMBER 32R8213016,
 7   ENGINE SERIAL NUMBER L21585-48A,
     TAIL NUMBER N8006Q,
 8   FROM FREDERICK, MARYLAND AIRPORT,
     3/18 - 19/88;
 9   ITSA, GUN CONTROL ACT OF 1968,                      b6 -1
     ITSP, PASSPORT MATTER, FPC - GCM;                   b7C -1
10   (OO:  BALTIMORE)

11           Re Baltimore airtel to Miami, et al, dated
     4/27/88, and telcal of SA [          ] Homestead R.A.,
12   to SA [          ] Frederick RA, on 7/18/88.

13           Enclosed for Baltimore is the original and one
     copy of an FD-302 reflecting investigation conducted at
14   Marathon, Florida.

15           In re telcal it was decided that the FD-302's
     requested in re airtel from Homestead, Florida had been
16   provided to Baltimore in a previous communication, and that
     the Homestead lead could therefore be disregarded.

17
             As no further investigation remains outstanding in
18   the Miami Division, this matter is considered RUC.

19   (2)- Baltimore (Enc. 2)
     1 - Miami
20   DSP:pcp
     (3)

21                                     1*          26B-56765-85
```

Approved: _____    Transmitted _____
                                    (Number)        (Time)

SEARCHED ___ INDEXED ___
SERIALIZED ___ FILED ___
                  JUL 2 5 1988
              FBI   BALTIMORE

b6 -1
b7C -1

SINGH-45

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__15__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
SINGH 46 through SINGH 60

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

-DUPE-

DIRECTOR, FBI                                      8/10/88

SAC, BALTIMORE (26B-56765) (SQ 10) (P)

"CHANGED"
ROGER SCOT SNYDER;
SATNAM SINGH, aka
Singh DaSilva
ITSA, PM, NARCOTICS MATTERS
OO:  BALTIMORE

        Title marked changed to add true name of subject
as "SATNAM SINGH" as determined through Interpol.

        Enclosed for WFO is one copy of an Interpol communication
dated 9 May 88 and two copies of FD-302 of [          ]          b6   -4
                                                                 b7C  -4
        The enclosed communication confirms data previously
telephonically furnished by WMFO to Baltimore regarding the
true name of the subject in WMFO's custody.

        On 8/4/88, AUSA PETER SEMEL advised he will file    b6   -4
an information charging [          ] with ITSA after conferring with  b7C  -4
AUSA MARK DUBESTOR in Washington, D. C.

LEAD:

    BALTIMORE

        AT FREDERICK, MARYLAND

        Will follow and report prosecution.

2 - Bureau
2 - WMFO (26B-48866)(C-4)(Enc. 3)
2 - Baltimore
JED:jag
    (6)
                                                    b6   -1
                                                    b6   -1
                                            90
                            26B-56765
                        SEARCHED
                        INDEXED
                        SERIALIZED
                        FILED

                    SINGH-61

# Memorandum



-DUPE-

To : SAC, BALTIMORE (26-56765) (SQ 10) (P)    Date 8/10/88

From : SA [          ]    b6 -1
                          b7C -1

Subject : ROGER SCOT SNYDER
          ET AL
          ITSA, NARCOTICS MATTERS
          OO: BALTIMORE

        In June, 1988, SATNAM SINGH, DOB 4/26/60, was indicted
in Washington, D. C., on a false passport charge and narcotics
conspiracy charge. This is the true name of the subject initially
believed to be SINGH DA SILVA. SINGH will also be charged
by ATF with a handgun violation that carries a mandatory five
year sentence for possessing a pistol as an illegal alien. SINGH
is an illegal alien from Singapore. See serial 81.

        On 8/4/88, AUSA PETER SEMEL, Baltimore, Maryland,
advised that he will charge [          ] with the ITSA violation    b6 -4
in the form of an information. The filing of the information    b7C -4
will take place after a conference with the AUSAs in Baltimore
and Washington, D. C., as [                    ] will eventually plead
guilty under a Rule 20 plea in Washington, D. C.

LEAD:

    BALTIMORE

        Will follow and report the filing of the information
and the Rule 20 plea.

2 - Baltimore
JED:jag
   (2)



26B-56765-91

SEARCHED____ INDEXED____
SERIALIZED____ FILED____

AUG 11 1988

SINGH-62

b6 -1
b7C -1

FD-350 (Rev. 5-8-81)

(Indicate page, name of
newspaper, city and state.)

The Evening Sun P56
Baltimore, Maryland

Date: 8/9/88
Edition:

Title:

Character:
  or
Classification:
Submitting Office:

Indexing:

(Mount Clipping in Space Below)

## Bank robbery suspect sought



Howard County police are asking the public to help them find a man believed to have robbed four banks during the past year.

The suspect is a black man, 25 to 30 years old, about 6 feet tall, with a thin build and a medium to dark complexion.

In the most recent robbery, which occurred June 9, a man entered the Concord Savings Bank in Ellicott City, ordered the teller to give him money and fled with an undisclosed amount of cash.

The same man is believed to have committed three Columbia bank robberies. The Mellon Bank in the Wilde Lake Village Center was robbed Aug. 7, 1987, and again Jan. 29, 1988, and the Bank of Baltimore in the Long Reach Village Center was held up Dec. 31, 1987.

The robber has never displayed a weapon, but has insinuated he had one, police said. In each case, the man has brought a bag to hold the money and has acted alone. Police also noted that the banks are situated in a manner that could allow the robber to park nearby and approach the bank on foot. A getaway car has never been spotted.

Metro Crime Stoppers of Baltimore will pay a reward of up to $1,000 for information leading to the man's arrest and indictment. Callers do not have to give their names. Anyone with information can call 276-8888.



263-56265-92

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

AUG 11 1988

FBI — BALTIMORE

SINGH - 63

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___/___ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

☑ The following number is to be used for reference regarding these pages:

SINGH - 64

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-36 (Rev. 8-29-85)

●      ＦBI      ●

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Date   9/9/88

TO:      DIRECTOR, FBI
           (ATTN: QUESTION DOCUMENT UNIT, LABORATORY
           DIVISION)

FROM:     SAC, WASHINGTON METROPOLITAN FIELD OFFICE
           (26B-48866) (C-4) (P)

ROGER SCOT SNYDER;
ET AL;
ITSP;
NARCOTICS MATTER;
PM;
OO:BALTIMORE

        Enclosed for the Bureau are two hand written notes
both starting "W-Friday 1-2" and also enclosed are
handwriting exemplars obtained from SATNAM SINGH and two
copies of 302 on the collection of the exemplars.

        Enclosed for Baltimore Division is the original
and one copy of the 302 on the handwriten exemplars.

        For the information of the Laboratory Division
SINGH is a defendant in a District Court of the District of
Columbia Matter captioned The United States of America
Verses SATNAM SINGH, case #88-0237.  This matter is set for
trial on September 22, 1988.

        OO in this matter is Baltimore Division.  SINGH is
currently incarcerated in the District of Columbia Jail and
in pursuant to a Court order issued on 9/7/88 WMFO obtained
handwriting exemplars from SINGH.  These are the enclosed
items referred to above.  In addition, the enclosures
include two handwriten notes that are considered important
in the pending prosecution of SINGH.

4 - Bureau (Question Documents Unit)(Encl. 4)
2 - Baltimore (26B-56765 SQ-10)(Encl. 2)
2 - WMFO

DJK:hll
(8)

26B-56765

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

Approved: _____ Transmitted _____ Per SEP 1 4 1988
                    (Number)   (Time)

b6 -1
b7C -1
SINGH-65

WMFO 26B-48866

SA [             ] of the Frederick RA, Baltimore
Division is the case agent in this matter.  Questions
regarding this matter should be referred to [     ]
Furthermore [     ] should be telephonically advised as
expeditiously as possible when handwriting examination has
been completed.

b6 -1
b7C -1

### REQUEST TO THE BUREAU

Conduct handwriting examination to determine if
exemplars submitted were produced by the same individual as
produced the two questioned notes.  Report results
telephonically to case agent in Frederick RA as
expeditiously as possible.  Retain the enclosures until
picked-up by the case agen.  Note trial date of 9/22/88.

2*

SINGH-66

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

NOTICE OF __ARRAIGNMENT GUILTY PLEA__ _____

PMS:mew
(Transportation of
Stolen Aircraft) **United States District Court**

**FOR THE**

DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

No. S-88-0303

ROGER SCOTT SNYDER

**TAKE NOTICE** that the above-entitled case has been set for Arraignment Guilty at Plea 9:00 a.m. , on Thursday, Sept. 22 , 1988 , at the U. S. Courthouse, 101 W. Lombard Street, Baltimore, Maryland, before the Honorable Frederic N. Smalkin,

AND THE PRESENCE OF THE DEFENDANT IS ORDERED.

**Date** September 13 , 1988

JOSEPH A. HAAS
........................................................
*Clerk.*

**By** ........................................................
*Deputy Clerk.*

\* PLEASE CHECK THE COURTROOM CALENDAR ON THE 1ST FLOOR AS TO THE COURTROOM NUMBER. \*

. **To**   Roger Scott Snyder
2302 Lee Highway
Arlington, VA 22201

Seymour Glanzer, Esquire
John Kotelly, Esquire
Dickstein, Shapiro & Morin
2101 L Street, N. W.
Washington, D. C. 20037

ccs:   Judge Smalkin
~~Magistrate~~
U. S. Marshal
U. S. Probation
Pretrial Services
Mahoney
Agency: FBI/Duffy/Frederick
File   26B-56765-96

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

SEP 1 6 1988

FBI — BALTIMORE

SINGH-67

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS



**REPORT
of the**



## FEDERAL BUREAU OF INVESTIGATION
## WASHINGTON, D. C. 20535

**To:** SAC, Washington Metropolitan Field          September 19, 1988
(26B-48866) (C-4)

FBI FILE NO.    26-453872

LAB. NO.    80909068 D WN

**Re:** ROGER SCOT SNYDER;
ET AL;
ITSP;
NARCOTICS MATTER;
PM

OO:  Baltimore

Examination requested by:          Addressee

Reference:          Communication dated September 9, 1988

Examination requested:          Document

Specimens received          September 9, 1988

Specimens:

Q48-Q49    Two handwritten/hand-printed notes beginning
"W-Friday 1-2..."

K1    Twenty-seven exemplars bearing the known hand printing
of SATNAM SINGH

Result of examination:

The majority of the hand printing on Q48 and
Q49 may have been written by SATNAM SINGH, writer of K1
specimens.  Although this is not a positive identification,
there are some handwriting features in agreement between
the questioned and known writing which indicate the possibility
that SINGH wrote the questioned writing.

A qualified opinion is necessary regarding the
questioned hand printing on Q48 and Q49 because of features
observed in the questioned hand printing which were not
accounted for in the available known writing.

Enclosures (3)
2 - Baltimore (26B-56765) (SQ 10)
Page 1                                    (over)

SINGH-68

FBI/DOJ

No conclusion was reached whether SINGH wrote the handwritten entries on Q48 and Q49.  An inconclusive result is necessary because the available known writing is not sufficiently comparable with the handwritten entries.

Specimens Q48, Q49 and K1 have been photographed and are being returned herewith.

Page 2
80909068 D WN

SINGH-69

FD-515 (Rev. 2-24-86)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/85)
(Submit within 30 days from date of accomplishment)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**TO:**  DIRECTOR, FBI

Date __9/19/88__

**FROM:**  SAC, BALTIMORE
**SUBJECT:**
ROGER SCOT SNYDER, ET AL
ITSA; NARCOTICS
OO: BA

Bureau File Number
26B-56765
Field Office File Number
2440
Squad or RA Number

Agent's Social Security No.

b6  -1
b7C -1

☐ X If a joint operation with:

☐ X (Identify of other agency)

☐ X If case involves
corruption of a public
official (Federal, State or
Local).

**Investigative Assistance or Technique Used**

Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed?  ☒ No  ☐ Yes - If Yes, note each used as follows:
1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally  4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UC Other | |
| 5. ELSUR - FISC | | 12. Lab Div Exams | | 19. Surveil. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR - Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

| A. Preliminary Judicial Process (Number of subjects) | Complaints | Informations | Indictments | D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP) | | | | (Explain valuation in remarks) |
|---|---|---|---|---|---|---|---|---|

| | | 1 | | Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |
|---|---|---|---|---|---|---|---|---|
| | | | | | $ | $ | | $ |

**B. Arrests, Locates, Summonses or Subpoenas Served (No. of Subj.)**

| | Subject Priority* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | A | B | C | | | | | |
| FBI Arrests - | | | | Subpoenas Served | $ | $ | | $ |
| FBI Locates - | | | | Criminal Summons | $ | $ | | $ |
| Local Arrests - | | | | Local Crim. Summons | $ | $ | | $ |
| FBI Subj. Resisted _____ ; Armed _____ | | | | | $ | $ | | $ |

**C. Release of Hostages or Children Located:** (Number of Hostages or Children Located)

Hostages Held By Terrorists _____ ; All Other Hostage Situations _____

Missing or Kidnaped Children Located _____

**E. Civil Matters**

Amount of Suit

Settlement or Award

| | Government Defendant | Government Plaintiff |
|---|---|---|
| | $ | $ |
| | $ | $ |

Enter AFA Payment Here

**F. Final Judicial Process:**  Judicial District

| | District | State | Conviction or Pretrial Div. Date | Sentence Date | No. of Subjects | Acquitted | Dismissed |
|---|---|---|---|---|---|---|---|

**Subject 1**  Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs \| Mos | Suspended Yrs \| Mos | Probation Yrs \| Mos | | | | |
| ☐ Misde-meanor | | | | | | | | | | |
| ☐ Plea | Total Fines $ | Add consecutive sentences together. | | | | | | | | |
| ☐ Trial | Enter longest single concurrent sentence. | | | | | | | | | |
| ☐ Pretrial Diversion | Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | | | |

**Subject 3**  Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs \| Mos | Suspended Yrs \| Mos | Probation Yrs \| Mos | | | | |
| ☐ Misde-meanor | | | | | | | | | | |
| ☐ Plea | Total Fines $ | Add consecutive sentences together. | | | | | | | | |
| ☐ Trial | Enter longest single concurrent sentence. | | | | | | | | | |
| ☐ Pretrial Diversion | Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | | | |

**Subject 2**  Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs \| Mos | Suspended Yrs \| Mos | Probation Yrs \| Mos | | | | |
| ☐ Misde-meanor | | | | | | | | | | |
| ☐ Plea | Total Fines $ | Add consecutive sentences together. | | | | | | | | |
| ☐ Trial | Enter longest single concurrent sentence. | | | | | | | | | |
| ☐ Pretrial Diversion | Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | | | |

**Subject 4**  Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs \| Mos | Suspended Yrs \| Mos | Probation Yrs \| Mos | | | | |
| ☐ Misde-meanor | | | | | | | | | | |
| ☐ Plea | Total Fines $ | Add consecutive sentences together. | | | | | | | | |
| ☐ Trial | Enter longest single concurrent sentence. | | | | | | | | | |
| ☐ Pretrial Diversion | Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | | | |

b6  -4
b7C -4

**Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for (R-84) for each subject.**

**Remarks:**  (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

On 9/22/88, an information was filed in USDC, Baltimore, charging SNYDER
with violation of Title 18, Section 2312, USC.  SNYDER entered a guilty plea
immediately thereafter.  SNYDER is a white male, DOB: _____ , SSAN _____

No OC involvement.

b6  -1
b7C -1

26B-56765-98

Credit stat to

2-Bureau
(4)-Field Office  Baltimore (1-66-27 Sub A)   JED/slk (4)
* See codes on reverse side.

SINGH-70

SEARCHED _____
INDEXED _____
SERIALIZED _____
FILED _____

b6  -1
b7C -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

TEXTY DOES NOT EXIST
CANNOT FIND THE FORM

INBOX.1 (#1940)

TO: BA @ EMH2

FROM: HQTX @ EMH1

SUBJECT: 265/0205 ROUTINE

DATE: 22 SEP 88 20:49:08 GMT

CC:

TEXT:

VZCZCHQO205

RR BA

DE HQ #0205 2661757

ZNY EEEEE

R 211958Z SEP 88

FM DIRECTOR FBI

TO FBI BALTIMORE   ROUTINE

BT

UNCLAS E F T O

SATNAM SINGH, AKA JOHN MARSHALL GUATTERY; INTERPOL-FPC; OO:
FBIHQ

       REFERENCE FBIHQ AIRTEL DATED 6/30/88.

       TO DATE, NO RESPONSE HAS BEEN RECEIVED AT FBIHQ REGARDING

LEADS SET FORTH BY INTERPOL FOR THE BALTIMORE OFFICE IN THE

ABOVE REFERENCED COMMUNICATION.

       BALTIMORE IS REQUESTED TO SUBMIT RESULTS OF INVESTIGATION

TO THE ATTENTION OF THE INTERPOL/FOREIGN POLICE COOPERATION

UNIT, ROOM 7458 BY CLOSE OF BUSINESS 10/21/88.

BT

#0205

INDICES SEARCH

☐ GENERAL          ☑ FOIMS

☐ NEGATIVE         ☐ NEGATIVE

☐ SEE ATTACHED S.S.  ☐ SEE ATTACHED S.S.

☐ SEARCH BY        ☐ SEARCH BY ✗

ORIGINAL

SINGH-71

SEP 22 1988

b6 -1
b7C -1

7-161 (Rev. 4-30-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**TRANSMIT VIA:** AIRTEL

**CLASSIFICATION:** UNCLAS

**DATE:** 9/22/88

**FROM:** Director, FBI

**TO:** SAC, Baltimore (26B-56765)

ROGER SCOT SNYDER; UNSUB, aka          AIRCRAFT SERIAL NUMBER 32R8213016,
Antonio Michael DeSilva, aka          ENGINE SERIAL NUMBER L21585-48A,
Singh DeSilva, John Marshall          TAIL NUMBER N8006Q, FROM FREDERICK,
Guattery; THEFT OF PIPER              MARYLAND AIRPORT, 3/18-19/88;
SARATOGA SINGLE ENGINEER              ITSA, GUN CONTROL ACT OF 1968,
AIRCRAFT,                             ITSP, PASSPORT MATTER, FPC - GCM;

Re ____ ur airtel dated 4/27/88. _____

There is (are) being forwarded to

b6 -1
b7C -1

by _ picked up by SA [_____] WMFO

the following _ 1 - 30X40 chart with overlay. _____

prepared by Special Projects Section, Laboratory Division, re captioned matter.

The following action should be taken by your office:

**TRIAL EXHIBITS OR OTHER VISUAL AIDS**

☒ Check the above items against submitted work papers or roughs.
☒ Advise FBIHQ, attention Special Projects Section, Laboratory Division, (within ninety-
   days), re the use and effectiveness of these items, including all pertinent comments.

**ARTIST'S CONCEPTIONS OR RETOUCHED PHOTOGRAPHS**

☐ Have witness(es) view item(s) for evaluation.
☐ If modification is necessary, submit additional information and any pertinent comments
   of witness(es) to FBIHQ, Special Projects Section, Laboratory Division.
☐ Advise (within ninety-days) re the use and effectiveness of the above items.  Upon
   apprehension of subject(s), submit arrest photographs.

1 - Package

26B-56765-100

SEARCHED ____ INDEXED ____
SERIALIZED ____ FILED ____

b6 -1
b7C -1    SEP 28 1988

TIME ____

SINGH-72

Enc.

FBI/DOJ

FD-36 (Rev. 8-29-85)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS  9/2 7/88 |
| | | Date |

1  TO:        DIRECTOR, FBI
           ATTN: INTERPOL/FOREIGN POLICE COOPERATION, ROOM 7458)
2  FROM:      SAC, BALTIMORE (26B-56765)(SQ.10)(P)

3  SUBJECT:   "CHANGED"
           ROGER SCOT SNYDER;
4          STANAM SINGH, aka
           Singh De Silva
5          JOHN MARSHALL GUATTERY
           ITSA, NARCOTICS, PF, INTERPOL-FPC
6          OO: BA

7          Title marked "CHANGED" to add true name of subject
   "Satnam Singh" to title.

8          Re Bureau tel to BA, 9/22/88.

9
10         On 9/22/88, SNYDER pled guilty in U.S. District
   Court, Baltimore, Maryland, to violation of Title 18,
11 Section 2312, USC, for transporting the stolen aircraft from
   Frederick, Maryland to Aruba.

12         On 9/22/88, AUSA MARK DUBESTOR, WDC, believes his
   trial of SINGH will begin on 9/29/88, in that jurisdiction
13 on a narcotics smuggling charge and Passport fraud.  The
   matter involving SINGH has been handled by WMFO since 5/88.
14 They have indicted him on the above charges and have pursued
   prosecution.  They have been aware of SINGH'S true name
15 since April 1988, when he admitted it to Pretrial Services
   in Miami, Florida.
16
17         Baltimore did not receive a Bureau airtel dated
   6/20/88, but did receive an airtel dated 6/29/88.

18 2- Bureau
19 2- WMFO (26B-48866)(C-4)
   2- Baltimore
   JED/slk
20
21

Approved: _____   Transmitted _____   Per _____

                        (Number)    (Time)                b6 -1
                                                          b7C -1

SINGH-73                26B-36765- 10     0 - 193-749

                        SEARCHED
                        INDEXED
                        SERIALIZED
                        FILED

By airtel dated 8/10/88, Baltimore advised the Bureau that SNYDER would testify against SINGH in USDC, WDC. Baltimore also furnished WMFO with all pertinent FD 302s including the 6/29/88 Bureau airtel and the Interpol enclosures.

WMFO should apprise the Bureau, Interpol/Foreign Police Cooperation Unit, of the outcome of the SINGH prosecution. Additionally, Baltimore found no identifiable information in its indices with SINGH other than the instant case.

LEADS:

WMFO

Keep Bureau apprised of developments concerning the SINGH prosecution.

BALTIMORE DIVISION

AT FREDERICK, MD.

Report sentencing of SNYDER.

2*

SINGH-74

FORMS.TEXT HAS 1 DOCUMENT

INBOX.4 (#1001)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

TEXT:
VZCZCHQ00208/280

ORIGINAL

PP HQ BA

DE BRI #0237 2802133

ZNR UUUUU

P 062134Z OCT 88

FM LEGAT, BRIDGETOWN (26B-1) (P)

TO DIRECTOR, FBI/PRIORITY/

FBI BALTIMORE/PRIORITY/

BT

UNCLAS

CITE: //5500//

INDICES SEARCH

☐ ORIGINAL    ☑ FOIMS

☐ ░░░░░    ☐ ░░░░░

☐ ░░░░░ ░.░.    ☐ ░░ ░░░░░ S.░.

☐ ░░░░░░    ☐ SEARCH BY

SUBJECT:  ROGER SCOT SNYDER; ET AL; ITSA, GUN CONTROL ACT OF

1988, ITSP, PASSPORT NUMBER, FPC - GCM; OO:  BALTIMORE

   RE AIRTEL TO DIRECTOR, ET AL DATED APRIL 27, 1988.

   LEGAT UNDERSTANDS THAT ARUBA POLICE FORCE OFFICER(S) HAVE

RECENTLY TESTIFIED IN THE U.S. IN THIS MATTER.  BALTIMORE IS

REQUESTED TO ADVISE STATUS OF CASE AND IF ANY ADDITIONAL

INVESTIGATION IS ANTICIPATED AT ARUBA.

BT

#0208

26-56765-102



SEARCHED ___ INDEXED ___
SERIALIZED ☑ FILED ___

OCT 07 1988

NNNN

b6 -1
b7C -1

--> 

SINGH-75

FD-36 (Rev. 8-29-85)

**FBI**

**TRANSMIT VIA:**
☐ Teletype
☐ Facsimile
☒ AIRTEL

**PRECEDENCE:**
☐ Immediate
☐ Priority
☐ Routine

**CLASSIFICATION:**
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Date  10/18/88

1   TO     : DIRECTOR, FBI
           (Attn:  INTD)
2
    FROM   : SAC, BALTIMORE (26B-56765) (SQ. 10) -P-
3
    SUBJECT: ROGER SCOT SNYDER;
4            SATNAM SINGH, aka
             Singh DeSilva,
5            John Marshall Guattery;
             ITSA; NARCOTICS MATTER; PASSPORT FRAUD;
6            OO:  BALTIMORE
7
             Re:  Legat, Bridgetown teletype to the Bureau and          b6 -4
8    Baltimore, dated 10/6/88.                                          b7C -4
9            On 9/22/88 [        ]pled guilty to one count of ITSA in
    U. S. District Court, Baltimore, Maryland.  He agreed to testify
10   against [      ] who was being tried in U. S. District Court,
    Washington, D.C.  SINGH was charged with a passport violation and  b6 -6
11   a narcotics violation.                                            b7C -6
12           On 9/29/88 [                                          ]
    and [                                  ] traveled to the United States
13   to testify in SINGH's trial.  They returned on 10/4/88.
14           On 10/13/88, it was determined that SINGH was acquitted   b6 -4
    on the narcotics charge but convicted on the passport violation.
15   A sentencing date has yet to be set.  [      ] will be sentenced on  b7C -4
    1/5/89.
16
             Legat, Bridgetown should note this case is being jointly
17   pursued by both Baltimore and WMFO.
18
19   6 - Bureau
         (1 - Liaison Unit)
20       (1 - Legat, Bridgetown) (26-1)
         (1 - Interpol/Foreign Police Cooperation Unit, Room 7458)
21   2 - WMFO
     2 - Baltimore
     JED:ml
     (10)

26-57 56765-103

Approved: _____    Transmitted _____    Per _____
                       (Number)  SEARCHED (Time)
                                  INDEXED
                                  SERIALIZED                           b6 -1
          SINGH-76                FILED                                b7C -1

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_77_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH  77  through  SINGH  153_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

FD-515 (Rev. 6-6-85)
**ACCOMPLISHMENT REPORT**
(Effective 10:1-85)
(Submit within 30 days from date of accomplishment)

TO:    **DIRECTOR, FBI**

| Bureau File Number | Date 12/8/88 |
|---|---|
| 26B-48866 | |

UNIVERSAL CASE
FILE NUMBER

FROM    SAC, WMFO (C-4)

Field Office File Number
C-4

SUBJECT:
ROGER SCOTT SNYDER;
SATNAM SINGH, AKA;
ITSA, NARCOTICS,
PF, INTERPOL-
FOREIGN POLICE
COOPERATION

Squad or RA Number

Agent's Social Security No.

☐ X if a joint operation with:

b6 -1
b7C -1

(identity of other agency)
X if case involves
corruption of a public
official (Federal, State or
Local).

Were Investigative Assistance or Technique Used?
Was any assistance or techniques listed below used in connection with accomplishment being claimed? ☒ No ☐ Yes - If Yes, rate each used as follows:
1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally    4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 16. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UC Other | |
| 5. ELSUR-FISC | | 12. Lab Div Exams | | 19. Surveil. Sqd (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR-Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

| A. Preliminary Judicial Process: (Number of subjects) | Complaints | Informations | Indictments | D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP) | | | | (Explain valuation in remarks) |
|---|---|---|---|---|---|---|---|---|
| | | | | Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |
| B. Arrests, Locates, Summonses or Subpoenas Served (No. of Subj.) | | | | | $ | $ | | $ |
| Subject Priority* | A | B | C | Subpoenas Served | $ | $ | | $ |
| FBI Arrests | | | | Criminal Summons | $ | $ | | $ |
| FBI Locates | | | | | | | | |
| Local Arrests | | | | Local Crim. Summons | $ | $ | | $ |
| FBI Subj. Resisted ___ ; Armed ___ | | | | | | | | |

| C. Release of Hostages or Children Located: (Number of Hostages or Children Located) | E. Civil Matters | Government Defendant | Government Plaintiff |
|---|---|---|---|
| Hostages Held By Terrorists ___ ; All Other Hostage Situations ___ | Amount of Suit | $ | $ |
| Missing or Kidnaped Children Located ___ | Settlement or Award | $ | Enter AFA Payment Here |

| F. Final Judicial Process: | Judicial District DC | | Conviction or Pretrial Div. Date | Sentence Date 12/5/88 | No. of Subjects | Acquitted | Dismissed |
|---|---|---|---|---|---|---|---|
| | District | State | | | | | |

| Subject 1 | Subject Description Code* — 3B | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ Felony | Conviction | | | Combined Sentence | | | |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | |
| ☐ Misdemeanor | 18 | 1542 | 1 | — / — | 3 / — | 3 / — | |
| ☐ Plea | Total Fines $ 2,000 | | | | | | |
| ☐ Trial | Add consecutive sentences together. | | | | | | |
| ☐ Pretrial Diversion | Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs -8 yrs. susp. = 2 yrs. In-Jail. | | | | | | |

| Subject 3 | Subject Description Code* — | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Felony | Conviction | | | Combined Sentence | | | |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | |
| ☐ Misdemeanor | | | | | | | |
| ☐ Plea | Total Fines $ | | | | | | |
| ☐ Trial | Add consecutive sentences together. | | | | | | |
| ☐ Pretrial Diversion | Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs -8 yrs. susp. = 2 yrs. In-Jail. | | | | | | |

| Subject 2 | Subject Description Code* — | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Felony | Conviction | | | Combined Sentence | | | |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | |
| ☐ Misdemeanor | | | | | | | |
| ☐ Plea | Total Fines $ | | | | | | |
| ☐ Trial | Add consecutive sentences together. | | | | | | |
| ☐ Pretrial Diversion | Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs -8 yrs. susp. = 2 yrs. In-Jail. | | | | | | |

| Subject 4 | Subject Description Code* — | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Felony | Conviction | | | Combined Sentence | | | |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | |
| ☐ Misdemeanor | | | | | | | |
| ☐ Plea | Total Fines $ | | | | | | |
| ☐ Trial | Add consecutive sentences together. | | | | | | |
| ☐ Pretrial Diversion | Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs -8 yrs. susp. = 2 yrs. In-Jail. | | | | | | |

Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for (R-84) for each subject.

Remarks:    (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

On 12/5/88, SATNAM (NMN) SINGH, DOB: 4/26/60, Male, POB: Singapore,
INS No. A23299828 was sentenced to three years (suspended) and three years
probation.  SINGH was convicted of Title 18 USC 1542, False Statements in
Application and Use of a Passport.  He was acquitted of Conspiracy to
Inport Cocaine, Title 21 USC 963.  SINGH was retained in custody on an
INS detainer as an illegal alien.

RECEIVED IN INDICES    12/15/
RECEIVED IN MATCHING
RECEIVED IN SCREENING

b6 -1
b7C -1

2. Bureau
2. Field Office
* See codes on reverse side.

1 - Baltimore (26B-56765)

SINGH-154

DJK:rlw

26-56765  105

AIRTEL

12/09/88

TO:    DIRECTOR, FBI
       (ATTN:  IDENTIFICATION DIVISION)

FROM:  SAC, WMFO (26B-48866)(RUC)(C-4)

UNIVERSAL CASE
FILE NUMBER

ROGER SCOT SNYDER;
SATNAM SINGH, AKA;
ITSA;
NARCOTICS MATTER;
PASSPORT FRAUD;
OO: BALTIMORE

        Enclosed for the Bureau are two FD-429 fingerprint
cards and one R-84 final disposition report regarding the
subject SINGH.

        Enclosed for Baltimore are photographs of the
subject SINGH.

        For the information of the Bureau and Baltimore,
on 10/7/88, the subject SINGH was convicted of violation of
Title 18 USC 1542, False Statements in Application and Use
of a Passport.  He was acquitted of charges relating to
Title 21 USC 963, Conspiracy to Import Cocaine.  Sentencing
was held on 12/5/88, and Judge J. PENN sentenced the subject
to three years, suspended, and three years probation. Note
was made that the subject has been in custody since March,
1988.  It is also noted that Immigration & Naturalization
Services has a detainer for the subject and he was not
released from custody at sentencing.  The judge commented
about the subject's aquittal of the cocaine conspiracy
charge and implied that he felt the jury had been generous
in its presumption of innocence.


4-Bureau
   (2-Identification Division)
   (1-Intelligence Division Liaison Unit)
   (1-Legat Bridgetown)
 2-Baltimore (26B-56765)(Sq. 10)
 1-WMFO

DJK:tlm
(7)

26B-56765-106
26B-48866

DEC 15 1988

RECEIVED IN INDICES _____
RECEIVED IN MATCHING _____
RECEIVED IN SCREENING _____

SINGH-155

b6 -1
b7C -1

WMFO 26B-48866

As no further investigation remains outstanding WMFO
considers this matter RUC'D.

2*

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

NOTICE OF __SENTENCING__

PMS:mew

# United States District Court
### FOR THE

DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

No. S-88-0303

ROGER SCOTT SNYDER



**TAKE NOTICE** that the above-entitled case has been set for Sentencing at

9:00 a.m. , on Thursday, Jan. 5 , 19 89 , at the U. S. Courthouse,

101 W. Lombard Street, Baltimore, Maryland, before the Honorable Frederic N. Smalkin,

AND THE PRESENCE OF THE DEFENDANT IS ORDERED.

**Date** December 27 , 19 88                JOSEPH A. HAAS
                                                                        *Clerk.*

                    **By** .....................................................
                                                                        *Deputy Clerk.*

* PLEASE CHECK THE COURTROOM CALENDAR ON THE 1ST FLOOR AS TO THE COURTROOM NUMBER. *

. **To**  Roger Scott Snyder
        2302 Lee Highway
        Arlington, VA 22201

        Seymour Glanzer, Esquire           ccs:  Judge Smalkin
        John Kotelly, Esquire                    XXXXXXXXXX
        Dickstein, Shapiro & Morin               U. S. Marshal
        2101 L Street, N. W.                     U. S. Probation   b6 -1,6
        Washington, D. C. 20037                  Pretrial Services b7C -1,6
                                                 Agency: FBI
                                                 File

SINGH-157

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Date ___1/10/89___

TO:        DIRECTOR, FBI

FROM:      SAC, BALTIMORE (26B-BA-56765) (SQ. 10) (C)

SUBJECT:   ROGER SCOT SNYDER;
           Et Al;
           ITSA;
           NARCOTICS MATTER;
           OO: Baltimore

        For the information of Legat, Barbados, on 1/5/89,
SNYDER was sentenced in U.S. District Court, Baltimore,
Maryland. He received a 5 month sentence to the custody of
the Attorney General, 2 years probation upon completion of
that sentence and ordered not to fly aircraft.
Additionally, he was ordered to pay a total of $23,350.00 in
restitution to the aircraft owner and insurance carrier.

        No further investigation is being conducted.

5-Bureau
  (1- Liaison Unit)
  (2- Legat, Barbados) (26-1)
1-WMFO
(1)Baltimore
JED:jp
  (7)

26B-56765-108

Approved: _____    Transmitted _____    Per _____
                                (Number)    (Time)

SEARCHED_____
INDEXED_____
SERIALIZED_____
FILED 1987 0 - 193-749

b6 -1,4
b7C -1,4

SINGH-158

No 513 in file re conv to Scot Ork
Please complete ASAP—

FD-515 (Rev. 2-24-86)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/86)
(Submit within 30 days from date of accomplishment)

TO:    **DIRECTOR, FBI**

Date 1/12/89

| Bureau File Number |
| --- |
| 26B-56765 |
| Field Office File Number |
| 2440 |
| Squad or RA Number |

FROM:    **SAC, Baltimore**
SUBJECT:
ROGER SCOT SNYDER:
Et Al;
ITSA: NARCOTICS MATTER;
OO: Baltimore

b6 -1
b7C -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Agent's Social Security No.
☐ X if a joint operation with:

(Identify of other agency)
X if case involves
corruption or a public
official (Federal, State or
Local).

**Investigative Assistance or Technique Used**
Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed? ☒ Yes ☐ No - If Yes, rate each used as follows:
1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally    4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone - Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group B | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UC Other | |
| 5. ELSUR - FISC | | 12. Lab Div Exams | | 19. Survel. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR - Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

| A. Preliminary Judicial Process (Number of subjects) | Complaints | Informations | Indictments |
| --- | --- | --- | --- |

| D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP) | | | | (Explain valuation in remarks) |
| --- | --- | --- | --- | --- |
| Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |

**B. Arrests, Locates, Summonses or Subpoenas Served (No. of Subj.)**

| Subject Priority* | | | | | |
| --- | --- | --- | --- | --- | --- |
| | A | B | C | | |
| FBI Arrests - | | | | Subpoenas Served | $ |
| FBI Locates - | | | | Criminal Summons | $ |
| Local Arrests - | | | | Local Crim. Summons | $ |
| FBI Subj. Restated ____ ; Armed ____ | | | | | $ |

| $ | $ 23,350.00 | $ |
| --- | --- | --- |
| $ | | $ |
| $ | | $ |
| $ | $ | $ |

C. Release of Hostages or Children Located: (Number of Hostages or Children Located)

Hostages Held By Terrorists ____ ; All Other Hostage Situations ____

Missing or Kidnaped Children Located ____

| E. Civil Matters | | Government Defendant | Government Plaintiff |
| --- | --- | --- | --- |
| Amount of Suit | | $ | $ |
| Settlement or Award | | $ | $ |

Enter AFA Payment Here

| F. Final Judicial Process: | Judicial District | MD | 9/22/88 | 1/5/89 | No. of Subjects | |
| --- | --- | --- | --- | --- | --- | --- |
| | | District    State | Conviction or Pretrial Div. Date | Sentence Date | Acquitted | Dismissed |

| Subject 1 | Subject Description Code* — 8A | | Subject 3 | Subject Description Code* — | |
| --- | --- | --- | --- | --- | --- |

| ☒ Felony | Conviction | | | Combined Sentence | | | | ☐ Felony | Conviction | | | Combined Sentence | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | | | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos |
| ☐ Misde-meanor | 18 | 2312 | 1 | 5 | | 2 | | ☐ Misde-meanor | | | | | | |
| ☒ Plea | Total Fines $ | | | | | | | ☐ Plea | Total Fines $ | | | | | |
| ☐ Trial | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs -8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | ☐ Trial | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | |
| ☐ Pretrial Diversion | | | | | | | | ☐ Pretrial Diversion | | | | | | |

| Subject 2 | Subject Description Code* — | | Subject 4 | Subject Description Code* — | |
| --- | --- | --- | --- | --- | --- |

| ☐ Felony | Conviction | | | Combined Sentence | | | | ☐ Felony | Conviction | | | Combined Sentence | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos | | | Title | Section | Counts | In-Jail Yrs / Mos | Suspended Yrs / Mos | Probation Yrs / Mos |
| ☐ Misde-meanor | | | | | | | | ☐ Misde-meanor | | | | | | |
| ☐ Plea | Total Fines $ | | | | | | | ☐ Plea | Total Fines $ | | | | | |
| ☐ Trial | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | | | ☐ Trial | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail. | | | | | |
| ☐ Pretrial Diversion | | | | | | | | ☐ Pretrial Diversion | | | | | | |

**Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for (R-84) for each subject.**

Remarks:    (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

On 9/22/88, SNYDER pled guilty to transporting a stolen aircraft from Frederick, MD
to Aruba.  On 1/5/89, he was sentenced to 5 months custody of Attorney General and two    b6 -4
years probation.  Additionally, he was ordered to pay restitution to aircraft owner and    b7C -
insurance company which totaled $23,350.00.  SNYDER is a white male, DOB [____] at
Buffalo, New York, SSAN [____]    No known OC involvement.

SINGH-159

SEARCH _____

INDEXED _____

b6 -1
b7C -1 SERIALIZED _____

FILED _____

26B-56765-109

2 - Bureau
2 - Field Office Baltimore 1-66-27 Sub A    b7C -1
* See codes on reverse side.

JFD:jp    Credit Stat to SA _____

b6 -1
b7C -1

FD-350 (Rev. 5-8-81)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

(Mount Clipping in Space Below)

(Indicate page, name of
newspaper, city and state.)

Frederick News Post
Frederick, MD

Date: 1-9-89
Edition:

Title: Roger Scot Snyder
et al
ITSA, NARCOTICS

Character:
or
Classification: 26B-56765
Submitting Office: Baltimore

Indexing:

# Pilot gets jail for stealing plane confiscated by police in Aruba

**By Kelly Gilbert**
Evening Sun Staff

Pilot Roger S. Snyder, of Arlington, Va., stole a plane in Frederick last March, altered its serial number and took off to fly an alleged Washington drug and gun dealer to Bolivia on a cocaine run.

En route, they stopped for fuel in Aruba — in the middle of a terrorist alert.

Aruban police and customs officials, who were swarming all over the airport, noticed the altered serial number when the plane landed, searched the aircraft and found three loaded pistols and $20,000 in American currency aboard.

Snyder, 27, and his passenger, Singh DaSilva, were arrested and eventually turned over to U.S. authorities.

Last week Snyder was sentenced to five months in prison for transportation of a stolen plane. Judge

Frederic N. Smalkin, in U.S. District Court, also ordered Snyder to pay about $21,000 restitution to the owner of the plane and an insurance company for expenses they incurred in retrieving the plane from Aruban authorities.

Singh DaSilva, the alleged drug and gun dealer, recently was acquitted of a cocaine distribution count in a federal court in Washington, but was convicted of possessing a phony U.S. passport.

Federal prosecutor Peter M. Semel said authorities believe DaSilva is an Asian national of ... Snyder pleaded guilty to the stolen plane charge and testified against DaSilva.

According to a government statement of facts that Semel filed in the local case, Snyder's girlfriend, Suzanne Jones, drove him to the Frederick airport last March where Snyder stole a Piper Saratoga

to later point out several other planes that belonged to a charter company in Frederick and flew it to a small airfield in Leesburg, Va.

Snyder then flew to Virginia and took off with him for Bolivia, where DaSilva was to buy two kilograms of cocaine, Semel said.

When they stopped for fuel in Homestead, Fla., Snyder altered the tail registration number on the stolen plane with tape. After the two were denied permission to fly over Cuba, they flew instead to the Turks and Caicos Islands and on to Aruba.

When the plane landed in Aruba, customs officials, amid an alert for Argentinian terrorists, surrounded the plane and after finding the cash and guns, arrested Snyder and DaSilva.

Semel said Jones was an unwitting participant in the scheme.
She was used, the prosecutor said. She thought they were going to ... Frederick only, Snyder's girlfriend ...

SINGH-160

FBI/DOJ

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date  5-23-88

TO:        SAC, BALTIMORE (26B-56765)

FROM:      SAC, SAN FRANCISCO (26B-52034)(P)(SQ. 4)

SUBJECT:   ~~~~~~~~                  ALL INFORMATION CONTAINED
           ROGER SCOT SNYDER;        HEREIN IS UNCLASSIFIED
           UNSUB, aka                DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS
           Antonio Michael DeSilva,
           Singh DeSilva, Singh Da Silva,
           Salvatore DeSilva, John Marshall Guattery;
           THEFT OF PIPER SARATOGA SINGLE
           ENGINEER AIRCRAFT,
           AIRCRAFT SERIAL NUMBER 32R8213016,
           ENGINE SERIAL NUMBER L21585-48A,
           TAIL NUMBER N8006Q,
           FROM FREDERICK, MARYLAND AIRPORT,
           3/18-19/88;
           ITSA, GUN CONTROL ACT OF 1968,
           ITSP, PASSPORT MATTER, FPC-GCM
           OO:  BALTIMORE

           ~~~ ~ ~~~~~~ "Guattery" ~~ ~~ ~~~~~~ of Antonio Michael
~~~~~~~, Sin~~ DeSilva and Salvatore Guattery to FICA.

           Re Baltimore airtel to the Bureau, dated 4-27-88.

           San Francisco indices have been searched regarding
captioned subject with negative results.

<u>LEAD</u>

    <u>SAN FRANCISCO</u>

           <u>AT SAN FRANCISCO, CALIFORNIA</u>:  Will continue to contact
Latin American Consulate  Representatives in an effort to obtain
information on subject De Silva.

    Baltimore
    San Francisco
    SA/bfo
    (4)

                              b6  -1
                              b7C -1

Approved: _____  Transmitted _____  Per _____
                                        (Number)    (Time)

Searched _____
Serialized _____
Indexed _____
Filed _____

U.S. GPO: 1987 — 181-48

SINGH-161

Z6B- 52034 - 4

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

UNIVERSAL CASE
FILE NUMBER

Date _____ 6/21/89

TO:      SAC, BALTIMORE (26B-56765)

FROM:    SAC, SAN FRANCISCO (26B-52034) (SQ. 4)

SUBJECT: ROGER SCOT SNYDER;
         UNSUB, aka
         Antonio Michael DeSilva, aka
         Singh DeSilva, Singh Da Silva,
         Salvatore DeSilva, Joh Marshall Guattery;
         THEFT OF PIPER SARATOGA SINGLE
         ENGINE AIRCRAFT,
         AIRCRAFT SERIAL NUMBER 32R8213016,
         ENGINE SERIAL NUMBER L21585-48A,
         TAIL NUMBER N8006Q,
         FROM FREDERICK, MARYLAND AIRPORT,
         3/18-19/88;
         ITSA, GUN CONTROL ACT OF 1968,
         ITSP, PASSPORT MATTER, FPC-GCM
         OO:  BALTIMORE

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

        Reference Baltimore airtel to the Bureau, dated
4/27/88.

        Enclosed are two copies of San Francisco airtel to
Baltimore, dated 5/23/88.

        On 6/20/89, Baltimore FBI was contacted regarding
captioned matter.  Baltimore case # 26B-56765 is currently in
closed status and does not contain enclosed airtel or a follow-up
communication from San Francisco.

        Enclosed airtel advised San Francisco would continue to
contact Latin American Consulate representatives in an effort to
obtain information on Subject De Silva.

② - Baltimore (Enc. 2)
2 - San Francisco
SA/ldl
(4)

26- 56765-112

Approved: _____    Transmitted _____    Per _____
                   (Number)

RECEIVED IN INDICES
RECEIVED IN MATCHING
RECEIVED IN SCREENING

b6  -1
b7C -1

JUL 10 1989

INDEXED
SERIALIZED    FILED

SINGH-162

SF 26B-52034
SA/ldl

     Subsequent inquiries of sources and Consulate
representatives during the summer of 1988 were met with negative
results.

2*

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

FD-36 (Rev. 8-29-85)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date   7/6/89

```
TO    : DIRECTOR, FBI (26B-48866)
        ATTENTION:  FIREARMS UNIT

FROM  : SAC, BALTIMORE (26B-56765) -C-

SUBJECT: ROGER SCOT SNYDER, aka
         SANTNAM SINGH
         ITSA; NARCOTICS MATTERS;                    b6 -1
         PF INTERPOL - FOREIGN POLICE COOPERATION     b7C -1

         RE:  BA report of SA [        ] dated 10/24/88.
              WMFO airtel to Director, (Attn: Identifiction
              Division, dated 12/9/88.
```

Enclosed for the Bureau is one court order from District of Maryland dated, January 5, 1989.

Forwarded ~~under separate cover~~ are two Smith & Wesson, Model 469 S/N's TBM 6181 abd TBM 5493 and one Intratech, Model Tech 9 S/N 47104.

On March 18-19, 1988, a Piper Saratoga aircraft,., registration # N-80069, was stolen from the Frederick, Maryland airport.  On March 22, 1988, captioned subjects were arrested with instant aircraft in Aruba.  Aircraft had altered registration number, weapons and disguises on board and SINGH, aka GUATTERY was carrying in excess of $29,000 in cash.  On March 30, 1988 warrants were issued charging both subjects with theft of aircraft from District of Maryland.

```
2-Bureau(encls. 1)          sent to Firearms
1-Baltimore                 7/12/89
BTD:jca                      Unit 786.545
(3)                          R451.786.545
```

26-56765-113

Searched _____
Serialized _____
Indexed _____
Filed _____

Approved: _____    Transmitted _____    Per _____
                     (Number)  (Time)

SINGH-164                                    b6 -1
                                             b7C -1

On April 29, 1988, SNYDER waived removal from Miami to Baltimore and on April 29, 1988, SINGH, aka, GUATTERY, was ordered removed to Washiington, D.C. to face drug conspiracy and false passport violation.  SNYDER admitted theft of aircraft and plead guilty to violation of Title 18, U.S. Code, Section 2312 and will be sentenced on 1/5/89.  On October 11, 1988, SINGH was acquitted of the drug count, but was convicted on passport fraud. On 12/5/88, SINGH was sentenced to 3 years (suspended) and 3 years probation.  SINGH was retained in custody of an INS retainer as an illegal alien.

On 1/5/89, SNYDER was sentenced to 5 months custody of the Attorney General and two years probation.  SNYDER was ordered to pay restitution to aircraft owner and insurance company which totalled $23,350.00

The following weapons were seized as evidence in captioned case:

(2) Smith & Wesson, Model 469, 9mm caliber, serial numbers, TBM6181 and TBM5493, and magazines.

(1) Intratech, Model Tech 9, serial number 47104 9mm caliber, and magazines.

The two Smith & Wesson, Model 469 are on the list for approved weapons for Bureau issue, therefore, Baltimore is requesting these weapons be returned to Baltimore Division to be issued and used by Agents of this Division during regular Bureau business.

The Intratech, Model 9 pistol is also being requested to be returned to the Baltimore Division, inasmuch as an 88-fugitive which was apprehended by the Baltimore Division used a Tech 9 pistol in an attempted escape.  The weapon would not be used by Agents during the regular course of business.  Baltimore Division will use this weapon for display, training in weapon safety and demonstration.

Due to a large number of those weapons in circulation, it would be of great value in instructing Agents of the proper clearing and safety procedures for the Tech 9 and other commonly encountered assault pistols.

SINGH-165

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_3_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 4 | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 4 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH 166    through    SINGH 168_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)      X
X  No Duplication Fee   X
X     for this page        X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

FD-36 (Rev. 11-17-88)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date · 6/28/93

TO : SAC, BALTIMORE

FROM : SAC, WMFO (26B-BA-48866) (P)

SUBJECT : ROGER SCOT SNYDER, AKA ET AL;
THEFT OF PIPER SARATOGA SINGLE ENGINE
AIRCRAFT, TAIL #N8006Q FROM FREDERICK, MD.,
3/18-20/88;
ITSA;
OO:BA


        The above case was closed on 12/13/88. WMFO is no
longer in need of the evidence attached hereto, consisting of
the following items:

        1. one (1) round trip plane ticket #7999:637:637 on
BRITISH AIRWAYS issued in the name of JOHN MARSHALL
GUATTERY;

        2. one (1) Application for a Passport submitted by
JOHN MARSHALL GUATTERY;

        3. one (1) Passport for the name JOHN MARSHALL
GUATTERY;

        4. one (1) Virginia Driver's License for JOHN
MICHAEL GUATTERY;

SINGH-169

② - Baltimore (1 Encl.)
2 - WMFO

Approved: _____  Transmitted _____
                              (Number)    (Time)

b6 -1
b7C -1

cony forwarded to CFS

RATOLID   b6 -1
Please   b7C -1
send copy
of AIT to SA

Cim—
Please note
the correct file
number— Both volume
are now on RATOLID
if you need to review

26B-BA-80898-2

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

JUL 0 8 1993

Per _____

b6 -1
b7C -1

5. one (1) business card from SEVENTY EIGHTY NINE
for JOHN GUATTERY, CHEF;

6. two (2) photographs;

7. one (1) Invoice from TRAVELER'S MEDICAL SERVICES
for JOHN GUATTERY; and

8. one (1) International Certificate of Vaccination
for JOHN GUATTERY.

The attached evidence is submitted to Baltimore for
disposition.

2



-DUPE-

**U.S. Department of Justice**



Federal Bureau of Investigation

In Reply, Please Refer to
File No. 26B-BA-80228

7142 Ambassador Road
Baltimore, Maryland  21244
July 21, 1993

The Honorable Gary P. Jordan
Acting United States Attorney
U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland  21201

ATTN:  AUSA Peter M. Semel

RE:  Roger Scot Snyder, Et Al
     Interstate Transportation of
     a Stolen Aircraft

Dear Sir:

      This is to confirm a conversation between yourself and
SA [                    ] of this office on July 9, 1993 regarding the
destruction of evidence in this case.

b6 -1
b7C -1

      In 1988, eight items of evidence were furnished to the
Washington Metropolitan Field Office of the FBI for the
prosecution of John Marshall Guattery in this case.  The matter
regarding Snyder was successfully prosecuted in U.S. District
Court, Baltimore, as was the matter regarding Guattery in U.S.
District Court, Washington, D.C.  No appeals were filed in 1988
and all that remains of the investigative file are the below
mentioned items:

      1)  One (1) round-trip plane ticket #799:637:637 on
British Airways issued in the name of John Marshall Guattery;

      2)  One (1) Application for a Passport submitted by
John Marshall Guattery;

      3)  One (1) Passport for the name John Marshall
Guattery;

      4)  One (1) Virginia Driver's License for John Michael
Guattery;

1 - Addressee
② - Baltimore
JED:pef (3)
pef

SINGH-171

26B-BA-80228-3

b6 -1
b7C -1

SERIALIZED
FILED



The Honorable Gary P. Jordan

RE:  Roger Scot Snyder, Et Al
     Interstate Transportation of
     a Stolen Aircraft

     5)  One (1) business card from Seventy Eighty Nine for
John Guattery, Chef;

     6)  Two (2) photographs;

     7)  One (1) Invoice from Traveler's Medical Services
for John Guattery; and

     8)  One (1) International Certificate of Vaccination
for John Guattery.

     This is to confirm your approval to destroy the above
items as no appeal was filed, and the matter was adjudicated in
1988.

                         Sincerely yours,


                         Danny O. Coulson
                         Special Agent in Charge

              By:
       b6 -1        Supervisory Special Agent
       b7C -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**Memorandum**



To    :    SAC, BALTIMORE (26B-BA-80228)(SQ 3)(C)    Date    11/4/93

From  :    SA [                    ]    b6 -1
                                        b7C -1

Subject:   ROGER SCOT SNYDER                         b6 -1
           ITSA;                                     b7C -1
           OO:  BA

Re WMFO airtel to Baltimore 6/28/93.

Pursuant to the referenced airtel, all enclosures in
that communication were destroyed with the approval of AUSA PETE
SEMEL.  The destruction took place on 7/9/93 and each FD-192 has
been appropriately marked.

In view of the above, this case is considered closed.

2 - Baltimore
ED:dlk
(2)

26B-BA-80228-4

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

NOV 04 1993

FBI — BALTIMORE

SINGH-173

FD-487 (Rev. 6-25-84)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**NCIC ACTIVITY LOG**
*(Instructions · Reverse Side)*

Bureau File No. _____

Field Office File No. _____

| Activity | Date | Serial | NCIC Number | Date Retention Period Expires | Miscellaneous Information |
|----------|------|--------|-------------|-------------------------------|--------------------------|
| Enter | 3/22/88 | 2 | See 1/0 | | ag |
| Clear | 3/28/88 | | 4 | | to |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Validation:** *(Date/Initials)*

| 1 | 5 | 9 |
|---|---|---|
| 2 | 6 | 10 |
| 3 | 7 | 11 |
| 4 | 8 | 12 |

**TOP SERIAL - NOT TO BE SERIALIZED**

SINGH-174

FBI/DOJ

**INSTRUCTIONS**

1. **Entry:**

    (a)  Supervisor stamp serial containing entry information, check entry, initial and route to NCIC operator.

    (b)  NCIC operator make local and/or NCIC checks including III for additional information, make entry, route serial and printout to rotor clerk.  (NCIC operator may stamp jacket, insert NCIC Activity Log as top serial in file and complete "entry" line.)

    (c)  Rotor clerk serialize printout, stamp jacket, insert NCIC Activity Log as top serial in file and complete "entry" line if not already accomplished by NCIC operator.  Note:  NCIC Activity Log is to be maintained as the top serial in the current Volume of case file.

2. **Modify:**

    (a)  Supervisor stamp serial containing modify information, check modify, initial and route to NCIC operator.

    (b)  NCIC operator modify record, route serial and printout to rotor clerk.  (NCIC operator may complete "modify" line on NCIC Activity Log.)

    (c)  Rotor clerk serialize printout and complete "modify" line on NCIC Activity Log, if not accomplished by NCIC operator.

3. **Clear/Cancel:**

    (a)  NCIC operator clears/cancels record upon notification by case agent or supervisor, routes printout to rotor clerk.  (NCIC operator may complete "clear/cancel" line on NCIC Activity Log.)

    (b)  Rotor clerk serializes printout, completes "clear/cancel" line on NCIC Activity Log and makes slash marks (NCIC) through NCIC stamp on File jacket.

4. **Validation:**

    (a)  When validation printout is received from NCIC, an agent (or clerk if case is in closed status) will review the NCIC entry to insure that it is complete and accurate.  Any discrepancy should be resolved by an appropriate agent and, if necessary, a modify message should be initiated to update and/or correct the record.  When validation is complete, reviewer will date and initial NCIC Activity Log.

5. **Retention Periods:**

    Unless otherwise removed, records will be retained in file as follows:

    **Article File**

    Remainder of the year of entry plus one year.

    **Boat File**

    Remainder of the year of entry plus four years.

    Records entered without BHN or OAN will remain in file 90 days.

    **Canadian Warrant File**

    Retained indefinitely until entering agency removes record from file.

    **Gun File**

    Retained indefinitely until entering agency removes record from file.

    Recovered weapons are retained for the remainder of the year of entry plus two years.

    **III File**

    Retained until the individual reaches the age of 80.

    **License Plate File**

    Retained in file for one year after the end of the plate's expiration year.

    Nonexpiring license plates remain in file for the remainder of the year of entry plus four years.

    **Missing Person File**

    Retained indefinitely until action is taken by the entering agency to clear the record.  This includes unemancipated juvenile records.

    **Securities File**

    Retained for the remainder of the year of entry plus four years, except records for traveler's checks and money orders.  These records will be retained for the remainder of the year of entry plus two years.

    **U.S. Secret Service Protective File**

    Retained indefinitely until action is taken by the U.S. Secret Service to remove it.

    **Unidentified Person File**

    Retained for the remainder of the year of entry plus nine years.

    **Vehicle File**

    Retained for the remainder of the year of entry plus four years.

    Records entered which do not contain VINs or OANs will remain in file for 90 days after entry.

    Felony vehicles will remain in file for 90 days after entry.

    Stolen parts (VIN plates, harrows, or boat motors) which contain an OAN or SER will remain in file for the year of entry plus four years.

    **Wanted Person File**

    Retained until action is taken by the originating agency to clear the record.

    Temporary felony want records will be automatically removed from file after 48 hours.




SINGH-175

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

FBI                    CLW10/P

TRANSMIT VIA:          PRECEDENCE:        CLASSIFICATION:
☑ Teletype             ☐ Immediate        ☐ TOP SECRET
☐ Facsimile            ☑ Priority         ☐ SECRET
☐ _____              ☐ Routine          ☐ CONFIDENTIAL
                                          ☐ UNCLAS E F T O
                                          ☑ UNCLAS
                                          Date    3/21/88

FM FBI BALTIMORE (26A-NEW) (SQ 10) (P)

TO FBI ~~WASHINGTON FIELD OFFICE~~/PRIORITY/
        WMFO

BT

UNCLAS

CITE:  //3050:2440//


SUBJECT:  UNSUBS; THEFT OF PIPER SARATOGA SINGLE ENGINE

AIRCRAFT, AIRCRAFT SERIAL NUMBER 32R8213016, ENGENE SERIAL

NUMBER L21585-48A, TAIL NUMBER N8006Q, FROM FREDERICK,

MARYLAND AIRPORT, MARCH 18-19, 1988; ITSA; OO:  BALTIMORE.

     ON MARCH 20, 1988, [          ] OWNER OF CAPTIONED

AIRCRAFT, CLARKSBURG, MARYLAND, ADVISED THAT AIRCRAFT WAS

LAST SEEN DURING THE AFTERNOON OF MARCH 18, 1988 IN FRONT OF

FREDERICK AVIATION, FREDERICK, MARYLAND AIRPORT.  WHEN [    ]

WENT TO USE AIRCRAFT ON MARCH 20, 1988, HE DISCOVERED IT

MISSING AND REPORTED IT STOLEN TO FREDERICK, MARYLAND POLICE

b6 -2
b7C -2

JED:clw

26A — 56765-1

Approved: _____  Transmitted _____  Per _____
                                    (Number)   (Time)

b6 -1
b7C -1

SINGH-176

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

1  ^PAGE TWO DE BA 26A–NEW UNCLAS

2  AND FBI.  NO SUSPECTS HAVE BEEN DEVELOPED AS AIRPORT IS OPEN

3  TO ANYONE AND ANY AIRCRAFT.  THE AIRCRAFT WOULD HAVE HAD TO

4  BEEN STOLEN ON MARCH 18, 1988 BETWEEN 9:00 P.M. AND 7:00

5  A.M. ON MARCH 19, 1988 AND BETWEEN 9:00 P.M. OF MARCH 19,

6  1988 AND 7:00 ON MARCH 20, 1988.  THIS IS DUE TO THE

7  LOCATION OF THE AIRCRAFT WHEN PARKED AT AIRPORT.

8      AIRCRAFT IS A HIGH PERFORMANCE, SINGLE ENGINE, SIX

9  PASSENGER PLANE AND IS THE TYPE USED IN ILLEGAL DRUG

10  TRAFFICKING.  IT IS VALUED AT $100,000 AND IS TAN/BEIGE IN

11  COLOR WITH RED, GOLD AND BLUE STRIPES.  IT IS INSURED BY

12  USAIG AND TITLED IN NAME OF CATOCTIN CAPITAL CORPORATION

13  WHICH IS OWNED BY[          ]                    b6 –2
                                                    b7C –2

     AIRCRAFT ENTERED INTO NCIC.

14  WFO AT LEESBURG, VIRGINIA:  AT WASHINGTON CENTER, FAA,

15  REQUEST THEY IMMEDIATELY RUN A NTAP ON THE FREDERICK,

16  MARYLAND AIRPORT FROM 9:00 P.M. ON MARCH 18, 1988 UNTIL 7:00

17  A.M. ON MARCH 19, 1988 AND AGAIN FROM 9:00 P.M. ON MARCH 19,

18  1988 UNTIL 7:00 A.M. ON MARCH 20, 1988.  THIS RADAR TRACK

19  MAY PICK UP STOLEN AIRCRAFT AND SHOW ITS DESIGNATION AS FEW

20  AIRCRAFTS LAND OR TAKE OFF DURING THOSE TIME PERIODS IN

21

Approved: _____  Transmitted _____  Per _____
                                    (Number)    (Time)

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

1    ^PAGE THREE DE BA 26A-NEW UNCLAS

2    FREDERICK.  THIS SHOULD BE DONE EXPEDITIOUSLY AS THE FAA

3    TAPES ARE HELD FOR ONLY ONE WEEK.

4        BALTIMORE AT FREDERICK, MARYLAND:  WILL CONTINUE

5    INVESTIGATION.

6    BT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Approved: _____    Transmitted _____    Per _____
                           (Number)    (Time)

FD-340a (Rev. 11-12-89)                                    -3-

-stamp on pg. 13-

(Title)

(File No.) 26B-BA-80228

| | Item | Date Filed | To be returned Yes No | | Disposition |
|---|---|---|---|---|---|
| (51) | 39 | 11/18/93 | ✓ | Orig. FD192 | |
| | 40 | 4/6/98 | ✓ | 2-°N# from Aircraft | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

See Red Wallet

26B-BA-80228-Ins

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

NOV 16 1993

FBI - BALTIMORE

FD-340a (Rev. 10-3-77)

(Title) _____

(File No.) BA 268-56765 _____



| Item | Date Filed | To be returned Yes / No | | Disposition |
|---|---|---|---|---|
| 18 | | ✓ | photo map of | b6 -4, 3 |
| 19 | | ✓ | photo of | b7C -4, 3 |
| 20 | 5/6/88 | ✓ | orig note | b7D -1, 3 |
| 21 | 5/6/88 | ✓ | FD 4914 re 1B(5) | |
| 22 | 5/17/88 | ✓ | orig note re | |
| 23 | 5/6/88 | ✓ | Crime Scene photo | |
| 24 | 6-8 | ✓ | miscellaneous repair | |
| 25 | 11 | ✓ | Dutch translation (see item 38) | |
| 26 | 6-14/88 | ✓ | Receipt from 1A Items TOT WMFO | |
| 27 | 8-15/88 | ✓ | Receipt for Operations Manual & Pilots operation Handbook f 132 | |
| 28 | 9/27/88 | ✓ | FD 192 & FD597 re 1B 2-6 | |
| 29 | 10/21/88 | ✗ | photos of ___ & Singh | |
| 30 | 10/21/88 | ✗ | crime scene photos | |
| 31 | 11-4-88 | ✓ | 2 receipts for 1B evidence from WFO | |
| 32 | 11-9/88 | ✓ | Title Wizard Au 78 bilkury 79 Mercedes | |
| 33 | 12-20/88 | ✓ | photo of Subject Singh | |
| 34 | 2/15/89 | | Receipt + Bulky Sheet (1B3) | |
| Re 35 | 3/22/89 | " | Bulky Sheets for 1B-2 + 1B-6 | |
| Re 36 | " | " | original documents from WMFO Trial + 1B2 | |
| Re 37 | 7/17/89 | " | FD 44a re 1B4 | |
| Re 38 | 12/6/90 | " | FD 192 re 1B2 + 5 | |

See
Red
wallet

268-56765

SEARCHED _____ INDEXED _____
SERIALIZED ___ FILED ___

APR 2 7 1988

FBI — BALT????

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED10a (Rev. 10-3-77)
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

(Title) _____

(File No.) 26B-56765

| Item | Date Filed | To be returned Yes No | | Disposition |
|------|------------|------|------------------------------------|-------------|
| 1 | 4-21 88 | ✗ | Orig. notes re: De Silva | |
| 2 | 11 | ✗ | orig. | |
| 3 | 12 | ✗ | OCR | Documents |
| 4 | 4-2 88 | ✗ | Evidence Record | |
| 5 | 4-25 88 | ✗ | orig notes re: | |
| 6 | n | ✗ | " " re: | |
| 7 | 11 | ✗ | " " re: | |
| 8 | 11 | ✗ | copy of Holiday claim room b.02 # 272056 | |
| 9 | 11 | ✗ | photo copy of Strasser st # 001492 | |
| 10 | 4-27 88 | ✗ | orig note re: | |
| 11 | | ✗ | " " re: | |
| 12 | | ✗ | " " re: | |
| 13 | | ✗ | " " re: | |
| 14 | | ✗ | " " re: | |
| 15 | | ✗ | Green sheet for 18(1) | |
| 16 | | ✗ | Receipt for Md National Bank chk | |
| 17 | ✓ | ✗ | photo + negative of De Silva | |

b6 2,4,6
b7C 2,4,6
b7D -1,3

See
Red
Wallet

26B-56765

APR 21 1988

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH, )
)
)
)
)
Plaintiff, )
) Civil Action No. 07-01064 (RJL)
v. )
)
FEDERAL BUREAU OF INVESTIGATION, )
)
Defendant. )
)

# EXHIBIT B

## (PAGES 182-262)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

Date 4-12-88

Title and Character of Case

Roger Scot Snyder, et al  Theft of Piper Saratoga Airplane,
N 8006 Q, from Frederick, Md. Airport  3/18-19/88  b6 -6
ITSA, FPC-GCM, ITSP                                    b7C -6
                                                       b7D -3

Date Property Acquired  4-11-88

Source From Which Property Acquired

Location of Property or Bulky Exhibit  SAFE

Reason for Retention of Property and Efforts Made to Dispose of Same  Evidence

To Be Returned ☐ Yes ☑ No | See Serial | Agent Submitting Property or Exhibit  SA | Agent Acquired Same  SA

☐ Yes ☑ No  Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☑ Yes ☐ No  Property to be Forfeited to the Government                b6 -1
                                                                       b7C -1

Description of Property or Exhibit

One bag containing #29,168 U.S. Currency

b6 -5
b7C -5  Released to U.S. Dept of Justice attorney
        on 4/22/88 in the form of a check. [initials]
                                              4/22/88

b6 -1
b7C -1

For Valuable and/or Narcotics Evidence Only

Evidence Bag Seal # 0017826

Signature of Two
Special Agents
Verifying and Sealing
Bag Contents

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

BLOCK STAMP

Field File # 26-56765 - 1B1

OO: Baltimore                    SINGH-182

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

-2-

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

**Item No.**                                     **Remarks**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

Date  4-8-88

Title and Character of Case

Roger Scot Snyder, aka, etal, Theft of Piper Saratoga aircraft
N 8006 Q, Frederick, Md    ITSA

b6 -6
b7C -6
b7D -3

Date Property Acquired  4-11-88

Source From Which Property Acquired

Location of Property or Bulky Exhibit  Bulky

Reason for Retention of Property and Efforts Made to Dispose of Same  Evidence

| To Be Returned | See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case | b6 -1 |
| ☐ Yes ☒ No | | | | b7C -1 |

☐ Yes ☒ No  Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☒ Yes ☐ No  Property to be Forfeited to the Government

Description of Property or Exhibit

One Black jacket w/ green liner
Two Bullet proof vests —
one Black wig  —
Two Boxes of garbage bags
one yellow plastic bag

Destroyed JEO 3/16/89

TOT AUSA Mark Dubestor, WDC  b6 -1
b7C -1

TOT SA _____    W/NEO 9/15/88

Returned to Balto JEO 1/8/88

| For Valuable and/or Narcotics Evidence Only | Signature of Two Special Agents Verifying and Sealing Bag Contents |
| Evidence Bag Seal # _____ | see 1A _____ |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

#1, 4, + 5 returned to owner JEO 2/7/89 _____

Field File #  26B-56765 - 1B2

OO:  BA

SINGH-184

BLOCK STAMP

SEARCHED_____ INDEXED _____
SERIALIZED_____ FILED _____

APR 13 1988

FBI — BALTIMORE

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |
| Signature | | | | | |
| Reason | | | | | |

**Item No.**                                              **Remarks**

SINGH-185

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

| | Date |
|---|---|

Title and Character of Case

Roger Scot Snyder, aka, etal, Theft of Piper Saratoga
N 8006Q, Frederick, Md    ITSA

b6 -6
b7C -6
b7D -3

| Date Property Acquired | Source From Which Property Acquired | |
|---|---|---|
| 4-11-88 | | |

| Location of Property or Bulky Exhibit | Reason for Retention of Property and Efforts Made to Dispose of Same |
|---|---|
| Bulky Room | Evidence |

| To Be Returned  See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case | |
|---|---|---|---|
| ☐ Yes ☑ No | | | b6 -1 |
| | | | b7C -1 |

☐ Yes ☑ No  Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☐ Yes ☑ No  Property to be Forfeited to the Government

Description of Property or Exhibit

Black Flight bag with miscellaneous books
FOT AUSA Mark Dubestor, WDO

b6 -1
b7C -1

FOT ST                    WMFO 9/15/88         Returned to
                                               Balto Sep 7/1/88

| For Valuable and/or Narcotics Evidence Only | Signature of Two | see 1A |
|---|---|---|
| Evidence Bag Seal # _____ | Special Agents Verifying and Sealing Bag Contents | |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

Destroyed 2/1/89 JEO

BLOCK STAMP
SEARCHED_____ INDEXED _____
SERIALIZED_____ FILED _____

APR 13 1988

FBI — BALTIMORE

Field File # 26B-56765-1B3

OO: Balto.                    SINGH-186

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

-2-

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No. _____ Remarks _____

_____

_____

_____

_____

_____

_____

_____

SINGH-187

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

Date **4-13-88**

Title and Character of Case

*Roger Scot Snyder, aka etal, Theft of Piper Saratoga Airplane, N8006Q, Frederick, Md   ITSA*

b6 -6
b7C -6
b7D -3

| Date Property Acquired | Source From Which Property Acquired |
|---|---|
| 4-11-88 | |

Location of Property or Bulky Exhibit | Reason for Retention of Property and Efforts Made to Dispose of Same

~~Gun Vault~~ *ECR* | *Evidence*

| To Be Returned See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case |
|---|---|---|
| ☐ Yes ☒ No | | |

b6 -1
b7C -1

☐ Yes ☒ No  Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☒ Yes ☐ No  Property to be Forfeited to the Government

Description of Property or Exhibit

1. √1- Intratech, Tech 9, 9mm pistol, SN 47104
2. √1- S+W, Model 469 9mm pistol, SN TBM 5493
3. √1- S+W Model 469 9mm pistol, SN TBM 6181
4. ~~1- Switch Blade knife~~
5. (1- Bag w/ Tech 9 clip (clips held 29, 30, +33 rounds)
6. ~~1- Box Winchester 9mm ammo = 16 rounds~~
7. ~~1- Bag w/2 469 clips - 12 rounds each~~   Returned to firearms print 7/12/89
8. ~~1- Bag with (2) 9mm rounds.~~
9. 2 shoulder holsters   ~~TOT AUSA Mark Dubestor, WDC~~

| For Valuable and/or Narcotics Evidence Only | |
|---|---|
| Evidence Bag Seal # _____ | Signature of Two Special Agents Verifying and Sealing Bag Contents   TOT SA |

b6 -1
b7C -1

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

returned to Balto 11/9/88

Clips + Shoulder Holster
Destroyed

BLOCK STAMP

RECEIVED
INDEXED
SERIALIZED FILED

APR 13 1988

FBI — BALTIMORE

Field File # **26B-5675 - 1B4**

OO: **BA**

SINGH-188

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No. _____    Remarks _____

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

Date 4-13-88

Title and Character of Case

Roger Scott Snyder, aka etal, Theft of Piper Saratoga,
N 8006 Q  Frederick, Md    ITSA

b6 -6
b7C -6
b7D -3

Date Property Acquired   4-11-88

Source From Which Property Acquired

Location of Property or Bulky Exhibit    ~~Gun Vault~~ ECP    Reason for Retention of Property and Efforts Made to Dispose of Same   Evidence

To Be Returned   ☐ Yes  ☒ No    See Serial    Agent Submitting Property or Exhibit    Agent Assigned Case    b6 -1    b7C -1

☐ Yes  ☒ No   Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☒ Yes  ☐ No   Property to be Forfeited to the Government

Description of Property or Exhibit

One bag containing  4 .469 S+W clips
with unknown # of rounds.
(latent fingerprint Sortina)
~~TOT AUSA Mark Dubester, WDC~~
~~(illegible)~~
~~TOT SA~~ _____ WMFO 9/15/88  Returned to Balto
11/4/88
See 1A ___ clips only
Clips Destroyed 12/10/90

For Valuable and/or Narcotics Evidence Only
Evidence Bag Seal # _____    b6 -1   b7C -1   Signature of Two Special Agents Verifying and Sealing Bag Contents

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

BLOCK STAMP

SEARCHED _____   INDEXED _____
SERIALIZED _____   FILED _____

APR 13 1988

FBI — BALTIMORE

Field File #  BA 26B-56765-135

OO: BA

SINGH-190

ORIGINAL (FILE COPY)

# CHAIN OF CUSTODY

-2-

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No.                                                    Remarks

SINGH-191

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 7-18-85)

Date 4/13/88

Title and Character of Case

Roger Scot Snyder, etal
Theft of Piper Saratoga Aircraft, N 8006Q
FREDERICK, MD    3/18-19/88

b6 -6
b7C -6
b7D -3

| Date Property Acquired | Source From Which Property Acquired |
|---|---|
| 4/11/88 | |

Location of Property or Bulky Exhibit — Reason for Retention of Property and Efforts Made to Dispose of Same

Bulky          Evidence

| To Be Returned | See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case |
|---|---|---|---|
| ☐ Yes ☑ No | | | |

b6 -1
b7C -1

☐ Yes ☑ No  Grand Jury Property - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

☐ Yes ☑ No  Property to be Forfeited to the Government

Description of Property or Exhibit

Box containing miscellaneous aircraft documents and bag containing tools, tape, ~~towel~~ towel, rubbing compound.

(Two aircraft documents returned to owner 8-1-88- JED)

TOT AUSA Mark ~~Dubester~~ WDC        Destroyed JED 3/16/89  to Balto
        JED  b6 -1
        b7C -1
TOT SA        WMFO 9/15/88  A(☒) returned 11/4/88  JED

| For Valuable and/or Narcotics Evidence Only | Signature of Two Special Agents Verifying and Sealing Bag Contents |
|---|---|
| Evidence Bag Seal # _____ | |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

all returned except passport of J W Guattery JED 11/4/88
returned to owner 2/7/89 BD except miscellaneous document.

Field File # 26B-56765-1B(6)

OO: Baltimore                    SINGH-192

BLOCK STAMP

SEARCHED _____ INDEXED ____
SERIALIZED ___ FILED ___

APR 13 1988

FBI — BALTIMORE 2

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

-2-

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No.                                                        Remarks

```
        MILES  ENTER VEHICLE STOLEN              TIME 1334   DATE 032088
   LICENSE PLATE: NUMBER      STATE    EXP-YR      TYPE
                   N8006Q      MD         00         PP
          VEHICLE: IDENT-NO         YR   MAKE   MODEL   STYLE    COLOR
             32R8213016            85   AERO    FRO      1P     MUL/COL
          DATE OF THEFT            ORI             OCA
             031888              FBIBA00          26NEW
          MISCELLANEOUS
             SARATOGA STOLEN FROM FREDERICK AIRPORT ~
   CAUTION INDICATOR:
             ? OCCUPANTS ARMED/HOLD FOR FINGERPRINT EXAM
             ? OCCUPANTS ARMED
             ? HOLD FOR FINGERPRINT EXAM
   TRANSACTION COMPLETED.  REQUEST SENT TO NCIC.
```

```
   MILES NCIC RESPONSE          TIME 1348    DATE 032088    PAGE 01
   MDFBIBA00
   NIC/V948233087 LIC/N8006Q
   END OF MESSAGE  P/1                  LEBI
```

SINGH-194

# Memorandum 

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

To : SAC, BALTIMORE (26-NEW) SQ 10 -P-    Date 3/20/88

From : SA [                    ]    b6 -1
                                    b7C -1

Subject : UNSUB; THEFT OF PIPER SARATOGA SINGLE ENGINE AIRCRAFT,
AIRCRAFT SERIAL NUMBER 32R8213016, ENGINE SERIAL NUMBER
L21585-48A, TAIL NUMBER N8006Q From FREDERICK AIRPORT,
FREDERICK, MD, 3/18-19/88, ITSA, OO:BALTIMORE.


          On 3/20/88, [              ] owner of the captioned    b6 -2
aircraft, advised the writer of the theft.  The aircraft        b7C -2
was last seen during the afternoon of 3/18/88 and no one
has had permission to use it.
          The theft was also reported to the Frederick, Md
Police Department.  The aircraft is described as follows:

                    Make:  PIPER

                    Model: SARATOGA

                    Aircraft Serial
                    Number        32R8213016

                    Engine Serial
                    Number        L21585-48A

                    Tail Number   N8006Q

                    Color"        Tan/beige with red, gold
                                  blue  stripes.

                    Miscellaneous Single engine, 6 passenger


          A rough draft teletype to WFO has beeb submitted
to the steno pool.

                    O & A the writer.

Lead:  Baltimore:
               At Baltimore, Md: Enter NCIC

               At Frederick, Md, Continue investigation

                                        26B-56765-3

2-BALTIMORE                    SEARCHED_____ INDEXED____
JED:jed                        SERIALIZED_✓_ FILED_✓_

                                      MAR 2 1 1988

                                    FBI — BALTIMORE

                    SINGH-195

-BACK OF PAGE-

26B-56765-3

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

MAR 2 1 1988

FBI___ TIMORE

b6 -1
b7C -1

SINGH-196

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

FORMS.TEXT HAS 3 DOCUMENTS

INBOX.1 (#1355)

TO: BA @ EMH2

FROM: WMFO @ EMH1

SUBJECT: 086/0014 PRIORITY

DATE: 26 MAR 88 01:24:08 GMT

CC:

TEXT:

VZCZCWFO014

PP BA

DE WF #0014 0860037

ZNR UUUUU

P 260037Z MAR 88

FM SAC, WMFO (26-48864)(C-4)(RUC)

TO SAC, BALTIMORE (26A-NEW)(SQ. 10)   PRIORITY

BT

UNCLAS

UNSUBS; THEFT OF PIPER SARATOGA SINGLE ENGINE AIRCRAFT, AIRCRAFT

SERIAL #32RA213016, ENGINE SERIAL #L21585-48, TAIL #N8006Q, FROM

FREDERICK, MARYLAND AIRPORT, MARCH 18-19, 1988; ITSA; OO:BA

RE BA TELETYPE TO WMFO, DATED 3/21/88.

AS PER REQUEST OF REFERENCED COMMUNICATION, INQUIRIES WERE

MADE ON 3/24/88 THROUGH FEDERAL AVIATION AGENCY (FAA) WASHINGTON

CENTER, LEESBURG, VIRGINIA, RELATIVE TO AN NTAP INQUIRY.

ON 3/24/88, [                ] WASHINGTON CENTER, FAA, SPECIAL

AGENT, ADVISED THAT THE WASHINGTON CENTER, LEESBURG, VIRGINIA HAS

NO INFORMATION CONCERNING CAPTIONED MATTER AND AIRCRAFT

IDENTIFICATION #N8006Q. [          ] ADVISED THAT  ALL RECORDS AND

INFORMATION WERE REVIEWED 48 HOURS PRIOR TO THE THEFT AS WELL AS

INDICES SEARCH

- ☐ GENERAL
- ☑ FOIMS
- ☐ NEGATIVE
- ☐ NEGATIVE
- ☐ SEE ATTACHED S.S.
- ☐ SEE ATTACHED S.S.
- ☐ SEARCH BY
- ☐ SEARCH BY

b6 -5
b7C -5

b6 -1
b7C -1

SINGH-197

PAGE TWO DE WF 0014 UNCLAS

48 HOURS FOLLOWING THE THEFT. [                ] ADVISED THAT NO

b6 -5
b7C -5

INFORMATION IS AVAILABLE BUT SHOULD ANY COME TO LIGHT HE WOULD

IMMEDIATELY CONTACT THE FBI.

IN VIEW OF THE FOREGOING, THIS MATTER IS RUC'D.

BT

#0014

NNNN

SINGH-198

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

3

FQRMS.TEXT HAS 3 DOCUMENTS

INBOX.1 (#1323)

TO: BA @ EMH2

FROM: HQTX @ EMH1

SUBJECT: 085/0055 PRIORITY

DATE: 25 MAR 88 20:52:10 GMT

CC:

TEXT: VZCZCHQO0055

OO HQ BA

DE BRI #0037 0851652

ZNY CCCCC

O 251630Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN

TO DIRECTOR FBI  IMMEDIATE

    ATTN: CID AND I/FPC UNIT, OLIA

FBI BALTIMORE  PRIORITY

    BT

ORIGINAL

INDICES SEARCH

GENERAL            FOIMS
NEGATIVE           NEGATIVE
SEE ATTACHED S.S.  SEE ATTACHED S.S.
SEARCH BY          SEARCH BY
                   VCF/TH

b6 -4
b7C -4

C O N F I D E N T I A L                100-18508

                    AKA

JOHN MARSHALL GUATTERY; ROGER SCOTT SNYDER; THEFT OF SINGLE-

ENGINE PIPER AIRCRAFT, FREDERICK, MD.; ITSA; FPC-GCM.

    THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY.

b6 -4
b7C -4

    INFORMATION RECEIVED VIA AMERICAN CONSULATE, CURACAO,

INDICATING CAPTIONED AMERICAN NATIONALS WERE ARRESTED BY

                    MARCH 22, 1988,           AND           ALONG

WITH TWO VENEZUELAN NATIONALS, WERE ARRESTED AS RESULT OF CON-

TINUING INVESTIGATION INVOLVING PARTICIPANTS IN AN OPERATION

26B.56765<5

SEARCHED____ INDEXED____
SERIALIZED____ FILED____
MAR 2 5 1988
FBI — BALTIMORE

b6 -1
b7C -1

b6 -1
b7C -1

SINGH-199

PAGE TWO DE BRI 0037 C O N F I D E N T I A L

COLOMBIA'S M-19 MOVEMENT [REDACTED]

b6 -4
b7C -4
b7D -3

[REDACTED]

[REDACTED] DEA IS SAID TO HAVE A FILE ON [REDACTED]

GUATTERY AND [REDACTED] WERE ARRESTED AFTER ARRIVING IN A PRI-

VATE AIRCRAFT. THE AIRCRAFT CONTAINED A MACHINE GUN, PISTOLS,

AMMUNITION, BULLET-PROOF VESTS, WIGS, AND OTHER SUSPICIOUS

MATERIAL. THE MEN CLAIMED TO BE EN ROUTE TO PERU FROM HOMESTEAD,

FL., AND HAD FILED NO FLIGHT PLAN. [REDACTED]

b6 -4
b7C -4

[REDACTED]

[REDACTED]

b7D -3

[REDACTED]

[REDACTED] THE AIRCRAFT, A SINGLE-

ENGINE PIPER, WITH AN APPARENTLY-ALTERED REGISTRATION NUMBER OF

N8007B OR N8006Q, HAD REPORTEDLY BEEN STOLEN FROM FREDERICK, MD.

SUBJECTS DESCRIBED AS FOLLOWS:

[REDACTED] AKA [REDACTED] DPOB [REDACTED]

b6 -4
b7C -4

[REDACTED] REPORTEDLY ARRESTED IN CARACAS IN 1985;

[REDACTED] DPOB [REDACTED] CARRYING A

U.S. PASSPORT;

JOHN MARSHALL GUATTERY, DPOB JULY 20, 1959, NEW YORK; AND

PAGE THREE DE BRI 0037 C O N F I D E N T I A L

| | | DPOB | | b6 -4 |
| | | | | b7C -4 |
| | | | | b7D -3 |

REQUEST ANY BACKGROUND INFORMATION, ARREST RECORDS, ETC., REGARDING SUBJECTS, AS WELL AS INFORMATION REGARDING THE STOLEN AIRCRAFT REPORT.

FBIHQ REQUESTED TO CHECK INDICES, IDENT RECORDS, NCIC, RE ARUBAN REQUEST. SUTEL.

BALTIMORE IS REQUESTED TO CHECK INDICES RE SUBJECTS AND THE STOLEN AIRCRAFT REPORT. PLEASE PROVIDE RESULTS AS SOON AS POSSIBLE.

CLASSIFIED BY: C-1; DECLASSIFY ON: OADR.

BT

#0055

NNNN

-->

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

```
     MILES RESPONSE VEHICLE/TAG              TIME 1127    DATE 032888    PAGE 01
STOLEN VEHICLE
LICENSE PLATE: NUMBER       STATE      EXP-YR      TYPE
              N8006Q        MD         00          PP
         VEHICLE: ID-NUMBER            YR    MAKE    MODEL    STYLE    COLOR
              32R8213016               85    AERO    PRO      1P       MUL/COL
         DATE OF THEFT                 OCA
              031888                   26NEW
MISC: SARATOGA STOLEN FROM FREDERICK AIRPORT
STATUS               ORI
ACTIVE   CONFIRM WITH MDFBIBA00 FBI WOODLAWN
END OF DISPLAY P/1
```

266-56765-6

SINGH-202

-2-

```
      MILES  CLEAR VEHICLE                         TIME 1128     DATE 032888
LICENSE NO  N8006Q                 OR        VIN(SER)
OCA  26NEW
ORI  FBIBA00
*NOTE*  NAMES IN () ARE FOR PARTS RECORD.
TRANSACTION COMPLETED.  REQUEST SENT TO NCIC.
```

SINGH-203

MILES NCIC RESPONSE        TIME 1129    DATE 032888    PAGE 91
MDFBIBA00
CLEAR  LIC/N80060
END OF MESSAGE  P/1                    LEBI                    -5-

SINGH-204

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

FORMS.TEXT HAS 3 DOCUMENTS

INBOX.1 (#1375)

TO: BA @ EMH2, DE @ EMH2, MM @ EMH2,
OC @ EMH2, WMFO @ EMH1

FROM: HQ2 @ EMH2

SUBJECT: 088/0015 IMMEDIATE SEC1OF2

DATE: 28 MAR 88 13:23:45 GMT

CC:

TEXT:

VZCZCHQ0015

OO HQ BA DE MM OC WF BOG

DE BRI #0038 0872102

ZNY CCCCC

O 272039Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI   IMMEDIATE

    ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076; AND

        INTERNATIONAL TERRORISM GLOBAL UNIT, CID,

        ROOM 4252 (INFO); AND

        I/FPC UNIT, OLIA

FBI BALTIMORE   IMMEDIATE

FBI DETROIT PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI OKLAHOMA CITY PRIORITY

FBI WASHINGTON FIELD   IMMEDIATE

LEGAL ATTACHE BOGOTA (INFO) PRIORITY

BT

CONFIDENTIAL / SECTION I OF II

CHANGED. ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL

GUATTERY;

---

b6 -1
b7C -1

INDICES SEARCH

☑ GENERAL          ☑ FOIMS
☑ NEGATIVE         ☐ NEGATIVE
☐ SEE ATTACHED S.S. ☐ SEE ATTACHED S.S.
☑ SEARCH BY        ☑ SEARCH BY
    LMS              LMS

Room 5094

ORIGINAL

Indexing
Page 4

| NCIC | SUPR. | OPR. | AGENT |
|------|-------|------|-------|
| ENTER ☐ | | | |
| MODIFY ☐ | | | |
| CLEAR ☒ | | | |
| CANCEL ☐ | | | |
| LOCATE ☐ | | | |
| DATE | NCIC # | | |

SINGH-205

26B- 56765

| SEARCHED | INDEXED |
| SERIALIZED | FILED |

MAR 28 1988

b6 -4
b7C -4

b6 -1
b7C -1

b6 -1
b7C -1

Advised 3/28

b6 -3,4
b7C -3,4

PAGE TWO DE BRI 0038 C O N F I D E N T I A L / I OF II

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER
N8007B, FREDERICK, MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968;
ITSP.

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS
ENTIRETY UNLESS OTHERWISE NOTED.

TITLE MARKED "CHANGED" TO REFLECT TRUE NAME OF GUATTERY AND
TO ADD ADDITIONAL SUSPECTS ARRESTED BY ARUBAN POLICE FORCE (APF),
AS WELL AS ADDITIONAL CHARACTERS.

REBRITEL MARCH 25, 1988 TO FBIHQ AND BALTIMORE.

FOR INFORMATION DETROIT, MIAMI, OKLAHOMA CITY, WASHINGTON
FIELD AND LEGAT BOGOTA,

ON THE NIGHT OF

b6 -4
b7C -4
b7D -3

MARCH 23, 1988 CAPTIONED AIRCRAFT ARRIVED AT ARUBA INTERNATIONAL
AIRPORT WITH SNYDER AND DA SILVA ABOARD.

IN CHECKING THE PIPER, IT WAS OBSERVED THAT THE SERIAL NUMBER
HAD BEEN ALTERED FROM N8007B TO READ N8006Q. NO FLIGHT PLAN, AIR
WORTHINESS CERTIFICATE OR OWNERSHIP PAPERS WERE LOCATED IN THE

PAGE THREE DE BRI 0038 C O N F I D E N T I A L / I OF II

AIRCRAFT, ALTHOUGH A MACHINE GUN, TWO PISTOLS, AMMUNITION, WIGS,

BODY ARMOR AND OTHER ITEMS WERE LOCATED.

b6 -3,4
b7C -3,4

PAPERS CARRIED BY[          ]SHOWED A POSSIBLE RESIDENCE AT [          ]

[                                              ] AND A LETTER AUTHORIZATION

DATED MARCH 14, 1988 FROM ONE [                    ] CARE OF SCOTT

AVIATION, TULSA INTERNATIONAL AIRPORT, TULSA, OK., TO "FLY THE

PIPER PA 324-301, REGISTRATION NUMBER N8007B, ANYWHERE IN OR OUT-

SIDE U.S.A.".[          ]ADDRESS ON THIS "AUTHORIZATION" WAS SHOWN

AS [                              ]

DA SILVA WAS CARRYING A VIRGINIA "PERSONAL ID CARD" SHOWING

AN ADDRESS OF 488 NORTH BEDFORD ST., ARLINGTON VA. 22201, BUT

OTHER PAPERS AND THE U.S. PASSPORT APPEAR TO BE THOSE OF ONE

JOHN MARSHALL GUATTERY, DOB JULY 20, 1959, POSSIBLY EMPLOYED AT

F. SCOTTS 1789 RESTUARANT IN WASHINGTON, D.C.

[          ]AND DA SILVA WERE ARRESTED, AND ARE BEING HELD ON

LOCAL FIREARMS AND POSSESSION OF STOLEN PROPERTY CHARGES.[          ]

b6 -4
b7C -4
b7D -3

PAGE FOUR DE BRI 0038 C O N F I D E N T I A L / I OF II

b6 -4
b7C -4
b7D -3

SINGH-208

PAGE FIVE DE BRI 0038 C O N F I D E N T I A L / I OF II

AND [ ]

b6 -4
b7C -4

THE SEIZED WEAPONS ARE:

1.) LUGER 9MM TEC-9, SERIAL NUMBER 47104;

2.) SMITH AND WESSON MODEL 469, TBM 5493; AND

3.) SMITH AND WESSON MODEL 469, TBM 6181.

b6 -6
b7C -6
b7D -3

REQUEST OF FBIHQ.

PCU/CID IS REQUESTED TO EXPEDITOUSLY CHECK WEAPONS THROUGH

NCIC AND SET OUT LEADS FOR PURCHASE/SALE TRACES; ALSO CHECK RE-

GARDING POSSIBLY STOLEN GUATTERY PASSPORT OR SET OUT LEAD FOR

NEW YORK OR WASHINGTON FIELD.

LEADS.

BALTIMORE DIVISION.

BALTIMORE IS REQUESTED TO EXPEDITIOUSLY CONDUCT APPROPRIATE

ITSA ENQUIRIES, INCLUDING OBTAINING THEFT REPORT (AIRCRAFT

PAGE SIX DE BRI 0038 C O N F I D E N T I A L / I OF II

CARRIED IN EPIC COMPUTER) AND INTERVIEWING OWNER. PRESENTATION

TO U.S. ATTORNEY'S OFFICE FOR FORMAL PROSECUTIVE OPINION SHOULD

BE PURSUED, AND AUSA SHOULD COORDINATE WITH SPECIAL ATTORNEY [          ]          b6 -5

[          ] OFFICE OF INTERNATIONAL AFFAIRS, DEPARTMENT OF JUSTICE,          b7C -5

TELEPHONE (202) 786-3541.

BALTIMORE MAY WISH TO CONSIDER HAVING CASE AGENT ACCOMPANY

AUSA OR [          ] TO ARUBA TO CONDUCT NECESSARY INTERVIEWS          b6 -5

AND RECOVER PERTINENT EVIDENCE, WHICH CONTACT LEGAT WOULD BE          b7C -5

ABLE TO FACILITATE INASMUCH AS AIR TRAVEL TO ARUBA IS AS COST

EFFECTIVE FROM BWI VIA MIAMI AS IT IS FROM BARBADOS VIA MIAMI

WITH A LAYOVER.

BALTIMORE SHOULD RECORD AIRCRAFT RECOVERY (PER MIOG) AFTER

CONDUCTING APPROPRIATE INVESTIGATION. AIRCRAFT FURTHER DESCRIBED

AS WHITE WITH RED STRIPING, SINGLE ENGINE, STOLEN AT FREDERICK,

MD. PLEASE SUTEL RESULTS OR TELEPHONE LEGAT DIRECTLY AT (809)

436-4950, SINCE SUBJECTS ARE ACTIVELY DEMANDING ACTION BY U.S.

CONSULATE AND LOCAL ATTORNEYS TO SECURE THEIR RELEASE.

BT

#0015

NNNN

-->

FORMS, TEXT HAS 3 DOCUMENTS

INBOX.1 (#1376)

TO: BA @ EMH2, DE @ EMH2, MM @ EMH2,
OC @ EMH2, WMFO @ EMH1

FROM: HQ2 @ EMH2

SUBJECT: 088/0016 IMMEDIATE SEC2OF2

DATE: 28 MAR 88 13:27:01 GMT

CC:

TEXT:

VZCZCHQOO16

OO HQ BA DE MM OC WF BOG

DE BRI #0039 0872119

ZNY CCCCC

O 272056Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)                    \

TO DIRECTOR FBI  IMMEDIATE

    ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076; AND

        INTERNATIONAL TERRORISM GLOBAL UNIT, CID,

        ROOM 4252 (INFO); AND

        I/FPC UNIT, OLIA

FBI BALTIMORE  IMMEDIATE

FBI DETROIT PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI OKLAHOMA CITY PRIORITY

FBI WASHINGTON FIELD  IMMEDIATE

LEGAL ATTACHE BOGOTA (INFO) PRIORITY

BT                                        b6  -4

C O N F I D E N T I A L / SECTION II OF II    b7C -4

[                                    ] SINGH DA SILVA, AKA JOHN MARSHALL

GUATTERY; [                                                    ]

SINGH-211

PAGE TWO DE BRI 0039 C O N F I D E N T I A L / II OF II

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER

N8007B, FREDERICK MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968;

ITSP.

AS THIS TELETYPE WAS BEING TYPED, LEGAT RECEIVED A TELEPHONE

CALL FROM [     ] ADVISING THAT

b6 -4
b7C -4
b7D -3

BALTIMORE DIVISION IS REQUESTED TO DO NECESSARY BACKGROUND

CHECKS ON [          ] FREDERICK, MD., AND CONSIDER INTERVIEW.

b6 -3
b7C -3

OKLAHOMA CITY REQUESTED TO INTERVIEW [          ]

AND POSSIBLY

b6 -3
b7C -3

WASHINGTON FIELD IS REQUESTED TO ATTEMPT CONFIRMATION OF

[          ] AND DA SILVA'S ADDRESSES AND EMPLOYMENT, AS WELL AS

CONFIRM VIA CONTACT WITH [          ] RESTUA-

b6 -3,4
b7C -3,4

PAGE THREE DE BRI 0039 C O N F I D E N T I A L / II OF II

RANT, RELATIONSHIP WITH [        ] AND/OR DA SILVA, OR CONFIRM THEFT/

LOSS OF HIS PAPERS AND PASSPORT.

b6 -4
b7C -4

   PLEASE SUTEL RESULTS.

   CLASSIFIED BY: 2675; DECLASSIFY ON: OADR.

BT

#0016

NNNN

-->

FD-36 (Rev. 8-29-85)

FBI

*Reception*
*(Immediate*
*#2)*

TRANSMIT VIA:
☒ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☒ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☒ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date  3/28/88

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

1  FM FBI BALTIMORE (26B-56765) (SQ 10) (P)

2  TO DIRECTOR FBI/IMMEDIATE/

3  LEGAL ATTACHE BRIDGETOWN (26B-1)/IMMEDIATE/

4  BT

5  CONFIDENTIAL

6  CITE: //3050:2440//

7  PASS:  HQ FOR INTELLIGENCE DIVISION.

b6 -4
b7C -4

8

9  SUBJECT:  ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN

10  MARSHALL GUATTERY

11

12                                                            THEFT OF

13  PIPER AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND;

14  ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

15      THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

     ENTIRETY.

16

17  JED.s/o

18

19

20

21

Approved: JVC _____ Transmitted _____ Per
                                      (Number)    (Time)

b6 -1
b7C -1

26B-56765-8

SEARCHER
INDEXED
SERIALIZED
FILED

SINGH-214

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date _____

^PAGE TWO  DE BA 26B-56765  C O N F I D E N T I A L

RE LEGAL ATTACHE BRIDGETOWN TELETYPES TO BALTIMORE,

DATED MARCH 28, 1988 AND MARCH 25, 1988; AND TELCAL OF SA

[              ] FREDERICK, MARYLAND, RESIDENT AGENCY TO

LEGAT RAY TALLIA, MARCH 28, 1988.

b6 -1
b7C -1

ON MARCH 28, 1988, AUSA BARBARA SALE, DISTRICT OF

MARYLAND, BALTIMORE, MARYLAND, APPRISED OF FACTS SET FORTH

IN REFERENCED TELETYPES AND IN TELCAL, AND ADVISED THAT SHE

WOULD PROSECUTE BOTH [      ] AND DA SILVA FOR VIOLATION OF

TITLE 18, SECTION 2312, USC, FOR THE FOREIGN COMMERCE TRAVEL

OF THE PIPER CHEROKEE AIRCRAFT FROM FREDERICK, MARYLAND, TO

THE ISLAND OF ARUBA.  ADDITIONAL CHARGES CONCERNING MONEY

AND WEAPONS WILL BE PLACED AT TIME OF INDICTMENT.  AUSA SALE

IS IN CONTACT WITH DEPARTMENTAL ATTORNEY [              ]

OFFICE OF INTERNATIONAL AFFAIRS, WASHINGTON, D.C.

b6 -4,5
b7C -4,5

INVESTIGATION AT FREDERICK, MARYLAND, ON MARCH 28,

1988, DISCLOSES THAT THE OWNER OF CAPTIONED AIRCRAFT, [              ]

[        ] ADDRESS CLARKSBURG, MARYLAND, ADVISED THAT NO ONE HAD

PERMISSION TO UTILIZE THE AIRCRAFT AND THAT THE NAME [          ]

[              ] IS UNKNOWN TO HIM, AS WELL AS DA SILVA.

INVESTIGATION AT FREDERICK AVIATION, FREDERICK AIRPORT,

b6 -3,4
b7C -3,4

Approved: _____  Transmitted _____  Per _____
                                        (Number)      (Time)

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date _____

^PAGE THREE  DE BA 26B-56765  C O N F I D E N T I A L

b6 -4
b7C -4

FREDERICK, MARYLAND, DISCLOSED THAT _____ WAS PRESENT AT

THE AIRPORT ON MARCH 16, 1988, MARCH 17, 1988, AND MARCH 18,

1988, WHEN HE RENTED ANOTHER AIRCRAFT FROM FREDERICK

AVIATION, NOT THE AIRCRAFT UTILIZED IN THIS THEFT.  HE FLEW

A PIPER ARROW ON ALL THREE OCCASIONS FOR 1.3 HOURS, TOTAL

AIR TIME.  WHAT IS OF INTEREST TO FREDERICK AVIATION IS THE

ORIGINAL SET OF KEYS FOR THE PIPER CHEROKEE WERE DISCOVERED

MISSING ON MARCH 17, 1988, AND HAVE YET TO BE FOUND.

THEREFORE, THE CONDITION OF THE AIRCRAFT IN ARUBA SHOULD BE

DETERMINED AS TO HOW THE AIRCRAFT WAS ENTERED, EITHER BY

UTILIZING A KEY OR BY FORCIBLE ENTRY, AS WELL AS TO JUMP-

START THE AIRCRAFT. _____ IS DESCRIBED IN HIS RATING

APPLICATION FOR HIS DEPARTMENT OF TRANSPORTATION LICENSE AS

A WHITE MALE, DATE OF BIRTH _____

_____ ADDRESS _____

HEIGHT 72 INCHES, WEIGHT 145 POUNDS, SSAN _____ HE

ALSO LISTS HIS EMPLOYMENT AS _____ WASHINGTON,

D.C.  HE HAS A SINGLE ENGINE LAND PRIVATE PILOT LICENSE AND

HAS BEEN RENTING AIRCRAFT FROM OR UTILIZING THE FREDERICK

AIRPORT SINCE AT LEAST OCTOBER, 1985.

Approved: _____ Transmitted _____ Per _____
                                        (Number)    (Time)

SINGH-216

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

^PAGE FOUR  DE BA 26B-56765  C O N F I D E N T I A L

THEFT REPORT MADE ON MARCH 20, 1988, CONCERNING PIPER CHEROKEE TO FREDERICK, MARYLAND POLICE DEPARTMENT HAS BEEN OBTAINED AND IS AVAILABLE FOR ANY HEARINGS.

b6 -3
b7C -3

INVESTIGATION AT FREDERICK, MARYLAND, DISCLOSES THERE IS NO ONE NAMED [        ] IN THE CITY OR COUNTY AND HE IS UNKNOWN TO PERSONNEL AT THE FREDERICK AIRPORT.  A COMPUTERIZED CHECK OF DRIVER'S LICENSES IN THE NAME OF [        ] DISCLOSES THERE ARE EIGHT[        ]S) IN THE STATE OF MARYLAND.  THE CLOSEST, RESIDENCE WISE, TO FREDERICK, MARYLAND, ARE[        ]AND[        ] [        ] THEY ARE FATHER-SON, WHO RESIDE IN POTOMAC, MARYLAND, AND THE SON WAS BORN IN[        ]  THE FATHER IN[        ]  THERE IS NO 85 NORTH PATRICK STREET IN FREDERICK, MARYLAND, AS PATRICK STREET RUNS EAST AND WEST AND THERE IS NO 85 EAST OR WEST PATRICK STREET.

BALTIMORE IS MAINTAINING CONTACT WITH THE U.S. ATTORNEY'S OFFICE CONCERNING THE FILING OF CHARGES BASED ON THEIR CONTACT WITH THE OFFICE OF INTERNATIONAL AFFAIRS, DEPARTMENT OF JUSTICE.

C BY 5201: DECL:OADR

Approved: _____  Transmitted _____  Per _____
                                        (Number)        (Time)

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

| | |
|---|---|
| 1 | ^PAGE FIVE  DE BA 26B-56765  C O N F I D E N T I A L |
| 2 | BT |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |

Approved: _____   Transmitted _____   Per _____
                                        (Number)      (Time)

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

VZCZCHQ0049 0891747

OO HQ BA MM

DE BRI #0054 0891559

ZNY CCCCC

O 291536Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI  IMMEDIATE

   ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076

FBI BALTIMORE (26B-56765)(SQ10)  IMMEDIATE

FBI MIAMI  IMMEDIATE

BT

ORIGINAL

C O N F I D E N T I A L

ROGER SCOTT SNYDER; SINGH DA SILVA, AKA; ET AL.; THEFT OF PIPER

AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MD.; ITSA; FPC-GCM;

GUN CONTROL ACT OF 1968; ITSP.

   THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY UNLESS OTHERWISE NOTED.

   REBATEL TO FBIHQ AND BRIDGETOWN MARCH 28, 1988; AND BRITEL

MARCH 27, 1988.

   INFORMATION IN REFERENCED BALTIMORE TELETYPE REGARDING

AUSA'S PROSECUTIVE OPINION PASSED TO

b7D -3

read to
3/29/88
sch

b6 -1
b7C -1

26B-56765-9

| SEARCHED | INDEXED |
|----------|---------|
| SERIALIZED | FILED |

MAR 29 1988

FBI — BALTIMORE

b6 -1
b7C -1

SINGH-219

PAGE TWO DE BRI 0054 C O N F I D E N T I A L

CONTACT THIS MORNING WITH [        ] DETERMINED THAT [                    ]

b6 -2,3
b7C -2,3
b7D -1,3

b6 -4
b7C -4
b7D -3

LEADS.

BALTIMORE DIVISION. AT FREDERICK, MD.

BALTIMORE IS REQUESTED TO IDENTIFY AND INTERVIEW [              ]

b6 -3
b7C -3

[        ] FROM INFORMATION PROVIDED BY MIAMI, PER LEAD LISTED BELOW.

MIAMI DIVISION. AT HOMESTEAD, FL., AND MARATHON, FL.

MIAMI IS REQUESTED TO EXPEDITIOUSLY CONTACT ABOVE-NOTED

PAGE THREE DE BRI 0054 C O N F I D E N T I A L

LODGING SPOTS, SECURE REGISTRATION AND TOLL CALL DATA, PROVIDING

SAME TO BALTIMORE DIVISION, ATTENTION SA [          ] FREDERICK RA.

CLASSIFIED BY: 2675; DECLASSIFY ON: OADR.

b6 -1
b7C -1

BT

#0049

NNNN

-->

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☒ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☒ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☒ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

Date  3/29/88

45528
0015

1  FM FBI, BALTIMORE (26B-56765) (SQ. 10) -P-

2  TO DIRECTOR, FBI/PRIORITY/          TITLE: ML50/P

3  LEGAT, BRIDGETOWN (26B-1)/PRIORITY/

4  BT                                   DISK: SQ. 10 Immediate/Priority
                                               (II)

5  CONFIDENTIAL

6  CITE: //3050:2440//

7  PASS: HQ FOR DIVISION SIX, PROPERTY CRIMES UNIT, ROOM 5094,

b6 -1   UNIT CHIEF [                    ]
b7C -1

9  SUBJECT: ROGER SCOTT SNYDER; SINGH DA SILVA, AKA: JOHN

10  MARSHALL GUATTERY; [                                    ]   b6 -4
                                                               b7C -4
11  [                                                    ]

12  [                                    ] THEFT OF PIPER

13  AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA;

14  FPC-GCM; GUN CONTROL ACT OF 1968; ITSP; OO:  BALTIMORE.

15      THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

16  ENTIRETY.

20  JED:ml

Approved: _____   Transmitted _____   Per   b6 -1
                      (Number)   (Time)            b7C -1

26B-56765

SINGH-222

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

^PAGE TWO DE BA 26B-56765 CONFIDENTIAL

RE: LEGAT, BRIDGETOWN TELETYPES TO THE BUREAU, DATED MARCH 25, 1988 AND MARCH 28, 1988.

ON MARCH 28, 1988, AUSA BARBARA SALE, BALTIMORE, MARYLAND, AUTHORIZED THE ISSUANCE OF WARRANTS FOR THE ARRESTS OF[          ]AND DASILVA FOR VIOLATION OF TITLE 18, SECTION 2312, U. S. CODE.  ON MARCH 30, 1988, SA[          ] [          ]FREDERICK RESIDENT AGENCY, WILL APPEAR BEFORE A U. S. MAGISTRATE IN BALTIMORE, MARYLAND FOR THE SIGNING OF THE WARRANT.  NO BOND IS RECOMMENDED.

b6 -1,4
b7C -1,4

REFERENCED MARCH 28, 1988 TELETYPE FROM LEGAT, BRIDGETOWN SUGGESTS THE BALTIMORE CASE AGENT SHOULD CONSIDER TRAVELLING TO ARUBA TO CONDUCT NECESSARY INTERVIEWS AND RECOVER PERTINENT EVIDENCE.  THIS SUGGESTION IS BASED ON THE FACT THAT AIR TRAVEL TO ARUBA IS AS COST EFFECTIVE FROM BALTIMORE - WASHINGTON INTERNATIONAL (BWI) AIRPORT VIA MIAMI AS IT IS FROM BARBADOS VIA MIAMI WITH A LAYOVER. ADDITIONALLY, THE CASE AGENT WILL BE MORE FAMILIAR WITH ALL ASPECTS OF THE CASE AND SUBJECT[          ]HAS EXPRESSED A WILLINGNESS TO COOPERATE AND TALK TO AMERICAN AUTHORITIES. THIS WOULD PRECLUDE HAVING TO SUBPOENA ARUBAN POLICE FORCE

b6 -4
b7C -4

Approved: _____    Transmitted _____    Per _____
                                          (Number)      (Time)

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

^PAGE THREE BA 26A-56765 CONFIDENTIAL

PERSONNEL TO TESTIFY IN THE U. S. COURTS.  ADDITIONALLY, THE

U. S. ATTORNEY'S OFFICE SUPPORTS THE TRAVEL OF THE CASE

AGENT FOR CONTINUITY OF INVESTIGATION REASONS AND FOR THE          b6 -1
                                                                   b7C -1
CHAIN OF CUSTODY OF EVIDENCE.  SAC, BALTIMORE CONCURS WITH

THE PROPOSED TRAVEL OF SA[          ]TO ARUBA AND

SUPPORTS THE PREVIOUSLY ESTABLISHED SUGGESTION OF LEGAT,

BRIDGETOWN.

    FOR THE INFORMATION OF LEGAT, BRIDGETOWN, INVESTIGATION

CONDUCTED PURSUANT TO MARCH 29, 1988 TELCALL AT FREDERICK,          b6 -3
                                                                   b7C -3
MARYLAND AIRPORT FAILED TO IDENTIFY ANYONE NAMED[          ]

[          ]OR TO LOCATE A SILVER PORSCHE 928.

    REQUEST OF THE BUREAU:  BUREAU AUTHORITY IS REQUESTED

TO ALLOW SA[          ]TO TRAVEL TO ARUBA TO CONDUCT          b6 -1
                                                             b7C -1
NECESSARY INVESTIGATION IN THIS MATTER AS SET FORTH.

    BALTIMORE DIVISION AT FREDERICK, MARYLAND:  WILL

CONTINUE INVESTIGATION IN THIS MATTER.

    CLASSIFIED BY 5201: DECLASSIFY ON:  OADR.

BT

Approved: _____    Transmitted _____    Per _____
                                    (Number)    (Time)

SINGH-224

Case 1:07-cv-01064-RJL    Document 14-5    Filed 09/05/2008    Page 46 of 71

DECLASSIFIED BY AUP 9/4/81
ON 10-22-2007

8

VZCZCHQ0053 0891947

PP HQ BA MM WF BOG

DE BRI #0053 0891313

ZNY CCCCC

P 291250Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI PRIORITY

   ATTN: PROPERTY CRIMES UNIT, CID

FBI BALTIMORE PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI WASHINGTON FIELD (INFO) PRIORITY

LEGAL ATTACHE BOGOTA PRIORITY

BT

~~C O N F I D E N T I A L~~

ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL GUATTERY;

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B,

FREDERICK MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

   THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY UNLESS OTHERWISE NOTED.

**INDICES SEARCH**

☑ GENERAL    ☐ FOIMS  is down

☑ NEGATIVE   ☐ NEGATIVE

☐ SEE ATTACHED S.S.  ☐ SEE ATTACHED S.S.

☐ SEARCH BY   ☐ SEARCH BY

ORIGINAL

read To 3/30/88

b6 -1
b7C -1

b6 -4
b7C -4

26B-56765-11

SEARCHED____ INDEXED____
SERIALIZED____ FILED____

MAR 2 9 1988

FBI BALTIMORE

SINGH-225

b6 -1
b7C -1



PAGE TWO DE BRI 0053 C O N F I D E N T I A L

REBRITEL MARCH 27, 1988.

ACCORDING TO THE ⬚                                     b6 -2
                                                       b7C -2
⬚                                                      b7D -1,3

⬚                         A LETTER FOUND IN ⬚         LUGGAGE

REVEALED THAT SUBJECTS WERE ALSO TO TRAVEL TO QUITO, ECUADOR,

FOR ONE OR TWO DAYS. SINCE ⬚         INFORMATION HAS ONLY BEEN

PARTIALLY CORRECT, NO FURTHER ENQUIRIES OR DISSEMINATION SHOULD

BE MADE CONCERNING THE ITINERARY UNTIL A CLEARER VERSION IS

OBTAINED.
                                                       b6 -3.4
     FOR INFORMATION BOGOTA, MIAMI AND WASHINGTON FIELD, THE NAME   b7C -3,4

AND ADDRESS GIVEN BY ⬚     OF THE PRIME MOVER, ONE ⬚

OF FREDERICK, MD., BOTH APPEAR TO BE FICTITIOUS ACCORDING TO

BALTIMORE DIVISION INQUIRIES.

     CLASSIFY BY: 2675: DECLASSIFY ON: OADR.

BT

#0053


NNNN

-->

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☒ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☒ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

Date  3-30-85  608 JL

TC 35/P
0022

1  FM  FBI, BALTIMORE (26B-56765) (SQ 10) (P)

2  TO  DIRECTOR, FBI | Priority |

3  LEGAT, BRIDGETOWN (26B-1) | Priority |

4  BT

5  CONFIDENTIAL

6  CITE:  //3050: 2440//

7  PASS:  PROPERTY CRIMES UNIT, CID, ROOM 5076.

8

9  SUBJECT:  ROGER SCOT SNYDER; AKA ET AL, SHAFTA PIPER

10  AIRCRAFT, SERIAL NUMBER N8006Q, FREDERICK, MARYLAND, ITSA;

11  FPC-GCM; GUN CONTROL ACTIVE 1968; ITSP.

12       THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

13  ENTIRETY.

14       RE BALTIMORE TELETYPE TO BUREAU, LEGAT BRIDGETOWN,

15

16                                        CORRECTION
                                          P. 2

17

18                                        All collections
19                                        made.
                                          RC
20

21  JED:BC

Approved: JVC        Transmitted _____  Per  b6 -1
                              (Number)  (Time)      b7C -1

206-56765-12

U.S. GPO: 1987 - 181-486

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

1  ^PAGE TWO DE BA (26B-56765) CONFIDENTIAL

2  MARCH 29, 1988.

3      MARCH 30, 1988, AUTHORIZED COMPLAINT FILED BEFORE U.S.        b6 -4

4  MAGISTRATE PAUL M. ROSENBURG, DISTRICT OF MARYLAND,              b7C -4

5  BALTIMORE, MARYLAND AND WARRANTS ISSUED CHARGING SUBJECT'S

6  [          ] AND DA SILVA WITH VIOLATION OF TITLE 18, SECTION

7  2312, USC FOR THE TRANSPORTING IN INTERSTATE AND FOREIGN

8  COMMERCE OF CAPTIONED AIRCRAFT.

9      AUSA PETER SEMEL, RECOMMENDS NO BOND BE SET.  AUSA

10  SEMEL IN CONTACT WITH OFFICE OF INTERNATIONAL AFFAIRS,

11  DEPARTMENT OF JUSTICE, WHO STATE THAT WHEN CASE AGENT

12  ARRIVES IN AUROBA HE SHOULD CARRY WITH HIM TWO TEST COPIES

13  OF EACH WARRANT.  TWO TEST COPIES OF EACH WARRANT HAVE BEEN

14  OBTAINED.

15      BALTIMORE IS AWAITING BUREAU AUTHORITY FOR TRAVEL OF SA

        ARUBA                                                       b6 -1

16  [          ] TO AUROBA AS INDICATED IN REFERENCE TELETYPE.      b7C -1

17      CLASSIFIED BY 5201, DECL:OADR.

18  BT

| Approved: _____ | Transmitted _____ | Per _____ |
|---|---|---|
| | (Number)    (Time) | |

☆ U.S. GPO: 1987 — 181-486

SINGH-228

FILES.INCOMING.DAY24-31.198 (#1585)

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

TO: HQ2 @ EMH2, BA @ EMH2, DE @ EMH2,
MM @ EMH2, ME @ EMH2, OC @ EMH2

FROM: WMFO @ EMH1

SUBJECT: 091/0024L PRIORITY

DATE: 31 MAR 88 09:40:25 GMT

CC:

TEXT:

*ORIGINAL*

VZCZCWF0024

PP HQ BA DE MM ME OC

DE WF #0024 0910529

ZNY CCCCC

P 310500Z MAR 88

FM FBI WASHINGTON METROPOLITAN FIELD OFFICE (26B-48866)(P)(C-4)

TO DIRECTOR, FBI (PRIORITY)

FBI, BALTIMORE (PRIORITY)

FBI, DETROIT (PRIORITY)

FBI, MIAMI (PRIORITY)

FBI, MEMPHIS (PRIORITY)

FBI, OKLAHOMA CITY (PRIORITY)

LEGAT, BOGOTA (PRIORITY)(INFO)

LEGAT, BRIDGETOWN (26B-1)(PRIORITY)

BT

C O N F I D E N T I A L (SECTION ONE OF TWO)

ATTN:  PROPERTY CRIMES UNIT CI-D, ROOM 5076; TERRORISM GLOBAL
b6 -4        CI-D, ROOM 4252 (INFO); NI-FPC UNIT, OLIA
b7C -4
CHANGED; ROGER SCOT SNYDER; SINGH DA SILVA, AKA, JOHN MARSHALL

GUATTERY;

INDICES SEARCH
□ GENERAL        ☑ FOIMS
□ NEGATIVE       □ NEGATIVE
□ SEE ATTACHED S.S.   □ SEE ATTACHED S S
□ SEARCH BY      ☑ SEARCH BY *cms*

b6 -1
b7C -1

*read to* 3/31/88 *nlk*

26-567653

C O N F I D E N T I A L

SEARCHED____ INDEXED____
SERIALIZED____ FILED____
MAR 3 1 1988
_____IMORE

*WFO*

b6 -1
b7C -1

SINGH-229

b6 -1
b7C -1



PAGE TWO DE WF 0024 C O N F I D E N T I A L

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS ENTIRETY UNLESS OTHERWISE NOTED.

TITLE MARKED "CHANGED" TO REFLECT THE CORRECT SPELLING OF THE MIDDLE NAME OF SUBJECT ROGER SCOT SNYDER, PREVIOUSLY CARRIED AS "ROGER SCOTT SNYDER."

RE LEGAT, BRIDGETOWN TELETYPES TO DIRECTOR, ET AL, DATED 3/27/88 AND 3/29/88.

FOR THE INFORMATION OF RECEIVING OFFICES,

b6 -2,4
b7C -2,4

TELEPHONE NUMBER          WAS CONTACTED ON 3/28/88 AND ADVISED THAT

ADVISED THAT          WAS CURRENTLY EMPLOYED AT          WHICH IS RIGHT UP THE STREET.          STATED THAT          LAST DAY OF EMPLOYMENT AT          PROVIDED          LAST KNOWN

C O N F I D E N T I A L

SINGH-230

PAGE THREE DE WF 0024 C O N F I D E N T I A L

TELEPHONE NUMBER AS [                    ] DESCRIBED [        ] AS

BEING [                              ] AND AS BEING [    ] YEARS

OLD. [          ] STATED THAT HE KNEW [        ] TO HAVE A PILOT'S

LICENSE AND TO BE TAKING FLYING LESSONS.

b6 -2,4
b7C -2,4

ON 3/28/88, [                                  ]

b6 -2,4
b7C -2,4

[                                  ] TELEPHONE NUMBER

[              ] WAS CONTACTED AND ADVISED THAT [              ]

HAS BEEN EMPLOYED [              ] SINCE [              ]

ADVISED THAT [      ] HAS NOT BEEN SCHEDULED TO WORK FOR TWO WEEKS

AND IS CURRENTLY NOT ON THE SCHEDULE FOR 3/27/88-4/2/88. [      ]

PROVIDED THE FOLLOWING INFORMATION CONCERNING [          ]

SOCIAL SECURITY NUMBER, [          ] DATE OF BIRTH,

b6 -3,4
b7C -3,4

[        ] CURRENT ADDRESS, [                        ]

[        ] PERSON TO CONTACT IN EMERGENCY, [                ]

TELEPHONE NUMBER [          ]

ON 3/29/88 [              ] WAS TELEPHONICALLY CONTACTED BY

THE INTERVIEWING AGENT AT TELEPHONE NUMBER [          ] AFTER

BEING ADVISED AS TO THE IDENTITY OF THE INTERVIEWING AGENT AND

THE NATURE OF THE INTERVIEW, [                ] HOME ADDRESS

b6 -2
b7C -2
b7D -1

C O N F I D E N T I A L

SINGH-231

PAGE FOUR DE WF 0024 C O N F I D E N T I A L

AS

IDENTIFIED

STATED THAT

WAS THE CURRENT RESIDENCE OF

STATED THAT

b6 -2,4
b7C -2,4
b7D -1

ADVISED

DEPARTED ON THIS TRIP.

IDENTIFIED

AS THE ADDRESS OF

b6 -2,4
b7C -2,4
b7D -1

FURTHER ADVISED THAT          DOES HAVE A PASSPORT AND THAT

PLACE OF BIRTH WAS A NON-SPECIFIC LOCATION IN

b6 -2
b7C -2
b7D -1

C O N F I D E N T I A L

PAGE FIVE DE WF 0024 C O N F I D E N T I A L

THE ADDRESS IDENTIFIED AS 488 NORTH BEDFORD STREET, ARLINGTON, VIRGINIA, 22201, HAS NOT BEEN LOCATED TO DATE AND IS DEEMED TO BE A NON-EXISTENT ADDRESS.

ATTEMPTS TO LOCATE AND IDENTIFY SINGH DA SILVA WERE NEGATIVE.

FOR THE INFORMATION OF LEGAT, BRIDGETOWN, THE BAR MANAGERS INTERVIEWED STATED THAT SEVERAL INDIVIDUALS IN THE GEORGETOWN, WASHINGTON, D.C., BAR COMMUNITY BEAR A VARIATION OF THE NAME OF DA SILVA AND THAT A PHOTOGRAPH OF THE INDIVIDUAL WOULD ALMOST POSITIVELY BE IDENTIFIED IF THE INDIVIDUAL WORKED IN THE GEORGETOWN BAR COMMUNITY.

ON 3/29/88, AN INDIVIDUAL IDENTIFYING HIMSELF AS [          ]

b6 -2
b7C -2
b7D -1

[          ] WAS TELEPHONICALLY CONTACTED BY THE WRITING AGENT AT [          ] TELEPHONE [          ] THIS TELEPHONIC CONTACT FOLLOWED TWO ATTEMPTS ON 3/28/88-3/29/88 TO CONTACT [          ] AT ADDRESS [          ] [          ] ADVISED THAT HE HAD BEEN EMPLOYED AT [          ] [          ] PROVIDED HIS DATE OF BIRTH AS [          ] AND STATED THAT HE WAS [   ] YEARS OF AGE. [          ]

C O N F I D E N T I A L

SINGH-233

PAGE SIX DE WF 0024 ~~C O N F I D E N T I A L~~

DESCRIBED HIMSELF AS BEING [          ] POUNDS, WHITE MALE.

[          ] PROVIDED HIS [          ] LICENSE NUMBER AS

[          ] WHICH HE ALSO IDENTIFIED AS BEING HIS SOCIAL

SECURITY NUMBER. [          ] STATED THAT HIS PLACE OF BIRTH WAS

[          ] FURTHER ADVISED [          ]

[          ] WHILE WORKING AT [          ] ABOUT TWO

MONTHS AGO. [          ] STATED [          ]

[          ] ADVISED THAT [          ]

[          ]

AND A COPY OF [          ] STATED THAT HE

[          ] BECAUSE THE ONLY THING HE

CONSIDERED OF IMPORTANCE WAS [          ] WHICH HE

INDICATED WAS IN A [          ] FURTHER ADVISED

THAT HE IS CURRENTLY NOT IN POSSESSION OF A [          ]

[          ]

FOR THE INFORMATION OF RECEIVING OFFICES, THE WEAPON

IDENTIFIED AS LUGAR 9MM TEC-9, SERIAL NUMBER 47104, WAS

~~C O N F I D E N T I A L~~

BT

#0024

NNNN

b6 -2
b7C -2
b7D -1

EXT
FORMS.TEXT HAS 3 DOCUMENTS

INBOX.1 (#1586)

TO: HQ2 @ EMH2, BA @ EMH2, DE @ EMH2,
MM @ EMH2, ME @ EMH2, OC @ EMH2

FROM: WMFO @ EMH1

SUBJECT: 091/0025L PRIORITY

DATE: 31 MAR 88 09:44:11 GMT

CC:

TEXT:

VZCZCWFO025

PP HQ BA DE MM ME OC

DE WF #0025 0910530

ZNY CCCCC

P 310500Z MAR 88

FM FBI WASHINGTON METROPOLITAN FIELD OFFICE (26B-48866)(P)(C-4)

TO DIRECTOR, FBI (PRIORITY)

FBI, BALTIMORE (PRIORITY)

FBI, DETROIT (PRIORITY)

FBI, MIAMI (PRIORITY)

FBI, MEMPHIS (PRIORITY)

FBI, OKLAHOMA CITY (PRIORITY)

LEGAT, BOGOTA (PRIORITY) (INFO)

LEGAT, BRIDGETOWN (26B-1)(PRIORITY)

BT

C O N F I D E N T I A L (SECTION TWO OF TWO)

ATTN:  PROPERTY CASES UNIT, CI-D, ROOM 5076; TERRORISM GLOBAL

       CI-D, ROOM 4252 (INFO); NI-FPC UNIT, OLIA

                                                    b6 -4
CHANGED; [              ] SINGH DA SILVA, AKA, JOHN MARSHALL  b7C -4

GUATTERY; [                                              ]

                C O N F I D E N T I A L

                              SINGH-235

—

PAGE TWO DE WF 0025 C O N F I D E N T I A L

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT,

SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN

CONTROL ACT OF 1968; ITSP.

INDENTIFIED BY NCIC INQUIRY NUMBER 18542, AS A STOLEN GUN.  ORI

WAS IDENTIFIED AS BENTON COUNTY SHERIFF'S OFFICE, CAMDEN,

TENNESSEE.

        FOR THE INFORMATION OF MEMPHIS,

b6 -4
b7C -4
b7D -3

ON THE NIGHT OF 3/23/88, THE CAPTIONED

AIRCRAFT ARRIVED AT ARUBA INTERNATIONAL AIRPORT WITH         AND

DA SILVA ABOARD.

IN CHECKING THE PIPER,

IT WAS OBSERVED THAT THE SERIAL NUMBER HAD BEEN ALTERED FROM

N8007B TO READ N8006Q.  NO FLIGHT PLAN, AIRWORTHINESS

CERTIFICATE, OR OWNERSHIP PAPERS WERE LOCATED IN THE AIRCRAFT.

ALTHOUGH, A MACHINE GUN, TWO PISTOLS, AMMUNITION, WIGS, BODY

ARMOR AND OTHER ITEMS WERE LOCATED.



C O N F I D E N T I A L

PAGE THREE DE WF 0025 C O N F I D E N T I A L

b6 -4
b7C -4

[____] AND DA SILVA WERE ARRESTED, AND ARE BEING HELD ON

LOCAL FIREARMS AND POSSESSION OF STOLEN PROPERTY CHARGES. THE

SEIZED WEAPON, IDENTIFIED SUPRA, WAS IDENTIFIED ALONG WITH A

SMITH AND WESSON MODEL 469-TBM 5493 AND A SMITH AND WESSON MODEL

469, TBM 6181. THESE WEAPONS WERE NOT IDENTIFIED AS BEING

CONTAINED WITHIN THE NCIC SYSTEM BY WMFO.

THE BUREAU OF ALCOHOL, TOBACCO, AND FIREARMS (BATF) IS ALSO

HANDLING TRACES ON THE THREE WEAPONS IDENTIFIED SUPRA.

LEADS: MEMPHIS DIVISION: AT CAMDEN, TENNESSE:

WILL CONTACT BENTON COUNTY SHERIFF'S OFFICE AND SECURE

INFORMATION CONCERNING WEAPON IDENTIFIED AS LUGAR SERIAL 47104

REPORTED TO NCIC AS A STOLEN GUN.

WASHINGTON METROPOLITAN FIELD DIVISION:

AT ARLINGTON, VIRGINIA:

WILL AWAIT INSTRUCTION FROM OFFICE OF ORIGIN REGARDING

FURTHER CONTACTS WITH WOMAN IDENTIFIED AS [____]

[____]

b6 -3,4
b7C -3,4

AT WASHINGTON, D.C.:

1)  WILL POSITIVELY IDENTIFY [____] AND ATTEMPT TO

b6 -3
b7C -3

C O N F I D E N T I A L

PAGE FOUR DE WF 0025 C O N F I D E N T I A L

OBTAIN A PHOTOGRAPH FOR THE USE OF THE ORIGINATING OFFICE.

b6 -3
b7C -3

    2)  WMFO WILL PROVIDE THE RESULT OF PASSPORT CHECK ON [        ]

[        ] WHEN AVAILABLE.

    3)  WMFO WILL PROVIDE POSSIBLE INDICES HITS ON MULTIPLE

SUBJECTS WHEN COMPLETE.

    4)  WMFO WILL SUPPLY RESULTS OF TRACE BY BATF WHEN COMPLETE.

    C BY 9174, DECL: OADR.

BT

#0025

NNNN

SINGH-238

OPCA-20 (12-3-96)

XXXXXXX
XXXXXXX
XXXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| <u>Section 552</u> | | <u>Section 552a</u> |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_10_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
  SINGH 239 through SINGH 248

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

FORMS.TEXT HAS 1 DOCUMENT

INBOX.6 (#1719)

ORIGINAL

TEXT:

VZCZCMMO032

PP HQ BA BRI

DE MM #0032 0922229

ZNR UUUUU

P 012329Z APR 88

FM MIAMI (26B-46386) (HRA) (P)

TO DIRECTOR, FBI PRIORITY

BALTIMORE (26B-56765) (SQ 10) PRIORITY

LEGAT, BRIDGETOWN (26B-1) PRIORITY

BT

UNCLAS

ATTENTION BUREAU/PROPERTY CRIMES UNIT (CID)

ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL GUATTERY;

ET AL; THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B, FREDRICK,

MARYLAND; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

    RE LEGAT, BRIDGETOWN TELETYPES TO THE BUREAU, MARCH 27,

1988, AND MARCH 29, 1988.

    ON APRIL 1, 1988, [                    ] HOLIDAY INN OF

HOMESTEAD, 990 NORTH HOMESTEAD BOULEVARD, HOMESTEAD, FLORIDA, WAS

CONTACTED AND ADVISED A CHECK OF HIS HOTEL'S REGISTRATION RECORDS

REFLECTED THE FOLLOWING:

b6 -2
b7C -2

26-56765-14

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

APR 2 1988

FBI   BALTIMORE

b6 -1
b7C -1

PAGE TWO DE MM 0032 UNCLAS

JOHN GUATTERY CHECKED INTO THE HOTEL AT 7:17 PM ON MARCH 21, 1988.  AT THE TIME HE CHECKED IN, HE WAS DRIVING A BUICK AUTOMOBILE, FLORIDA TAG YBD490, AND LISTED A HOME ADDRESS OF 98 NORTH BEDFORD, ARLINGTON, VIRGINIA.  WHILE THE SECOND OCCUPANT IS NOT IDENTIFIED, GUATTERY RESERVED THE ROOM FOR TWO ADULTS.  HE WAS GIVEN ROOM 408 AND PAID $68.82 AT THE TIME HE CHECKED IN. WHILE IT IS NOT KNOWN WHAT TIME HE CHECKED OUT OF ROOM 408, IT IS KNOWN THAT IT WAS PROBABLY BETWEEN THE HOURS OF 9:00 A.M. AND 11:00 A.M. ON MARCH 22, 1988.  A REVIEW OF THE TOLL RECORDS FROM THE HOTEL INDICATES GUATTERY MADE THREE LONG DISTANCES TELEPHONE CALLS WHICH HE DID NOT PAY FOR WHEN HE LEFT THE HOTEL.  THESE TELEPHONE CALLS ARE AS FOLLOWS:

MARCH 21, 1988, 7:23 P.M. (3 MINUTES IN DURATION), $3.09 - 202-232-6911; MARCH 21, 1988, 7:21 P.M. (2 MINUTES IN DURATION) $2.81 CHARGE, 703-525-1837; MARCH 22, 1988, 7:20 A.M. (5 MINUTES IN DURATION), $3.29 CHARGE, 703-525-1837.

MIAMI ATTEMPTED TO OBTAIN THE REGISTRATION OF THE AUTOMOBILE, GUATTERY WAS DRIVING WHEN HE CHECKED INTO THE HOTEL, BUT COMPUTER CHECKS INDICATE THE TAG RECORD IS NOT FOUND.  MIAMI DIVISION IS CURRENTLY ATTEMPTING TO HAVE THIS REGISTRATION HAND

PAGE THREE DE MM 0032 UNCLAS

SEARCHED AT TALLAHASSEE, FLORIDA.

MIAMI WILL CONTINUE ITS EFFORTS TO LOCATE ANY RECORD OF                    b6 -4

[          ] AIRCRAFT LANDING AT HOMESTEAD GENERAL AIRPORT OR TAMIAMI       b7C -4

GENERAL AIRPORT.  ANY INFORMATION LOCATED CONCERNING THE AIRCRAFT

ARRIVING AT EITHER OF THESE AIRPORTS WILL BE IMMEDIATELY RELAYED

TO THE BALTIMORE DIVISION.                                                 b6 -4,2
                                                                          b7C -4,2

IN THE EVENT BALTIMORE REQUIRES RECORDS FROM THE STAY OF

[          ] AND SILA AT THE HOLIDAY INN OF HOMESTEAD, [          ]

REQUEST THAT A SUBPOENA BE FORWARDED TO THE MIAMI DIVISION TO BE

SERVED ON [                                          ] FOR THE HOTEL'S

[          ]

INVESTIGATION CONTINUING AT MIAMI.

BT

#0032

NNNN

SINGH-251

FD-515 (Rev. 6-6-85)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/85)
(Submit within 30 days from date of accomplishment)

TO:     DIRECTOR, FBI

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAU/STP/CLS

Date _____ 4/1/88

FROM:   SAC, BALTIMORE

Bureau File Number

SUBJECT:
ROGER SCOT SNYDER;
SINGH DA SILVA, ET AL;
THEFT OF PIPER AIRCRAFT
SERIAL NUMBER N8006Q,
FROM FREDERICK, MD
3/18-19/88
ITSA, ITSP; OO: BALTIMORE

Field Office File Number
**26B-56765**
2440
Squad or RA Num.

b6 -1
b7C -1

Agent's Social Security No.

☐ X if a joint operation with:

☐ X if case involves
corruption of a public
official (Federal, State or
Local).

(identity of other agency)

**Investigative Assistance or Technique Used**

A. **Preliminary Judicial Process** (Number of subjects)   Complaints: 2   Informations   Indictments

**Remarks:** (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

b6 -4
b7C -4

The Aruban Customs Force, Netherlands Antilles, arrested SNYDER and
DA SILVA with stolen aircraft on 3/23/88 at Aruba Airport.  Aircraft had
machine gun, two pistols, and body armor inside and tail number altered.
On 3/30/88, warrants for both subjects were obtained from U. S. Magistrate,
Baltimore, Maryland, charging them with violation of Title 18, U. S. Code,
Section 2312.  SNYDER is a white male, date of birth: _____
SSAN _____  DA SILVA is between 25-30 years old, possibly
born in Singapore and refuses to give true identity.  Subjects not  known
members of OC groups.     STAT:  CREDIT AGENT WITH TWO COMPLAINTS.

2 - Bureau
2 - Field Office
See codes on reverse side.

(26B-56765) JED:glwm (4)
(1-66-27 Sub A)

SINGH-252

| | Property Type Codes* | | Potential Economic Loss Prevented (PELP) Type Codes* |
| :-- | :-- | :-- | :-- |

| Code No | Description | Code No | Description |
| :-- | :-- | :-- | :-- |
| 1 | Cash (U.S. and foreign currency) | 22 | Counterfeit Stocks, Bonds, Currency or Negotiable Instruments |
| 2 | Stock, Bonds or Negotiable Instruments (checks, travelers checks, money orders, certificates of deposit, etc) | 23 | Counterfeit or Pirated Sound Recordings or Motion Pictures |
| 3 | General Retail Merchandise (clothing, food, liquor, cigarettes, TVs, etc) | 24 | Bank Theft Scheme Aborted |
| 4 | Vehicles (autos, trucks, tractors, trailers, campers, motorcycles, etc) | 25 | Ransom, Extortion or Bribe Demand Aborted |
| 5 | Heavy Machinery & Equipment (heavy equipment, computers, etc) | 26 | Theft from, or Fraud Against, Government Scheme Aborted |
| 6 | Bulk Materials (grain, fuel, raw materials, metals, wire, etc) | 27 | Commercial or Industrial Theft Scheme Aborted |
| 7 | Jewelry (including unset precious and semiprecious stones) | 30 | All Other Potential Economic Loss Prevented (not falling in any category above) |
| 8 | Precious Metals (gold, silver, silverware, platinum, etc) | | |
| 9 | Art, Antiques or Rare Collections | | |
| 11 | Weapons or Explosives | | |
| 20 | All Other Recoveries (not falling in any category above) | | |

*Except for cash, the Remarks section must contain an explanation of the computation of the recovery value or loss prevented.  An explanation airtel must accompany this report if the recovery is $1 million or more, or if the PELP is $5 million or more.

---

### Subject Description Codes*
### - Enter Description Code Only When Reporting a Conviction -

**Organized Crime Subjects:**
- 1A Boss, Underboss or Consigliere
- 1B Capodecina or Soldier
- 1C Possible LCN Member or Associate
- 1D OC Subject Other Than LCN

**Known Criminals (Other Than OC Members):**
- 2A Top Ten or I.O. Fugitive
- 2B Top Thief
- 2C Top Con Man

**Foreign Nationals:**
- 3A Legal Alien
- 3B Illegal Alien
- 3C Foreign Official Without Diplomatic Immunity
- 3D U.N. Employee Without Diplomatic Immunity
- 3E Foreign Students
- 3F All Others

**Terrorists:**
- 4A Known Member of a Terrorist Organization
- 4B Possible Terrorist Member or Sympathizer

**Union Members:**
- 5A International or National Officer
- 5B Local Officer
- 5C Union Employee

**Government Officials Or Employees:**

| Federal | State | Local |
| :-- | :-- | :-- |
| 6A Presidential Appointee | 6J Governor | 6R Mayor |
| 6B U.S. Senator | 6K Lt. Governor | |
| 6C U.S. Representative | 6L Legislator | 6S Legislator |
| 6D Judge | 6M Judge | 6T Judge |
| 6E Prosecutor | 6N Prosecutor | 6U Prosecutor |
| 6F Law Enforcement Officer | 6P Law Enforcement Officer | 6V Law Enforcement Officer |
| 6G Fed Empl - GS 13 & above | 6Q All Others - State | 6W All Others - Local |
| 6H Fed Empl - GS 12 & below | | |

**Bank Officers or Employees:**
- 7A Bank Officer
- 7B Bank Employee

**All Others:**
- 8A All Other Subjects (not fitting above categories)

*If a subject can be classified in more than one of the categories, select the most appropriate in the circumstance.

---

### Instructions

**Subject Priorities for FBI Arrest or Locates:**
- A - Subject wanted for crimes of violence (i.e. murder, manslaughter, forcible rape, robbery and aggravated assault) or convicted of such crimes in the past five years.
- B - Subjects wanted for crimes involving the loss or destruction of property valued in excess of $25,000 or convicted of such crimes in the past five years.
- C - All others

**Claiming Non-Federal Arrests, Summonses, Recoveries or Convictions:**
It is permissible to claim a local arrest, summons, recovery or conviction if the FBI significantly contributed to the accomplishment.  A succinct narrative setting forth the basis for the claim must accompany this report.  When claiming a local recovery, enter the word "LOCAL" to the right of the amount.  Enter "LF" in the "In-Jail" block for all life sentences and "CP" for capital punishment sentences.

**Reporting Convictions:**
Convictions should not be reported until the sentence has been issued.  There are two exceptions to this rule.  The conviction information can be submitted by itself if:
1. The subject becomes a fugitive after conviction but prior to sentencing.
2. The subject dies after conviction but prior to sentencing.
An explanation is required in the Remarks section for either of the above exceptions.

**Rule 20 Situations:**
The field office that obtained the process (normally the office of origin) is the office that should claim the conviction, not the office where the subject enters the plea in cases involving Rule 20 of the Federal Rules of Criminal Procedures.

**Investigative Assistance or Techniques (IA/Ts) Used:**
- Since more than one IA/T could have contributed to the accomplishment, each IA/T used must be rated.
- The IA/T used must be rated each time an accomplishment is claimed.  (For example - if informant information was the basis for a complaint, an arrest, a recovery and a conviction and if separate FD-515s are submitted for each of the aforementioned accomplishments, the "Informant Information" block must be rated on each FD-515 even if it was the same information that contributed to all the accomplishments.)

**Race Codes:**
C = Chinese; I = Indian/American; J = Japanese; N = Negro; O = All other; U = Unknown; W = White

---

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAU/STP/CLS

FORMS.TEXT HAS 1 DOCUMENT

INBOX.2 (#513)

TEXT:
VZCZCHQ0089

PP BA

DE HQ #0089 0920157                                    ORIGINAL

ZNY EEEEE

P 011641Z APR 88

FM DIRECTOR FBI

TO FBI BALTIMORE (26B - 56765) (SQ. 10) PRIORITY

LEGAT, BRIDGETOWN (26B - 1) PRIORITY

BT

UNCLAS E F T O                                          b6 -4
                                                        b7C -4
ROBERT SCOTT SNYDER; SINGH DA SILVA, AKA; JOHN MARSHALL

GUATTERY;

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER

N8007B, FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN CONTROL ACT OF

1968; ITSP; OO: BALTIMORE.

    REBATEL TO BUREAU DATED MARCH 29, 1988 AND TELCAL TO THE

FREDERICK RESIDENT AGENCY ON MARCH 30, 1988.

    PER REFERENCED COMMUNICATION, SA                     OF THE      b6 -1
                                                                   b7C -1
FREDERICK RESIDENT AGENCY, BALTIMORE DIVISION, IS AUTHORIZED TO

TRAVEL TO ARUBA TO CONDUCT INTERVIEWS OF CAPTIONED SUBJECTS AND



26-56765-16

| SEARCHED | INDEXED |
|----------|---------|
| SERIALIZED | FILED |

APR 5 1988

FBI - BALTIMORE

SINGH-254                          b6 -1
                                   b7C -1

PAGE TWO DE HQ 0089 UNCLAS E F T O

b7D -3

OBTAIN OTHER PERTINENT EVIDENCE FROM THE [ ]

BALTIMORE ADVISE FBIHQ, ATTENTION: GENERAL PROPERTY CRIMES UNIT

OF THE RESULTS OF YOUR CONTACTS IN ARUBA.

BT

#0089

NNNN

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  | Section 552 |  | | Section 552a |
|---|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | | ☐ (k)(6) |
| ☐ (b)(6) | | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

/ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____

☑ The following number is to be used for reference regarding these pages: _____
### SINGH - 256

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription     3/31/88

b6 -2
b7C -2

_____ Frederick Aviation, Frederick
Municipal Airport, Frederick, Md. (662-8156, 800-545-9393), advised
that the Piper Saratoga, bearing tail number N8006 and owned by
_____ of Catoctin Capital Corp., was last rented on
Thursday, March 17, 1988, and returned to its parking place near
Frederick Aviation.  The aircraft was not utilized on Friday or
Saturday, March 18-19, 1988, and was discovered missing during the
morning of March 20, 1988. _____ believes that the aircraft
was there during the morning and afternoon of Friday, March 18,
1988, but indicated it could have been stolen on the evening of the
18th or again on the evening of the 19th.  Because the airport is
not guarded, and anyone has access to the airport and/or the
aircraft, the most logical time to steal an aircraft is during the
evening.

b6 -1
b7C -1

Investigation on   3/20/88           at   Frederick, Md.           File # BA 26A-56765 -1 ＸＸＰ

by _____ SA _____ ꞵth           Date dictated   3/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

SINGH 257

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_____  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

<u>Section 552</u>                                                    <u>Section 552a</u>

☐  (b)(1)                    ☐  (b)(7)(A)                    ☐  (d)(5)

☐  (b)(2)                    ☐  (b)(7)(B)                    ☐  (j)(2)

☐  (b)(3)                    ☐  (b)(7)(C)                    ☐  (k)(1)

_____          ☐  (b)(7)(D)                    ☐  (k)(2)

_____          ☐  (b)(7)(E)                    ☐  (k)(3)

_____          ☐  (b)(7)(F)                    ☐  (k)(4)

☐  (b)(4)                    ☐  (b)(8)                       ☐  (k)(5)

☐  (b)(5)                    ☐  (b)(9)                       ☐  (k)(6)

☐  (b)(6)                                                    ☐  (k)(7)

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_3_  Pages were not considered for release as they are duplicative

_____  Page(s) withheld for the following reason(s): _____

_____

☐  The following number is to be used for reference regarding these pages:
*SINGH 258 through SINGH 260*

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

TEXT.
FORMS.TEXT HAS 1 DOCUMENT

INBOX.1 (#562)

TEXT:

VZCZCMM0020

PP HQ BA BRI

DE MM #0020 0962252

ZNR UUUUU

P 052252Z APR 88

FM MIAMI (26B-46386) (HRA) (P)

TO DIRECTOR   PRIORITY

BALTIMORE   PRIORITY

LEGAT BRIDGETOWN (26B-1)   PRIORITY

BT

UNCLAS

ATTENTION DIRECTOR/PROPERTY CRIMES UNIT - CID

ROGER SCOTT SNYDER; SINGH-DASILVA, AKA; ET AL; THEFT OF PIPER

AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC-

GCM; GUN CONTROL ACT OF 1968; ITSP.

RE MIAMI TELETYPE TO THE BUREAU, APRIL 1, 1988.

ON APRIL 4, 1988[                    ]ROBERTS AIR

SOUTH, INCORPORATED, HOMESTEAD GENERAL AIRPORT, WAS CONTACTED.

[                ]ADVISED THAT A PIPER SARATOGA AIRCRAFT, TAIL NUMBER

N8007B WAS SERVICED AT HIS FACILITY ON MARCH 22, 1988.  AT THE

TIME THIS SERVICING OCCURRED[                    ]PLACED

INDICES SEARCH

☐ GENERAL          ☑ FOIMS

☐ NEGATIVE          ☐ NEGATIVE

☐ SEE ATTACHED S.S   ☐ SEE ATTACHED S S

☐ SEARCH BY          ☐ SEARCH BY

ORIGINAL

b6 -2,3
b7C -2,3

26-56765-20



SINGH-261

PAGE TWO DE MM 0020 UNCLAS

28.4 GALLONS OF AVIATION FUEL AND THREE QUARTS OF OIL IN THE

PLANE. [ ] ADVISED THAT TWO INDIVIDUALS WERE INSIDE THE

AIRCRAFT AND NEITHER INDIVIDUAL IDENTIFIED HIMSELF TO [ ]    b6 -2
                                                              b7C -2
[ ] ADVISED THAT WHEN HE ASKED HOW TO FILL OUT THE FUEL RECEIPT

THE INDIVIDUALS TOLD HIM TO MAKE IT OUT TO CASH. [ ] ADVISED

HE SERVICED THE AIRCRAFT AT APPROXIMATELY 9:00 A.M., ON MARCH 22,

1988, AND THE TWO INDIVIDUALS IMMEDIATELY LEFT IN THE AIRCRAFT.

PRIOR TO THEIR DEPARTURE THEY TOLD [ ] THAT THEY WERE GOING

"WHERE IT'S COLD." [ ] DESCRIBED THE INDIVIDUALS IN THE

AIRCRAFT AS FOLLOWS:

    1.   WHITE MALE, MID-TWENTIES, 5'7" TALL, 150 POUNDS, SANDY-

COLOR HAIR.

    2.   WHITE MALE, MID-TWENTIES, 5'7", 150 POUNDS, LONG BLACK

HAIR, WEARING BAGGY BLACK PANTS, LIGHT-COLORED SHIRT AND CARRYING

A SMALL ZIPPER-TYPE POUCH.

[ ] ADVISED THAT HE HAD SUBSEQUENTLY CONDUCTED A    b6 -2
                                                    b7C -2
CHECK OF TAIL NUMBERS GIVEN TO HIM BY HOMESTEAD RA AGENTS. HE

THOUGHT IT ODD THAT TAIL NUMBER N8006Q AND N8007B ARE BOTH ON

PIPER SARATOGA AIRCRAFT; IN ADDITION, THE SERIAL NUMBER LISTED

FOR THE AIRCRAFT IN QUESTION IS ONLY ONE DIGIT OFF.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH,                           )
                                        )
                                        )
                                        )
                                        )
            Plaintiff,                  )
                                        ) Civil Action No. 07-01064 (RJL)
      v.                                )
                                        )
FEDERAL BUREAU OF INVESTIGATION,        )
                                        )
            Defendant.                  )
                                        )

# EXHIBIT B

# (PAGES 263-410)

PAGE THREE DE MM 0020 UNCLAS

[                    ] ADVISED THAT HIS SEARCH ON N8007B CAME BACK TO A

PIPER SARATOGA AIRCRAFT, SERIAL NUMBER 32R8213017, REGISTERED TO

SPECIAL SERVICE SYSTEM, 10514 EAST PINE, TULSA, OKLAHOMA; N8006Q       b6 -2

CAME BACK TO PIPER SARATOGA AIRCRAFT, SERIAL NUMBER 32R8213016,        b7C -2

REGISTERED TO CATOCTIN CAPITOL CORPORATION, 2209 REGINA DRIVE,

CLARKSBURG, MARYLAND. [              ] ADVISED HE MENTIONED THIS BECAUSE

THE SERIAL NUMBERS WERE ONLY ONE DIGIT OFF FROM THOSE TAIL

NUMBERS OF THE FBI INQUIRY.

EFFORTS BY THE MIAMI DIVISION TO IDENTIFY THE REGISTERED       b6 -4

OWNER OF THE AUTOMOBILE BEING DRIVEN BY [          ] AND DASILVA WHILE    b7C -4

THEY STAYED IN HOMESTEAD IS CONTINUING.  THE HAND SEARCH OF

REGISTRATION RECORDS HAS NOT YET BEEN COMPLETED.  UPON COMPLETION

OF THE HAND SEARCH, IF POSSIBLE, MIAMI DIVISION WILL LOCATE AND

INTERVIEW THE REGISTERED OWNER OF THE AUTOMOBILE CONCERNING HIS

DEALINGS WITH CAPTIONED SUBJECTS.

INVESTIGATION CONTINUING AT MIAMI.

BT

#0020

NNNN

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

TEXT
FORMS.TEXT HAS 1 DOCUMENT

INBOX.1 (#568)

TEXT:

VZCZCMM0003

RR HQ BA

DE MM #0003 0970402

ZNR UUUUU

R 060402Z APR 88

FM MIAMI (26B-46386) (HRA) (P)

TO DIRECTOR ROUTINE

BALTIMORE (26B-56765) (SQ. 10) ROUTINE

BT

UNCLAS

ATTENTION BUREAU/PROPERTY CRIMES UNIT, CID

ROGER SCOTT SNYDER; SINGH DA SILVA, AKA; ET AL; THEFT OF PIPER

AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA;

FPC-GCM; GUN CONTROL ACT 1968; ITSP.

RE MIAMI AIRTEL TO THE BUREAU, APRIL 5, 1988.

RESULTS OF A HAND SEARCH CONDUCTED ON DIVISION OF MOTOR

VEHICLE (DMV) RECORDS AT TALLAHASSEE, FLORIDA, HAS PRODUCED THE

FOLLOWING INFORMATION CONCERNING FLORIDA TAG [        ] WHICH WAS

BELIEVED TO BE THE TAG ON THE VEHICLE DRIVEN BY CAPTIONED

INDIVIDUALS WHEN THEY STAYED OVERNIGHT AT HOLIDAY INN IN

HOMESTEAD, FLORIDA:

SINGH-264

b6 -3
b7C -3

b6 -1
b7C -1

26B-56765-21



PAGE TWO DE MM 0003 UNCLAS

FLORIDA TAG [        ] LICENSED YEAR 1983, REGISTERED TO A          b6 -3
                                                                    b7C -3
1978 TOYOTA, 2-DOOR, VIN NUMBER [                              ]

MALE, DOB: [                              ]

[                    ] MIAMI INDICES, NCIC/FCIC ARE NEGATIVE

CONCERNING [              ]

    AS NO ONE CAN CONFIRM THE ABOVE TAG NUMBER WAS ACTUALLY ON

THE AUTOMOBILE DRIVEN BY CAPTIONED SUBJECT, THE LAST LICENSED

YEAR FOR THIS TAG IS 1983, AND DUE TO FACT IT APPEARS REGISTERED

TO A 78 TOYOTA RATHER THAN A BUICK, MIAMI IS LEAVING TO THE

DISCRETION OF BALTIMORE DIVISION ANY LEADS TO HAVE TAMPA DIVISION

CONTACT AND INTERVIEW [                ]
                                                 b6 -3
    INVESTIGATION CONTINUES AT MARATHON, FLORIDA.     b7C -3

BT

#0003


NNNN

TEXT
FORMS.TEXT HAS 1 DOCUMENT

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 10-22-2007

INBOX.1 (#715)

TEXT:

VZCZCME0003

PP HQ WMFO BA DE MM OC BOGOTA BRDIGETOWN

DE ME #0003 0980018

ZNY CCCCC

P 070215Z APR 88

FM  MEMPHIS  (26B-R-27)(RUC)

TO  DIRECTOR     PRIORITY

WMFO  (26B-4866)  (C-4)  PRIORITY

BALTIMORE   (INFO) PRIORITY

DETROIT   (INFO)  PRIORITY

MIAMI  (INFO)  PRIORITY

OKLAHOMA CITY  (INFO) PRIORITY

LEGAT BOGOTA   (INFO)  PRIORITY

LEGAT BRIDGETOWN (26B-1)  PRIORITY

BT

~~C O N F I D E N T I A L~~

ATTN:  PROPERTY CRIMES UNIT - CI-D, ROOM 5076; TERRORISM GLOBAL

CI-D, ROOM 4252 (INFO); NI-FTC UNIT, OLIA.

ROGER SCOT SNYDER; SINGH DA SILVA, AKA JOHNSON MARSHALL GUATTERY;    b6 -3,4
                                              See Below                b7C -3,4

INDICES SEARCH

GENERAL ☑        FOIMS ☑

NEGATIVE ☐        NEGATIVE ☐

SEE ATTACHED S.S ☐    SEE ATTACHED S S ☐

SEARCH BY ☐        SEARCH BY ☑

ORIGINAL

26 - 56765

26 - 56765 - 22

Nce.

26 - 56765

SEARCHED ___ INDEXED ___
SERIALIZED ___ FILED ___

APR 7 1988

MORE

SINGH-266

b6 -1
b7C -

PAGE TWO DE ME 0003 C O N F I D E N T I A L

[ ] THEFT OF PIPER AIRCRAFT; SERIAL NUMBER N8007B    b6 -4

FREDERICK, MARYLAND, ITSA; FTC-GCM; GUN CONTOL ACT OF 1968; ITSP.    b7C -4

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY.

RE WASHINGTON METROPOLITAN FIELD OFFICE TEL TO DIRECTOR

MARCH 31, 1988.

WEAPON IDENTIFIED IN RE TEL AS A LUGER 9 MM, MODEL TEC-9,

SERIAL NUMBER 47104, REPORTED AS STOLEN BY BENTON COUNTY,

TENNESSEE SHERIFF'S OFFICE, IS AN NCIC HIT BASED ON A SERIAL

NUMBER ONLY.

[ ] BENTON COUNTY SHERIFF'S OFFICE,    b6 -6

ADVISED THAT HIS DEPARTMENT ENTERED ON APRIL 9, 1984, A .12 GAUGE    b7C -6

BROWNING SHOTGUN, SERIAL NUMBER 47104, WHICH APPARENTLY EXPLAINS

THE HIT BASED ON AN INQUIRY OF THE REFERENCED LUGER.

C BY 9993; DECL: OADR.

BT

#0003

NNNN

 

**Memorandum**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

To    :    SAC, BALTIMORE (26B-56765)(SQ.10)(P) Date 4/8/88

From  :    SA [_____]                           b6 -1
                                                        b7C -1

Subject : [_____]

ET AL
ITSA
OO:BA

        On April 8, 1988, AUSA PETER S. SEMEL, District      b6 -4,6
of Maryland, advised he had spoken with [_____]         b7C -4,6
[_____] Headquarters, USM, Mc Lean, Virginia, FTS 285-1251.
[_____] advised that the Marshal Service would make
the necessary arrangements to remove from Aruba to the U.S.,
subjects [_____] and DASILVA.  The Marshal Service will also
be responsible for contacting the Aruba prosecutor who has
been reviewing that country's case concerning the subjects.

        On April 6, 1988, SA [_____] calling from       b6 -1,4
Aruba advised that the prosecutor in Aruba had decided to    b7C -1,4
expel [_____] and DASILVA without pursuing criminally any
violations of Aruban law.

        On April 8, 1988, AUSA SEMEL advised at approximately
10:30 AM, that he had spoken with SA [_____] in Aruba advising
him that the U.S. Marshal Service would arrange for removal     b6 -1
of the subjects from Aruba.                                     b7C -1

(2) Baltimore
JLZ/slk
(2)



SINGH-268

                                                        b6 -1
                                                        b7C -1

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

<table>
<tr><th colspan="2">Section 552</th><th>Section 552a</th></tr>
<tr><td>☐ (b)(1)</td><td>☐ (b)(7)(A)</td><td>☐ (d)(5)</td></tr>
<tr><td>☐ (b)(2)</td><td>☐ (b)(7)(B)</td><td>☐ (j)(2)</td></tr>
<tr><td>☐ (b)(3)</td><td>☐ (b)(7)(C)</td><td>☐ (k)(1)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(D)</td><td>☐ (k)(2)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(E)</td><td>☐ (k)(3)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(F)</td><td>☐ (k)(4)</td></tr>
<tr><td>☐ (b)(4)</td><td>☐ (b)(8)</td><td>☐ (k)(5)</td></tr>
<tr><td>☐ (b)(5)</td><td>☐ (b)(9)</td><td>☐ (k)(6)</td></tr>
<tr><td>☐ (b)(6)</td><td></td><td>☐ (k)(7)</td></tr>
</table>

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__3__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
    _SINGH 269 through SINGH 271_

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOI

RD-36 (Rev. 8-29-85)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date __4/12/88__

1  TO       : DIRECTOR, FBI                          b6 -1
              (Attn:                                 b7C -1
2              Language Services Unit,
               Room 3505)
3
   FROM     : SAC, BALTIMORE (26B-56765) (SQ. 10) -P-
4
   SUBJECT: ROGER SCOT SNYDER;
5           JOHN MARSHALL GUATTERY, aka
            Singh DaSilva;
6           THEFT OF PIPER SARATOGA SINGLE ENGINE AIRCRAFT,
            TAIL NUMBER N8006Q, FROM FREDERICK AIRPORT,
7           FREDERICK, MARYLAND
            3/18-19/88;
8           ITSA; FPC-GCM; ITSP
            OO:  BALTIMORE                            b6 -1
9                                                     b7C -1

10         Re:  Baltimore telcall of SA [        ] Baltimore
    Division, Frederick Resident Agency, to [        ] FBIHQ, on
11  4/12/88.

12         Enclosed for the Bureau are ten xerox copies of documents
    written in Dutch.  Total page count is 18.

13         For the information of the Bureau, the enclosed copies   b6 -4
14  are items turned over to the FBI by the [        ] On          b7C -4
    3/22/88, [        ] and GUATTERY were arrested shortly after landing b7D -3
15  on the Island of Aruba.  They had two Smith and Wesson Model 469
    pistols, a Tech 9 semi-automatic pistol, body armor, ammunition,
16  ammunition clips, and a wig.  Also located in GUATTERY's bag was
    $28,700 in United States currency.
17
           The official language of the Island of Aruba is Dutch.
18

19
20  3 - Bureau (Encl. 10)
    ②- Baltimore
21  JED:ml
    (5)                    b6 -1
                           b7C -1
```
If you
haven't already check their
suggest you
W/FBIHQ on this, Their
backlog is usually
tremendous.
```
                                              b6 -1
                                              b7C -1

BA 26B-56765

REQUEST OF THE BUREAU:

The Language Services Unit is requested to expeditiously translate the enclosed items so the United States Attorney's Office in Baltimore, Maryland can be apprised.  Subjects are being expelled from Aruba and are named in ITSA warrants in the Baltimore Division.

LEAD:

BALTIMORE DIVISION

AT FREDERICK, MARYLAND.  Will continue investigation.

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

*2* Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☑ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: *SINGH 274 through SINGH 275*

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X      for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

**Routing Slip**
0-7 (Rev. 10-9-84)

SO) 0

(Copies to Unless Checked)

TO: SAC,

☐ Albany
☐ Albuquerque
☐ Alexandria
☐ Anchorage
☐ Atlanta
☑ Baltimore
☐ Birmingham
☐ Boston
☐ Buffalo
☐ Butte
☐ Charlotte
☐ Chicago
☐ Cincinnati
☐ Cleveland
☐ Columbia
☐ Dallas
☐ Denver
☐ Detroit
☐ El Paso
☐ Honolulu
☐ ASAC, Brooklyn-Queens (MRA)

☐ Houston
☐ Indianapolis
☐ Jackson
☐ Jacksonville
☐ Kansas City
☐ Knoxville
☐ Las Vegas
☐ Little Rock
☐ Los Angeles
☐ Louisville
☐ Memphis
☐ Miami
☐ Milwaukee
☐ Minneapolis
☐ Mobile
☐ Newark
☐ New Haven
☐ New Orleans
☐ New York City
☐ Norfolk

☐ Oklahoma City
☐ Omaha
☐ Philadelphia
☐ Phoenix
☐ Pittsburgh
☐ Portland
☐ Richmond
☐ Sacramento
☐ St. Louis
☐ Salt Lake City
☐ San Antonio
☐ San Diego
☐ San Francisco
☐ San Juan
☐ Savannah
☐ Seattle
☐ Springfield
☐ Tampa
☐ Washington Field
☐ Quantico

TO: LEGAT,

☐ Bern
☐ Bogota
☐ Bonn
☐ Canberra
☐ Hong Kong
☐ London
☐ Mexico City
☐ Montevideo
☐ Ottawa
☐ Panama City
☐ Paris
☐ Rome
☐ Tokyo

4/6/88
Date

RE: SUBJECT: AIR INTELLIGENCE SA-88-0039
GFAP-88-9999.

"Air Intelligence"
26-0-2312

"SEARCHED THROUGH
AUTOMATED INDICES" *MB*

Retention          For appropriate
☑ For information   ☐ optional   ☐ action   ☐ Surep, by _____

☐ The enclosed is for your information.  If used in a future report, ☐ conceal all sources,
  ☐ paraphrase contents.

☐ Enclosed are corrected pages from report of SA _____
  dated _____

**Remarks:**

All build ups and break downs negative
unless shown otherwise.

2eB-56765-27

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

Mar 11 1987

b6 -1
b7C -1

Enc.
Bufile
Urfile

SINGH-276

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

AO 442 (Rev. 5/85) Warrant for Arrest



# United States District Court

_____ DISTRICT OF ___MARYLAND_____

UNITED STATES OF AMERICA
V.

## WARRANT FOR ARREST

Singh DaSilva

CASE NUMBER:

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___Singh DaSilva_____
                                                             Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

☐ Indictment   ☐ Information   ☒ Complaint   ☐ Order of court   ☐ Violation Notice   ☐ Probation Violation Petition

charging him or her with (brief description of offense) transporting in interstate and foreign commerce,
a stolen Piper Saratoga aircraft, tail No. N8006Q, serial number
32R-8213016, from Frederick, Maryland, to Florida and then to Aruba, the
Netherland Antilles on March 23, 1988, knowing same to have been stolen.

in violation of Title ___18_____ United States Code, Section(s)_____2312_____

| | |
|---|---|
| Name of Issuing Officer | Title of Issuing Officer |
| Signature of Issuing Officer | Date and Location |
| (By) Deputy Clerk | |

Bail fixed at $ _____ by_____
                                                            Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | SINGH-277 |

AO-442 (Rev. 5/85) Warrant for Arrest

-2-

**THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:**

DEFENDANT'S NAME: Singh DaSilva

ALIAS: John Marshall Guattery

LAST KNOWN RESIDENCE: 488 N. Bedford Street, Arlington, Virginia

LAST KNOWN EMPLOYMENT:

PLACE OF BIRTH: possibly Singapore

DATE OF BIRTH: 25-30 years

SOCIAL SECURITY NUMBER:

HEIGHT: _____  WEIGHT: _____

SEX: Male  RACE: _____

HAIR: _____  EYES: _____

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS:

FBI NUMBER:

COMPLETE DESCRIPTION OF AUTO:

INVESTIGATIVE AGENCY AND ADDRESS:

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___/___ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages: _____

SINGH - 279

XXXXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X  No Duplication Fee   X
X     for this page         X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_3_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—4 | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—4 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH 280 through SINGH 282_

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X     for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

____1____  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 |  | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—1,3,4 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D)—3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—1,3,4 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH - 283 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

___/___ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | Section 552a |
|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) |  | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) |  | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)-1,2,3,4 |  | ☐ (k)(1) |
|  | ☑ (b)(7)(D)-3 |  | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) |  | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) |  | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) |  | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) |  | ☐ (k)(6) |
| ☑ (b)(6) - 1,2,3,4 |  |  | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

SINGH - 284

XXXXXXXXXXXXXXXXXX
X   Deleted Page(s)      X
X   No Duplication Fee   X
X      for this page     X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXX
XXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_18_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
SINGH 285 through SINGH 301 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☒ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☒ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☒ UNCLAS |

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Date   4-19-88

TC 63/P
pb38

1  FM  FBI, BALTIMORE (26B-56765) (SQ 10) (P)

2  TO  DIRECTOR, FBI/PRIORITY/

3  BT

4  UNCLAS

5  CITE:  //3050:2440//

6  PASS:  PROPERTY CRIMES UNIT, CID.

7

8  SUBJECT:  ROGER SCOT SNYDER; SINGH DA SILVA, AKA JOHN

9  MARSHALL GUATTERY; THEFT OF PIPER SARATOGA AIRCRAFT, SERIAL

10  NUMBER 8006Q, FREDERICK, MARYLAND; 3/18-19/88; ITSA;FPC-GCM;

11  GUN CONTROL ACT OF 1968; ITSP.

12     RE BALTIMORE TELCALL OF SA[          ] TO SUPERVISOR      b6 -1
13  [          ] ON APRIL 19, 1988.                              b7C -1

14     ON APRIL 4, 1988, SA [          ] FREDERICK,      b6 -1
15  MARYLAND RA, TRAVELED TO ARUBA AND THE CARIBBEAN AND      b7C -1

JED:Rc

Approved: _____  Transmitted _____  Per _____
                              (Number)    (Time)

26A-56765-33

SINGH-302

b6 -1
b7C -1

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date _____

^PAGE TWO DE BA (26B-56765) UNCLAS

CONDUCTED A SERIES OF INTERVIEWS OF [                    ]

b6 -2
b7C -2
b7D -1

[                    ] A VEHICLE REGISTERED TO DA SILVA WAS LOCATED ON APRIL 16, 1988 IN ARLINGTON, VIRGINIA. A CHECK OF REGISTRATION DISCLOSES IT IS REGISTERED TO AN ANTONIO MICHAEL DESLIVA, 6517 BRANES DRIVE, MCLEAN, VIRGINIA. THE RECORDS ALSO DISCLOSED THAT HE WAS BORN MAY 18, 1959.

IT IS NOTED THAT [                    ]
[                    ]
[          ] IT IS NOT BELIEVED THAT [          ] TOLD THE TRUTH [          ]

b6 -2
b7C -2
b7D -1

Approved: _____   Transmitted _____   Per _____
                                        (Number)    (Time)

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date

^PAGE THREE DE BA (26A-56765) UNCLAS

DA SILVA ENTERED ARUBA UNDER THE PASSPORT OF JOHN
MARSALL GUATTERY AND SIGNED THE VARIOUS ARUBA DOCUMENTS IN
THAT NAME. AFTER BEING ARRESTED, FINGERPRINTED AND
PHOTOGRAPHED UNDER THAT NAME HE FREELY TALKED TO THE ARUBA
AUTHORITIES. ON THE SECOND DAY OF INCARCERATION AFTER THE
[          ] DETERMINED THROUGH [      ] THAT HIS NAME
WAS SUPPOSED TO BE SINGH DA SILVA, THEY CONFRONTED HIM WITH
THIS INFORMATION. HE IMMEDIATELY REQUESTED AN ATTORNEY
PRESENT WHEN HE WAS ASKED IF HIS NAME WAS SINGH DA SILVA.

b6 -2
b6 -2
b7D -1

SA [      ] OBTAINED THE WEAPONS THAT WERE RECOVERED FROM
THE AIRCRAFT AS WELL AS THE BULLET PROOF VEST AND WIG,
$29,168.00 IN CASH AND OTHER ITEMS OF EVIDENCE OF VALUE.
ONE OF THE ITEMS CONTAINED A SLIP OF PAPER THAT HAD THE
MARKINGS 45-PAN AMERICAN HIGHWAY.

b6 -1
b7C -1

BALTIMORE AND WMFO HAVE NO CONCRETE INFORMATION AS TO
THE TRUE IDENTITY OF THE SECOND SUBJECT AS BALTIMORE HAD THE
SECOND SUBJECT'S FINGERPRINTS HANDCARRIED TO THE
IDENTIFICATION DIVISION AND NO IDENTIFICATION COULD BE MADE.

Approved: _____ Transmitted _____ Per _____
                                        (Number)      (Time)

SINGH-304

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

^PAGE FOUR DE BA (26B-56765) UNCLAS

ON APRIL 17, 1988, THE U.S. MARSHAL SERVICE BROUGHT BOTH

SUBJECTS FROM ARUBA TO MIAMI, FLORIDA. ON APRIL 18, 1988,

BOTH SUBJECTS WERE AFFORDED A HEARING BEFORE A U.S.

MAGISTRATE IN MIAMI, FLORIDA. [          ] BOND WAS SET AT

$50,000.00 CORPORATE SURETY BOND AND DA SILVA IS BEING HELD

FOR TEN DAYS WITHOUT BOND UNTIL HIS ALLEGED PROBLEMS WITH

INS CAN BE RECTIFIED. HE HAS INDICATED THAT HE WAS BORN IN

SINGAPORE AND WAS TRAVELLING TO SOUTH AMERICAN WITH A GREAT

DEAL OF CASH BECAUSE HE WAS INTERESTED IN SUBSEQUENTLY

RELOCATING IN AFRICA. THE REASON FOR RELOCATING IN AFRICA

WAS THAT HE PLANNED TO INVESTIGATE TERRORISM IN SOUTH

AFRICA.

    INVESTIGATION BY BALTIMORE AND WMFO TO IDENTIFY DA

SILVA IS CONTINUING AND BUREAU WILL BE KEPT APPRISED.

BT

b6 -4
b7C -4

Approved: _____ Transmitted _____ Per _____
                                        (Number)   (Time)

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_6_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 306 through SINGH 311 _____

XXXXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
X   No Duplication Fee   X
X   for this page        X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

Date   4/5/88

TO:        DIRECTOR, FBI
           (ATTN: PROPERTY CRIMES UNIT, CID)

FROM:      SAC, MIAMI (26B-46386) (P)

ROGER SCOTT SNYDER; 26-56765
SINGH DASILVA, aka;
ET AL
THEFT OF PIPER AIRCRAFT,
SERIAL NUMBER N8007B,
FREDRICK, MARYLAND
ITSA;
FPC - GCM;
GUN CONTROL ACT OF 1968;
ITSP
(OO:  BALTIMORE)

INDICES SEARCH

☑ GENERAL           ☑ FOIMS

☑ NEGATIVE          ☐ NEGATIVE

☐ SEE ATTACHED S.S.  ☐ SEE ATTACHED S.S.

☑ SEARCH BY         ☑ SEARCH BY

          Re Miami teletype to the Bureau, 4/5/88.

          Enclosed for Baltimore are the original and one copy
of five (5) FD-302's, one photo copy of HOLIDAY INN room bill
number 272756, photo copy of gas receipt number 0014982, and
original notes involving the interviews of
and

          Enclosures reflect investigation conducted at Homestead,
Florida.

          Investigation continuing at Marathon, Florida.

                                                        b6 -2
                                                        b7C -2

2 - Bureau
2 - Baltimore (Enc. 17)
2 - Miami
FHP:rla
(6)

                              1*

Approved: _____   Transmitted _____
                          (Number)        26A-56765-39
                                          SERIALIZED ___ FILED ___
                                          APR 11 1988
SINGH-312

                                                        b6 -1
                                                        b7C -1

GPO : 1987 0 - 193-749

FD-523 (Rev. 8-23-84)

To:    Director, FBI
       (Attn: Photographic Processing ~~Unit~~, Rm. 1B903 TL151)     **AIRTEL**

From:  SAC, BALTIMORE (26D-56765) (Sq. 10)    Cost Code: 3659/2449    Date: 4/22/86

Subject: ROGER SCOT SNYDER,
         ET AL;
         ITSP;
         OO: BALTIMORE

☒ Unclassified  ☐ Confidential  ☐ Secret

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

ENCLOSURES:                              CONTACT FOR INFORMATION:

|           | Size | Type  | Quantity |
|-----------|------|-------|----------|
| Film      | 35mm | Color | 1 roll   |
| Negatives |      |       |          |
| Prints    |      |       |          |
| Other (specify) |  |     |          |

(color and black & white work will not be
accepted on same request)

FTS. 922-2691

WORK REQUESTED:
       ☒ Develop and print 1 ea. 3½ x 5
       Other:

JUSTIFICATION:    Photographs of evidence in criminal case.

PHOTO TECHNICIAN (Intl.)_____

SINGH-313

26A56765-40
SCANNER
INDEXED          ☒
SERIALIZED       ☒
FILED            ☒

Enclosure

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__18__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
    SINGH 314 through SINGH 331

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ



b6 -1
b7C -1

SINGH-332

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_16_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH 333 through SINGH 348_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
X   No Duplication Fee   X
X   for this page        X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAU/STP/CLS



b6 -3
b7C -3

#10 Squad

26 B - 56765

see, attached



26-B-56765

SEARCHED _____
SERIALIZED ___ VP        VP

APR 21 1988

b6 -1
b7C -1

SINGH-349

-- 1/003 -- DTEC:[                    ]

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

**********************************************************************
    IS SOCIAL SECURITY NUMBER A TYPO ERROR? IF NOT,
    SOCIAL SECURITY NUMBER OUT OF RANGE
**********************************************************************

51 NO RECORD FOUND&

END OF REPORT    CBI AND AFFILIATES  -  04/21/88

                                        b6 -3
                                        b7C -3

-- 1/004 -- DTEC:[                    ]
M1 OF 2  NM-[                                            ] 07
    /85
    SS-[                    ] OFF-[
M2 OF 2  NM-[                                        ] 06/
86
    SS-[                    ]

END OF REPORT    CBI AND AFFILIATES  -  04/21/88

                    SINGH-350

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:

### SINGH - 351

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)      X
X   No Duplication Fee    X
X      for this page      X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-168 (Rev. 9-18-78)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAU/STP/CLS

Transmitted by Facsimile - **UNCLAS**

Precedence

To: S.A.C., Baltimore (26B 5674'5)
From: S.A., WMFO (26B-48366) (P)(-4)
Subject: Roger Scot Snyder, et al

Date: April 25, 1988
Time: Transmitted -
Initials -

b6 -2
b7C -2
b7D -1

☐ Fingerprint Photo    ☐ Fingerprint Record    ☐ Aaz    ☐ Newspaper clipping    ☐ Photograph

☐ Artist's Conception    ☐ Other 302 interview

Spec of Handling Instructions: Hold for S A [ ], C-10.

b6 -1
b7C -1

2) hld for 1y 10

Approved:

SINGH-352

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_3_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: 
*SINGH 353 through SINGH 355*

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

FD-36 (Rev. 8-29-85)

**FBI**

TRANSMIT VIA:
- ☑ Teletype
- ☐ Facsimile
- ☐ _____

PRECEDENCE:
- ☐ Immediate
- ☑ Priority
- ☐ Routine

CLASSIFICATION:
- ☐ TOP SECRET
- ☐ SECRET
- ☐ CONFIDENTIAL
- ☐ UNCLAS E F T O
- ☑ UNCLAS

Date 4/27/88

5338
0011

1   FM FBI, BALTIMORE (26B-56765) (SQ. 10) -P-

2   TO FBI, SAN FRANCISCO/PRIORITY/

    BT                                    ML88/P

3   UNCLAS                                Disk: II

4   CITE: //3050 - 2440//

5

6   SUBJECT: ROGER SCOT SNYDER; ET AL; THEFT OF PIPER SARATOGA

7   AIRCRAFT, N8006Q, FROM FREDERICK, MARYLAND AIRPORT,

8   MARCH 18-19, 1988; ITSA; OO:  BALTIMORE.

9        RE:  BALTIMORE TELCALLS FROM SRA [          ]      b6 -1
                                                            b7C -1
10  FREDERICK, MARYLAND RESIDENT AGENCY, TO SA [          ]

11  SAN FRANCISCO DIVISION, ON 4/27/88.

12       [          ] AND A SECOND SUBJECT, WHO CURRENTLY IDENTIFIES

13  HIMSELF AS SINGH DESILVA, ARE CHARGED WITH ITSA IN CAPTIONED      b6 -3,4

14  MATTER.   DESILVA IS BELIEVED TO BE [          ]/DATE          b7C -3,4

15  OF BIRTH [          ] IN INDIA, INS NUMBER [          ]

16

17

18

19

20

21  JED/mL

Approved: _____     Transmitted _____     Per _____
                                  (Number)   (Time)

26B-56765 - 52                     b6 -1
                                   b7C -1          U.S. GPO: 1987 — 181-486

SINGH-356

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

^PAGE TWO DE BA 26B-56765 UNCLAS

POINT OF ENTRY TO THE UNITED STATES IS SAN FRANCISCO ON

MAY 4, 1983. [          ] INS FILE IS IN SAN FRANCISCO.  THE

FOCUS OF THIS INVESTIGATION IS CURRENTLY CENTERED ON

ESTABLISHING THE SECOND SUBJECT'S IDENTITY.  THEREFORE, THE

PHOTO IN THE ABOVE INS FILE IS OF EXTREME IMPORTANCE.  A

LENGTHY AIRTEL WILL FOLLOW.

     SAN FRANCISCO DIVISION AT SAN FRANCISCO, CALIFORNIA:

FACSIMILE SUBJECT'S PHOTO TO BALTIMORE OFFICE OF THE FBI AS

SOON AS POSSIBLE AND REVIEW FILE FOR ALL PERTINENT

IDENTIFYING DATA.

     BALTIMORE DIVISION AT FREDERICK, MARYLAND:  WILL

CONTINUE INVESTIGATION.

BT

b6 -3
b7C -3

Approved: _____ Transmitted _____ Per _____
                                    (Number)      (Time)

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__10__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

_____SINGH 358 through SINGH 367_____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FORMS.TEXT HAS 1 v DOCUMENT

INBOX.1 (#1790)

DECLASSIFIED BY 60324 AUC EAW/STP/CLS
ON 10-22-2007

TEXT:

VZCZCWFO053

OO HQ BA MM

DE WF #0053 1182241            ORIGINAL

ZNY CCCCC

O 272241Z APR 88

FM WASHINGTON METROPOLITAN FIELD OFFICE(26B-48866)(P)(C-4)

TO DIRECTOR FBI IMMEDIATE

BALTIMORE (26B-56765)  IMMEDIATE

MIAMI  IMMEDIATE

BT

CONFIDENTIAL

ATTENTION: PROPERTY CRIMES UNIT, CID, ROOM 5076; TERRORISM-GLOBAL

CI-D, ROOM 4252 (INFO);  NIFTC UNIT, OLIA.

ROGER SCOT SNYDER;  SINGH DESILVA, AKA JOHN MARSHALL GUATTERY, ET

AL; THEFT OF PIPER AIRCRAFT; SERIAL NUMBER N8007B; FREDERICK,

MARYLAND, ITSA; FTC-GCM; GUN CONTROL ACT OF 1968; ITSP.

    THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY.

    REFERENCE TELEPHONE CALL FROM SPECIAL AGENT (SA) [        ]

[    ] TO SA [                    ] ON APRIL 27, 1988.

          CONFIDENTIAL

b6 -1
b7C -1

26B-56765-54

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

APR 27 1988

FBI — BALTIMORE

SINGH-368

b6 -1
b7C -1

PAGE TWO DE WMF C O N F I D E N T I A L

FOR THE INFORMATION OF RECEIVING OFFICES, CRIMINAL COMPLAINT NUMBER 88-0295M-01 WAS ISSUED BY DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C., ON APRIL 27, 1988, CHARGING SATNAM SINGH, AKA SINGH DESILVA (PHONETIC), AKA JOHN M. GUATTERY, DATE OF BIRTH 4/26/60, WITH A VIOLATION OF TITLE 18, UNITED STATES CODE SECTION 1542.

FOR THE ADDITIONAL INFORMATION OF RECEIVING OFFICES, ON APRIL 19, 1988, SPECIAL AGENT [          ] POSITIVELY IDENTIFIED [          ] IN THE WASHINGTON, D.C., AREA. THIS PERSON WAS DETERMINED NOT TO BE THE SAME PERSON ARRESTED BY THE ARUBAN POLICE FORCE ON MARCH 22, 1988, WHOSE PHOTOGRAPH APPEARED ON ORIGINAL APPLICATION AND PASSPORT NUMBER 013586092 IN THE NAME OF JOHN GUATTERY.

b6 -1,3
b7C -1,3

SA [          ] OF THE FREDERICK, MARYLAND, OFFICE OF THE FEDERAL BUREAU OF INVESTIGATION (FBI) ADVISED SA [          ] OF THE WASHINGTON METROPOLITAN FIELD OFFICE (WMFO) THAT SATNAM SINGH WAS THE TRUE NAME DISCLOSED TO THE PRE-TRIAL SERVICES IN MIAMI, FLORIDA, BY THE INDIVIDUAL ALSO KNOWN AS SINGH DESILVA.

b6 -1
b7C -1

LEADS: MIAMI FIELD DIVISION: AT MIAMI, FLORIDA:

CONFIDENTIAL

PAGE THREE DE WMF C O N F I D E N T I A L

WILL ADVISE UNITED STATES MARSHALL [        ] BY 9:00 PM,

ON  APRIL 27, 1988, FTS NUMBER 350-5903, OF THE EXISTENCE OF THE

OUTSTANDING WARRANT ISSUED BY THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C., ON APRIL 27,

1988, FOR SITNAM SINGH, AKA SINGH DESILVA.

b6 -6
b7C -6

BT

#0053

NNNN

FORMS.TEXT HAS 1 DOCUMENT

INBOX.1 (#1843)

TEXT:

VZCZCSF0012

OO BA

DE SF #0012 1191822

ZNR UUUUU

O 281807Z APR 88

FM SAN FRANCISCO (26A-NEW) (RUC) (SQ. #4)

TO FBI, BALTIMORE (IMMEDIATE)

BT

UNCLAS

CITE: //3790//

PASS: SA[                    ]    b6 -1
                               b7C -1

ORIGINAL

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

☐ GENERAL
☐ NEGATIVE
☐ SEE ATTACHED S.S
☐ SEARCH BY

☑ FOIMS
☐ NEGATIVE
☐ SEE ATTACHED S.S
☐ SEARCH BY

SUBJECT: ROGER SCOT SNYDER, ET AL; THEFT OF PIPER SARATOGA
AIRCRAFT, N80060, FROM FREDERICK, MARYLAND, AIRPORT, MARCH 18-19,
1988; ITSA; OO: BALTIMORE.

    RE BALTIMORE TELCALLS FROM SRA[          ]FREDERICK,
MARYLAND, RESIDENT AGENCY TO SA[          ]SAN FRANCISCO
DIVISION, ON APRIL 27, 1988.

    ON APRIL 27, 1988, SA[          ]REVIEWED THE SAN FRANCISCO
INS FILE REGARDING CAPTIONED SUBJECT AND OBTAINED THE FOLLOWING
INFORMATION:

    DATE OF APPLICATION: MAY 3, 1983; INS NUMBER: [          ]

b6 -1
b7C -1

b6 -1
b7C -1

b6 -3
b7C -3

26 - 56765 - 55

b6 -1
b7C -1

APR 28 1988

SINGH-371

PAGE TWO DE SF 0012 UNCLAS

DATE OF BIRTH: [        ]

DESCRIPTIVE DATA:  HAIR BLACK; EYES BROWN; HEIGHT 5´10";

COMPLEXION MEDIUM; ALIAS NAME IS [        ] DATE OF ENTRY IS [        ]

[        ] PLACE OF BIRTH: [        ]

[        ]

UNITED STATES ADDRESS: [        ]

[        ]

COUNTRY OF LAST RESIDENCE: [        ]

FATHER: [        ]

DATE OF BIRTH: [        ]    PLACE OF BIRTH: [        ]

[        ]

[        ]

MOTHER: [        ]

DATE OF BIRTH: [        ]    PLACE OF BIRTH: [        ]

[        ]

WIFE: [        ]

DATE OF BIRTH: [        ]    PLACE OF BIRTH: [        ]

[        ] MISCELLANEOUS – [        ]

MOTHER: [        ]    FATHER: [        ]

[        ]

b6  -3
b7C -3

SINGH-372

PAGE THREE DE SF 0012 UNCLAS

TELEPHONE NUMBER [          ]    FIRST INTERSTATE CHECKING

ACCOUNT (AS OF APRIL 29, 1983), ACCOUNT NUMBER [          ]

    MARRIED [          ] AT [          ]

b6 -3
b7C -3

[          ] INDIAN PASSPORT NUMBER [          ] ISSUED [          ]

[          ] LANGUAGES: [          ]

IMMIGRATION ATTORNEY, [          ]

[          ]

BT

#0012

NNNN

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAU/STP/CLS

FD-515 (Rev. 8-8-85)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/85)
(Submit within 30 days from date of accomplishment)

TO:    DIRECTOR, FBI

Date  4/29/88

FROM:    SAC, BALTIMORE

SUBJECT:
ROGER SCOT SNYDER,
ET AL
THEFT OF PIPER SARATOGA
AIRCRAFT N 8006Q,
Frederick, Md
3/18-19/88
ITSA
OO:Baltimore

Bureau File Number
**26B-56765**
Field Office File Number
**2440**
Squad or RA Number

b6 -1
b7C -1

### Investigative Assistance or Technique Used

Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed? X No

1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally    4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Used | | 25. UC Other | |
| 5. ELSUR - FISC | | 12. Lab Div Exams | | 19. Surveil. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR - Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

A. Preliminary Judicial Process (Number of subjects) — Complaints / Informations / Indictments

D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP)

| Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |
|---|---|---|---|---|
| 4 | $ 100,000 | $ | | $ |
| 1 | $ 29,168 | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |

B. Arrests, Locates, Summonses or Subpoenas Served (No. of Subj.)

| | Subject Priority* A | B | C | |
|---|---|---|---|---|
| FBI Arrests | | 2 | | Subpoenas Served |
| FBI Locates | | | | Criminal Summons |
| Local Arrests | | | | |
| FBI Subj. Rearrested ___ ; Armed ___ | | | | Local Crim. Summons |

C. Release of Hostages or Children Located: (Number of Hostages or Children Located)

E. Civil Matters / Government Defendant / Government Plaintiff

F. Final Judicial Process:    Judicial District

b6 -4
b7C -4

Remarks: (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

Roger Scot Snyder, white male, [ ] and Singh DeSilva (NFD) arrested in Aruba
on 3/22/88.  On 3/30/88, warrants for their arrest issued in U.S.D.C. Baltimore,
Md (already reported).  On 4/5/88, Baltimore agent advised both subjects in Aruba
of issuance of warrant for their arrest.  Captioned aircraft recovered from Aruba
airport and valued by insurance company at $100,000.  $29,168.00 in U.S. currency
also recovered from DeSilva who was holding money for drug dealer.
Neither subject believed to be associated with an organized crime group.

On BA copy only, credit stats to
b6 -1
b7C -1

Bureau
Field Office  Baltimore (1 - 66-27 Sub A)
* See codes on reverse side.
JED:rc        SINGH-374
(4)

FD-523 (Rev. 8-23-84)

ROUTE TO PHOTO TECHNICIAN UPON RECEIPT

**AIRTEL**

From: Director, FBI
(Attn: Photographic Processing Unit, Rm. 1B903 TL151)

To:
SAC, BALTIMORE (26B-56765) (SQ. 10) -P-

Subject: ROGER SCOT SNYDER;
ET AL;
ITSA;
OO: BALTIMORE

Cost Code: 3050/2440     Date: 4/22/88

☒ Unclassified ☐ Confidential ☐ Secret

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

ENCLOSURES:

|  | Size | Type | Quantity |
|---|---|---|---|
| Film | 35mm | Color | 1 roll |
| Negatives |  |  |  |
| Prints |  |  |  |
| Other (specify) |  |  |  |

(color and black & white work will not be accepted on same request)

CONTACT FOR INFORMATION:

FTS· 922-2691



8809316

APR 28 1988

WORK REQUESTED:
☒ Develop and print 1 ea. 3½ x 5
Other:

JUSTIFICATION: Photographs of evidence in captioned case.

26B-56765-57

INDEXED
FILED

APR 29 1988

BALTIMORE

PHOTO TECHNICIAN (Intl.)

The above is ☒ attached
☐ being sent under separate cover, via ☐ registered mail
☐ air freight

b6 -1
b7C -1

SINGH-375

Enclosure

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

MEMORANDUM

TO:     SAC, BALTIMORE (26B-56765) (SQ. 10)          DATE:  4/27/88

FROM:   DIRECTOR, FBI

RE:     ROGER SCOT SNYDER;
        JOHN MARSHALL GUATTERY, aka
        Singh DaSilva;
        THEFT OF PIPER SARATOGA SINGLE ENGINE AIRCRAFT,
        TAIL NUMBER N8006Q, FROM FREDERICK AIRPORT,
        FREDERICK, MARYLAND
        3/18-19/88;
        ITSA; FPC-GCM;  ITSP
        OO:  BALTIMORE


        Enclosed are two copies of the translation requested in your
airtel dated 4/12/88.

        The foreign-language material is returned herewith.

Enclosures (12)



b6 -1
b7C -1

SINGH-376

OPCA-20 (12-3-96)

XXXXXXX
XXXXXXX
XXXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___1___ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ _SINGH 377 through SINGH 383_ _____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXXX
XXXXXXX
XXXXXXX

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2007 BY 60324 AUC BAW/STP/CLS

File - Serial Charge Out
FD-5 (Rev. 6-17-70)

File __263__ __5676S__ _____ Date _____
　　　　Class.　　　Case No.　　Last Serial

☐ Pending　　☐ Closed

| Serial No. | Description of Serial | Date Charged |
|---|---|---|
| 55 | | 4-29-88 |
| 56 | FD 515 DTD 4-29-88 | 5-2-88 |
| 57 | FD 523 DTD 4-22-88 | ↓ |
| 58 | | ↓ |
| 59 | FD-445 DTD 6-28-88 | 5-3-88 |
| 64 | | 5-11-88 |
| 65 | | 5-16-88 |
| 66 | b6 -1 | 5-17-88 |
| 67 | b7C -1 | 5/26/88 |

Employee

**RECHARGE**　　Date _____

To _____　From _____

Initials of Clerk {　_____
　　　　　　　　　　_____
　　　　　　　　　　_____

Date {　_____
　　　_____
　　　_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
Employee

_____
Date charged

_____
Location

GPO : 1986 O - 154-858

SINGH-384

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 |  |  Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) |  | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

4 Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
SINGH 385 through SINGH 388

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

CONFIDENTIAL

NEXT TEXT
FORMS.TEXT HAS 1 DOCUMENT
NEXT DOCUMENT (#3058) MOVED FROM INBOX.1 TO DESK.1

TEXT:

DECLASSIFIED BY 60324 AUC  BAW/STP/CLS
ON 08-09-2007

VZCZCHQQO15

OO HQ BA DE MM OC WF BOG

DE BRI #0038 0872102

ZNY CCCCC

O 272039Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI  IMMEDIATE

    ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076; AND

          INTERNATIONAL TERRORISM GLOBAL UNIT, CID,

          ROOM 4252 (INFO); AND

          I/FPC UNIT, OLIA

FBI BALTIMORE  IMMEDIATE

FBI DETROIT PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI OKLAHOMA CITY PRIORITY

FBI WASHINGTON FIELD  IMMEDIATE

LEGAL ATTACHE BOGOTA (INFO) PRIORITY

BT

CONFIDENTIAL / SECTION I OF II

CHANGED. ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL
GUATTERY;

b6 -4
b7C -4

26B - 48866 -1

SEARCHED _____ INDEXED _____
SERIAL _____

MAR 28  11 08 AM '88

CONFIDENTIAL

b6 -1
b7C -1

PAGE TWO DE BRI 0038 C O N F I D E N T I A L 1 OF 11

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER

N8007B, FREDERICK, MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968;

ITSP.

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY UNLESS OTHERWISE NOTED.

TITLE MARKED "CHANGED" TO REFLECT TRUE NAME OF GUATTERY AND

TO ADD ADDITIONAL SUSPECTS ARRESTED BY ARUBAN POLICE FORCE (APF),

AS WELL AS ADDITIONAL CHARACTERS.

REBRITEL MARCH 25, 1988 TO FBIHQ AND BALTIMORE.

FOR INFORMATION DETROIT, MIAMI, OKLAHOMA CITY, WASHINGTON

FIELD AND LEGAT BOGOTA,

ON THE NIGHT OF

b6 -4
b7C -4
b7D -2

MARCH 23, 1988 CAPTIONED AIRCRAFT ARRIVED AT ARUBA INTERNATIONAL

AIRPORT WITH          AND DA SILVA ABOARD.

IN CHECKING THE PIPER, IT WAS OBSERVED THAT THE SERIAL NUMBER

HAD BEEN ALTERED FROM N8007B TO READ N8006Q. NO FLIGHT PLAN, AIR

WORTHINESS CERTIFICATE OR OWNERSHIP PAPERS WERE LOCATED IN THE

CONFIDENTIAL

PAGE THREE DE BRI 0038 ⬤ N F I CONFIDENTIAL ⬤ II

AIRCRAFT, ALTHOUGH A MACHINE GUN, TWO PISTOLS, AMMUNITION, WIGS,

BODY ARMOR AND OTHER ITEMS WERE LOCATED.

PAPERS CARRIED BY [        ] SHOWED A POSSIBLE RESIDENCE AT [        ]

[                                                    ] AND A LETTER AUTHORIZATION

DATED MARCH 14, 1988 FROM [                                ] CARE OF SCOTT

AVIATION, TULSA INTERNATIONAL AIRPORT, TULSA, OK., TO "FLY THE

PIPER PA 324-301, REGISTRATION NUMBER N8007B, ANYWHERE IN OR OUT-

SIDE U.S.A.". [            ] ADDRESS ON THIS "AUTHORIZATION" WAS SHOWN

AS [                                        ]

b6  -4
b7C -4

DA SILVA WAS CARRYING A VIRGINIA "PERSONAL ID CARD" SHOWING

AN ADDRESS OF 488 NORTH BEDFORD ST., ARLINGTON VA. 22201, BUT

OTHER PAPERS AND THE U.S. PASSPORT APPEAR TO BE THOSE OF ONE

JOHN MARSHALL GUATTERY, DOB JULY 20, 1955, POSSIBLY EMPLOYED AT

[                                    ] IN WASHINGTON, D.C.

[            ] AND DA SILVA WERE ARRESTED, AND ARE BEING HELD ON

LOCAL FIREARMS AND POSSESSION OF STOLEN PROPERTY CHARGES. [        ]

b6  -4
b7C -4
b7D -3



CONFIDENTIAL

PAGE FOUR DE BRI 0038 C O N F I D E N T I A L

b7D -3

b6  4
b7C  4
b7D  -3

CONFIDENTIAL

b6 -4
b7C -4
b6 -5
c b7C -5b

THE SEIZED WEAPONS ARE:

1.) LUGER 9MM TEC-9, SERIAL NUMBER 47104;

2.) SMITH AND WESSON MODEL 469, TBM 5493; AND

3.) SMITH AND WESSON MODEL 469, TBM 6181.

b6 6
b7C 6
b7D -3

b6 -1
b7C -1

REQUEST OF FBIHQ.

PCU/CID IS REQUESTED TO EXPEDITOUSLY CHECK WEAPONS THROUGH
NCIC AND SET OUT LEADS FOR PURCHASE/SALE TRACES; ALSO CHECK RE-
GARDING POSSIBLY STOLEN GUATTERY PASSPORT OR SET OUT LEAD FOR
NEW YORK OR WASHINGTON FIELD.

LEADS.

BALTIMORE DIVISION.

BALTIMORE IS REQUESTED TO EXPEDITOUSLY CONDUCT APPROPRIATE
ITSA ENQUIRIES, INCLUDING OBTAINING THEFT REPORT (AIRCRAFT

CONFIDENTIAL

CARRIED IN EPIC COMPUTER, AND INTERVIEWING OWNER. **CONFIDENTIAL**

b6 -5
b7C -5

TO U.S. ATTORNEY'S OFFICE FOR FORMAL PROSECUTIVE OPINION SHOULD

BE PURSUED, AND AUSA SHOULD COORDINATE WITH SPECIAL ATTORNEY [          ]

[          ], OFFICE OF INTERNATIONAL AFFAIRS, DEPARTMENT OF JUSTICE,

TELEPHONE [                    ]

BALTIMORE MAY WISH TO CONSIDER HAVING CASE AGENT ACCOMPANY

AUSA OR [                ] TO ARUBA TO CONDUCT NECESSARY INTERVIEWS

AND RECOVER PERTINENT EVIDENCE, WHICH CONTACT LEGAT WOULD BE

b6 -5
b7C -5

ABLE TO FACILITATE INASMUCH AS AIR TRAVEL TO ARUBA IS AS COST

EFFECTIVE FROM BWI VIA MIAMI AS IT IS FROM BARBADOS VIA MIAMI

WITH A LAYOVER.

BALTIMORE SHOULD RECORD AIRCRAFT RECOVERY (PER MIOG) AFTER

CONDUCTING APPROPRIATE INVESTIGATION. AIRCRAFT FURTHER DESCRIBED

AS WHITE WITH RED STRIPING, SINGLE ENGINE, STOLEN AT FREDERICK,

MD. PLEASE SUTEL RESULTS OR TELEPHONE LEGAT DIRECTLY AT (809)

436-4950, SINCE SUBJECTS ARE ACTIVELY DEMANDING ACTION BY U.S.

CONSULATE AND LOCAL ATTORNEYS TO SECURE THEIR RELEASE.

BT

#0015

NNNN

-->



NEXT TEXT
FORM$.TEXT HAS 1 DOCUME
NEXT DOCUMENT (#3059) MOVED FROM INBOX.1 TO DESK.2

CONFIDENTIAL

TEXT:

VZCZCHQ0016

OO HQ BA DE MM OC WF BOG

DE BRI #0039 0872119

ZNY CCCCC

O 272056Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI  IMMEDIATE

    ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076; AND

           INTERNATIONAL TERRORISM GLOBAL UNIT, CID,

           ROOM 4252 (INFO); AND

           I/FPC UNIT, OLIA

FBI BALTIMORE  IMMEDIATE

FBI DETROIT PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI OKLAHOMA CITY PRIORITY

FBI WASHINGTON FIELD  IMMEDIATE

LEGAL ATTACHE BOGOTA (INFO) PRIORITY

BT

C O N F I D E N T I A L / SECTION II OF II

CHANGED. ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL

GUATTERY;

                                                b6 -4

                                                b7C -4



CONFIDENTIAL

SEARCH.......
SERIALIZED.......
MAR 28  11 12 AM '88
FBI - E.O.

PAGE TWO DE BRI 0039 C●NFIDENTIAL / II OF II

CONFIDENTIAL

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER

N8007B, FREDERICK MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968;

ITSP.

AS THIS TELETYPE WAS BEING TYPED, LEGAT RECEIVED A TELEPHONE

CALL FROM [ ] ADVISING THAT [ ]

b6 -3,4
b7C -3,4
b7D -3

BALTIMORE DIVISION IS REQUESTED TO DO NECESSARY BACKGROUND

CHECKS ON [ ] AND CONSIDER INTERVIEW.

b6 -3
b7C -3

OKLAHOMA CITY REQUESTED TO INTERVIEW [ ]

[ ] REGARDING HER RELATIONSHIP WITH [ ] AND POSSIBLY

[ ]

b6 -3,4
b7C -3,4

WASHINGTON FIELD IS REQUESTED TO ATTEMPT CONFIRMATION OF

[ ] AND DA SILVA'S ADDRESSES AND EMPLOYMENT, AS WELL AS

CONFIRM VIA CONTACT WITH [ ] RESTUA-

b6 -3,4
b7C -3,



CONFIDENTIAL

PAGE THREE DE BRI 0039 C O N F I D E N T I A L / I N F II

RANT, RELATIONSHIP WITH [     ] AND/OR DA SILVA, OR CONFIRM THEFT/    b6 -4
                                                                       b7C -4
LOSS OF HIS PAPERS AND PASSPORT.

    PLEASE SUTEL RESULTS.

~~CLASSIFIED BY: 2675. DECLASSIFY ON: OADR.~~

BT

#0016

NNNN

-->



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

FO-340a (Rev. 10-3-77)

b6 -4
b7C -4

(Title)

File No. 26A-48866

| Item | Date Filed | To be returned Yes No | | Disposition |
|------|------------|---|---|-------------|
| 1 | 4/27/88 | X | NOTES | 1dh |
| 2 | 4/27/88 | X | NOTES | 1dh |
| 3 | 1-14-8 | X | notes | b6 -2 1dh |
| 4 | | | receipt of Casino from BA | b7C -2 1d |
| 5 | 4-28-89 | | Photos and negatives of Nathan Singh | b7D -1 (1c) |

26A-48866-1A

SEARCHED_____INDEXED____
SERIALIZED____FILED____
APR 27 1988
FBI_____PITTS.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Field File No. 268-98866-1A-1

Serial # of Originating Document

OO and File No.

Date Received 19 April 88

From
(NAME OF CONTRIBUTOR)

(ADDRESS OF CONTRIBUTOR)

b6 -1
b7C -1

By

To Be Returned: ☐ Yes ☒ No  Receipt Given ☐ Yes ☒ No

Grand Jury Material - Disseminate Only Pursuant to
Rule 6(e), Federal Rules of Criminal Procedure
☐ Yes ☒ No

Title: Lasec S. Singh  Et AL

Reference:
(Communication Enclosing Material)

b6 -2
b7C -2
b7D -1

Description: ☑  Original notes re interview of



SINGH-400

b6 -2
b7C -2
b7D -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

-BACK OF PICTURE-

b6 -1,2
b7C -1,2
b7D -1

6711202

POLAROID® 9

Taken 4/18/88 by SA

26-488

SINGH-401 Subject



SINGH-402    b6 -2

b7C -2

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC LAW/STF/CLS

b7D -1

b6 -1,2
b7C -1,2
b7D -1

-BACK OF PICTURE-

6711201

POLAROID 9

Taken 4/18/88 by SA

26-

SINGH-403 Subject



SINGH-404

b6 −2
b7C −2
b7D −1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/ CLS

-BACK OF PICTURE-

b6  -1,2
b7C  -1,2
b7D  -

??112?  SINGH-405

Taken 7/10/08 by SA

Subject

POLAROID® 9

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

26-48866- 1A-1

SINGH-406

April 9, 1988

b6 -2,3
b7C -2,3
b7D -1

Employed here
Been to

No Current I.D.
Provided copy of

People who possess I.D.

H
3.

H.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

b6 -2
b7C -2
b7D -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SINGH-408

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

26 - 48866 - 1A-1

SINGH-409

Driver's License

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

b6 -2,3
b7C -2,3
b7D -1

Dr. License
#

dob

eyes

b6 -3
b7C -3

b6 -3
b7C -3

SINGH-410

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SATNAM SINGH,<br><br><br>       Plaintiff,<br><br>       v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-01064 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

# EXHIBIT B

# (PAGES 411-481)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Field File No. 26B 4BB66 -1A-2

Serial # of Originating Document

OO and File No.

Date Received  21 April 88

From

(NAME OF CONTRIBUTOR)

(ADDRESS OF CONTRIBUTOR)

(CITY AND STATE)

b6 -1
b7C -1

By

To Be Returned ☐ Yes ☒ No Receipt Given ☐ Yes ☒ No

Grand Jury Material - Disseminate Only Pursuant to
Rule 6(e), Federal Rules of Criminal Procedure
☐ Yes ☐ No

Title: Roger Scot Snyder Et AL

Reference:

(Communication Enclosing Material)

Description: ☑ ✓ Original notes re Interview of.

b6 -2
b7C -2
b7D -1

SINGH-411

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

26-48866-1A-1

268-1,5866

21 April 1988



Born

Simm Labor Day.

Known Source

b6 -2,3,4
b7C -2,3,4
b7D -1

Talked to

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SINGH-413

Monday
tel call

b6 -2,3,4
b7C -2,3,4
b7D -1



moved out with        meeting in
Lived in

SINGH-414

26-48866-1A-1                    -2-

b6 , 2, 4
b7C -2, 4    SINGH-415
b7D -1

-3-



(3 or four stay bld.)

on

He to apt on

SINGH-416

b6 -2,4
b7C -2,-4    — A —
b7D -1



b6  -2,4
b7C  -2,4
b7D  -1

—5—

Singh

then· show up

— went to

their

with them when he left.

CONCLUDED
INTerview
ReQuested
Attny
11:54

SINGH-417



−6          b6  −3
           b7C −3
           b7D −1

address

SS

DOB

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

FD-340 (Rev. 4-2-85)

**Field File No.** WMFO - 26B - 4886-1A-3

**Serial # of Originating Document**

**OO and File No.** WMFO 26B - 4886

**Date Received**

b6 -4
b7C -4

**From**

(Contributor)

(City and State)

b6 -1
b7C -1

**By** SA

(Name of Special Agent)

To Be Returned ☐ Yes  ☒ No    Receipt Given ☐ Yes  ☒ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6(e), Federal Rules
of Criminal Procedure ☐ Yes  ☒ No

**Title:** Roger Scott Snyder
Interstate Transportation of Stolen Aircraft
OO: WMFO

**Reference:** _____
(Communication Enclosing Material)

b6 -2
b7C -2
b7D -1

**Description:** ☒ Original notes re interview of

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

6 9/88
11:25 Am

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

DOB

b6 -2
b7C -2
b7D -1



(via license) through sot. to

Singh.

SINGH-421

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ /  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) - 2 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) - 1 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) - 2 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
SINGH - 422

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_/_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)-2, 3 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D)-1 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)-2,3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:

SINGH - 423

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)      X
X   No Duplication Fee   X
X      for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

2  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)~ 2 | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D)~ 1 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)~ 2 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
SINGH 424 through SINGH 425

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee  X
X      for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_1_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) —2, 3 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) —1 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) —2, 3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
SINGH - 426

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
X   No Duplication Fee   X
X      for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

b6  −2,3
b7C −2,3
b7D −1

-7-



Singh  De Silva
Salvatore  De Silva

− Singh
− Fragments

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 06-09-2007 BY 60324 AUC BAW/STP/CLS

FD-340 (Rev. 4-2-85)

Field File No. _26B-48866-1A-4_

Serial # of Originating Document _____

OO and File No. _BA_

Date Received _~~FB~~ 11/3/88_

From _____
(Name of Contributor)

_____
(Address of Contributor)

(City and State)

b6 -1
b7C -1

By _SA_ [ _____ ]
(Name of Special Agent)

To Be Returned ☐ Yes  ☒ No   Receipt Given ☐ Yes  ☒ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure ☐ Yes  ☒ No

Title:

Reference: _____
(Communication Enclosing Material)

Description: ☐ Original notes re interview of
_____

_RECEIPT FOR EVIDENCE FROM BA_
_? RETURNED TO BA_

SINGH-428

26-48846-1A-4

-BACK OF DOCUMENT-

SINGH-429

FD-597 (Rev. 3-29-84)

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
**Receipt for Property Received/Returned/Released/Seized**

Page ___1___ of ___1___

On (date) __Nov 3, 1988__

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

item(s) listed below were:
☐ Received From
☒ Returned To
☐ Released To
☐ Seized

(Name) __SA_____ b6 -1
(Street Address) __FREDERICK RA_____ b7C -1
(City) _____

**Description of Item(s):**

| | |
|---|---|
| 1) | S&W 9mm Model 469 s/n tbm6181 |
| 2) | "    "    "    "    " tbm5493 |
| 3) | INTRATEC 9mm Model TEC-9 s/n 47104 |
| 4) | One clip fot Tec-9 |
| 5) | Four clips for 469 |
| 6) | Two MPS Co Vests model K22 |
| 7) | Two sholder holsters |

**Received by:** _____
(Signature)

b6 -1
b7C -1

SA

**Received from** _____

b6 -1
b7C -

SINGH-430

-BACK OF DOCUMENT-

SINGH-431

FD-597 (Rev. 3-29-84)

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
**Receipt for Property Received/Returned/Released/Seized**

Page _1_ of _1_

On (date) _9-15-88_

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☐ Seized

b6 -1
b7C -1

(Name) _SA_ _____

(Street Address) _F.B.I.  WMFO_

(City) _____

Description of Item(s):

1. An envelope containing 4 - 469 S+W Clips + unknown # of rounds (1B-5)

2. Box containing Intratech 9mm pistol, SN 47104, 2 S+W Model 469 pistols, SN TBM 5493 + TBM 6181, buck knife, 2 shoulder holsters, 9mm clips for TECH 9 + 469, loose 9mm rounds + Box of Winchester 9mm Ammo. (1B-4)

3. Box containing Block jacket w/green liner, two bullet proof vests, black wig + 3 boxes of plastic garbage bags (1B-2)

4. Box containing miscellaneous aircraft documents + bag with tools, tape, towel and rubbing compound (1B-6)

5. Box with black flight bag and miscellaneous books (1B-3)

b6 -1
b7C -1

b6 -1
b7C -1

Received by: _____    Received from _____

SINGH-432

-BACK OF DOCUMENT-

SINGH-433

FD-597 (Rev. 3-29-84)

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
**Receipt for Property Received/Returned/Released/Seized**

Page __1__ of __1__

On (date) _____ Nov 3, 1988 _____

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

item(s) listed below were:
- ☐ Received From
- ☒ Returned To
- ☐ Released To
- ☐ Seized

(Name) _____ SA [_____] b6 -1
(Street Address) _____ FREDERICK RA _____ b7C -1
(City) _____

**Description of Item(s):**

1) 32 plastic envelopes containing photos, receipts and statments.

2) U.S. Passport for [_____]     b6 -4
   b7C -4

3) Brown pouch marked Govt exhibit ☒ # 30

4) Pilot log book for [_____]

5) Black pilot clip board

6) Folder containing 16 plastic envelopes with varios papers

7) Two plastic envelopes with three pouches.

8) Wig

9) Book, AOPA's AIRPORTS USA 1986

10) " , The INSTRUMENT FLIGHT TRAINING MANUAL

11) " , HOTEL & TRAVEL INDEX, WINTER 86-87

12) Black canvas bag

13) Black military coat

14) Red canvas bag marked "FLYING" with various aviation charts.

15) two boxes of trash bags

16) two towels

17) Yellow IKEA plastic bag

18) Brown paper shopping bag with tape, rubbing compound, scoket set, scizzors

b6 -1
b7C -1

b6 -1
b7C -1

SA

Received by: _____
(Signature)

Received from _____
SINGH-434

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

FD-340 (Rev. 4-2-85)

**Field File No.** 26B-48866-1A (5)

**Serial # of Originating Document** ——————

**OO and File No.** BA

**Date Received** 12/5/88

**From** SATNAM SINGH

(Name of Contributor)

(Address of Contributor)

(City and State)

b6 -1
b7C -1

**By** SA

(Name of Special Agent)

**To Be Returned** ☐ Yes ☒ No    **Receipt Given** ☐ Yes ☒ No

**Grand Jury Material - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure** ☐ Yes ☒ No

**Title:**

**Reference:** ——————————————————

(Communication Enclosing Material)

**Description:** ☐ Original notes re interview of

PHOTO's AND NEGATIVES
OF SATNAM SINGH



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SATNAM (NMN) SINGH
4/26/60

26 B -48866 -1A -⑤

-BACK OF PHOTO-

SINGH-437



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

SATNAM (NMN) SINGH
4/26/60

268 - 48866 - 1A - ⑤

-BACK OF PHOTO-

SINGH-439

SINGH-440



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SATNAM (NMN) SINGH
4/26/60
          268-48866-1A  5

-BACK OF PHOTO-

SINGH-441

SINGH 447



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SATNAM (NMN) SINGH
4/26/60

263-48866-1A ⑤

-BACK OF PHOTO-

**SINGH-443**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS



SATNAM - (NMN) SINGH
4/26/60
        26B-48866-1A

-BACK OF PHOTO-

SINGH-445



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

SATNAM (NMN) SINGH
4/26/60

26 B-48866-1A -⑤

-BACK OF PHOTO-

INH1 1-601962
**SINGH-447**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

# DOCUMENT(S)
# CANNOT
# BE SCANNED
### DOC LAB

## DESCRIPTION:

Photo Negatives

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 6-9-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

| Date |
| --- |
| April 28, 1988 |

**Title and Character of Case**

Roger Scot Snyder, ET, AL;
Theft of Piper Aircraft, Serial Number N8007B,
Frederick, Maryland;
ITSA;
FPC - GCM; Gum Control Act of 1968
ITSP

b6 -5
b7C -5

| Date Property Acquired | Source From Which Property Acquired | |
| --- | --- | --- |
| April 25, 1988 | | U.S. passport office, |

| Location of Property or Bulky Exhibit | Reason for Retention of Property and Efforts Made to Dispose of Same |
| --- | --- |
| | Evidence |

| To Be Returned | See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case | |
| --- | --- | --- | --- | --- |
| ☒ Yes ☐ No | | b6 -1 | | b6 -1 |
| | | b7C -1 | | b7C -1 |

☐ Yes ☒ No Grand Jury Material - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

**Description of Property or Exhibit**

One application for passport issued in the name of John Marshall Guattery
#013586092

| For Valuable and/or Narcotics Evidence Only | | |
| --- | --- | --- |
| Evidence Bag Seal # _____ | Signature of Two Special Agents Verifying and Sealing Bag Contents | _____ |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

*26B 48866-1B1*

BLOCK STAMP

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

APR 25 1988

FBI — WASH. FIELD OFFICE

Field File # 26B-48866

OO: WMFO

SINGH-449

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No. _____                    Remarks _____

_____

_____

_____

_____

_____

_____

_____

SINGH-450

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 6-9-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

| Date |
|------|
| 6/7/88 |

Title and Character of Case
ROGER SCOT SNYDER, AKA ET AL
THEFT OF PIPER SARATOGA SINGLE ENGINE
AIRCRAFT, TAIL #N8006Q FROM FREDERICK
3/18-20/88, ITSA
OO:BA

| Date Property Acquired | Source From Which Property Acquired | |
|------------------------|-------------------------------------|--|
| 5/31/88 | SA _____ FREDERICK RA, FBI | b6 -1 b7C -1 |

| Location of Property or Bulky Exhibit | Reason for Retention of Property and Efforts Made to Dispose of Same |
|---------------------------------------|----------------------------------------------------------------------|
| Bulky room | evidence   b6 -1 |

| To Be Returned | See Serial | Agent Submitting Property or Exhibit | b7C -1t Assigned Case |
|----------------|------------|--------------------------------------|-----------------------|
| ☐ Yes ☒ No | | SA _____ | same |

☐ Yes ☒ No  Grand Jury Material - Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

Description of Property or Exhibit

1. U.S. Passport 013586092 in name of John Marshall Guattery
2. State of Virginia Identification card in name of John Marshall Guattery
3. Letter addressed to _____ and envelope   b6 -3
4. Two mugshots of Singh ~~XXXXXXX~~ DeSilva.   b7C -3
5. Business card of John Guattery
6. Vaccination record book for John Guattery.
7. Aruba Immigration form #0106483A.
8. Landing Fee form $420818 in name of J. Guattery.
9. Receipt in name of _____ dated 3/22/88.
10. Pan American Airlines General Declaration, dated 3/22/88.
11. Gasoline receipt dated 3/22/88 signed John Guattery.
12. Medical receipt for vaccinations dated 3/14/88.
13. _____ notes of Guattery.   b7D -3

| For Valuable and/or Narcotics Evidence Only | |
|---------------------------------------------|--|
| Evidence Bag Seal # _____ | Signature of Two Special Agents Verifying and Sealing Bag Contents _____ |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

26B - 48866 6-1B2

BLOCK STAMP

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

JUN 7 1988

FBI - WASH. FIELD OFFICE

Field File # 26B-48866

OO: ~~XXXXXX~~ BA

SINGH-451

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |
| Signature _____<br>Reason | | | _____ | | |

**Item No.**                          **Remarks**

_____

_____

_____

_____

_____

_____

_____

_____

SINGH-452

Bulky Exhibit - Inventory of Property Acquired as Evidence
FD-192 (Rev. 6-9-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Date
JUNE @)20, 1988

Title and Character of Case

ROGER SCOT SNYDER, AKA ET AL
THEFT OF PIPER SARATOGA SINGLE ENGINE
AIRCRAFT, TAIL # N8006Q FROM FREDERICK, MD
3/18-20/88, ITSA
OO:BA

| Date Property Acquired | Source From Which Property Acquired | |
|---|---|---|
| JUNE 14, 1988 | | b3 |

| Location of Property or Bulky Exhibit | Reason for Retention of Property and Efforts Made to Dispose of Same |
|---|---|
| BULKY ROOM  TO LAB | EVIDENCE |

| To Be Returned | See Serial | Agent Submitting Property or Exhibit | Agent Assigned Case | |
|---|---|---|---|---|
| ☒ Yes ☐ No | | | | b6 -1 b7C -1 |

☒ Yes ☐ No  Grand Jury Material -- Disseminate Only Pursuant to Rule 6(e), Federal Rules of Criminal Procedure.

Description of Property or Exhibit

/1,

b3

/@2.

| For Valuable and/or Narcotics Evidence Only | | |
|---|---|---|
| Evidence Bag Seal # _____ | Signature of Two Special Agents Verifying and Sealing Bag Contents | |

SEMIANNUAL INVENTORY CERTIFICATION TO JUSTIFY RETENTION OF PROPERTY (Initial and Date)

26B48866-1B3
BLOCK STAMP

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

JUN 2 0 1988

FBI—WASH. FIELD OFFICE

Field File # 26B-43866

OO: BA _____

SINGH-453

ORIGINAL (FILE COPY)

## CHAIN OF CUSTODY

| Accepted Custody | Date | Time | Released Custody | Date | Time |
|---|---|---|---|---|---|
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |
| Signature _____ | | | _____ | | |
| Reason | | | | | |

Item No. _____     Remarks _____

_____

_____

_____

_____

_____

_____

_____

SINGH=454

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

PP HQ BA MM WF BOG

DE BRI #0053 0891313

ZNY CCCCC

P 291250Z MAR 88

FM LEGAL ATTACHE BRIDGETOWN (26B-1)(P)

TO DIRECTOR FBI PRIORITY

    ATTN: PROPERTY CRIMES UNIT, CID

FBI BALTIMORE PRIORITY

FBI MIAMI (INFO) PRIORITY

FBI WASHINGTON FIELD (INFO) PRIORITY

LEGAL ATTACHE BOGOTA PRIORITY

BT

C O N F I D E N T I A L

ROGER SCOTT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL GUATTERY;

b6 -4
b7C -4

GENERAL INDICES:
☒ Automated Search _WF/A4_
☒ Manual Search_____A4_

26 - 48866 *

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B,

FREDERICK MD.; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

    THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY UNLESS OTHERWISE NOTED.

26 - 48866 -2

b6 -1
b7C -1

MAR 29   7 42 PM '88



SINGH-455

CONFIDENTIAL

PAGE TWO DE BRI 0053 C O N F I D E N T I A L

REBRITEL MARCH 27, 1988.

ACCORDING TO THE

b6 -4
b7C -4
b7D -3

A LETTER FOUND IN [          ] LUGGAGE

REVEALED THAT SUBJECTS WERE ALSO TO TRAVEL TO QUITO, ECUADOR,

FOR ONE OR TWO DAYS. SINCE [          ] INFORMATION HAS ONLY BEEN

PARTIALLY CORRECT, NO FURTHER ENQUIRIES OR DISSEMINATION SHOULD

BE MADE CONCERNING THE ITINERARY UNTIL A CLEARER VERSION IS

OBTAINED.

FOR INFORMATION BOGOTA, MIAMI AND WASHINGTON FIELD, THE NAME

AND ADDRESS GIVEN BY [      ] OF THE PRIME MOVER, ONE [          ]

OF FREDERICK, MD., BOTH APPEAR TO BE FICTITIOUS ACCORDING TO

BALTIMORE DIVISION INQUIRIES.

b6 -3,4
b7C -3,4

CLASSIFY BY: 2675, DECLASSIFY ON: OADR.

BT

#0053

NNNN

INBOX.6 (#3241)

CONFIDENTIAL

FD-36 (Rev. 8-26-82)

ON 08-09-2007

FBI

EB/48866
EB/48866/2

SP #17

0024
0025

TRANSMIT VIA:
[X] Teletype
[ ] Facsimile
[ ] _____

PRECEDENCE:
[ ] Immediate
[X] Priority
[ ] Routine

CLASSIFICATION:
[ ] TOP SECRET
[ ] SECRET
[X] CONFIDENTIAL
[ ] UNCLAS E F T O
[ ] UNCLAS

~~CONFIDENTIAL~~

Date   3/30/88

FM FBI WASHINGTON METROPOLITAN FIELD OFFICE (26B-48866)(P)(C-4)

TO DIRECTOR, FBI (PRIORITY)

FBI, BALTIMORE (PRIORITY)

FBI, DETROIT (PRIORITY)

FBI, MIAMI (PRIORITY)

FBI, MEMPHIS (PRIORITY)

FBI, OKLAHOMA CITY (PRIORITY)

LEGAT, BOGOTA (PRIORITY)(INFO)

LEGAT, BRIDGETOWN (26B-1)(PRIORITY)

BT

C O N F I D E N T I A L (SECTION ONE OF TWO)

ATTN:   PROPERTY CRIMES UNIT CI-D, ROOM 5076; TERRORISM GLOBAL

         CI-D, ROOM 4252 (INFO); NI-FPC UNIT, OLIA

CHANGED; ROGER SCOT SNYDER; SINGH DA SILVA, AKA, JOHN MARSHALL

GUATTERY;

C O N F I ~~D E N T~~ I A L

b6  -4
b7C -4

2-Washington Metropolitan Field Office

LEB:mye
(2)

~~CONFIDENTIAL~~

26 - 48866  3

Approved: _____  Transmitted _____ (Number) _____ Per _____

b6  -1
b7C -1

SINGH-457

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

~~CONFIDENTIAL~~

^PAGE TWO DE WF C O N F I D E N T I A L

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968; ITSP.

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS ENTIRETY UNLESS OTHERWISE NOTED.

TITLE MARKED "CHANGED" TO REFLECT THE CORRECT SPELLING OF THE MIDDLE NAME OF SUBJECT ROGER SCOT SNYDER, PREVIOUSLY CARRIED AS "ROGER SCOTT SNYDER."

RE LEGAT, BRIDGETOWN TELETYPES TO DIRECTOR, ET AL, DATED 3/27/88 AND 3/29/88.

FOR THE INFORMATION OF RECEIVING OFFICES, L.A.

b6 -2,4
b7C -2,4

TELEPHONE NUMBER _____ WAS CONTACTED ON 3/28/88 AND ADVISED THAT _____ FROM _____ ADVISED THAT _____ WAS CURRENTLY EMPLOYED AT _____ WHICH IS RIGHT UP THE STREET. _____ STATED THAT _____ LAST DAY OF EMPLOYMENT AT _____ PROVIDED _____ LAST KNOWN

C O N F I D E N T I A L

~~CONFIDENTIAL~~

Approved: _____ Transmitted _____ Per _____
                              (Number)        (Time)

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

~~CONFIDENTIAL~~

^PAGE THREE DE WF C O N F I D E N T I A L

b6 -2,4
b7C -2,4

TELEPHONE NUMBER AS [        ] DESCRIBED [    ] AS BEING [        ] POUNDS, [      ] AND AS BEING [   ] YEARS OLD. [      ] STATED THAT HE KNEW [       ] TO HAVE A PILOT'S LICENSE AND TO BE TAKING FLYING LESSONS.

ON 3/28/88, [                              ]

b6 -2,4
b7C -2,4

[                                    ] TELEPHONE NUMBER [      ] WAS CONTACTED AND ADVISED THAT [          ] HAS BEEN EMPLOYED [            ] SINCE [            ] ADVISED THAT [        ] HAS NOT BEEN SCHEDULED TO WORK FOR TWO WEEKS AND IS CURRENTLY NOT ON THE SCHEDULE FOR 3/27/88-4/2/88. [        ] PROVIDED THE FOLLOWING INFORMATION CONCERNING [      ]

b6 -2,4
b7C -2,4

SOCIAL SECURITY NUMBER, [          ] DATE OF BIRTH, [        ] CURRENT ADDRESS, [              ] [      ] PERSON TO CONTACT IN EMERGENCY, [            ] TELEPHONE NUMBER [      ]

b6 -2
b7C -2
b7D -1

ON 3/29/88, [            ] WAS TELEPHONICALLY CONTACTED BY THE INTERVIEWING AGENT AT TELEPHONE NUMBER [          ] AFTER BEING ADVISED AS TO THE IDENTITY OF THE INTERVIEWING AGENT AND THE NATURE OF THE INTERVIEW, [          ] [   ] HOME ADDRESS

C O N F I D E N T I A L

~~CONFIDENTIAL~~

Approved: _____   Transmitted _____   Per _____
                            (Number)      (Time)

FD-36 (Rev. 8-26-82)

FBI

**TRANSMIT VIA:**
☐ Teletype
☐ Facsimile
☐ _____

**PRECEDENCE:**
☐ Immediate
☐ Priority
☐ Routine

~~CONFIDENTIAL~~

**CLASSIFICATION:**
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date _____

^PAGE FOUR DE WF C O N F I D E N T I A L

AS

IDENTIFIED

_____ STATED THAT

_____ WAS THE CURRENT RESIDENCE OF

STATED THAT

ADVISED

THAT

DEPARTED ON THIS TRIP.

IDENTIFIED

AS THE ADDRESS OF

FURTHER ADVISED THAT _____ DOES HAVE A PASSPORT AND THAT

PLACE OF BIRTH WAS A NON-SPECIFIC LOCATION IN

b6 -2,4
b7C -2,
b7D -1

b6 -2,4
b7C -2,
b7D -1

b6 -2
b7C -2
b7D -1

C O N F I D E N T I A L

~~CONFIDENTIAL~~

Approved: _____ Transmitted _____ Per _____
                                        (Number)    (Time)

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

CONFIDENTIAL

Date _____

^PAGE FIVE DE WF C O N F I D E N T I A L

THE ADDRESS IDENTIFIED AS 488 NORTH BEDFORD STREET, ARLINGTON, VIRGINIA, 22201, HAS NOT BEEN LOCATED TO DATE AND IS DEEMED TO BE A NON-EXISTENT ADDRESS.

ATTEMPTS TO LOCATE AND IDENTIFY SINGH DA SILVA WERE NEGATIVE.

FOR THE INFORMATION OF LEGAT, BRIDGETOWN, THE BAR MANAGERS INTERVIEWED STATED THAT SEVERAL INDIVIDUALS IN THE GEORGETOWN, WASHINGTON, D.C., BAR COMMUNITY BEAR A VARIATION OF THE NAME OF DA SILVA AND THAT A PHOTOGRAPH OF THE INDIVIDUAL WOULD ALMOST POSITIVELY BE IDENTIFIED IF THE INDIVIDUAL WORKED IN THE GEORGETOWN BAR COMMUNITY.

ON 3/29/88, AN INDIVIDUAL IDENTIFYING HIMSELF AS [     ] WAS TELEPHONICALLY CONTACTED BY THE WRITING AGENT AT [     ] TELEPHONE [     ] THIS TELEPHONIC CONTACT FOLLOWED TWO ATTEMPTS ON 3/28/88-3/29/88 TO CONTACT [     ] AT ADDRESS [     ] ADVISED THAT HE HAD BEEN EMPLOYED AT [     ] PROVIDED HIS DATE OF BIRTH AS [     ] AND STATED THAT HE WAS [   ] YEARS OF AGE. [     ]

b6  -2
b7C -2
b7D -1

C O N F I D E N T I A L

CONFIDENTIAL

Approved: _____    Transmitted _____    Per _____
                          (Number)      (Time)

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

~~CONFIDENTIAL~~    Date _____

^PAGE SIX DE WF ~~C O N F I D E N T I A L~~

DESCRIBED HIMSELF AS BEING [               ] WHITE MALE.

[        ] PROVIDED HIS [      ] DRIVER'S LICENSE NUMBER AS

[         ] WHICH HE ALSO IDENTIFIED AS BEING HIS SOCIAL

SECURITY NUMBER. [      ] STATED THAT HIS PLACE OF BIRTH WAS

[              ] FURTHER ADVISED [            ]

[            ] WHILE WORKING AT [             ] ABOUT TWO

MONTHS AGO. [      ] STATED THAT [              ]

[            ] ADVISED THAT [              ]

[                 ]

AND A COPY OF [            ] STATED THAT HE

[              ] BECAUSE THE ONLY THING HE

CONSIDERED OF IMPORTANCE WAS [          ] WHICH HE

INDICATED WAS IN A [            ] FURTHER ADVISED

THAT HE IS CURRENTLY NOT IN POSSESSION OF [          ]

[        ]

FOR THE INFORMATION OF RECEIVING OFFICES, THE WEAPON

IDENTIFIED AS LUGAR 9MM TEC-9, SERIAL NUMBER 47104, WAS

C O N F I D E N T I A L

BT

~~CONFIDENTIAL~~

b6 -2
b7C -2
b7D -1

Approved: _____  Transmitted _____  Per _____
                                      (Number)    (Time)

FD-36 (Rev. 8-26-82)

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

~~CONFIDENTIAL~~

FM FBI WASHINGTON METROPOLITAN FIELD OFFICE (26B-48866)(P)(C-4)

TO DIRECTOR, FBI (PRIORITY)

FBI, BALTIMORE (PRIORITY)

FBI, DETROIT (PRIORITY)

FBI, MIAMI (PRIORITY)

FBI, MEMPHIS (PRIORITY)

FBI, OKLAHOMA CITY (PRIORITY)

LEGAT, BOGOTA (PRIORITY) (INFO)

LEGAT, BRIDGETOWN (26B-1)(PRIORITY)

BT

C O N F I D E N T I A L (SECTION TWO OF TWO)

ATTN:   PROPERTY CASES UNIT, CI-D, ROOM 5076; TERRORISM GLOBAL

        CI-D, ROOM 4252 (INFO); NI-FPC UNIT, OLIA

CHANGED; ROGER SCOT SNYDER; SINGH DA SILVA, AKA, JOHN MARSHALL

GUATTERY; [                                    ]

b6 -4
b7C -4

C O N F I D E N T I A L

~~CONFIDENTIAL~~

Approved: _____   Transmitted _____   Per _____
                            (Number)   (Time)
                            MAR 31  12 0° AM '98

SINGH-463

FD-36 (Rev. 8-26-82)

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

CONFIDENTIAL

^PAGE TWO DE WF C O N F I D E N T I A L

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT,
SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN
CONTROL ACT OF 1968; ITSP.

INDENTIFIED BY NCIC INQUIRY NUMBER 18542, AS A STOLEN GUN.  ORI
WAS IDENTIFIED AS BENTON COUNTY SHERIFF'S OFFICE, CAMDEN,
TENNESSEE.

FOR THE INFORMATION OF MEMPHIS,

b6 -4
b7C -4
b7D -3

IN CHECKING THE PIPER,
IT WAS OBSERVED THAT THE SERIAL NUMBER HAD BEEN ALTERED FROM
N8007B TO READ N8006Q.  NO FLIGHT PLAN, AIRWORTHINESS
CERTIFICATE, OR OWNERSHIP PAPERS WERE LOCATED IN THE AIRCRAFT.
ALTHOUGH, A MACHINE GUN, TWO PISTOLS, AMMUNITION, WIGS, BODY
ARMOR AND OTHER ITEMS WERE LOCATED.

C O N F I D E N T I A L

CONFIDENTIAL

Approved: _____  Transmitted _____  Per _____
                              (Number)      (Time)

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

CONFIDENTIAL

b6 -4
b7C -4

^PAGE THREE DE WF C O N F I D E N T I A L

[        ] AND DA SILVA WERE ARRESTED, AND ARE BEING HELD ON

LOCAL FIREARMS AND POSSESSION OF STOLEN PROPERTY CHARGES. THE

SEIZED WEAPON, IDENTIFIED SUPRA, WAS IDENTIFIED ALONG WITH A

SMITH AND WESSON MODEL 469-TBM 5493 AND A SMITH AND WESSON MODEL

469, TBM 6181. THESE WEAPONS WERE NOT IDENTIFIED AS BEING

CONTAINED WITHIN THE NCIC SYSTEM BY WMFO.

THE BUREAU OF ALCOHOL, TOBACCO, AND FIREARMS (BATF) IS ALSO

HANDLING TRACES ON THE THREE WEAPONS IDENTIFIED SUPRA.

LEADS: MEMPHIS DIVISION: AT CAMDEN, TENNESSE:

WILL CONTACT BENTON COUNTY SHERIFF'S OFFICE AND SECURE

INFORMATION CONCERNING WEAPON IDENTIFIED AS LUGAR SERIAL 47104

REPORTED TO NCIC AS A STOLEN GUN.

WASHINGTON METROPOLITAN FIELD DIVISION:

AT ARLINGTON, VIRGINIA:

b6 -3,4
b7C -3,4

WILL AWAIT INSTRUCTION FROM OFFICE OF ORIGIN REGARDING

FURTHER CONTACTS WITH WOMAN IDENTIFIED AS [                    ]

[                        ]

AT WASHINGTON, D.C.:

b6 -3
b7C -3

1) WILL POSITIVELY IDENTIFY [                ] AND ATTEMPT TO

C O N F I D E N T I A L

CONFIDENTIAL

Approved: _____ Transmitted _____ Per _____
                                        (Number)    (Time)

FD-36 (Rev. 8-26-82)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

~~CONFIDENTIAL~~

Date _____

^PAGE FOUR DE WF C~~O N F I D E N T I A L~~

OBTAIN A PHOTOGRAPH FOR THE USE OF THE ORIGINATING OFFICE.

    2)  WMFO WILL PROVIDE THE RESULT OF PASSPORT CHECK ON [ ]

[ ] WHEN AVAILABLE.

    3)  WMFO WILL PROVIDE POSSIBLE INDICES HITS ON MULTIPLE

SUBJECTS WHEN COMPLETE.

    4)  WMFO WILL SUPPLY RESULTS OF TRACE BY BATF WHEN COMPLETE.

~~C BY 9174: DECL: OADR.~~

BT

b6 ~3
b7C ~3

~~CONFIDENTIAL~~

Approved: _____  Transmitted _____  Per _____

                                     (Number)    (Time)

NEW MAIL JUST ARRIVED: INBOX.1
INBOX HAS 1 DOCUMENT
FORMS.TEXT HAS 1 DOCUMENT

~~CONFIDENTIAL~~  C-4

INBOX.1 (#1448)

TEXT:

VZCZCMM0017

RR HQ BA WMFO BRI

DE MM #0017 0962255

ZNY CCCCC

R 052255Z APR 88

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

FM MIAMI (26B-46386) (KWRA) (RUC)

TO DIRECTOR, FBI ROUTINE

BALTIMORE (26B-56765) (SQ. 10) (INFO) ROUTINE

WMFO (26B-48866) (C-4) ROUTINE

LEGAT, BRIDGETOWN (26B-1) ROUTINE

BT

~~C O N F I D E N T I A L~~

ATTENTION BUREAU/PROPERTY CRIMES UNIT, CID, ROOM 5076;

INTERNATIONAL TERRORISM GLOBAL UNIT, CID, ROOM 4252 (INFO); NI-

FPC UNIT, OLIA.

ROGER SCOT SNYDER; SINGH DA SILVA AKA JOHN MARSHALL GUATTERY;

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B,

FREDERICK, MARYLAND; ITSA; FPC-GCM; GUN CONTROL ACT OF 1968;

ITSP.

~~CONFIDENTIAL~~

b6 -1
b7C -1



SINGH-467

CONFIDENTIAL

PAGE TWO DE MM 0017 ~~C O N F I D E N T I A L~~

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY UNLESS OTHERWISE NOTED.

RE BRIDGETOWN TELETYPE TO THE BUREAU, ET AL, DATED MARCH 29,

1988.

INVESTIGATION AT THE RODEWAY INN, MARATHON, FLORIDA, ON

APRIL 1, 1988, REVEALED A LODGING RECORD IN THE NAME OF JOHN

GUATTERY, 98 NORTH BEDFORD, ARLINGTON, VIRGINIA 22201, FOR THE

NIGHT OF MARCH 20, 1988( _____ (PROTECT), _____

_____ ADVISED THAT GUATTERY CHECKED INTO THE

RODEWAY INN ON MARCH 20, 1988, LISTING A PARTY OF TWO ON HIS

REGISTRATION CARD, AND CHECKED OUT ON MARCH 21, 1988. GUATTERY

STAYED IN ROOM NUMBER 122, AND MADE LONG DISTANCE CALLS AS

FOLLOWS:

MARCH 20, 1988, AT 4:31 P.M., 1-800-992-7433; MARCH 20,

1988, AT 8:59 P.M., 703-525-1837; MARCH 21, 1988, AT 1:00 A.M.,

703-525-1837; MARCH 21, 1988, AT 10:02 A.M., 305-526-5307; MARCH

21, 1988, AT 10:15 A.M., 703-521-4501;

A REVIEW OF THE 1988 BRESSER'S CROSS REFERENCE DIRECTORY FOR

MIAMI, FLORIDA, REVEALED THAT 305-526-5307, IS SUBSCRIBED TO

BISPATCH SERVICE, INC., MIAMI INTERNATIONAL AIRPORT, MIAMI,

b6 -2
b7C -2

CONFIDENTIAL

PAGE THREE DE MM 0017 ~~C O N F I D E N T I A L~~    

FLORIDA.

FURTHER INVESTIGATION AT MARATHON, FLORIDA, ON APRIL 1,
1988, REVEALED THAT THERE IS NO CORAL REES HOTEL, ALTHOUGH IT WAS
DETERMINED THAT THERE IS A CORAL REES RESORT, ISLAMORADO,
FLORIDA, APPROXIMATELY 30 MILES NORTH OF MARATHON, FLORIDA.        b6 -4
INVESTIGATION AT THAT LOCATION FAILED TO REVEAL LODGING RECORDS    b7C -4
FOR JOHN MARSHALL GUATTERY, [                    ] OR SINGH DA SILVA.

ON APRIL 4, 1988, INVESTIGATION WAS CONDUCTED AT THE CORAL
LAGOON MOTEL, MARATHON, FLORIDA, THE REES (TIME SHARE RESORT),
MARATHON, FLORIDA; AND THE LAGOON MOTEL, MARATHON, FLORIDA, WITH
NEGATIVE RESULTS REGARDING THE ABOVE THREE NAMES.

LEADS IN THIS MATTER ARE LEFT TO THE DISCRETION OF RECEIVING
OFFICES.

C BY 2675, DECL: OADR.

BT

#0017


NNNN

~~CONFIDENTIAL~~

GENERAL INDICES:
☒ Automated Search
☐ Manual Search

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

C-4

INBOX.8 (#1785)

TEXT:

VZCZCMEO003

PP HQ WMFO BA DE MM OC BOGOTA BRDIGETOWN

DE ME #0003 0980018

ZNY CCCCC

P 070215Z APR 88

FM MEMPHIS (26B-R-27)(RUC)

TO DIRECTOR    PRIORITY

WMFO (26B-4866) (C-4)  PRIORITY

BALTIMORE  (INFO) PRIORITY

DETROIT  (INFO) PRIORITY

MIAMI (INFO) PRIORITY

OKLAHOMA CITY (INFO) PRIORITY

LEGAT BOGOTA  (INFO) PRIORITY

LEGAT BRIDGETOWN (26B-1) PRIORITY

BT

~~C O N F I D E N T I A L~~

ATTN: PROPERTY CRIMES UNIT - CI-D, ROOM 5076; TERRORISM GLOBAL

CI-D, ROOM 4252 (INFO); NI-FTC UNIT. QUIA...

GENERAL INDICES:
☐ Automated Search
☐ Manual Search

26-B-48666-4

ROGER SCOT SNYDER; SINGH DA SILVA, AKA JOHNSON MARSHALL GUATTERY;

b6 -4
b7C -4

b6 -1
b7C -1

SINGH-470

CONFIDENTIAL

PAGE TWO DE ME 0003 C O N F I D E N T I A L

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT; SERIAL NUMBER N8007B

FREDERICK, MARYLAND, ITSA; FTC-GCM; GUN CONTOL ACT OF 1968; ITSP.

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY.

RE WASHINGTON METROPOLITAN FIELD OFFICE TEL TO DIRECTOR

MARCH 31, 1988.

WEAPON IDENTIFIED IN RE TEL AS A LUGER 9 MM, MODEL TEC-9,

SERIAL NUMBER 47104, REPORTED AS STOLEN BY BENTON COUNTY,

TENNESSEE SHERIFF'S OFFICE, IS AN NCIC HIT BASED ON A SERIAL

NUMBER ONLY.

BENTON COUNTY SHERIFF'S OFFICE,

b6 -6
b7C -6

ADVISED THAT HIS DEPARTMENT ENTERED ON APRIL 9, 1984, A .12 GAUGE

BROWNING SHOTGUN, SERIAL NUMBER 47104, WHICH APPARENTLY EXPLAINS

THE HIT BASED ON AN INQUIRY OF THE REFERENCED LUGER.

C BY 5993; DECL:OADR.

BT

#0003

CONFIDENTIAL

NNNN

NEW MAIL JUST ARRIVED: INBOX.2
FORMS.TEXT HAS 1 DOCUMENT

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

FILES.INCOMING.DAY8-15.108 (#1996)

TEXT:

VZCZCOCO008

OO HQ BA DE ME MM WMFO BOG BRI

DE OC #0008 0990039

ZNY CCCCC

O 080145Z APR 88

FM OKLAHOMA CITY (199J-2105) (TRA) (RUC)

TO DIRECTOR  IMMEDIATE

ATTN: PROPERTY CRIMES UNIT, CID, ROOM 5076;

    INTERNATIONAL TERRORISM GLOBAL UNIT, CID, ROOM 4252 (INFO);

    I/FPC UNIT, OLIA

BALTIMORE (INFO)  PRIORITY

DETROIT (INFO)  PRIORITY

MEMPHIS (INFO)  PRIORITY

MIAMI (INFO)  PRIORITY

WMFO (263-48866)(C-4) (INFO)  PRIORITY

LEGAT, BOGOTA (INFO)  PRIORITY

LEGAT, BRIDGETOWN (26B-1)  PRIORITY

BT

CONFIDENTIAL

ROGER SCOT SNYDER; SINGH DA SILVA, AKA JOHN MARSHALL SLATTERY;

b6 -4
b7C -4

GENERAL INDICES:
☒ Automated Search
☒ Manual Search

26- 48866 -5



b6 -1
b7C -1

APR 8  11 24 PM '88

SINGH-472

PAGE TWO DE OC 0008 C O N F I D E N T I A L

CONFIDENTIAL

b6 -4
b7C -4

THEFT OF PIPER AIRCRAFT, SERIAL NUMBER N8007B, FREDERICK, MARYLAND; ITSA; FPC - OCM; GUN CONTROL ACT OF 1968; ITSP

THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS ENTIRETY UNLESS OTHERWISE NOTED.

RE WMFO TEL TO THE BUREAU, ET AL, DATED MARCH 31, 1988; AND LEGAT, BRIDGETOWN TEL TO THE BUREAU, ET AL, DATED MARCH 27, 1988.

FOR INFORMATION OF RECEIVING OFFICES, _____ TULSA INTERNATIONAL AIRPORT (TIA), TULSA, OKLAHOMA, TELEPHONE NUMBER _____ ADVISED SHE LOOKED AT THE TENANT DIRECTORY FOR THE TIA AND THERE IS NO SCOTT AVIATION AT THE TIA, NOR DOES THE DIRECTORY, WHICH LISTS EMPLOYEES FOR THE VARIOUS BUSINESSES AT THE TIA, REFLECT ANY EMPLOYEE BY THE NAME _____

b6 -2
b7C -2

A REVIEW OF THE SOUTHWESTERN BELL TELEPHONE DIRECTORY WHICH COVERS THE GREATER TULSA, OKLAHOMA, AREA DISCLOSES NO LISTING FOR SCOTT AVIATION OR _____

b6 -3
b7C -3

A REVIEW OF THE TULSA POLK DIRECTORY DISCLOSED NO LISTING FOR A SCOTT AVIATION OR A _____

b6 -3
b7C -3

ON APRIL 4, 1988, THE RECORDS OF THE CREDIT BUREAU OF TULSA,

CONFIDENTIAL

SINGH-473

PAGE THREE DE OC 0008 C O N F I D E N T I A L

TULSA, OKLAHOMA, DISCLOSED NO RECORD FOR ▭ SCOTT    b6 -3,4
                                                              b7C -3,4

AVIATION, OR ▭ .

        C BY 5636, DCL OADR.

~~CONFIDENTIAL~~

BT

#0008

NNNN

SINGH-474

FD-448 (Rev. 9-18-78)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

C-4

Transmit attached by Facsimile - UNCLAS

Precedence _____

b6 -1
b7C -1

To: WMFO (ATTN: Squad C-4
SA _____)

From: BA (26-56765)

Date: 4-14-88

Time: Transmitted -

Subject: Roger Scot Snyder, et al

PULL WOF. 26-48865K -4

Initials -

☐ Fingerprint Photo    ☐ Fingerprint Record    ☐ Map    ☐ Newspaper clipping    ☐ Photograph

☐ Artists Conception    ☐ Other _____

Special handling instructions:

This is Singh DeSilva
NOTE HAIR IN BUN

APR 14  3:45 PM '00

Approved: _____

SINGH-475

FOI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS



SINGH-476

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

1

WMFO 26B-48866
LEB:jrw

b6 -1,2
b7C -1,2

        On April 18, 1988,⬚⬚⬚⬚⬚ Department of Motor
Vehicle, Richmond, Virginia,⬚⬚⬚⬚⬚⬚⬚⬚ telephone
number⬚⬚⬚⬚⬚⬚⬚⬚⬚ telephonically contacted Special Agent (SA)
⬚⬚⬚⬚⬚⬚⬚⬚⬚ and provided the following information:

        From her files:

        ANTONIO MICHAEL DESLIVA presented Maryland title number
15622607, issued 1/6/88 bearing address 2007 Avalon Place,
Hyattsville, Maryland 20783 to register vehicle bearing vin#
AC158604MD, further described as a 1979 reconditioned Mercedes
Benz.  This title was surrendered in order to obtain Virginia
registration on vehicle which expires February 28, 1989.
Maryland title information disclosed that the vehicle was
purchased on December 5, 1987 from Nazarian Motors, 1158 Bonifant
Street, Silver Spring, Maryland for $1,600.

        DESLIVA's Maryland drivers license number was provided
as D240067603376.

        ANTONIO MICHAEL DESLIVA currently has vehicle bearing
vin# AC158604MD, further described as a 1979 reconditioned
Mercedes Benz registered in Maryland effective 2/22/88 and
expiring on 2/28/89.  The address listed in connection with this
registration is 6517 Branes Drive, McLean, Virginia 22106.  The
vehicle license number is listed as SDB-906.

        Virginia drivers license information, listed under the
name ANTONIO MICHAEL DESILVA indicated an address of 2262
Windbreak Drive, Alexandria, Virginia 22302, date of birth
5/18/59, license number RO6-13-1781, issued 12/6/83, having an
expiration date of 5/88.  The drivers license number does not
correspond with the social security number because DESLIVA
provided no social security number at the time of application and
a receipt number was used.  DESLIVA was described as being 5'1",
140lbs with black eyes and a bald head.



26-48866-6A

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

1

WMFO 26B-48866
LEB:jrw

b6 -1
b7C -1

The following investigation was conducted by Special
Agent (SA) [          ] on April 19, 1988:

On instant date Bureau of Alcohol, Tobacco and Fire
Arms (BATF) agent [          ] telephone number [          ]
advised that weapons described as Luger 9MN TEC-9, serial number
47104, Smith and Wesson model 469, TMB 5493, and Smith and Wesson
model 469, TMB 6181, were traced to Weapons Unlimited, 2302 Lee
Highway Apt. 205, Arlington, Virginia.  The weapons were
purchased on March 3, 1988 by Weapons Unlimited from RSR
Wholesale who acquired the weapons on February 17, 1988.

b6 -5
b7C -5

26-48866-7

FD-302 (REV. 3-10-82)



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**FEDERAL BUREAU OF INVESTIGATION**

<u>1</u>

Date of transcription    4/21/88

Home Address:
Home Phone Number:                                    b6 -2
Work Address:                                         b7C -2
Work Phone Number:                was contacted at his work    b7D -1
address and advised as to the identity of the interviewing agent
and the nature of the contact.          thereafter furnished the
following information:

                                                     b6 -2
          advised that he was currently employed as a    b7C -2
    at          and has been so employed since          b7D -1

                                             advised that he was in
possession of no current identification.          provided the
interviewing agent with a                          dated
April 15, 1988, which listed          Social Security Number as
          and contained an address of

          then allowed the interviewing agent to
photograph him a total of six times with a Polaroid Land Camera.    b6 -2
The photographs are described as being two each straightforward    b7C -2
          two each front view          two each side    b7D -1
view

          was positively identified by
          for          Home Phone Number:                 b6 -2,3
and Work Phone Number:          or          b7C -2,3
and          for                                         b7D 1
          Work Phone Number:

Investigation on   4/19/88   b6 -1
                            b7C -1   Washington, D.C.   WMFO
                                                       File #  26B-48866 -8

by  SA          :dml                    Date dictated  4/19/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH 479



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

FD-302

**FEDERAL BUREAU OF INVESTIGATION**

Date of Transcription  4/25/88

b6 -2
b7C -2
b7D -1

telephone number                    was
contacted at this address and advised as to the identity of the
interviewing agents and the nature of the contact.
thereafter provided the following information:

has known                          b6 -2,4
since                    met      at      b7C -2,4
                                           b7D -1
and            was employed at

and          was employed at        b6 2,4
                                    b7C 2,4
                                    b7D -1
spoke with        via
telephone, on          advised that        JLS

identified          as                   b6 -2,3,4
has met        at        on several       b7C -2,3,
occasions.                                b7D -1

advised that on Monday,               b6 -2,4
received a telephone call from          stated that the    b7C -2,4
content of the call, in part, consisted of        b7D -1
                                    and that

saw and talked to        in          b6 -2,4
person two days before                    b7C -2,4
stated that                               b7D -1
identified            as
phone number

**WASHINGTON METROPOLITAN OFFICE**
Interview on  4/21/88  At  Washington, D.C.   FILE #  26B-48866 - 9

b6 -1
b7C -1    SA's                and
         By                      LEB:sgj   Date Dictated  4/25/88

This document contains neither recommendations nor conclusions of
the FBI. It is the property of the FBI and is loaned to your
agency; it and its contents are not to be distributed outside
your agency.

SINGH-480

b6 -2
b7C -2
b7D -1

**FD-302a**

**Continuation of Interview of** _____    **PAGE 2**

stated that this address was located near _____    b6 2,4
also identified _____ as being the _____    b7C -2,4
_____ and residing at the same _____ address.    b7D -1

_____ advised that _____ moved out from the    b6 -2,3,
_____ residence and moved in with _____    b7C -2,3,
somewhere in _____ could not identify a    b7D -1
specific period of time for this move. _____ stated that _____
_____

_____ is currently employed by the    b6 -2
_____ provided    b7C -2
the telephone number _____ as _____    b7D -1

"SINGH" (ph) appeared at _____    b6 -2,4
                                          b7C -2,4
believed SINGH also had a gym bag in his    b7D -1
possession. _____

SINGH-481

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SATNAM SINGH,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-01064 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

# EXHIBIT B

# (PAGES 482-553)



FD-302a

Continuation of Interview of ▢ PAGE 3

b6 -2
b7C -2
b7D -1

b6 -2,4
b7C -2,4
b7D -1

recalled that on ▢ that a notation was made ▢

b6 -2,4
b7C -2,4
b7D -1

telephonically contacted ▢

b6 -2,4
b7C -2,4
b7D -1

stated that ▢ departed from the ▢

drove to the ▢

b6 -2,4
b7C -2,4
b7D -1

immediately to ▢ then drove ▢ stated that SINGH showed up ▢

b6 -2,4
b7C -2,4
b7D -1

prior to ▢ worked for ▢ provided ▢

At 11:54 a.m., the interview was terminated when ▢ wanted to speak with an attorney.

b6 -2
b7C -2
b7D -1

b6 -2
b7C -2
b7D -1

**FD-302a**

Continuation of Interview of _____    **PAGE** _4*_

Prior to _____ allowed to speak with    b6 -2,
an attorney _____ provided _____    b7C -2,
_____ telephone number _____    b7D -1
_____ social security number as _____
date of birth as _____

_____ is described as follows:

SEX: _____    b6 -2
RACE: _____    b7C -2
EYES: _____    b7D -1
HAIR: _____
HEIGHT: _____
WEIGHT: _____

During the course of the interview, _____    b6 -1,2
_____ SA _____ placed a telephone    b7C -1,2
number _____ to _____ employer at telephone    b7D -1
that _____ had been a witness to a crime and was being
interviewed by Special Agents of the FBI _____ was advised that
the call had been placed _____

SINGH-483

FD-448 (Rev. 9-18-78)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Transmit attached by Facsimile - **UNCLAS**                    Precedence _____

To: SAC, Baltimore (26B 56765)          Date: April 25, 1988

From: SAC, WMFO (26B-48866)(P)(C-4)     Time: Transmitted -

Subject: Roger Scot Snyder, et al        Initials -

b6 -2
b7C -2
b7D -1

☐ Fingerprint Photo    ☐ Fingerprint Record    ☐ Map    ☐ Newspaper clipping    ☐ Photograph

☐ Artists Conception    ☑ Other 302 interview

Special handling instructions: Hold for S.A. _____, C-10.

b6 -1
b7C -1

26 - 488166 - 10

Searched _____
Serialized ____✗____
Indexed _____
Filed ____✗____

Approved: _____ /lm

SINGH-484

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**FEDERAL BUREAU OF INVESTIGATION**

4/27/88

Date of transcription

<u>1</u>

From

telephone number _____ was contacted at
this address and advised as to the identity of the interviewing    b3
agent and the nature of the contact. _____ was then served
with one subpoena to testify before Grand Jury which commanded
the _____ to bring

The subpoena commanded the _____ to appear at 820
U.S. Courthouse, 101 West Lombard Street, Baltimore, Maryland
21201, courtroom 820, on Tuesday, April 26, 1988 at 10:00 am.  A
copy of this subpoena is attached and made a part hereto.

| | | | |
|---|---|---|---|
| Investigation on | 4/22/88 | at Arlington, Virginia | File # WMFO 26b-48866 −(  |
| by | SA _____ | cas b6 −1 b7C −1 | Date dictated 4/25/88 |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-485

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**FEDERAL BUREAU OF INVESTIGATION**

4/27/88

Date of transcription_____

1.

b3
b6 -2
b7C -2

[redacted] home telephone number [redacted]
was contacted at this address and advised as to the interviewing
agent and the nature of the contact. [redacted] was then served
with one subpoena to testify before Grand Jury which commanded
her to appear before the Grand Jury of the United States District
Court at 820 U.S. Courthouse, 101 West Lombard Street, Baltimore,
Maryland 21021, Courtroom 820, Tuesday, April 26, 1988, at 10:00
am. A copy of this subpoena is attached and made a part hereto.

[redacted] refused to accept the subpoena and the
subpoena was placed at her feet at approximately 8:37 am. The
interviewing agent read the contents of the subpoena to [redacted]
[redacted] before placing it at her feet. [redacted] refused to
provide positive identification to the interviewing agent.
[redacted] is described as being a [redacted] of years
of age,[redacted]

b3
b6 -2
b7C -2

[redacted] acknowledged the presence of the agent by
requesting that the Agent wait an additional 15 minutes.
[redacted] then entered her apartment stating that she was going to
use the telephone. [redacted] returned to advise the Agent that
she might want to talk to him at the conclusion of the 15 minute
waiting period. The Agent then left the immediate vicinity of
the apartment [redacted] and entered the first level of apartment
building. The agent then knocked on a door located on the first
floor of the apartment building and requested to use the phone.
During this telephone call the interviewing agent advised persons
at the Washington Metropolitan Field Office of his location and
the circumstances surrounding the serving of the subpoena. The
agent then returned to the area outside of apartment [redacted]

b3
b6 -2
b7C -2

| Investigation on | 4/22/88 | at | Arlington, Virginia | File # | WMFO 26B-48866 -1-2 |
|---|---|---|---|---|---|

by _____ SA [redacted] cas

b6 -1
b7C -1

Date dictated _____ 4/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-486

b3
b6 -2
b7C -2

WMFO 26B~48866

Continuation of FD-302 of _____ , On __4/22/88__ , Page __2__

      At approximately 8:58 am [____] exited apartment [__]
and told the agent that [__] was leaving because [__] had an
appointment. [_____] then left the apartment building turned
left on [_____] then turn left on [____] and walked
one block then turned left on [_____] then turn left on
[_____] and walked one block, turned left on [_____]
[_____] and walked one block then turned right on [__]
[_____] and entered the parking lot behind building [_____]
[_____]

b3
b6 -2
b7C -2

      [_____] was noted exiting a parking lot in a [_____]
vehicle bearing [_____] license tag number [_____]
exited the parking lot at approximately 9:12 am.

b3
b6 -2
b7C -2

FD-302 (REV. 3-10-82)



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

4/27/88

1

Date of transcription

b6 -2
b7C -2
b3

home telephone number

work telephone number                    currently employed by the

was contacted at her
work address and advised as to the identity of the interviewing
agent and the nature of the contact            was then served with
one subpoena to testify before Grand Jury commanded her to appear
before the Grand Jury of the United States, District Court, at
820 United States Courthouse, 101 West Lombard Street, Baltimore,
Maryland 21201, Courtroom 820, on Tuesday, April 26, 1988, at
10:00 am.  A copy of this subpoena is attached and made a part
hereto.

---

| | | | | |
|---|---|---|---|---|
| Investigation on | 4/22/88 | at | Arlington, Virginia | File # | 29B-48866 -18 |

WMFO

b6 -1
b7C -1

by  SA                              cas            Date dictated  4/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-468

FD-36 (Rev. 8-29-85)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**TRANSMIT VIA:**
- ☐ Teletype
- ☐ Facsimile
- ☒ AIRTEL

**PRECEDENCE:**
- ☐ Immediate
- ☐ Priority
- ☐ Routine

**CLASSIFICATION:**
- ☐ TOP SECRET
- ☐ SECRET
- ☐ CONFIDENTIAL
- ☐ UNCLAS E F T O
- ☐ UNCLAS

Date   4/27/88

C-4

TO:     DIRECTOR, FBI
        ATTN:  IDENTIFICATION DIVISION, LATENT
        FINGERPRINT SECTION

FROM:   SAC, BALTIMORE (26B-56765) (SQ 10) (P)

SUBJECT:  CHANGED
        ROGER SCOT SNYDER;
        UNSUB, aka
        Antonio Michael DeSilva, aka
        Singh DeSilva, Singh De Silva,
        Salvatore DeSilva, John Marshall Goattery;
        THEFT OF PIPER SARATOGA SINGLE
        ENGINEER AIRCRAFT,
        AIRCRAFT SERIAL NUMBER 32R8213016,
        ENGINE SERIAL NUMBER L21585-48A,
        TAIL NUMBER N8006Q,
        FROM FREDERICK, MARYLAND AIRPORT,
        3/18-19/88;
        ITSA, GUN CONTROL ACT OF 1968,
        ITSP, PASSPORT MATTER, FPC - GCM;
        OO:  BA

GENERAL INDICES:
☐ Automated Search
☐ Manual Search

26-48866-(WF)

Title marked "Changed" to add aliases of Antonio
Michael DeSilva, Singh DeSilva and Salvatore DeSilva
to title.

8 - Bureau (1 - Identification Division) (1 - FBI Laboratory,
        Firearms Unit) (1 - Property Crimes Unit, CID,
        Room 5076) (1 - International Terrorism Global
        Unit, CID, Room 4252) (1 - I/FPC Unit)
        (1 - OLIA - Attn:  SA [          ] INTERPOL)
        (1 - INTD/CI-3OFM [          ]) (1 - Legat
        Barbados) (26-1) (Enc. 5)
2 - Los Angeles
2 - Miami (26B-46386)
2 - Oklahoma City (199J-2105)
2 - Pittsburgh
2 - San Franciso
2 - WMFO (26B-48866)
2 - Baltimore
JBD:sp
(22)

b6 -1
b7C -1

Approved: _____   Transmitted _____   Per _____
                              (Number)   (Time)

26B-48866-14

b6 -1
b7C -1

SINGH-489

BA 26B-56765



b6 -1,5
b7C -1,5 _____ Re Baltimore telcall on 4/19/88, to SA _____
                        Office of Foreign Missions; and telcall to
         SA _____ Office of Liaison and International
         Affairs, INTERPOL, 4/25/88.

                    Enclosed for the Identification Division,
        Latent Fingerprint Unit, are four ammunition clips containing
        an unknown number of nine millimeter rounds; and for
        the Office of Foreign Missions one photograph of DeSILVA.

                    For the information of recipient offices,
        on the evening of 3/22/88, _____ the pilot, and his
        passenger, whose identity is still unknown, landed on
        the island of Aruba when that island was on a terrorist
        alert.  Upon instructions from the Aruba International
        Airport Tower _____ parked his aircraft near other
        small aircrafts but at a direction opposite all other
        aircrafts.  As its official government policy, Customs
b6 -4   Inspectors immediately met _____ and his passenger
b7C -4  and asked them if they were carrying any weapons or
        drugs.  Both answered in the negative and they were
        then driven to the main building of the airport where
        they checked through Immigration and cleared Customs.
        The passenger of the aircraft utilized a recently issued
        U.S. passport in the name of JOHN MARSHALL GUATTERY
        and _____ used his U.S. passport.  At the time the
        aircraft landed, Aruban Customs detectives, who were
        not at the airport, overheard the aircraft receiving
        landing instructions and they also were advised that
        the passenger, GUATTERY, indicated he was carrying in
        excess of $25,000 in cash.  These Customs Inspectors
        responded to the airport and located the aircraft in
        the parking area.  Immediately upon observation of the
        aircraft, they were able to determine that the tail
        numbers on the fuselage and the tail did not match in
        uniform size.  The aircraft, the captioned Piper Saratoga,
        was bearing number N8007B.  The last two digits, 7B,
        were not the same width as the N800.  Upon closer inspection,
        the Customs Inspectors were able to determine that the
        digits 7B were made from a black masking tape type substance
        and in no way were identical to the preceding four numbers
        and letters.  At this point, the Customs Inspectors
        opened the door of the aircraft and picked up a black
        jacket from the pilot's seat.  Wrapped in a towel in
        the pocket of the jacket were four loaded clips for
        a nine millimeter pistol.  These are the clips that
        are enclosed for the Identification Division.

                    Because the subjects had failed to declare
        that ammunition and possibly firearms were aboard the
        aircraft, Aruban Customs contacted the Aruban Police

BA 26B-56765

Force.  The Aruban Police Force responded by bringing
both subjects from their hotel to the airport and out
to the aircraft.  They were once again asked if they
had any weapons or drugs to declare to Customs.  They
again answered in the negative.  At this point, Customs
agents entered the aircraft and removed body armour,
a wig, cameras and Intratec, Tech 9, nine millimeter
semi-automatic pistol, and two Smith and Wesson, model
469, nine millimeter pistols.  Numerous rounds of ammunition
and clips for both weapons were located.  Both subjects
were then arrested by the Aruban Police Force and separated
from each other.

A subsequent investigation disclosed that
the aircraft's true number was N8006Q and had been reported
stolen to the FBI in Frederick, Maryland, on 3/20/88.

b6 -3,4
b7C -3,4
b7D -3

BA 26B-56765

b7D -3

b6 -4
b7C -4
b7D -3

b6 -1,4
b7C -1,4

        On March 30, 1988, authorized complaints of
SA [          ] FBI, Frederick, Maryland, were signed
by U.S. Magistrate PAUL M. ROSENBERG, Baltimore, Maryland,
charging [          ] and SINGH DA SILVA with violation
of Title 18, Section 2312, for the transportation and
interstate commerce of the captioned stolen aircraft.
Warrants were then issued.

b6 -1,2
b7C -1,2
b7D -1

        At the request of Legat Barbados, SA [          ]
traveled to the island of Aruba and conducted additional
investigation and seized evidence in this matter.

4



BA 26B-56765



b6 -4
b7C -4
b7D -

b6 -4
b7C -4
b7D -3

Attempts to interview
DeSILVA were immediately met by a request for an attorney
to be present.

       Both subjects' fingerprints were brought back
to the United States and DeSILVA's prints were searched
through all the files of the FBI Identification Division
with negative results.  It is strongly felt that DeSILVA
is an illegal alien and that sometime during his stay
in Aruba, had indicated he had been born in Singapore.

       Subsequent investigation conducted by Washington
Metropolitan Field Office disclosed that      called
of
10:15 a.m. on 3/21/88.  WMFO interviewed

b6 -2,4
b7C -2
b7D -1

BA 26B-56765



b6 -2,4
b7C -2,4
b7D -1

was met by an individual named SINGH.  From that point,

Based on information obtained in the interview of
Baltimore case agent was able to locate DeSILVA's
vehicle at the Taft Apartments, 10th and Taft Street,
Arlington, Virginia.  A subsequent check of Motor Vehicle
registration documents disclosed that the vehicle was
listed to ANTONIO MICHAEL DeSILVA, date of birth 5/18/59,
residence 6517 Byrnes Drive, McLean, Virginia.

b6 -4,5
b7C -4,5

U.S. Customs at the Baltimore-Washington International
Airport was contacted by the Baltimore Division concerning
the fact that DeSILVA did not declare to Customs that
he was taking approximately $30,000 in U.S. currency
out of the country.  It is noted that on 3/20/88, when
he and          were turned back from their attempted
flight over Cuba that they were contacted immediately
upon landing at Marathon, Florida, by U.S. Customs.  SA
             U.S. Customs, advised on 4/25/88, that one
of the two Customs agents that had contacted these individuals
did, in fact, ask DeSILVA and        questions about
the taking of U.S. currency and/or weapons out of the
country.  Both individuals advised they were not doing
either.

b6 -2
b7C -2
b7D -1

Investigation by WMFO disclosed that
of Washington, D.C., and that
approximately two months ago,
and              and
to include            It is noted that
and DeSILVA is well known in the Georgetown area as a

6

SINGH-494

BA 26B-56765

party person.  WMFO is pursuing through the U.S. Attorney's
Office, Washington, D.C., the obtaining of a warrant
on indictment charging DeSILVA with fraudulently obtaining
a U.S. passport in the name of JOHN MARSHALL GUATTERY.
Additionally, ATF has advised that if DeSILVA is an
illegal alien that he faces a five year mandatory sentence
for possessing weapons.

b6 -2
b7C -2
b7D -1

_____ advised the Baltimore case agent that_____
_____ DeSILVA had lived for a
period of time, dates unknown in Pittsburgh, Pennsylvania.

It is noted that an exhaustive search of Motor
Vehicle Administration records by the Baltimore Division
has failed to identify anyone named_____ that
meets the description or resides in the Frederick, Maryland,

b6 -2,3     area as indicated by_____  At the time of dictation
b7C -2,3    of this airtel, it is believed that the second subject
b7D -1      in this case is, in fact, ANTONIO MICHAEL DeSILVA, date
            of birth 5/18/59, sex male, race unknown (appears to
            be Indian or Pakistani, height 5'11", weight 140 pounds,
            Social Security Number 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.

b6 -4       _____ is a white male, date of birth_____
b7C -4      at_____ Social Security Number_____
            residence_____ He
            does hold a pilot's license.

For the information of Legat Barbados,_____

b6 -1,5,6
b7C -1,5,6
b7D -3      and AUSA PETER M. SEMEL, Baltimore, Maryland, an agreement
            was reached whereas the FBI would_____

_____ was furnished to_____
by SA_____

BA 26B-56765

On 4/17/88, Aruba officially expelled [                ]
and DeSILVA from their country and they were placed
into the custody of U.S. Marshals who transported them
to Miami, Florida.  During their initial hearing, a            b6 -4
$50,000 corporate surety bond was set for [        ] but       b7C -4
DeSILVA was detained for at least 10 days until his
"problems" with the Immigration Naturalization Service
could be corrected.  DeSILVA is apparently claiming
that he was born in Singapore but will not advise anyone
of his nationality.

REQUEST OF THE BUREAU:

The Identification Division, Latent Fingerprint
Section, is requested to conduct a latent fingerprint
examination on each one of the nine millimeter rounds
that are located in the enclosed four ammunition clips.          b6 -4
Latents developed should be compared to the known prints         b7C -4
of [        ] and the subject believed to be ANTONIO MICHAEL
DeSILVA.  It is noted that the actual fingerprint cards
should have been submitted by the U.S. Marshal's Office,
Miami, Florida, on or about 4/17/88.

The FBI Laboratory, Firearms Unit, is requested
to examine the nine millimeter rounds that were loaded
in the aforementioned clips to determine if they are
incendiary, tracer or high pressure nine millimeter
rounds made by Israeli Military Industries.

The Office of Liasion and International Affairs,
specifically the INTERPOL Unit, is requested to advise
Baltimore of its previously requested contacts with
INTERPOL representatives in New Delhi and Singapore
concerning DeSILVA.  It is noted that a xeroxed copies
of DeSILVA's prints and his photographs were furnished
directly to the Bureau's INTERPOL representatives on
4/25/88.

The Intelligence Division, Office of Foreign
Missions, is requested to display the enclosed photograph
of DeSILVA to the Desk Officers of the South American
countries at the State Department.

8

SINGH-496

BA 26B-56756

LEADS:

## LOS ANGELES DIVISION

### AT LOS ANGELES, CALIFORNIA

Will conduct an indices search and contact representatives familiar with the diplomat or Counselor Corps of South American countries in your division for any information concerning DeSILVA.

## MIAMI DIVISION

### AT MIAMI, FLORIDA

Will furnish the results of previously conducted investigation in FD-302 form regarding the contact with various motels in your division and the contacts with the Homestead, Florida, airport personnel.

## PITTSBURGH DIVISION

### AT PITTSBURGH, PENNSYLVANIA

Will conduct indices search on both subjects.

## SAN FRANCISCO DIVISION

### AT SAN FRANCISCO, CALIFORNIA

Conduct the same lead as requested of the Los Angeles Division.

## WMFO

### AT WASHINGTON, D.C.

Will determine the subcriber to telephone number [          ] which was called by GUATTERY or [          ] from the HOLIDAY INN, Homestead, Florida, at 7:23 p.m., on 3/21/88. This call was three minutes in duration.

b6 -3,4
b7C -3,4

9

BA 26B-56756

## BALTIMORE DIVISION

### AT FREDERICK, MARYLAND

Will continue investigation.

10*

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☒ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☒ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date ___4/27/88___

LEB/48866

SP #12

DECLASSIFIED BY 60324 AUC BAW/STP/CLS
ON 08-09-2007

FM WASHINGTON METROPOLITAN FIELD OFFICE(26B-48866)(P)(C-4)

TO DIRECTOR FBI IMMEDIATE

BALTIMORE (26B-56765)  IMMEDIATE

MIAMI  IMMEDIATE

BT

~~CONFIDENTIAL~~

ATTENTION: PROPERTY CRIMES UNIT, CID, ROOM 5076; TERRORISM-GLOBAL

CI-D, ROOM 4252 (INFO);  NIFTC UNIT, OLIA.

ROGER SCOT SNYDER;  SINGH DESILVA, AKA JOHN MARSHALL GUATTERY, ET

AL; THEFT OF PIPER AIRCRAFT; SERIAL NUMBER N8007B; FREDERICK,

MARYLAND, ITSA; FTC-GCM; GUN CONTROL ACT OF 1968; ITSP.

    THIS COMMUNICATION IS CLASSIFIED "CONFIDENTIAL" IN ITS

ENTIRETY.

    REFERENCE TELEPHONE CALL FROM SPECIAL AGENT (SA) [          ]

[      ] TO SA [                    ] ON APRIL 27, 1988.   b6 -1
                                                          b7C -1

~~CONFIDENTIAL~~

2-WMFO

LEB:
(2)

Approved: _____   Transmitted _____   2LeB-488lel
                       (Number)   (Time)

APR 27  6 39 PM '88        b6 -1
                          b7C -1

SINGH-499

PAGE TWO DE WMF C O N F I D E N T I A L

FOR THE INFORMATION OF RECEIVING OFFICES, CRIMINAL COMPLAINT
NUMBER 88-0295M-01 WAS ISSUED BY DISTRICT COURT FOR THE DISTRICT
OF COLUMBIA, WASHINGTON, D.C., ON APRIL 27, 1988, CHARGING SATNAM
SINGH, AKA SINGH DESILVA (PHONETIC), AKA JOHN M. GUATTERY, DATE
OF BIRTH 4/26/60, WITH A VIOLATION OF TITLE 18, UNITED STATES
CODE SECTION 1542.

FOR THE ADDITIONAL INFORMATION OF RECEIVING OFFICES, ON
APRIL 19, 1988, SPECIAL AGENT [          ] POSITIVELY

b6 -1,3
b7C -1,3   IDENTIFIED [          ] IN THE WASHINGTON, D.C., AREA.  THIS
PERSON WAS DETERMINED NOT TO BE THE SAME PERSON ARRESTED BY THE
ARUBAN POLICE FORCE ON MARCH 22, 1988, WHOSE PHOTOGRAPH APPEARED
ON ORIGINAL APPLICATION AND PASSPORT NUMBER 013586092 IN THE NAME
OF JOHN GUATTERY.

SA [          ] OF THE FREDERICK, MARYLAND, OFFICE OF THE
FEDERAL BUREAU OF INVESTIGATION (FBI) ADVISED SA [          ]

b6 -1
b7C -1   OF THE WASHINGTON METROPOLITAN FIELD OFFICE (WMFO) THAT SATNAM
SINGH WAS THE TRUE NAME DISCLOSED TO THE PRE-TRIAL SERVICES IN
MIAMI, FLORIDA, BY THE INDIVIDUAL ALSO KNOWN AS SINGH DESILVA.

LEADS:  MIAMI FIELD DIVISION:  AT MIAMI, FLORIDA:

CONFIDENTIAL

PAGE THREE DE WMF C O N ~~F I D E N T~~ I A L

WILL ADVISE UNITED STATES MARSHALL [          ] BY 9:00 PM,

b6 -5
b7C -5

ON APRIL 27, 1988, FTS NUMBER 350-5903, OF THE EXISTENCE OF THE OUTSTANDING WARRANT ISSUED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C., ON APRIL 27, 1988, FOR SITNAM SINGH, AKA SINGH DESILVA.

BT

FD-448 (Rev. 9-18-78)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Transmit attached by Facsimile - **UNCLAS**

(350-5429)

Precedence **immediate**

To: U.S. Attorney, Miami

From: SAC, WMFO (26B-48866)

Subject: Roger Scot Snyder, et al

Date: 29 April 88

Time: Transmitted -

Initials -

☐ Fingerprint Photo    ☐ Fingerprint Record    ☐ Map    ☐ Newspaper clipping    ☐ Photograph

☐ Artists Conception    ☑ Other criminal complaint with attached affidavit, warrant for arrest.

Special handling instructions: Attn Judy Kozlowski (AUSA)
26-48866-1/6

Searched
Serialized
Indexed
Filed

Approved

SINGH-502

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

1              **DATE**    5/10/88

On April 25, 1988 �_____
Passport Office, U.S. DEPARTMENT OF STATE (USDS), 1425 K Street,
Washington, D.C. (WDC) provided an original passport application
to Special Agent (SA) [_____] Washington Metropolitan
Field Office (WMFO). The passport application was filed in the
name of JOHN MARSHALL GUATTERY and contained the following
identifying information:  Date of Birth, 7/20/59; Place of Birth,
New York City, New York; Passport Number 013586092 and Date of
Expiration March 10, 1998.  This passport application was later
provided to Case Agent, [_____]

b6 -1,5
b7C -1,5

WASHINGTON METRO FIELD
Investigation on  4/25/88  at  Washington, D.C.  File #  268-48866 -17

by  SA [_____] :rab  b6 -1__ Date dictated  4/29/88
                                   b7C -1

This document contains neither recommendations nor conclusions of
the FBI. It is the property of the FBI and is loaned to your
agency; it and its contents are not to be distributed outside
your agency.

SINGH-503

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

 

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

————————— DISTRICT OF ————— Columbia —————————

UNITED STATES OF AMERICA
V.

SATNAM SINGH aka Singh DeSilva
DOB: 4-26-60

## CRIMINAL COMPLAINT

CASE NUMBER: 88-0295M-01

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief. On or about ___March 11, 1988___ in _____ county, in the

_____ District of ___Columbia___ defendant(s) did, (Track Statutory Language of Offense)

wilfully and knowingly made a false statement in an application for a passport with
the intent to induce and secure its issuance under the authority of the United States,
for his own use, contrary to the laws regulating the issuance of passports and the
rules prescribed pursuant to such laws. Satnam Singh stated on the application that he
was John M. Guattery, when in truth and fact he knew he was not John M. Guattery.

in violation of Title ___18___ United States Code, Section(s) ___1542___

I further state that I am a(n) __LESLIE E. BARNUM, FBI__ and that this complaint is based on the following
Official Title

facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

26-48866.18

APR 27 1988
_____
Date

at   __Washington, D.C.__
City and State

_____
Name & Title of Judicial Officer          SINGH-504

_____
Signature of Judicial Officer

CR 12 (Rev. 9/82)

# WARRANT FOR ARREST

| | |
|---|---|
| **United States District Court** | **DISTRICT** |
| UNITED STATES OF AMERICA<br>v.<br><br>SATNAM SINGH aka Singh DeSilva<br>DOB: 4-26-60 | **DOCKET NO.**      **MAGISTRATE CASE NO.**<br><br>**NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED**<br>SATNAM SINGH aka Singh DeSilva<br>6517 Brynes Drive<br>McLean, Va 22106 |

**WARRANT ISSUED ON THE BASIS OF:**  ☐ Order of Court

☐ Indictment  ☐ Information  ☒ Complaint

| | |
|---|---|
| **TO:** Any authorized Law Enforcement<br>Officer | **DISTRICT OF ARREST**<br>Columbia<br>**CITY**<br>   Washington, D.C. |

     **YOU ARE HEREBY COMMANDED** to arrest the above-named person and bring that person before the nearest available magistrate to answer to the charge(s) listed below.

## DESCRIPTION OF CHARGES

SEE ATTACHED AFFIDAVIT

| **IN VIOLATION OF** | **UNITED STATES CODE TITLE**<br>18 | **SECTION**<br>1542 |
|---|---|---|

| **BAIL FIXED BY COURT** | **OTHER CONDITIONS OF RELEASE** | |
|---|---|---|
| **ORDERED BY** | **SIGNATURE (JUDGE¹/U.S. MAGISTRATE)** | **DATE** |
| **CLERK OF COURT** | **(BY) DEPUTY CLERK** | **DATE ISSUED** |

## RETURN

This warrant was received and executed with the arrest of the above-named person.

| **DATE RECEIVED** | **NAME AND TITLE OF ARRESTING OFFICER** | **SIGNATURE OF ARRESTING OFFICER** |
|---|---|---|
| **DATE EXECUTED** | | |

¹United States Judge or Judge of a State Court of Record

SINGH-505

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

__1__  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 1, 2, 4, 6 | ☐ (k)(1) |
| | ☑ (b)(7)(D) – 1, 3 | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 1, 2, 4, 6 | | ☐ (k)(7) |

Section 552a heading is at top right of the third column.

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH – 506 _____

XXXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X     No Duplication Fee     X
X     for this page         X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_1_    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 1, 2, 3 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) – 1 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 1, 2, 3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____    Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____    Pages were not considered for release as they are duplicative.

_____    Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_SINGH – 507_

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
#### FOIPA
#### DELETED PAGE INFORMATION SHEET

_1_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 1,4 | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 1,4 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH – 508_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee    X
X      for this page       X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**1**

## FEDERAL BUREAU OF INVESTIGATION

b6 -2
b7C -2

Date of transcription___**4/5/88**___

[                                        ] ROBERTS AIR SOUTH,
INCORPORATED, HOMESTEAD GENERAL AIRPORT, 28701 Southwest 219th
Avenue, telephone (305) 245-0184, was advised of the identity of
the interviewing Agent, the purpose of the interview, and furnished
the following information:

A review of his gas receipts for the time period of March 19
through March 22, 1988, indicates one receipt dated March 22, 1988,   b6 -2
for a Piper Saratoga, registration number N8007B. This gas receipt   b7C -2
is made out for cash and indicates 28.4 gallons of aviation fuel and
three quarts of oil were put into the aircraft. [            ] advised he
could furnish no additional information concerning the aircraft other
than that indicated by his gas receipt, but did indicate he had con-
ducted a microfiche search regarding the two tail numbers given to
him by the interviewing Agent the day before. These tail numbers were
N8006Q and N8007B. [            ] advised that, by conducting this micro-
fiche search, he had revealed an interesting fact concerning the two
tail numbers. This fact is that both tail numbers come back to Piper
Saratoga aircraft and the serial numbers on each aircraft is only one
digit off. The microfiche search conducted by [        ] reflected the
following information:

        N8007B - Piper Saratoga, serial number 32R8213017,
        registered to SPECIAL SERVICE SYSTEM, 10514 East
        Pine, Tulsa, Oklahoma

        N8006Q - Piper Saratoga, serial number 32R8213016,
        registered to CATOCTIN CAPITOL CORPORATION, 2209
        Regina Drive, Clarksburg, Maryland

b6 -3,2
b7C -3,2

[            ] was unable to furnish any additional information
concerning the aircraft that refueled at his facility, but stated [        ]
[                                    ] might be able to furnish additional information.

WF-26-48866-19

Investigation on___**4/4/88**___ at __**Homestead, Florida**___ File # _**MM 26B-46386**___

b6 -1
b7C -1

by _**SA**_ [                        ]   **FHP:rcs** Date dictated __**4/4/88**___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-509

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

1

**FEDERAL BUREAU OF INVESTIGATION**

b6 -2
b7C -2

Date of transcription ____ **4/5/88** ____

[            ]                    HOMESTEAD GENERAL
AIRPORT, 28701 Southwest 219th Avenue, was advised of the identity
of the interviewing Agent, the purpose of the interview, and fur-
nished the following information:

A check of all of her receipts involving aircraft during
the time period March 19 through March 22, 1988, does not reflect
any aircraft with tail numbers N8007B nor N8006Q.  She further
advised that she is familiar with Piper Saratoga aircraft in that
her firm has a Saratoga permanently stored on the premises and she
does not recall any Piper Saratoga aircraft coming into the airport
during that time period.  She further advised that, if an aircraft
landed at the airport after her firm closes (approximately 5:30 p.m.),
the aircraft could park virtually anywhere along the side of the
runway without anyone knowing about it.

b6 -2
b7C -2

[            ] advised the DADE COUNTY AVIATION UNIT located
at the airport might have some knowledge of a Piper Saratoga landing
at the airport during March 19 through March 22, 1988.

WF- 26-48866-20

b6 -1
b7C -1

Investigation on ____ **4/4/88** ____ **Homestead, Florida** ____ File # ____ **MM 26B-46386** ____

by **SA** [            ]          **PHP:rcs** Date dictated ____ **4/4/88** ____

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-510

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

1

## FEDERAL BUREAU OF INVESTIGATION

b6 -2
b7C -2

Date of transcription  **4/5/88**

[          ] DADE COUNTY AVIATION UNIT, HOMESTEAD GENERAL
AIRPORT, 28701 Southwest 219th Avenue, was advised of the identity
of the interviewing Agent, the purpose of the interview, and fur-
nished the following information:

A check of his department's records concerning aircraft
landing at HOMESTEAD GENERAL AIRPORT between March 19 through March 22,
1988, indicates no aircraft with tail numbers N8007B nor N8006Q.
[      ] advised that, if the aircraft had landed at HOMESTEAD GENERAL
AIRPORT and not tied down at his department's facility, their usual
practice is not to even log the aircraft into HOMESTEAD GENERAL
AIRPORT. [        ] advised the only record that might exist at HOMESTEAD
GENERAL AIRPORT concerning the aircraft would occur if it needed
servicing and then it would probably be serviced by ROBERTS AIR
SOUTH, INCORPORATED.

b6 -2
b7C -2

JSB.

WF 26-48866 - d

b6 -1
b7C -1

Investigation on  **4/1/88**  at  **Homestead, Florida**  File #  **MM 26B-46386**

by  **SA** [                    ]  **FHP:rcs**  Date dictated  **4/4/88**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-511



FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

b6 -2
b7C -2   Date of transcription   **4/5/88**

_____ date of birth
_____ telephone _____ was advised
of the identity of the interviewing Agent, the purpose of the inter-
view, and furnished the following information:

He is employed by _____
_____ and was so employed on
March 22, 1988. On that date at approximately 9:00 a.m., a Piper   b6 -2
Saratoga single-engine aircraft taxied up to ROBERTS AIR SOUTH from  b7C -2
an unknown location on the west end of the airport. _____ had not
observed this aircraft land at the airport and it was his impression
that the aircraft may have been parked overnight on the west end of
the airport. Two individuals were in the aircraft and one of them
engaged _____ in routine conversation. _____ was unable to recall
most of this conversation he had with the individual, but did remember
that the individuals indicated they had stayed overnight in the Keys
or somewhere close to HOMESTEAD GENERAL AIRPORT the previous evening.
_____ advised he remembered the aircraft due to the fact that he had
put 28.4 gallons of aviation fuel in the aircraft, but had to put
three quarts of oil in it. He advised this was most unusual and
indicated that the individuals had been flying the aircraft for some
period of time or had not put oil in it when they had previously
refueled it. _____ asked the individuals how they wanted the gas
receipt made out and they advised him to make it out to "Cash."
After the aircraft was serviced, the individuals departed from the
airport in the aircraft in an unknown direction.

_____ furnished the following descriptions of the two
individuals in the aircraft:

1. Sex:              Male
   Race:             White
   Age:              Mid 20's
   Height:           Approximately 5'7"
   Weight:           Approximately 150 pounds
   Hair:             Sandy color

WF 26 -48806 - 22

| | | |
|---|---|---|
| Investigation on **4/4/88** | at **Homestead, Florida** | File # **MM 26B-46386** |
| by **SA** _____ b6 -1  b7C -1 | **FHP:rcs** Date dictated | **4/4/88** |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 11-15-83)

MM 26B-46386

b6 -2
b7C -2

Continuation of FD-302 of _____ , On __4/4/88__ , Page __2__

2.  Sex:                        Male
    Race:                       White
    Age:                        Mid 20's
    Height:                     Approximately 5'7"
    Weight:                     Approximately 150 pounds
    Hair:                       Long, black
    Clothing:                   Black, baggy pants, light colored
                                shirt
    Miscellaneous:              Carrying a small zipper-type pouch

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**1**

## FEDERAL BUREAU OF INVESTIGATION

b6 -2
b7C -2

Date of transcription _____ **4/5/88**

HOLIDAY INN OF HOMESTEAD,
990 North Homestead Boulevard, telephone (305) 247-7020, was advised
of the identity of the interviewing Agent, the purpose of the inter-
view, and furnished the following information:

A check of his hotel's registration records for March 19
to March 22, 1988, reflect one registration for an individual named
JOHN GUATTERY, 98 North Bedford, Arlington, Virginia. This indi-
vidual arrived on March 21, 1988, probably between 5:00 p.m. and
6:00 p.m. and stayed in Room 408 with another unknown individual.
A review of the hotel registration slip for Room 408 indicates the
individuals were driving a Buick automobile, Florida tag YBD 490.

The individuals stayed in Room 408 from March 21 to March 22
and, during that time, the following long distance telephone calls
were made:

b6 -3
b7C -3

| March 21, 1988 - 7:23 p.m. - | (3 minutes) - $3.09 |
| March 21, 1988 - 7:21 p.m. - | (2 minutes) - $2.81 |
| March 22, 1988 - 7:20 a.m. - | (5 minutes) - $3.29 |

b6 -2
b7C -2

was unable to advise when the individuals had
checked out of their room as they paid cash in advance during their
check-in and did not come by the main counter when they left the
following morning. He was able to estimate they probably left some-
time between 8:00 a.m. and check-out time of 11:00 a.m.
advised the individuals had checked out of the room without paying
for the long distance telephone calls. No other telephone calls
were indicated on the hotel's room receipt.

WSF 26-488660-23

b6 -1
b7C -1

Investigation on ___**4/1/88**___ **Homestead, Florida** ___ File # __**MM 26B-46386**__

by **SA** _____    **FHP:ECS** Date dictated __**4/4/88**__

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-514

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription____ 4/12/88



b6 -4,6
b7C -4,6
b7D -3

WF - 26 - 48866 - 2
BA 26B-56765

Investigation on____ 4/8/88 ____ at _____     File #____

by____ SA [        ]sp ____ b6 -1 ____ Date dictated ____ 4/8/88
                                    b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.   SINGH-515

FD-302a (Rev. 11-15-83)

b6 -6
b7C -6
b7D -3        4/8/88                    2

Continuation of FD-302 of _____, On _____, Page _____

◊

b6 3,4,6
b7C 3,4,6
b7D -3

SINGH-516

FD-302a (Rev. 11-15-83)

b6  -6
b7C -6
Continuation of FD-302 of _____  b7D -3  On  4/8/88  , Page  3 *



b6  -4,6
b7C -4,6
b7D -3

SINGH-517

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## ·FEDERAL BUREAU OF INVESTIGATION

Date of transcription   3/31/88

advised that he owns a Piper Saratoga, single engine, six passenger
aircraft. Upon arriving at the Frederick Municipal Airport,
Frederick, Md., on the morning of 3/20/88, he discovered the
aircraft missing and advised no one had permission to utilize it.
He described the aircraft as being tan/beige in color, with gold,
blue and red stripes and the tail number was N 8006 Q. The
aircraft serial number was 32R-8213016, and the engine serial
number was L21585-48A. He advised the aircraft is valued at
$100,000 and is titled in the name of                    and is insured by USAIG.
went on to state that the aircraft is the type that would be used
by individuals who would smuggle drugs because it is a high-
performance, heavy hauling fast aircraft.                    stated that he
allows his aircraft to be rented through Frederick Aviation, which
is at the Frederick Municipal Airport.

b6 -2
b7C -2

same address,

wf 26-488606-25

Investigation on   3/20/88            at   Frederick, Md.                File # BA 26A-56765

by        SA                     th     b6 -1
                                        b7C -1       Date dictated   3/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription **May 6, 1988**

_____ **was interviewed at
the office of Assistant U.S. Attorney (AUSA) PETER SEMEL in the
presence of** _____
_____ **2000 Pennsylvania Ave., N.W., Washington,
_____ first met** _____
**in Washington, D.C.** _____

b6 -2,3,4
b7C -2,3,4
b7D -1

_____ **had been advised by** _____
**that he worked for a company called** _____

WF 26-488666-26

Investigation on **4/28/88** at **Baltimore, Maryland** ____ File # **BA 26B-56765**

b6 -1

by ____ **SA** _____ **:bjm** b7C -1 Date dictated **5/4/88**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____, On __**4/28/88**__, Page __**2**__

was married to

b6 -2,3,4
b7C -2,3,4 y to the Caribbean
b7D -1                     reside at

b6 -2,3,4
b7C -2,3,4
b7D -1

indicated he was planning to

b6 -2,4
b7C -2,4
b7D -1

SINGH-520

FD-302a (Rev. 11-15-83)

b6 −2
b7C −2
Continuation of FD-302 of _____  b7D −1 _____ . On **4/28/88** , Page ___ **3**

b7D −1 [_____]

b6 −2
b7C −2
b7D −1

b6 −2,3,4 [_____] with [_____] **the trip**
b7C −2,3,4 **to be an airplane deal in South America.** [_____] **SINGH**
b7D −1

b6 −2,4
b7C −2,4
b7D −1

SINGH-521

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
Continuation of FD-302 of _____ b7D -1 _____ , On __4/28/88__ , Page __4__

b6 -2,4
b7C -2,4
b7D -1

**It was at this point in the interview that** _____
b6 -2
b7C -2    **went to lunch.**
b7D -1    _____ **advised as follows:**

b6 -2,4
b7C -2,4
b7D -1

_____ **the individual named SINGH was described**
**partner in the airplane deal.**

b6 -2,4
b7C -2,4
b7D -1

_____ **SINGH flew to Los Angeles**
**with these charts.**

**has never heard of**

b6 -2,3,4
b7C -2,3,4
b7D -1

SINGH-522

FD-302a (Rev. 11-15-83).

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ , On __4/28/88__ , Page __5__

b6 -2,4
b7C -2,4
b7D -1

**After the call came in, SINGH showed up a few moments later.** _____ **SINGH was going to go with** _____ **to South America** _____

_____ **SINGH wore a light-colored parka and a baseball cap.  SINGH entered the apartment building and called someone on the telephone and then subsequently got into the vehicle.** _____

SINGH-523

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____   On **4/28/88**   Page   **6**

b6 -2
b7C -2

b7D -1

b6 -2,4   **SINGH indicated he had a wig and a couple of duffel bags**
b7C -2,4   **that he carried with him.**
b7D -1

**did not know the aircraft**
**was, in fact,**
**a stolen aircraft**

b6 -2,3,4
b7C -2,3,4
b7D -1

b6 -1,2,4
b7C -1,2,4
b7D -1

SINGH-524

FD-302 (REV. 3-10-82)

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___4/12/88___

_____ in the _____ was contacted by Special Agent (SA) _____ of the Federal Bureau of Investigation (FBI) and _____ of _____ was advised of the official identity of SA _____ and that he wished to interview _____

b6 -1,2,
b7C -1,2,
b7D -1,3

_____ met an individual named SINGH DeSILVA _____

b6 -2,3
b7C -2,3
b7D -1

b7D -1

| | | |
|---|---|---|
| Investigation on | 4/5/88 | at |

File # BA 26B-56765

b6 -1  by  SA _____ :sp

b7C -1

Date dictated  4/6/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SINGH-525

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2

4/5/88                2

Continuation of FD-302 of _____, On _____, Page _____

b7D -1

b6 -2,3
b7C -2,3
b7D -1

met DeSILVA

b6 -2,3
b7C -2,3
b7D -1

b6 -2
b7C -2
b7D -1

FD-302a (Rev. 11-16-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ , On ___4/5/88_____ , Page ___3___

b6 -2,3
b7C -2,3
b7D -1

DeSILVA subsequently contacted

b6 -2
b7C -2
b7D -1

SINGH-527

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____   , On   4/5/88   , Page   4

recalls that DeSILVA

b6 -2
b7C -2
b7D -1

b6 -2,3
b7C -2,3
b7D -1

b6 -2
b7C -2
b7D -1

SINGH-528

FD-302a (Rev. 11-15-83)

b6 2,
b7C 2,
b7D -1

Continuation of FD-302 of _____ , On __4/5/88__ , Page ___5___

b7D -1

b6 -2,3
b7C -2,3
b7D -1

b6 -2
b7C -2
b7D -1

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____, On ____4/5/88____, Page ___6___

b6 -2
b7C -2
b7D -1



At this point in the interview, 4:02 p.m., SA _____ was advised that _____ SA _____ then asked _____

The interview continued.

_____ stated that on Sunday,

On his return plan was cancelled.

On Tuesday,

b6 -1,2
b7C -1,2
b7D -1

b6 -2
b7C -2
b7D -1

SINGH-530

FD-302a (Rev. 11-15-83)

b6 -2,4
b7C -2,4
Continuation of FD-302 of _____ b7D -1__, On __4/5/88__ , Page __7__

b6 -2
b7C -
b7D -

b6 -2
b7C -:
b7D -:

b6 -2
b7C -2
b7D -1

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1                                      4/5/88              8*

Continuation of FD-302 of _____ , On _____ , Page _____

b6 -1,2
b7C -1,2          A photograph of [          ] was taken by SA [          ]

b7D -1            The following description was obtained through observation
         and interview:

                  Name:
                  Date of Birth:
                  Place of Birth:
                  Race:
                  Sex:
                  Height:
                  Weight:
                  Hair:
      b6 -2,3     Eyes:
      b7C -2,3    Social Security Account Number
      b7D -1      Marital Status:
                  Wife:


                  Employment:


                  Wife's Employment:


                  Arrest:
                  Miscellaneous:

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____4/12/88_____

_____ was interviewed _____ was
Prior to the interview, furnished with an "Interrogation; Advice of Rights" form, which
he stated he read, understood and then signed. Witnessing
the signature was _____ stated the reason he requested to speak to Special Agent
(SA) _____ and _____ was that he wished to

b6 -2,6
b7C -2,6
b7D -1,3

b6 -2
b7C -2
b7D -1

_____ went on to state _____

b6 -2
b7C -2
b7D -1

Additionally,

HW 26-488066 = 28

Investigation on _____4/7/88_____                    b7D -1        BA 26B-56765
                                                        File #

by _____ SA _____ :sp  b6 -1        Date dictated _____4/7/88_____
                                b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

# Airman Certificate and/or Rating Application

U.S. Department of Transportation
**Federal Aviation Administration**

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## I Application Information

| | | |
|---|---|---|
| ☐ Student | ☐ Additional Aircraft Rating | ☐ Helicopter | ☐ Reexamination |
| ☒ Private | ☐ Flight Instructor | ☐ Glider | ☐ Reissuance of _____ Certificate |
| ☐ Commercial | ☐ Ground Instructor | ☐ Lighter-Than-Air | ☐ Renewal of _____ Certificate |
| ☐ Instrument | ☐ Airplane Single-Engine | ☐ Additional Instructor Rating | ☐ Renewal of Flight Instructor Certificate |
| ☐ Other | ☐ Airplane Multiengine | ☐ Medical Flight Test | ☐ Reinstatement of Flight Instructor Certificate |

**A. Name (First, Middle, Last)**
b6 -4
b7C -4

**B. SSN**

**C. Date of Birth** Mo. Day Year

**D. Place of Birth**

**F. Nationality** ☒ USA ☐ Other _____ Specify

**G. Do you read, speak and understand English?** ☒ Yes ☐ No

City, State, Zip Code

**H. Height** In.
**I. Weight** Lbs.
**J. Hair**
**K. Eyes**
**L. Sex** ☒ Male ☐ Female

**M. Do you now hold, or have your ever held An FAA Pilot Certificate?** ☒ Yes ☐ No
**If-Yes, has certificate ever been Suspended or Revoked** ☐ Yes ☒ No _____ Date

**N. Grade** STUDENT
**O. Certificate Number**
**P. Date Issued** 10-03-85

**Q. Do you hold a Medical Certificate?** ☒ Yes ☐ No
**R. Class of Certificate** THIRD
**S. Date Issued** 10-03-85

**U. Have you ever been convicted for violation of any Federal or State statutes pertaining to narcotic drugs, Marijuana, and depressant or stimulant drugs or substances?** ☒ No ☐ Yes
**V. Date of Final Conviction** N/A

**Glider or Free Balloon Pilots only:** *Medical Statement: I have no known physical defect which makes me unable to pilot a glider or free balloon*
**W. Signature**
**X. Date**

## II Certificate or Rating Applied For on Basis of:

**☒ A. Completion of Required Test**
**1. Aircraft to be used (if flight test required)** PA-28-161
**2a Total time in this aircraft** 34.4 hours
**2b Pilot in command** 34.4 hours

**☐ B. Military Competence Obtained in**
1 Service | 2 Date Rated | 3 Rank or Grade and Service Number
4 Has flown at least 10 hours as pilot in command during the past 12 months in the following military aircraft.

**☐ C. Graduate of Approved Course**
1 Name and Location of Training Agency
3 Curriculum From Which Graduated
2 Agency School Number
4 Date

*PASSED*

**☐ D. Holder of Foreign License Issued By**
1 Country | 2 Grade of License | 3 Number
4 Ratings

## III Record of Pilot time (Do not write in the shaded areas.)

| | Total | Instruction Rec'd | Solo | Pilot in Command | Second in Command | Cross Country Instruction Received | Cross Country Solo | Cross Country Pilot in Command | Instrument | Night Instr. Rec'd | Night Take-off Landing | Night Pilot in Command | Night Takeoff/ Landing Pilot in Command | Number of Flights | Number of Aero-Tows | Number of Ground Launches | Number of Powered Launches | Number of Free Flights |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Airplane | 71.7 | 46.6 | 22.7 | 22.7 | | | 10.3 | 11.3 | 11.3 | 4.0 | 3.2 | 12 | | | | | | |
| Rotor-Craft | | | | | | | | | | | | | | | | | | |
| Gliders | | | | | | | | | | | | | | | | | | |
| Lighter than Air | | | | | | | | | | | | | | | | | | |
| Instrument Ground Trainer | | | | | | | | | | | | | | | | | | |

## IV Have you failed a test for this certificate or rating within the past 30 days? ☐ Yes ☒ No

## V Applicant's Certification
I certify that the statements made by me on this application are true.

**A. Signature**
**B. Date** 8-18-87

## FAA Use Only

| EMP | REG | D.O. | SEAL | CON | ISS | ACT | LEV | TR | S.H. | SRCH | #RTE | RATING (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

FAA Form 8710-1 (6-88) Supersedes Previous Edition

SINGH-534

N _8238V_    MODEL _PA-28RT-201_

REGULAR _75.00_
PRE-PAID _68.00_

WE REQUIRE YOUR SIGNATURE ON ALL LOGGED TIME FOR OUR RECORDS. YOUR ENDORSEMENT ASSURES THAT THE TIME LOGGED IS ACCURATE.

| DATE 19XX | PILOT PRINT NAME & SIGNATURE | CFI | TYPE DUAL | HOBBS OUT | HOBBS IN | TIME | REG. | PREPAID | TAX | DUAL FLT | DUAL GRD | TOTAL CHARGED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| 3/16 | | | | 39.2 | 39.7 | .5 | 3750 | | 188 | | | |
| 3/17 | | | | 39.7 | 40.1 | .4 | 30.00 | | 1.50 | | | 31.50 |
| 3/18 | | | | 40.1 | 40.5 | .4 | 30.00 | | 1.50 | b6 -3,4 b7C -3,4 | | 1.50 |
| | | | | | | | | | | | | |

HOBBS TOTAL: _1.41  390.00  425.20_

SINGH-535

-2-

# Frederick Aviation, Inc.

**MUNICIPAL AIRPORT**
**FREDERICK, MARYLAND 21701**
**WASHINGTON 848-9007**
**BALTIMORE 385-1998**
**FREDERICK 662-5984**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

## AIRCRAFT RENTAL AGREEMENT

1.  I will operate any aircraft that I rent from FREDERICK
    AVIATION, INC. in strict accordance for the Federal Air
    Regulations.

2.  I will inspect and make a pre-flight check of the air-
    craft and all equipment before take off to determine
    its airworthiness.

3.  I will return the aircraft at the scheduled time, weather
    permitting, and will return it in the same condition that
    I received it, normal wear excepted.

4.  I will use the aircraft only for my own private and busi-
    ness purposes and shall not operate it for compensation
    or hire.

5.  I will only fly during daylight hours and only in VFR
    weather unless specifically authorized to do otherwise or
    if I hold an instrument rating that is within currency.

6.  I will obtain weather reports and forecasts immediately
    before making a flight out of the local area and will not
    fly if conditions along my route of flight are forecast
    to be below VFR minimums unless I hold an instrument rating
    that is within currency.

7.  All cross country flights will operate on a flight plan
    when practicable and I will notify FREDERICK AVIATION, INC.
    of any delays in returning the aircraft due to weather or
    other circumstances.

8.  I understand that no flight will be released for VFR opera-
    tion, cross country or local flight, unless the weather at
    departure is at least 1500-foot ceiling and 5 miles visi-
    bility.  On cross country flights the destination must have
    or be forecast to have by the time of arrival a ceiling of
    at least 1500 feet and a visibility of at least 5 miles.

9.  I will fly from the left front seat only and will allow no
    one else to fly the aircraft.



SINGH-536

AIRCRAFT RENTAL AGREEMENT                              PAGE 2

10. It is my responsibility to assure my record of profi-
    ciency is up-to-date and on file with the company in-
    cluding: medical, record of biennial flight review,
    and pilot checkout record.  I also understand that I
    must have a current checkout if I have not flown as
    pilot in command within the past 60 days in the type
    aircraft I propose to operate.

11. I will report all accidents, major or minor, to
    FREDERICK AVIATION, INC. at once, together with names
    and addresses of witnesses and involved parties.  In
    the event of an accident, I will not permit the air-
    craft to be moved unless authorized to do so by
    FREDERICK AVIATION, INC. or Federal Authorities and
    will do all I can to protect the aircraft and its
    equipment from further loss.  I further agree not to
    tamper with or attempt to repair any part of the air-
    craft, its equipment or accessories, but will call
    FREDERICK AVIATION, INC. collect for instruction in
    the event of a malfunction that would prohibit the con-
    tinuation of my trip.

12. I also understand that I am responsible for a minimum
    of $1,000 deductible for damage incurred while I am
    operating a FREDERICK AVIATION, INC. aircraft.

13. I understand that any violation of the rules as out-
    lined will result in my losing the privilege of renting
    aircraft from FREDERICK AVIATION, INC.

    I, the undersigned renter pilot, understand and agree
    to operate FREDERICK AVIATION, INC. aircraft within
    the scope of the attached rules.

b6 -4
b7C -4

PRINT NAME

3- 3- 89
DATE                                SIGNATURE

SINGH-537

# Frederick Aviation, Inc.

**MUNICIPAL AIRPORT**
**FREDERICK, MARYLAND 21701**
**WASHINGTON 948-9007**
**BALTIMORE 385-1998**
**FREDERICK 662-5984**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## INSURANCE

FREDERICK AVIATION, INC. insurance is carried by National
Aviation Underwriters of St. Louis, Missouri.

Student and renter pilot liability is limited to one million
dollars ($1,000,000) per accident and one hundred thousand
dollars ($100,000) per passenger.

A student or renter pilot flying solo that damages an air-
craft is subject to a minimum of one thousand dollars ($1,000)
deductible. (Solo means without a FREDERICK AVIATION, INC.
flight instructor).

National Aviation Underwriters, reserves the right of subro-
gation. If by investigation by the proper authorities, it is
determined that the pilot in command of a FREDERICK AVIATION
aircraft contributed to or caused damge to that aircraft.

This agreement supersedes any previous insurance agreement
signed at FREDERICK AVIATION, INC.

I UNDERSTAND THE ABOVE AND AGREE TO THE TERMS OUTLINED IN
THE LAST PARAGRAPH.

b6 -4
b7C -4

3-3-89

DATE

SIGNATURE

**DEALER, FLITE & SERVICE CENTER**

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

I. UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION – FEDERAL AVIATION ADMINISTRATION

## TEMPORARY AIRMAN CERTIFICATE

III. CERTIFICATE NO.

THIS CERTIFIES THAT    IV.

V.

| DATE OF BIRTH | HEIGHT | WEIGHT | HAIR | EYES | SEX | NATIONALITY | VI. |
|---|---|---|---|---|---|---|---|
| | | | | | M | U.S.A. | |

IX. Has been found to be properly qualified and is hereby authorized in accordance with the conditions of issuance on the reverse of this certificate to exercise the privileges of

## PRIVATE PILOT

RATINGS AND LIMITATIONS

XII.   AIRPLANE SINGLE ENGINE LAND

XIII.
THIS IS ☐ AN ORIGINAL ISSUANCE ☐ A REISSUANCE OF THIS
GRADE OF CERTIFICATE          DATE OF SUPERSEDED AIRMAN CERTIFICATE

BY DIRECTION OF THE ADMINISTRATOR

X. DATE OF ISSUANCE      X. SIGNATURE OF EXAMINER OR INSPECTOR

EXAMINER'S DESIGNATION NO. OR INSPECTOR'S REG. NO.
07EA2S

08-26-87      ANNABELLE LEE FERA

DATE DESIGNATION EXPIRES
03-31-88

FAA Form 8060-4 (2-79) USE PREVIOUS EDITION

b6 -4
b7C -4

SINGH-539

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS



UNITED STATES OF AMERICA BB8138906
DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

MEDICAL CERTIFICATE _Second_ CLASS

| THIS CERTIFIES THAT (Full name and address) |
|---|
| |

| DATE OF BIRTH | HEIGHT | WEIGHT | HAIR | EYES | SEX |
|---|---|---|---|---|---|
| | | | | | M |

has met the medical standards prescribed in Part 67, Federal Aviation Regulations for this class of Medical Certificate.

**LIMITATIONS**

*None*

| DATE OF EXAMINATION | EXAMINER'S SERIAL NO. |
|---|---|
| *October 8, 1987* | *16826-4* |

SIGNATURE

TYPED NAME *Luis F. Bentolila MD*

FAA FORM 8500-9 (11-73) SUPERSEDES PREVIOUS EDITION

b6  -4
b7C  -4

SINGH-540

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**CHECKED OUT IN FOLLOWING AIRCRAFT**

| Date | Aircraft | Day | Nite | Total Time In Type | Check Pilot |
|---|---|---|---|---|---|
| 10-17-85 | PA38-112 | ✓ | | 12 | |
| 1-16-86 | PA38-112 | ✓ | | 15 | |
| 6-2-87 | PA-28-161 | ✓ | | | |
| 10-11-87 | PA-28RT-201 | ✓ | | 5. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

b6 -3
b7C -3

Reorder from ACCURATE, INC., 6516 University, Des Moines, Iowa 50311

SINGH-541

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

*1*   Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

<table>
<tr><td colspan="2" align="center"><strong>Section 552</strong></td><td align="center"><strong>Section 552a</strong></td></tr>
<tr><td>☐ (b)(1)</td><td>☐ (b)(7)(A)</td><td>☐ (d)(5)</td></tr>
<tr><td>☐ (b)(2)</td><td>☐ (b)(7)(B)</td><td>☐ (j)(2)</td></tr>
<tr><td>☐ (b)(3)</td><td>☑ (b)(7)(C) -4</td><td>☐ (k)(1)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(D)</td><td>☐ (k)(2)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(E)</td><td>☐ (k)(3)</td></tr>
<tr><td>_____</td><td>☐ (b)(7)(F)</td><td>☐ (k)(4)</td></tr>
<tr><td>☐ (b)(4)</td><td>☐ (b)(8)</td><td>☐ (k)(5)</td></tr>
<tr><td>☐ (b)(5)</td><td>☐ (b)(9)</td><td>☐ (k)(6)</td></tr>
<tr><td>☑ (b)(6) -4</td><td></td><td>☐ (k)(7)</td></tr>
</table>

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____   Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____   Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____   Pages were not considered for release as they are duplicative

_____   Page(s) withheld for the following reason(s):  _____

_____

☑  The following number is to be used for reference regarding these pages: _____

## SINGH - 542

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

D-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription___ 4/12/88



b6 -4,6
b7C -4,6
b7D -3

WF 26-48200-29

Investigation on ___ 4/6/88 ___ at ___                    File # ___ BA 26B-56765

by ___ SA ___ :sp    b6 -1
b7C -1              Date dictated ___ 4/7/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 11-15-83)

Continuation of FD-302 of _____, On ___4/6/88___, Page ___2*___



b6 -3,4,6
b7C -3,4,6
b7D -3

SINGH-544

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____4/12/88_____

        On April 6, 1988, Special Agent (SA) [ ]
[ ] removed from each side of the fuselage and from each
side of the tail section the numbers and letters "7B." These
eight items were seized as evidence.

b6 −1
b7C −1

        It is also noted that [ ] the
[ ] furnished SA
[ ] This item is
also being retained as evidence.

b6 −1,6
b7C −1,6
b7D −3



b7D −3

WF 26-48806-30

Investigation on _____4/6/88_____ at [ ] File # _____BA 26B-56765_____

by _____SA [ ] :sp b6 −1
               b7C −1_____ Date dictated _____4/7/88_____

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-545

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___4/12/88___

    On April 5, 1988, Special Agent (SA) [        ]    b6 -1
viewed a Piper Saratoga aircraft bearing the following    b7C -
numbers on the fuselage: N8007B. There was an obvious
discrepancy between the size of the last two digits from
that of the first four digits. The aircraft was parked
at the Aruba Airport. Upon viewing the inside of the cockpit,
it was determined that the serial number plate that was
affixed to the dashboard of the aircraft, had been removed.
On the RPM indicator, the number of hours registered on
the aircraft was 2,500.8. The DACOM read 448.6. There
were six seats in the aircraft. A check of the serial number
riveted to the tail section of the aircraft showed the serial
number to be 32R8213016.

    Photographs of the aircraft were taken by SA [     ]
It is also noted that the surface area around both the large    b6 -1
"N" numbers, specifically the last two digits, "7B", on    b7C -1
both sides of the aircraft showed numerous scratches and
cut marks. The same observation was made on the smaller
"N" numbers located on the tail of the aircraft on both
sides of the fuselage.

WF 26-488telp. 3/

| | | |
|---|---|---|
| Investigation on _4/5/88_ | at _Oranjestad, Aruba_ | File # _BA 26B-56765_ |
| by _SA_ [    ] sp | b6 -1 <br> b7C -1    Date dictated | _4/6/88_ |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription ____4/12/88____

        SINGH DeSILVA was interviewed in the headquarters
of the Aruba Police Force by Special Agent (SA) [                    ]
and [                              ] of the Aruba Police Force.   Before
b6 -1,6 any questions were asked, DeSILVA was furnished with an "Interrogation;
b7C -1,6 Advice of Rights" form, which he stated he understood after
reading but declined to be interviewed as he stated "I want
my lawyer present."   The interview was terminated.   DeSILVA
refused to allow SA [          ] the opportunity to photograph him.

26-488606. 32

| Investigation on | 4/6/88 | at | Oranjestad, Aruba | File # | BA 26B-56765 |
|---|---|---|---|---|---|

b6 -1

| by | SA [          ] :sp | b7C -1 | Date dictated | 4/7/88 |
|---|---|---|---|---|

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    4/20/88

b6 -1,6
b7C -1,
b7D -3

furnished SA

with the following reports:

b6 -6
b7C -6
b7D -3

b7D -3    WF 26-48866-33

Investigation on    4/11/88    at    FileBA 26B-56765

by    SA    rc    Date dictated    4/15/88
b6 -1
b7C -1

This document contains neither recommendat b7C -1 lusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_2_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—3 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D)—3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 549 through SINGH 550 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X     for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

__1__ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) –3, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) – 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) –3, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

### SINGH – 551

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X        for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_2_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—3, 4, 6 | ☐ (k)(1) |
| | ☑ (b)(7)(D)—3 | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—3, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
   _SINGH 552 through SINGH 553_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X  No Duplication Fee  X
X    for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SATNAM SINGH,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-01064 (RJL)<br>)<br>)<br>)<br>)<br>) |

# EXHIBIT B

# (PAGES 554-659)

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_1_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—3 | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—3 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

_____ SINGH - 554 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ *1*    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) –3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

*SINGH - 555*

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_1_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) -3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) -3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) -3, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _____

_SINGH - 556_

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

*2* Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) - 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) - 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) - 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
*SINGH 557 through SINGH 558*

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

__3__    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | Section 552 | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)—3,4,6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D)—3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—3,4,6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
    _SINGH  559  through  SINGH  561_

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_1_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) -3,4 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) -3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) -3,4 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH - 562_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
X   No Duplication Fee   X
X      for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_1_    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | Section 552a | |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) −6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) −3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) −6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
        _SINGH - 563_

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_3_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C)-3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) -3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) - 3, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_SINGH 564_ _through_ _SINGH 566_

XXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
X  No Duplication Fee    X
X    for this page       X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

___1___ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) - 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) - 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) - 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

_____ *SINGH - 567* _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
#### DELETED PAGE INFORMATION SHEET

*1*   Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) -3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) -3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)- 3, 4, 6 | | ☐ (k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Pages were not considered for release as they are duplicative.

_____  Page(s) withheld for the following reason(s): _____

_____

☑  The following number is to be used for reference regarding these pages:

*SINGH - 568*

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X  No Duplication Fee  X
X   for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_2_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 |  |  Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) –3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 4, 6 |  | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH 569 through SINGH 570_____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_2_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | Section 552a |
|---|---|

☐ (b)(1)  ☐ (b)(7)(A)  ☐ (d)(5)

☐ (b)(2)  ☐ (b)(7)(B)  ☐ (j)(2)

☐ (b)(3)  ☑ (b)(7)(C) -3, 4, 6  ☐ (k)(1)

_____  ☑ (b)(7)(D) -3  ☐ (k)(2)

_____  ☐ (b)(7)(E)  ☐ (k)(3)

_____  ☐ (b)(7)(F)  ☐ (k)(4)

☐ (b)(4)  ☐ (b)(8)  ☐ (k)(5)

☐ (b)(5)  ☐ (b)(9)  ☐ (k)(6)

☑ (b)(6) -3, 4, 6  ☐ (k)(7)

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 571 through SINGH 572 _____

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X No Duplication Fee.  X
X   for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    4/1/88

_____ Dept. of Police, Frederick, Md., furnished a copy of her
department's report 88-5756, setting forth the theft report of a
Piper Cherokee, owned by _____ on March 20, 1988.  A
copy of that report is attached. _____ also advised that a
review of identification records and arrest records at her agency
failed to disclose any individual named _____ She did
advise that there was a _____ a white male,
date of birth, _____ who was arrested in 1984 for _____

b6 -3,6
b7C -3,6

wf 26-488&6 -34

Investigation on  3/28/88  at  Frederick, Md.  File # BA 26A-56575

by ____ SA _____ :th  b6 -1  b7C -1  Date dictated  4/1/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

SINGH-573

# DEPARTMENT OF POLICE
## FREDERICK CITY, MARYLAND

Initial Investigation

MAR 2 1986

| Incident as Reported | | | | Victim's/Owner (Surname, First Middle) | | Residence Telephone |
|---|---|---|---|---|---|---|
| **Theft of Airplane** | | | | | | |

| Incident | Day | Date | Time | Race/Sex/Date of Birth | | Business Telephone |
|---|---|---|---|---|---|---|
| Occurred | **Sunday** | **3-20-88** | **0906** | **W/M DOB** | | |
| Reported | **Sunday** | **3-20-88** | **0906** | Address | | |

Location of Incident
**Frederick Airport**

Victim's/Owner's Occupation or Type of Premises
**Airplane Owner**

| Reported to | | ID # **65** | Weather **Cloudy** |
|---|---|---|---|

| Victim Injured | Attending Physician | Admitted to Hospital | Condition |
|---|---|---|---|
| ☐ Yes ☒ No | | ☐ Yes ☐ No | |

Notifications: ☐ Ambulance ☐ Criminal Investigator ☐ Fire Apparatus ☐ Fire Investigator ☐ Medical Examiner ☐ Social Services ☐ Towing Firm ☐ Other

Complainant (Surname, First Middle)            Residence Telephone

Source of Report: ☐ Alarm Panel ☐ Mail ☐ Person ☐ Radio ☒ Telephone ☐ Teletype      Business Telephone

| Vehicle Registration | Year | State | Keys in Vehicle ☐ Yes ☐ No |
|---|---|---|---|
| Color | Year | Make | Model | Body Style |

Complainant was contacted ☒ in person / ☐ via telephone by
and was advised of the results of the Department's efforts ☒ Yes ☐ No   Date **3-20-88**

| Vehicle Identification Number | Registration Card in Vehicle ☐ Yes ☐ No |
|---|---|

| NCIC/MILES "Wanted" Query (Attach Printout) ☐ Yes ☐ No By Whom Checked | Date |
|---|---|

Itemization of Stolen Property

| Description | Serial Number | Value |
|---|---|---|
| **See Below** | | |

| NCIC/MILES Entry (Attach Printout) ☒ Yes ☐ No By Whom Entered **837 B.Himes** 3-20-88 | Date |
|---|---|

ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

b6 -3,6
b7C -3,6

| NCIC/MILES Removal (Attach Printout) ☐ Yes ☐ No By Whom Cleared | Date |
|---|---|

| Crime Scene Processed: ☐ Yes ☐ No ☐ Fingerprinted ☐ Photographed | Processed by |
|---|---|

| Insurance Carrier | Insurance Agent | Policy Number |
|---|---|---|

Narrative: (1) Reconstruct the incident; (2) identify additional victim(s), arrestee(s), suspect(s), and witnesses; (3) describe extent of injuries to, and treatment of, injured; (4) list items of evidence; (5) utilize "Supplementary Investigation" forms for additional information or for further investigative efforts; and (6) omit information recorded more specifically elsewhere.

　　　I arrived and contacted          listed above          of Frederick Aviation and they lease an airplane from a          listed above. This morning          arrived at the airport to fly the palne and found that It is missing. Frederick Aviaation does rent the plane out but the last time it was rented was on Thursday and one of Frederick Aviatbons polits was with the plane during that flight and the plane was returned.          the owner stated that he did see the plane parked in front of Frederick Aviation on Friday 3-18-88 at about 5PM. No one at Frederick Aviation can be certain that the plane was there after that time. Description of plane as follows:

①) Piper single engine six passenger plane. Tan in color with Red, Gold & Blue stripe on the sides.    Modle-Saratoga S.P.    Registration #N8006Q    Ser #32B-8213016 Engine Ser #L-21585-48A    The plane is valued at $100,000.00 and is insured with United States Aviation Underwriters Group. (USAUG)

| Initial Status: ☐ Closed ☒ Open (Pending) ☐ Suspended ☐ Unfounded | Investigating Member | ID # **65** | Date **3-20-88** |
|---|---|---|---|

| Supervisory Review ☒ Agree ☐ Disagree | Recommended Action: ☐ Placed on Zone Board # ___ ☐ Retained for Followup ☐ Referred **C I D** | Supervisor | ID # **40** | Date **3/20/88** |
|---|---|---|---|---|

FOR OFFICIAL USE ONLY

| Zone | Reporting Area | Followup Assigned to | Date of Assignment | Incident as Verified | Date of Final Closure |
|---|---|---|---|---|---|

| Final Status: ☐ Closed ☐ Open (Pending) ☐ Suspended ☐ Unfounded | Disposition: ☐ Cleared by Arrest ☐ Exceptional Clearance By Whom Cleared ___ Date ___ | Reviewer **SINGH-574** |
|---|---|---|

Case Report Number **88-JD-5756**

Property Record Number

# DEPARTMENT OF POLICE
## FREDERICK CITY, MARYLAND

Supplementary Investigation

| Victim/Owner (Surname First Middle) | Today's Date 3-20-88 | Date of Initial Investigation 3-20-88 | Page Jab | Number: 1 |
|---|---|---|---|---|

The rest of the Airport was checked and _____ checked with _____ and none of them had the plane or knew of its whereabouts. _____ stated that the FBI had to be notified and requested that I do that. A call to the local office was uneventful and I was given a number in Baltimore to call. That number was called and subject stated that he would have Agent _____ call me. Call placed at 0950 hrs.

At 1010hrs _____ called me and he was given the information on the plane and I explained to him that I could not get the airplane entered into NCIC as our computer system was down and he stated that we should put it in when the system came up and that he would also put it in the computer on Monday. He also stated that he would contact the Air Traffic Control Center in Leesburg, Va. and the Border Patrol of the theft so they could be on the lookout for the plane. _____ further stated that he would be in Ocean City, Md. all next week for In-Service training and that he would be staying at the Holiday Inn there and could be reached there if needed.

Request that Communications have all the needed information listed in the computer as soon as the system comes up. The airplane is registered to Catoctin Capitol Corp. which is owned by _____ and his wife.

_____ and _____ were both contacted by phone and advised of what has been done to date.

b6 -1,3,6
b7C -1,3,6

| Victim was contacted ☒ in person ☐ via telephone by _____ and was advised of the results of the Department's efforts, as well as of the final status of this case. ☐ Yes ☐ No | Date 3-20-88 |
|---|---|

| Intermediate Status: ☐ Closed ☒ Open (Pending)  ☐ Suspended ☐ Unfounded | Investigating Member | ID # 65 | Date 3-20-88 |
|---|---|---|---|

| Supervisory Review ☒ Agree ☐ Disagree | Recommended Action: ☐ Placed on Zone Board # ____ ☐ Retained for Followup ☒ Referred CIO | Supervisor | ID # 70 | Date 3/20/88 |
|---|---|---|---|---|

Related Case Report Number(s)

**FOR OFFICIAL USE ONLY**

| Criminal File Number | Incident as Verified | Date of Final Closure |
|---|---|---|

| Final Status: ☐ Closed ☐ Open (Pending) ☐ Suspended ☐ Unfounded | Disposition: ☐ Cleared by Arrest ☐ Exceptional Clearance By Whom Cleared | Reviewer Date |
|---|---|---|

SINGH-575

FCPD FORM #172 (Revised 12/83)

# DEPARTMENT OF POLICE
## FREDERICK CITY, MARYLAND

Supplementary Investigation

| Victim/Owner (Surname, First Middle) | | Today's Date | Date of Initial Investigation | Page | Number |
|---|---|---|---|---|---|
| b6 -3<br>b7C -3 | | 3-28-88 | 3-20-88 | ADD | 01 |

**3-24-88**

[blank] DEA Agent at the US Consulate in Curacao (South Carribean) called to advise that the missing airplane had landed at Aruba with two men on board. His purpose of calling was to verify the description of the missing plane. I gave him a detailed description, and he stated that he would be flying over to check the plane himself, and then he would call back to let us know if the plane was one-in-the-same. [blank] could be reached at [blank]

No further calls received.

b6 -5
b7C -5

**3-25-88**

No confirmation received from [blank]

**3-28-88**

b6 -4,5
b7C -4,5

[blank] called and verified that the plane was the one reported missing. Since the FBI had entered the plane into the computer as missing, he had also contacted them, and the FBI will be doing any follow-up investigation that is warranted. [blank] preliminary information was that the two men on board, DeSilva and [blank] were involved in drug smuggling. He could not elaborate any further in that he did not have any more information, other than both men were in custody and they were taking statements from them.

I notified [blank] FBI, and gave him [blank] phone number for further contact.

b6 -1,5
b7C -1,5

b6 -6
b7C -6

| Victim was contacted ☐ in person<br>☒ via telephone by [blank] and was advised of the results of the Department's efforts, as well as of the final status of this case. ☒ Yes ☐ No | | Date<br>3-28-88 |
|---|---|---|

| Intermediate Status: ☒ Closed ☐ Open (Pending)<br>☐ Suspended ☐ Unfounded | Investigation Number | ID #<br>103 | Date<br>3 28 88 |
|---|---|---|---|

| Supervisory Review<br>☒ Agree<br>☐ Disagree | Recommended Action:<br>☐ Placed on Zone Board # ___<br>☐ Retained for Followup<br>☐ Referred ___<br>Related Case Report Number(s) | ID #<br>103 | Date<br>3-28-88 |
|---|---|---|---|

**FOR OFFICIAL USE ONLY**

| Criminal File Number | Incident as Verified | Date of Final Closure |
|---|---|---|
| Final Status: ☐ Closed<br>☐ Open (Pending)<br>☐ Suspended ☐ Unfounded | Disposition: ☐ Cleared by Arrest ☐ Exceptional Clearance<br>By Whom Cleared                    Date | Reviewer<br>SINGH-576 |

Case Report Number 19 88 - 5754

Additional Property Record Number(s)

FCPD FORM #172 (Revised 12/83)



FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    4/1/88

b6 -2,4
b7C -2,4

[_____] Frederick Aviation, Frederick
Municipal Airport, Frederick, Md., (663-8156, 800-545-9393), [____]
advised that records maintained by his agency disclosed that
[____] address [_____] date of birth,
[_____] a[_____] applied for his private pilots
rating on August 18, 1987, at the Frederick Municipal Airport.
According to the records, a xerox copy of which is attached to this
document, the applicant, [_____] passed.

b6 -2,4
b7C -2,4

Another document furnished by [_____] a "pilot checkout
record", disclosed that [_____] is employed by [_____]
and he lists a permanent address of [_____]
[____] The pilot checkout record disclosed that he has been at the
airport on October 17, 1985, January 16, 1986, June 2, 1987, and
October 11, 1987. A copy of this document is attached.

b6 -2,4
b7C -2,4

[_____] also furnished a xerox copy of a [_____]
[_____ second class ] form, disclosing that [_____] date of
birth, [_____] Height: 72 inches, Weight: 145 lbs.,
Hair: Brown, Eyes: Hazel, Sex: Male, has no limitations as of the
date of examination, October 8, 1987. A copy of this document is
also attached.

b6 -2,4
b7C -2,4

[_____] also furnished a copy of a "temporary airman
certificate" issued to [_____] disclosing he has qualified to become
a "private pilot airplane single engine land" through the FAA, and
the date of issuance was August 26, 1987. A copy of this is
attached.

b6 -2,4
b7C -2,4

[_____] also furnished a three-page Frederick Aviation,
Inc. aircraft rental agreement, dated March 3, 1987, and signed by
[_____] This is attached to this document.

b6 -2,4
b7C -2,4

[_____] also furnished a copy of a rental agreement for
aircraft N3238V, model PA-28RT-201. This document discloses that
[_____] rented the aircraft on three successive dates, March 16, 17,
and 18, 1988, and that the time in the aircraft, disclosed he flew
for .5 hours, .4 hours, and .4 hours on those three successive
dates giving him a total of 1.3 hours flying time. A copy of that
document is attached. That aircraft is described as a Piper Arrow.

wf 26-48elo-34

| | | | |
|---|---|---|---|
| Investigation on | 3/28/88 | at | Frederick, Md. | File # BA 26A-56575 |

b6 -1
b7C -1

by ____ SA [_____] th ____    Date dictated 4/1/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

SINGH-577

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2

Continuation of FD-302 of _____ ,On __3/28/88__ ,Page 2*

b6 -2,3
b7C -2,3

_____ went on to state that the original set of ignition
and door keys for _____ Piper Cherokee, were discovered
missing on Thursday, March 17, 1988 and they have yet to be found.
He indicated that records disclosed, that a _____
of the _____ was
the last person to rent _____ aircraft on Thursday, March 17,
1988.

SINGH-578

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____4/27/88_____

On April 22, 1988, SA[            ]received[            ]
b6 -1,6        [            ]from SA[            ]SA[       ]then obtained
b7C -1,6
b7D -3 [                                        ]SA[        ]then furnished[            ]
to SA[            ]

At 8:00 p.m., April 22, 1988, SA[        ]furnished
[                              ]Trial Attorney, Criminal Division, U.S.     b6 -1,5,6
Department of Justice with[                        ]             b7C -1,5,6
will furnish it to[                    ]on April 28, 1988.     b7D -3

WF 26-48866-35

Investigation on ___4/22/88___ at ___Baltimore, Maryland___ File # __BA 26B-56765__

SA[            ] b6 -1
by ___ SA[            ]:fm__ b7C -1 ____ Date dictated ___4/27/88___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription  4/21/88

**furnished the following items of evidentiary value to SA**                    b6 -1,6
b7C -1,6
b7D -3



```
WF 26- 48826-36
```

b7D -1

Investigation on __4/11/88__  at _____  File #BA 26B-56765

by  SA_____rc     b6 -1           Date dictated  4/15/88
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.     SINGH-580

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_/_   Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 1, 3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) – 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 1, 3, 4, 6 | | ☐ (k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Pages were not considered for release as they are duplicative

_____  Page(s) withheld for the following reason(s): _____

_____

☑  The following number is to be used for reference regarding these pages:

SINGH - 581

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX


XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXXX
XXXXXXX
XXXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  | Section 552 | | Section 552a |
|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) – 1, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) – 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) – 1, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
### SINGH - 582

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X   No Duplication Fee   X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

## FEDERAL BUREAU OF INVESTIGATION

b6 -2,3
b7C -2,3

Date of transcription    4/26/88



was served with a subpoena                                  advised it was sold to                   on April 29, 1987. indicated he was employed at                   and he held D.C. license                   His listed date of birth is                   listed his credit data as a VISA card from Mellon Bank.                   The most current record change shows                   now lives at                   or                   His telephone number is                   or                   as of June 10, 1987. As of September 22, 1987,                   had a code changed on his beeper.                   indicated it could be dropped off at                   or it could be dropped off at the front desk. The beeper was delivered and signed for by a

b6 -2,3,4
b7C -2,3,4

A copy of all documents are attached.

WF 26-48866 - 37

Investigation on   4/20/88   b6 -1   at   Columbia, Maryland   File #BA 26B-56765
                              b7C -1

by   SA                   :rc                   Date dictated   4/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency SINGH-583

**M|M Metromedia Paging Services**

ORIGINAL
b6 -3,4
b7C -3,4

9030 ROUTE 108
COLUMBIA, MD 21045
(301) 995-0509

WORK ORDER NO.
T 35199

35199

NUMBER: _Telepta_ P.O. NUMBER

NAME: 1410 N. St Associates

ADDRESS: 1410 N St NW

Suite 602

CITY: Wash   ST. DC   ZIP 20005

INITIATED BY: _____ DATE 9/21/87

CROSS REF.: _____   EFFECTIVE DATE 9/22/87

CONTACT : _____

TITLE: _____

PHONE: 4/a2 7/6/8

CUSTOMER SIGNATURE: _____

SHIPPED VIA: _____   (CONTROL # _____)

BILLING
APPROVAL NO.: _____   SALES REP.: _____

COMPLETED BY: _____   DATE _____

INVENTORY
COMPLETED BY: _____

DATE 7 21 87

| ACTION | PAGER # | MODEL CODE | CAP. CODE | SERIAL NO. | ACTION | PAGER # | MODEL CODE | CAP. CODE | SERIAL NO. |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Champion P/T | | 9060-2018 | A30 | 016206 | 01726788 |
| | | | | | | | A30 | 0153 | 03371 5258 |
| No charge | | | | | | | | | |
| - purchase date 5/8/87 | | | | | | | | | |
| Pick up check for $31.78 | | | | | | | | | |

ALU INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 06-09-2007 BY 60324 AUC/BAW/STP/LLS

| SVCD | DESCRIPTION | QUANTITY | PRICE | EXTENSION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

EQUIPMENT VALUE: _____

NOTES: _____

SINGH-584

TAX _____ %

TOTAL DUE _____

**METROMEDIA**
**PAGING SERVICES**
9030 Route 108
Columbia, MD 21045
(301) 995-0509 - Balt.
(301) 621-6161 - D.C.

b6 -3, 4
b7C -3, 4

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

| AGENT NO. | LEAD NO. | NEW ACCOUNT ☐ | ACCOUNT NO. | COAM | SERVICE DATE | CONTRACT NO. |
|---|---|---|---|---|---|---|
| 100 | | EXISTING ACCOUNT ☐ | 846 9702 | 6 | 6/10/87 | 00173 |

## CUSTOMER INFORMATION

| | | | PERSONAL CONTACT | TITLE | PHONE |
|---|---|---|---|---|---|
| ACCOUNT NAME | | | | | |
| C/O | | | TYPE OF BUSINESS | IN BUSINESS SINCE | |
| ADDRESS | | HOW LONG 12 n th | PARTNERSHIP (PARTNER NAME) | CORPORATION (REG. NAME) | |
| CITY | STATE | ZIP | SOCIAL SECURITY OR EMPLOYEE I.D. NO. | DRIVER'S LICENSE NO./STATE | |
| PREVIOUS ADDRESS | | HOW LONG | PRESENT EMPLOYER | PHONE | HOW LONG |
| CITY | STATE | ZIP | EMPLOYER'S ADDRESS | | DATE OF BIRTH |

## PRODUCT AND SERVICE (One Per Line)

| DESCRIPTION | SERIAL NO. | AREA | EXCH. | PHONE | ZONE | MODEL | CAP CODE | MONTHLY RECURRING CHARGE | EQUIPMENT PURCHASE PRICE |
|---|---|---|---|---|---|---|---|---|---|
| Sencar Pager | 283BM6 554A 20 V | 5139 | 43V | B | | 290 | 658663 | 12.00 | 299.00 |
| Sensar Pager | 283BMG 224 | 21012 | 5351 | 1915 | B | | 120 658311 | 12.00 | 299.88 |
| | | | | | | | | | |

**WAIVER OF LIABILITY** ☐ YES ☐ NO If Yes, State Deductible Per Unit $

CONTRACT TERMS: 1 YEAR  2 YEAR  3 YEAR

## CREDIT INFORMATION
Credit References & Bank Accounts (Savings, Checking, etc.) Other Open Accounts (Landlord, etc.)

| | NAME | LOCATION/CONTACT | PHONE | ACCOUNT/LOAN # | CKG. | SAV. | LOAN |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |

**IMPORTANT:** In consideration of Metromedia Paging Service's granting a credit account to the named subscriber, I personally have read, understood, and accepted the terms and conditions on reverse side of this contract and agree to pay the above recurring and total charges. I certify that the credit information given is true and correct. I authorize METROMEDIA to investigate my credit history, employment and financial responsibility through past and present employers, creditors, and credit bureau(s). I certify that I am authorized to enter into and make binding agreements on behalf of the above customer if the customer is not myself and, I personally (or as an agent of the corporation, if applicable) guarantee the return of all leased equipment, and the payment of all charges related to the use of said equipment until its return. In event of default of payment I agree to pay all costs of collection, including interest, attorney's fees, and court costs. PAYMENT IS DUE UPON RECEIPT.

SINGH-585

*Individual Account Only

| MONTHLY TOTAL/SALE | | MONTHLY TOTAL/RENTAL | |
|---|---|---|---|
| Purchase | 299.88 | Equipment Rental | |
| Service | 12.43 96.62 | Service | |
| Maintenance | | Waiver of Liability | |
| Sales Tax | 17.99 | Deposit | |
| Total Purchase | 357.87 | Total Monthly Charge | |

ITEM # 56- 08198972 6-5  154.49  # 354.49
56- 08198972 5-4  200.00

WHITE - MPS CUSTOMER FILE    YELLOW - SUBSCRIBER'S COPY    PINK - INVENTORY    GOLD - AGENT'S COPY

CUSTOMER NAME                    TITLE

CUSTOMER SIGNATURE

(66)

4/15/87

(Signatures)
Mla updater
Roxell - Sales
Billing

**METROMEDIA PAGING SERVICES**

9030 Route 108
Columbia, MD 21045
(301) 995-0509 · Balt.
(301) 621-6161 · D.C.

| AGENT NO. | LEAD NO. | NEW ACCOUNT □  EXISTING ACCOUNT □ | ACCOUNT NO. | COAM LEASED □ | SERVICE DATE | CONTRACT NO. |
|---|---|---|---|---|---|---|
| 100 | | | | | 4/29/87 | 11951 |

766972

## CUSTOMER INFORMATION

| | |
|---|---|
| ACCOUNT NAME | PERSONAL CONTACT |
| DBA | TYPE OF BUSINESS  b6 -3  b7C -3 |
| ADDRESS | PARTNERSHIP (PART.) |
| CITY          STATE  b6 -3,4  b7C -3,4 | SOCIAL SECURITY OR EMPLOYER I.D. NO. |
| PREVIOUS ADDRESS          STATE          ZIP | TEMP. |

HOW LONG 1 YR

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324-AUC BAW/STP/CLS

## PRODUCT AND SERVICE (One Per Line)

| DESCRIPTION | SERIAL NO. | AREA | EXCH. | PHONE | ZONE | MODEL | CAP CODE | MONTHLY RECURRING CHARGE | EQUIPMENT PURCHASE PRICE |
|---|---|---|---|---|---|---|---|---|---|
| DYN IV:be | 0172505X | | | | 6A | 30 | 015200 | 12 00 | $261.45 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**WAIVER OF LIABILITY**  □ YES  □ NO  If Yes, State Deductible Per Unit $

CONTRACT TERMS:  1 YEAR  2 YEAR  3 YEAR

## CREDIT INFORMATION

Credit References & Bank Accounts (Savings, Checking, etc.)  Other Open Accounts (Landlord, etc.)

| NAME | LOCATION/CONTACT | PHONE | ACCOUNT/LOAN # | CKG. | SAV. | LOAN |
|---|---|---|---|---|---|---|
| 1. VISA | Mellon Bank | | | | | |
| 2. | | | | | | |
| 3. | | | | | b6 -3 | | |
| 4. | | | | | b7C -3 | | |

**IMPORTANT:** In consideration of Metromedia Paging Service's granting a credit account to the named subscriber, I personally have read, understood, and accepted the terms and conditions on reverse side of this contract and agree to pay the above recurring and total charges. I certify that the credit information given is true and correct. I authorize METROMEDIA to investigate my credit history, employment and financial responsibility through past and present employers, creditors, and credit bureaus. I certify that I am authorized to enter into and make binding agreements on behalf of the above customer if the customer is not myself and I personally (or as an agent of the corporation, if applicable) guarantee the return of all leased equipment, and the payment of all charges related to the use of said equipment until its return. In event or default of payment I agree to pay all costs of collection, including interest, attorney's fees, and court costs. PAYMENT IS DUE UPON RECEIPT.

*Individual Account Only

| MONTHLY TOTAL/SALE | | MONTHLY TOTAL/RENTAL | |
|---|---|---|---|
| Purchase | $261.45 | Equipment Rental | $ |
| Service | $ 12 00 | Service | $ |
| Maintenance | 3 00 | Waiver of Liability | $ |
| Sales Tax | $ 15.69 | Deposits | $ |
| Total Purchase | $89964 | Total Monthly Charge | $ |

3 00
291.64
(2) AMEX/VISA  SINGH-586
WHITE · BPA CUSTOMER FILE   YELLOW · SUBSCRIBER'S COPY   PINK · INVENTORY   GOLD · AGENT'S COPY

CUSTOMER NAME

5/7/87

MPS SIGNATURE   MIA = SALES
LOCATE = BILLING

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) —3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D)—3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6)—3, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:

SINGH - 587

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X     for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

[Reverse side of form]



b6 -3,4
b7C -3,4
b7D -3

2

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

____1____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  |  |  |
|---|---|---|
| **Section 552** | | **Section 552a** |
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) –3, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) –3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) –3, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
### SINGH -589

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee   X
X       for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

[Reverse side of form]



b7D -3

4

SINGH-590

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__3__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 591 through SINGH 593 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOI

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

*1* Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) −1, 3, 4, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) 3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) − 1, 3, 4, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ *SINGH − 594*

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

___7___ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages: _____
_____ SINGH 595 through SINGH 601 _____

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee  X
X   for this page       X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date  5/16/88

```
ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS
```

TO:      SAC, WMFO (26B-48866)(C-4)

FROM:    SAC, BALTIMORE (26B-56765)(SQ.10)(P)

SUBJECT: ROGER SCOT SNYDER, aka
         ET AL
         THEFT OF PIPER SARATOGA SINGLE ENGINE
         AIRCRAFT , TAIL NUMBER N8006Q FROM FREDERICK
         AIRPORT, FREDERICK, MD.
         3/18-20/88, ITSA
         OO: BA

         Re BA airtel to Bureau, 4/27/88.

         Enclosed for WMFO is one copy each of the following:

         1. FD-302 of
         2.  "
         3.  "       "   SA
         4.  "
         5.  "
         6.  "
         7.  "       "   SINGH DE SILVA ✓
         8.  "       "   SA              4/5/88 ✓
         9.  "       "   SA              4/6/88 ✓
         10. "
         11. "                          4/5/88 ✓
         12. "                          4/5/88 ✓
         13. "
         14. "
         15. "
         16. "
         17. "
         18. "
         19. "

                                              b6 -1,2,6
                                              b7C -1,2,6
                                              b7D -1,3

2 - WMFO (Encs)
2 - Baltimore
JED/slk
(4)

26B-48866-38
```

b6 -1
b7C -1

Approved: _____  Transmitted _____  Per _____
                                    (Number)

20. FD 302 of [redacted]                                    b6 -2
21.  "    "                                                 b7C -2
22. One envelope marked "Bureau Translated Documents."

On 4/29/88, SA [redacted] testified during a removal          b6 -1
hearing in U.S. District Court, Miami, Florida, regarding      b7C -
SINGH DE SILVA, aka Satnam Singh.  He was ordered removed
to the District of Columbia after probable cause existed to
establish he was the individual named in a WMFO warrant charging
him with a violation of the Passport laws.

LEADS

BALTIMORE DIVISION

AT FREDERICK, MD.

Will follow and report prosecution.

2*

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**FD-302**

## FEDERAL BUREAU OF INVESTIGATION

1                              DATE 5/19/88

[_____] was interviewed at the Office of
Assistant U.S. Attorney (AUSA) PETER SEMEL in Baltimore,
Maryland, in the presence of [_____] and   b6 -1,2,3,5
[_____] Also present were Special Agent              b7C -1,2,3,5
[_____] of the FBI, Washington Metropolitan Field Office, and SA   b7D -1
[_____] U.S. Customs Service, Baltimore, Maryland.

[_____] first met [_____]
SINGH DESILVA sometime around [_____]

b6 -2,3,
b7C -2,3,
b7D -1

b6 -2
b7C -2
b7D -1

WF- 26B-48266 -39

Investigation on  5/11/88   at Baltimore, MD  File # 26B-56765
by SA [_____] WMFO          Date dictated 5/16/88    b6 -1
   SA [_____] ceb                                       b7C -1

This document contains neither recommendations nor conclusions of
the FBI.  It is the property of the FBI and is loaned to your
agency; it and its contents are not to be distributed outside
your agency.

Continuation of FD-302 of ⬚⬚⬚⬚⬚ On **5/11/88**, Page **2**

b6 -2
b7C -2
b7D -1



b6 -2
b7C -2
b7D -1

In the summer of ⬚⬚⬚ DESILVA determined ⬚⬚⬚

b6 -2
b7C -2
b7D -1

saw DESILVA in ⬚⬚⬚

b6 -2
b7C -2
b7D -1

It was at this time ⬚⬚⬚

In the Summer ⬚⬚⬚

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ On  5/11/88, Page 3

b6 -2
b7C -2
b7D -1



b6 -2
b7C -2
b7D -1

DESILVA left

then looked in the

also found that the

b6 -2
b7C -2
b7D -1



**Continuation of FD-302 of** ⬚ **On** **5/11/88, Page 4**

b6 -2
b7C -2
b7D -1

was told it
would take a while was able
to arrange for

b6 -2
b7C -2
b7D -1

b6 -2,3
b7C -2,3
b7D -1

that during this period of time,

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of [                    ] On  5/11/88, Page 5*

b6 -2
b7C -2
b7D -1

b6 -2,3
b7C -2,
b7D -1

At this point, the interview was terminated.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

**AIRTEL**

6/4/88

TO:     SAC, BALTIMORE (26B-56765) (SQ. 10)

FROM:   SAC, WMFO (26B-48866) (C-4) (P)

ROGER SCOT SNYDER, AKA
ET AL
THEFT OF PIPER SARATOGA SINGLE ENGINE
AIRCRAFT, TAIL #N8006Q FROM FREDERICK
AIRPORT, FREDERICK, MARYLAND
3/18-20/88, ITSA
OO:BALTIMORE

        Re Baltimore airtel to WMFO, dated 5/16/88.

        Enclosed for Baltimore is one copy each of the
following:

        1.  FD-302 of [        ] dated 4/4/88        b6 -2
                                                     b7C -2
        2.  FD-302 of [        ] dated 4/4/88        b7D -1

        3.  FD-302 of [        ] dated 4/1/88

        4.  FD-302 of [        ]

        5.  FD-302 o[        ]

        <u>ADMINISTRATIVE</u>

        The 302's mentioned supra, are being returned to
Baltimore Division in that they appear to be original serials for
Baltimore file. Appropriate copies have been made for WMFO file.

        Enclosure number 22 styled "1 envelope marked "Bureau
Translated Documents" was omitted by the Baltimore Division as an
enclosure in the 5/16/88 airtel.

2-Baltimore (Enc. 5)
2-WMFO

LEB:clm
(4)

26B-48866-4D

SINGH-609

WMFO 26B-48866

For the information of Baltimore Division, WMFO is pursuing passport and other related violations by subject tentatively identified as SINGH DESILVA.

LEADS:

Baltimore Division at Frederick, Maryland:

Will forward 1 envelope marked "Bureau Translated Documents", listed as item number 22 in the enclosure section of airtel to WMFO, dated 5/16/88.

WMFO at Washington, D.C.:

Will continue investigation regarding passport and other violations concerning subject tentatively identified as SINGH DESILVA.

2*

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

b6 -1,2,3,5
b7C -1,2,3,5
b7D -1

Date of transcription __May 19, 1988__

_____ was interviewed at the office of Assistant
U.S. Attorney (AUSA) PETER SEMEL in Baltimore, Maryland, in the
presence of _____ and _____
Also present were Special Agent _____ of the FBI, Washington
Metropolitan Field Office, and SA _____ U.S. Customs
Service, Baltimore, Maryland.

_____ first met _____
SINGH DESILVA sometime around _____

b6 -2,3
b7C -2,3
b7D -1

b6 -2
b7C -2
b7D -1

b6 -2
b7C -2
b7D -1

In the summer of _____ DESILVA determined _____

WF 26B-48806-91

Investigation on ___5/11/88___ at __Baltimore, Maryland__ File # __BA 26B-56765__

b6 -1
b7C -1  SA _____ WMFO
by ____ SA _____ DJm ____ Date dictated ___5/16/88___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 11-15-83)

b6 −2
b7C −2
b7D −1

Continuation of FD-302 of _____ , On __5/11/88__ , Page __2__

b6 −2
b7C −2
b7D −1

saw DESILVA in

b6 −2,3
b7C −2,3
b7D −1

It was at this time

In the summer

o

b6 −2
b7C −2
b7D −1

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ , On __5/11/88__ , Page __3__

b6 -2
b7C -2
b7D -1

DESILVA left

then looked in the

also found that the

b6 -2
b7C -2
b7D -1

b6 -2
b7C -2
b7D -1

was told it would take a while

was able to arrange for

FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ On  5/11/88 , Page ____ 4 ___

b6 -2
b7C -2
b7D -1

b6 -2,3
b7C -2,3
b7D -1

b6 -2
b7C -2
b7D -1

that during this period of time

SINGH-614

b6 -2,3
b7C -2,3
b7D -1



FD-302a (Rev. 11-15-83)

b6 -2
b7C -2
b7D -1

Continuation of FD-302 of _____ , On __5/11/88__ , Page __5*__

b6 -2,3
b7C -2,3
b7D -1

At this point, the interview was terminated.

SINGH-615

FD-36 (Rev. 8-29-85)

*C-4*

**FBI**

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☒ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Date _____ 6/9/88

TO:       SAC, WMFO (26B-48866)

FROM:     SAC, BALTIMORE (26B-56765) (SQ 10) (P)

SUBJECT:  ROGER SCOT SNYDER;
          ET AL;
          ITSP; NARCOTICS MATTER; PM
          OO: BA

          Enclosed for WMFO is the original and one copy      b6 -4
of FD-302 of [          ]                                      b7C -4

          SA [              ] should read and initial      b6 -1
the original copy of the enclosed FD-302 and return it     b7C -1
to Baltimore.

LEADS:

     WMFO

          At WDC

          Will initial and return original FD-302.

② - WMFO (Enc. 2)
2 - Baltimore
JED:bjm
(4)

                                        b6 -1
                                        b7C -1

                                        26-48866-42

Approved: _____    Transmitted _____
                           (Number                JUN 13 1988

                                        FBI — WASH FIELD OFFICE

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

b6 −3,4,6
b7C −3,4,6
b7D −3

26-48866-42A

[Reverse side of form]

b6 -3,4
b7C -3,
b7D -3

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_13_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number is to be used for reference regarding these pages:
_____ SINGH 619 through SINGH 631 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
- ☐ Teletype
- ☐ Facsimile
- ☒ AIRTEL

PRECEDENCE:
- ☐ Immediate
- ☐ Priority
- ☐ Routine

CLASSIFICATION:
- ☐ TOP SECRET
- ☐ SECRET
- ☐ CONFIDENTIAL
- ☐ UNCLAS E F T O
- ☐ UNCLAS

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Date    7/1/88

TO:       SAC, WMFO (26B-48866) (C-4)

FROM:     SAC, BALTIMORE (26B-56765) (SQ. 10) (P)

          ROGER SCOTT SNYDER, ETAL
          ITSA
          OO:  BA

          Reference WMFO airtel to Baltimore, 6/4/88.

          Enclosed for WMFO are 15 pages of translated documents.

          The enclosed documents are copies of the Bureau translation
from Dutch to English that were inadvertently left out of the Baltimore
airtel to WMFO, 5/16/88.

          Investigation continuing.

26-48866-43

b6 -1
b7C -1

2 - WMFO
2 - Baltimore
JED:saw
(4)

Approved: _____    Transmitted _____    Per _____
                            (Number)    (Time)

☆U.S. GPO: 1987 — 181-485

SINGH-632

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**AIRTEL**

7/15/88

TO:      SAC, BALTIMORE (26B-56765) (SQ-10)

FROM:    SAC, WMFO (26B-48866) (C-4) (P)

ROGER SCOT SNYDER;
ET AL;
ITSP;
NARCOTICS MATTER;
PM;
OO:BALTIMORE

Referenced Baltimore airtel to WMFO dated 6/9/88.

Enclosed for Baltimore division is the original        b6 -4
302 as corrected by WMFO of FD-302 of [          ] and the      b7C -4
original and one copy of FD-302 provided by the Baltimore
division.

<u>ADMINISTRATIVE:</u>

SA [          ] should read and initial the      b6 -1
corrected original 302 and return two copies to the WMFO.     b7C -1

<u>LEADS:</u>

<u>BALTIMORE DIVISION</u>

<u>AT BALTIMORE</u>

Will initial and return two copies of FD-302
interview of [          ]     b6 -4
                               b7C -4
2-Baltimore (Encl. 3)
2-WMFO

LEB:lew
10 (4)

268-48866-44

Searched _____
Serialized _____
Indexed _____
Filed _____

SINGH-633

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_5_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 634 through SINGH 638 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

*Closed*

DIRECTOR, FBI                                    8/10/88

SAC, BALTIMORE (26B-56765) (SQ 10) (P)

"CHANGED"
ROGER SCOT SNYDER;
SATNAM SINGH, aka
Singh DaSilva
ITSA, PM, NARCOTICS MATTERS
OO:  BALTIMORE

          Title marked changed to add true name of subject
as "SATNAM SINGH" as determined through Interpol.

          Enclosed for WFO is one copy of an Interpol communication      b6 -2
dated 9 May 88 and two copies of FD-302 of [          ]                  b7C -2

          The enclosed communication confirms data previously
telephonically furnished by WMFO to Baltimore regarding the
true name of the subject in WMFO's custody.

          On 8/4/88, AUSA PETER SEMEL advised he will file
an information charging [        ] with ITSA after conferring with      b6 -4
AUSA MARK DUBESTOR in Washington, D. C.                                  b7C -4

LEAD:

BALTIMORE

          AT FREDERICK, MARYLAND

          Will follow and report prosecution.

GENERAL INDICES:
☑ Automated Search
  ☐ Neg   ☐ Pos
☐ Manual Search
  ☐ Neg   ☐ Pos

b6 -1
b7C -1

26B-48866-44B

2 - Bureau
2 - WMFO (26B-48866)(C-4)(Enc. 3)
2 - Baltimore
JED:jag
    (6)

SINGH-639

-BACK OF DOCUMENT-

26B-48866-44A

Searched_____
Serialized____ 16
Indexed_____ 16
Filed_____

SINGH-640

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) —3, 6 | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) —3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) —3, 6 | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:

SINGH - 641

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX


XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXXX
XXXXXXX
XXXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

**1** Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) -3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
       _SINGH - 642_

XXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee   X
X   for this page   X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_6_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages: _SINGH 643 through SINGH 648_

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

9/9/88

Date of transcription

     SATNAM SINGH, Prisoner in the District of Columbia Jail with District of Columbia Department of Corrections #233425 was compelled to provide handwriting samples to the interviewing agent.  This order was signed by Judge PENN for the District Court for the District of Columbia on 9/7/88 regarding case #88-237 entitled United States of America verses SATNAM SINGH.

     Mr. SINGH was required to provide handwriting samples on "quad" paper with lines 1/6" thick apart.  He was first required to provide all capital letters of the alphabet and used two pieces of paper.  He then provided the digits 0-9.  After that he provided, in lower case form, the alphabet.  Next he wrote out on a sheet of paper the following "the financial market is not doing too good, do to the coming election.  All major investors are waiting for the outcome of the election."  This was in all capital letters.

     On sheets paper 2 5/8" by 4 ¼" in size, he printed in response to dictation from the investigating agent.  For the first sample he required the use of two of the small sheets of paper.  The second sample which was done in all capital letters was confined to one slip of paper as were all subsequent samples.  The third sample was also in all capital letters.  On the fourth sample he was directed to print in small letters.  He did the same for the fifth sample.  For the sixth sample printed in all capital letters as directed.  For the seventh sample he was instructed to print only in small letters.  For the eigth, ninth, and tenth samples he was instructed to print using capital letters for the first letter of each word followed by small case for the remainder of the word.

     Subsequent to that he was directed to do the digits 0-9 then on two pieces of paper he provided the alphabet in upper case letters.  Following that on two sheets of paper he provided the alphabet in lower case letters.

     Then he was instructed to provide samples once again on the small sheets of paper in response to dictation.  For five samples he was told to start each word with a printed capital letter followed by printed small case lettering.

     The meeting lasted from approximately 1:40 to 3:30 p.m.

| | | | | WMFO |
|---|---|---|---|---|
| Investigation on 9/8/88 | at | Washington, D.C. | File # | 26B-48866 -45 |

| | | | |
|---|---|---|---|
| by SA | | b6 -1<br>b7C -1 | 9/8/88 dictated |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**AIRTEL**

9/9/88

TO:     DIRECTOR, FBI
        (ATTN: QUESTION DOCUMENT UNIT, LABORATORY
        DIVISION)

FROM:   SAC, WASHINGTON METROPOLITAN FIELD OFFICE
        (26B-48866) (C-4) (P)

ROGER SCOT SNYDER;
ET AL;
ITSP;
NARCOTICS MATTER;
PM;
OO:BALTIMORE

        Enclosed for the Bureau are two hand written notes
both starting "W-Friday 1-2" and also enclosed are
handwriting exemplars obtained from SATNAM SINGH and two
copies of 302 on the collection of the exemplars.

        Enclosed for Baltimore Division is the original
and one copy of the 302 on the handwriten exemplars.

        For the information of the Laboratory Division
SINGH is a defendant in a District Court of the District of
Columbia Matter captioned The United States of America
Verses SATNAM SINGH, case #88-0237.  This matter is set for
trial on September 22, 1988.

        OO in this matter is Baltimore Division.  SINGH is
currently incarcerated in the District of Columbia Jail and
in pursuant to a Court order issued on 9/7/88 WMFO obtained
handwriting exemplars from SINGH.  These are the enclosed
items referred to above.  In addition, the enclosures
include two handwriten notes that are considered important
in the pending prosecution of SINGH.

4-Bureau (Question Documents Unit)(Encl. 4)
2-Baltimore (26B-56765 SQ-10)(Encl. 2)
2-WMFO

DJK:hll
(8)



26B-48866-46

SEARCH
SERIAL

SEP  9 1988

OFFICE

b6  -1
b7C -1

**SINGH-650**

WMFO 26B-48866

       SA⬚⬚⬚⬚ of the Frederick RA, Baltimore
Division is the case agent in this matter. Questions
regarding this matter should be referred to ⬚⬚⬚⬚
Furthermore⬚⬚⬚should be telephonically advised as
expeditiously as possible when handwriting examination has
been completed.

b6 -1
b7C -1

    <u>REQUEST TO THE BUREAU</u>

      Conduct handwriting examination to determine if
exemplars submitted were produced by the same individual as
produced the two questioned notes. Report results
telephonically to case agent in Frederick RA as
expeditiously as possible. Retain the enclosures until
picked-up by the case agen. Note trial date of 9/22/88.

2*

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS



**REPORT**
**of the**


**LABORATORY**

## FEDERAL BUREAU OF INVESTIGATION
## WASHINGTON, D. C. 20535

C-4

To: SAC, Washington Metropolitan Field
(26B-48866) (C-4)

September 19, 1988

FBI FILE NO.　**26-453872**

LAB. NO.　**80909068 D WN**

Re: ROGER SCOT SNYDER;
ET AL;
ITSP;
NARCOTICS MATTER;
PM

OO: Baltimore

Examination requested by:　　**Addressee**

Reference:　　**Communication dated September 9, 1988**

Examination requested:　　**Document**

Specimens received　　**September 9, 1988**

Specimens:

Q48-Q49　Two handwritten/hand-printed notes beginning
"W-Friday 1-2..."

K1　Twenty-seven exemplars bearing the known hand printing
of SATNAM SINGH

Result of examination:

The majority of the hand printing on Q48 and
Q49 may have been written by SATNAM SINGH, writer of K1
specimens. Although this is not a positive identification,
there are some handwriting features in agreement between
the questioned and known writing which indicate the possibility
that SINGH wrote the questioned writing.

A qualified opinion is necessary regarding the
questioned hand printing on Q48 and Q49 because of features
observed in the questioned hand printing which were not
accounted for in the available known writing.

Enclosures (3)
2 - Baltimore (26B-56765) (SQ 10)
Page 1

(over)

b6 -1
b7C -1

No conclusion was reached whether SINGH wrote the handwritten entries on Q48 and Q49. An inconclusive result is necessary because the available known writing is not sufficiently comparable with the handwritten entries.

Specimens Q48, Q49 and K1 have been photographed and are being returned herewith.

Page 2
80909068 D WN

26 B-48866-46 A

SINGH-653

-BACK OF DOCUMENT-

26B -48066-46B

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

SEP 2 0 1988

FBI — WASH. FIELD OFFICE

SINGH-654

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

# M E M O R A N D U M
-------------------------------------------------------------------

TO:        SAC, WMFO (26B-48866)(P)(C-4)      DATE:   9/21/88

FROM:      ACTING SSA [                    ]      b6 -1
                                                  b7C -1

SUBJECT:   ROGER SCOT SNYDER;
           ET AL; ITSP;
           NARCOTICS MATTER;
           OO:BALTIMORE

      Captioned matter was opened on 3/29/88 and assigned to      b6 -1
SA [          ]     In view of SA [          ] TDY assignment to    b7C -1
the LA Division, this matter is being reassigned to
SA [              ]



2-WMFO
  (1-26B-48866)
  (1-Acting SSA)
JKD:rl
(2)

SINGH-655                                          b6 -1
                                                   b7C -1

FD-36 (Rev. 8-29-85)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ AIRTEL | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date  9/2 7/88

1  TO:        DIRECTOR, FBI
            ATTN: INTERPOL/FOREIGN POLICE COOPERATION, ROOM 7458)
2  FROM:      SAC, BALTIMORE (26B-56765)(SQ.10)(P)

3  SUBJECT:   "CHANGED"
4             ROGER SCOT SNYDER;
              STANAM SINGH, aka
5             Singh De Silva
              JOHN MARSHALL GUATTERY
              ITSA, NARCOTICS, PF, INTERPOL-FPF
              OO: BA

SATNAM

GENERAL INDICES:
☑ Automated Search
☐ Neg            ☑ Pos
☐ Manual Search
☑ Neg            ☐ Pos

7     Title marked "CHANGED" to add true name of subject
8  "Satnam Singh" to title.

9     Re Bureau tel to BA, 9/22/88.

10    On 9/22/88, SNYDER pled guilty in U.S. District
   Court, Baltimore, Maryland, to violation of Title 18,
11 Section 2312, USC, for transporting the stolen aircraft from
   Frederick, Maryland to Aruba.

12    On 9/22/88, AUSA MARK DUBESTOR, WDC, believes his
   trial of SINGH will begin on 9/29/88, in that jurisdiction
13 on a narcotics smuggling charge and Passport fraud.  The
   matter involving SINGH has been handled by WMFO since 5/88.
14 They have indicted him on the above charges and have pursued
   prosecution.  They have been aware of SINGH'S true name
15 since April 1988, when he admitted it to Pretrial Services
   in Miami, Florida.
16
      Baltimore did not receive a Bureau airtel dated
17 6/20/88, but did receive an airtel dated 6/29/88.

18  2- Bureau
19  2- WMFO (26B-48866)(C-4)
    2- Baltimore
20 JED/slk

21                        b6 -1
                          b7C -1

26B-48866-48

Approved: _____    Transmitted _____

SINGH-656

GPO : 1987 O - 193-749

By airtel dated 8/10/88, Baltimore advised the
Bureau that [          ] would testify against SINGH in USDC,
WDC. Baltimore also furnished WMFO with all pertinent FD
302s including the 6/29/88 Bureau airtel and the Interpol
enclosures.

b6 -4
b7C -4

WMFO should apprise the Bureau, Interpol/Foreign
Police Cooperation Unit, of the outcome of the SINGH
prosecution. Additionally, Baltimore found no identifiable
information in its indices with SINGH other than the instant
case.

LEADS:

WMFO

Keep Bureau apprised of developments concerning
the SINGH prosecution.

BALTIMORE DIVISION

AT FREDERICK, MD.

Report sentencing of [          ]

b6 -4
b7C -4

2*

SINGH-657

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

**Indices Search Slip**
FD-160 (Rev. 4-29-87)

| | | | Date | | |
|---|---|---|---|---|---|
| To: Office Services Manager | | | | | |
| Requested by | | Squad | Extension | File No. | |
| Subject | | | Social Security Account # | | |
| Aliases | | | | | |
| Address | | Birth Date | Birthplace | Race | Sex ☐ Male ☐ Female |

☐ Exact Spelling ☐ Main Criminal Case Files Only ☐ Restrict Locality of
☐ All References ☐ Criminal References Only
☐ Main Security Case Files Only ☐ Main Security (If no Main, list all Security References)
☐ Security References Only ☐ Main Criminal (If no Main, list all Criminal References)

| ☐ General Indices: | ☐ NEG ☐ POS | | ☐ ISIS: | ☐ NEG ☐ POS | |
|---|---|---|---|---|---|
| Searched by | | Date | Searched by | | Date |
| ☐ Confidential Indices: | ☐ NEG ☐ POS | | ☐ OCIS: | ☐ NEG ☐ POS | |
| Searched by | | Date | Searched by | | Date |
| ☐ ELSUR Indices: | ☐ NEG ☐ POS | | ☐ IIS: | ☐ NEG ☐ POS | |
| Searched by | | Date | Searched by | | Date |
| ☐ FOIMS: | ☐ NEG ☐ POS | | | | |
| Searched by | | Date | | | |

| File & Serial Number | Remarks | File & Serial Number | Remarks |
|---|---|---|---|
| 017-1 SUB B-833 | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Consolidated by _____ Date _____

Reviewed by _____ Date _____

**File Review Symbols**
I - Identical ? - Not identifiable
NI - Not identical U - Unavailable reference

SINGH-658

FBI/DOJ

FD-515 (Rev. 6-5-85)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/85)
(Submit within 30 days from date of accomplishment)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

TO:    DIRECTOR, FBI

Date _____ 10/13/88

FROM:    SAC, WMFO

| | |
|---|---|
| Bureau File Number | 26B-48866 |
| Field Office File Number | C-4 |
| Squad or RA Number | |
| Agent's Social Security No. | |

SUBJECT:
ROGER SCOTT SNYDER;
SATNAM SINGH, AKA;
ITSA; NARCOTICS; PF
INTERPOL-FPC
OO:BA

b6 -1
b7C -1

X If a joint operation with:

_____ X If identity of other agency)

X If case involves corruption of a public official (Federal, State or Local).

**Investigative Assistance or Technique Used**
Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed?  No ☐  Yes ☐ - If Yes, rate each used as follows:
1 = Used, but did not help        3 = Helped, substantially
2 = Helped, but only minimally    4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg. Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UC Other | |
| 5. ELSUR FISC | | 12. Lab Div Exams | | 19. Surved. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

**A. Preliminary Judicial Process** (Number of subjects)

| | Complaints | Informations | Indictments |
|---|---|---|---|
| | 1 | | 1 |

**B. Arrests, Locates, Summonses or Subpoenas Served** (No. of Subj.)

| | Subject Priority | | | | |
|---|---|---|---|---|---|
| | A | B | C | Subpoenas Served | |
| FBI Arrests - | | | | | |
| FBI Locates - | | | | Criminal Summons | |
| Local Arrests - | | | | | |
| FBI Subj. Restated _____ Armed _____ | | | | Local Crim. Summons | |

**D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP)** (Explain valuation in remarks)

| Property Type Code | Recoveries | Restitutions | PELP Type Code | Potential Economic Loss Prevented |
|---|---|---|---|---|
| | $ | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |

**C. Release of Hostages or Children Located:** (Number of Hostages or Children Located)

Hostages Held By Terrorists _____ : All Other Hostage Situations _____
Missing or Kidnaped Children Located _____

**E. Civil Matters**

| | Government Defendant | Government Plaintiff |
|---|---|---|
| Amount of Suit | $ | |
| Settlement or Award | $ | Enter AFA Payment Here |

**F. Final Judicial Process:**    Judicial District

| | District | State | Conviction or Pretrial Div. Date | Sentence Date | No. of Subjects | Acquitted | Dismissed |
|---|---|---|---|---|---|---|---|

**Subject 1**    Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs | Mos | Suspended Yrs | Mos | Probation Yrs | Mos |
| ☐ Misdemeanor | | | | | | | | | |

☐ Plea
☐ Trial
☐ Pretrial Diversion

Total Fines $

Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail.

**Subject 3**    Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs | Mos | Suspended Yrs | Mos | Probation Yrs | Mos |
| ☐ Misdemeanor | | | | | | | | | |

☐ Plea
☐ Trial
☐ Pretrial Diversion

Total Fines $

Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail.

**Subject 2**    Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs | Mos | Suspended Yrs | Mos | Probation Yrs | Mos |
| ☐ Misdemeanor | | | | | | | | | |

☐ Plea
☐ Trial
☐ Pretrial Diversion

Total Fines $

Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail.

**Subject 4**    Subject Description Code* —

| ☐ Felony | Conviction | | | Combined Sentence | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Title | Section | Counts | In-Jail Yrs | Mos | Suspended Yrs | Mos | Probation Yrs | Mos |
| ☐ Misdemeanor | | | | | | | | | |

☐ Plea
☐ Trial
☐ Pretrial Diversion

Total Fines $

Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. In-Jail.

Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for (R-84) for each subject.

Remarks:    (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

26B-48864-79

    On 4/27/88 a complaint was filed in the District of the District
Columbia charging subject SINGH with violation of Title 18 U.S.C. 1542,
False Statements in Application and Use of Passport.  On 6/23/88, a
Federal Grand Jury in the District of the District of Columbia returned
a true bill of indictment on the subject SINGH for violation of Title
18 U.S.C. 1542 and Title 21 U.S.C. 963, Conspiracy to Import Cocaine.
Subject SINGH is described as follows:  Name - SATNAM SINGH; DOB: 4/26/60,
Race - other; Sex - male; illegal alien from Singapore.

2 - Bureau
2 - Field Office
See codes on reverse side.

DJK:rlm

stat

SINGH-659

Searched _____
Serialized _____
Indexed _____
Filed _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SATNAM SINGH, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-01064 (RJL) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# EXHIBIT B

# (PAGES 660-904)

**Memorandum**  

To : SAC, WMFO (26B-48866)(P)(C-4)                Date 10/17/88

From : SA [                    ]      b6 -1      ALL INFORMATION CONTAINED
         DJK                         b7C -1      HEREIN IS UNCLASSIFIED
                                                DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

Subject : ROGER SCOTT SNTDER;
          SATNAM SINGH, aka;
          ITSA; NARCOTICS MATTER;PF;
          INTERPOL-FPC;
          OO:BA

        Attached is "bootleg" prosecutive report prepared
by the writer and provided to AUSA Mark Dubester for the
trial of subject SINGH. This matter was reassigned to the
writer days before trial was to start and as a prosecutive
report had not been prepared, the attached was the best
that could be arranged.


                                    26B-48866-50

    1-WMFO
    DJK
    (1)
                                    SEARCHED____ INDEXED____
                                    SERIALIZED____ FILED____

                                        OCT 17 1988

                                    FBI—WASH. FIELD OFFICE

                            SINGH-660

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

The following case summary was prepared April 27, 1988 before
SATNAM SINGH's true identity was established.

b6 -4
b7C -4

On the evening of [                    ] the pilot, and his
passenger, whose identity is still unknown, landed on
the island of Aruba when that island was on a terrorist
alert. Upon instructions from the Aruba International
Airport Tower, [          ] parked his aircraft near other
small aircrafts but at a direction opposite all other
aircrafts. As its official government policy, Customs
Inspectors immediately met [          ] and his passenger
and asked them if they were carrying any weapons or
drugs. Both answered in the negative and they were
then driven to the main building of the airport where
they checked through Immigration and cleared Customs.
The passenger of the aircraft utilized a recently issued
U.S. passport in the name of JOHN MARSHALL GUATTERY
and [          ] used his U.S. passport. At the time the
aircraft landed, Aruban Customs detectives, who were
not at the airport, overheard the aircraft receiving
landing instructions and they also were advised that
the passenger, GUATTERY, indicated he was carrying in
excess of $25,000 in cash. These Customs Inspectors
responded to the airport and located the aircraft in
the parking area. Immediately upon observation of the
aircraft, they were able to determine that the tail
numbers on the fuselage and the tail did not match in
uniform size. The aircraft, the captioned Piper Saratoga,
was bearing number N8007B. The last two digits, 7B,
were not the same width as the N800. Upon closer inspection,
the Customs Inspectors were able to determine that the
digits 7B were made from a black masking tape type substance
and in no way were identical to the preceding four numbers
and letters. At this point, the Customs Inspectors
opened the door of the aircraft and picked up a black
jacket from the pilot's seat. Wrapped in a towel in
the pocket of the jacket were four loaded clips for
a nine millimeter pistol. These are the clips that
are enclosed for the Identification Division.

Because the subjects had failed to declare
that ammunition and possibly firearms were aboard the
aircraft, Aruban Customs contacted the Aruban Police

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_5_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
        _SINGH 662 through SINGH 666_

XXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee  X
X   for this page       X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

On 4/17/88, Aruba officially expelled [          ]
and DeSILVA from their country and they were placed
into the custody of U.S. Marshals who transported them
to Miami, Florida.  During their initial hearing, a
$50,000 corporate surety bond was set for [          ] but
DeSILVA was detained for at least 10 days until his
"problems" with the Immigration Naturalization Service
could be corrected.  DeSILVA is apparently claiming
that he was born in Singapore but will not advise anyone
of his nationality.

b6 -4
b7C -4



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

WMFO 26B-48866
DJK:cas

**TABLE OF CONTENT**

<u>INVESTIGATION IN ARUBA</u>

b6 -1,2,6
b7C -1,2,6
b7D -1,3

<u>ITEMS</u>  Interview of ⬚ and ⬚ of ⬚

Interview of ⬚ regarding contents of the aircraft.

Interview of ⬚ regarding his interviews of ⬚ and GUATTERY.

List of items furnished by ⬚ to SA ⬚ list with english translation.

List of reports provided by ⬚ to SA ⬚ (orginial report induch english translation attached).

Inspection of aircraft by SA ⬚

Examiniation of aircraft numbers by SA ⬚

Review of ? charts seixed in the aircraft, review conducted by SA ⬚ FBI.

Attempted interview of SATNAM SINGH (known as SINGH DESILVA) by SA ⬚

Interview of ⬚ by SA ⬚ on 4/5/88.

Interview of ⬚ by SA ⬚ on 4/7/88.

Interview of ⬚ by SA ⬚ and ⬚ on 5/11/88 in Baltimore, Maryland.

-2-

WMFO26B-48866

INVESTIGATION IN SOUTHERN FLORIDA

b6 -2
b7C -2

Interview of [                    ]
General Airport (negative information).

Interview of [                ]
Homestead, General airport (negative information).

Interview of [                          ]
[                          ] Homestead,
General Airport regarding aircraft
N800B, on 4/4/88.

[                          ]
[                    ] Homestead General Airport
regarding above aircraft interviewed
4/4/88.

Interview of [              ] of
[                    ] Homestead interviewed on
4/1/88 regarding [                    ]

INVESTIGATION IN METROPOLITAN WASHINGTON, D.C.

ITEM        Interview of [                    ]
[                          ]
DEPARTMENT OF STATE on 4/25/88.

b3
b6 -1,2,5
b7C -1,2,5
b7D -1

Interview of [                ] (true
name) by SA [          ] on 4/19/88.

Interview of [                ]
(Service Grand Jury Subpeona) on
4/22/88.

Interview of [              ] by SA's
[          ] and [        ] on 4/21/88.

Service of Grand Jury Subpeona on [        ]
by SA [      ] on 4/22/88.

Interview of [        ] by SA [      ] with her
Attorney and AUSA SEMEL in Baltimore,
Maryland on 4/22/88.

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

### FEDERAL BUREAU OF INVESTIGATION

b6 -1,6
b7C -1,6
b7D -3

Date of transcription _____4/12/88_____



was interviewed with his partner, [                ] They
were interviewed by Special Agent (SA) [          ] and
[                                              ] advised that he

A short time thereafter,

b7D -3

Investigation on __4/6/88__ at _____  File # __BA 26B-56765__

by SA [                ] :sp   b6 -1
b7C -1

Date dictated __4/7/88__

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-670

FD-302a (Rev. 11-15-83)

b6 -6
b7C -6
b7D -3

4/6/88                    2*

Continuation of FD-302 of _____ On _____ , Page _____



b6 -6
b6 -6
b7D -

b6 -6
b7C -6
b7D -3

b7D -3

SINGH-671



FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

**FEDERAL BUREAU OF INVESTIGATION**

b6 -6
b7C -6
b7D -3

Date of transcription___ 4/12/88



advised

b6 -4.6
b7C -4,6
b7D -3

advised that his investigation

WF 26-48346 -29

| Investigation on | 4/6/88 | at | | File # | BA 26B-56765 |

by SA _____ :sp

b6 -1
b7C -1

Date dictated___ 4/7/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

SINGH-672

FD-302a (Rev. 11-15-83)

b6 -6
b7C -6

Continuation of FD-302 of _____, On ___ 4/6/88 ___, Page ___ 2*



b7D -3

b6 -4,6
b7C -4,6
b7D -3

SINGH-673

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|     Section 552     |     |     Section 552a     |
| --- | --- | --- |
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) |     | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_1_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: 680

_SINGH 674 through SINGH 680_

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

__4__    Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) −3 | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 681 through SINGH 684 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

Section 552                                          Section 552a

☐ (b)(1)                    ☐ (b)(7)(A)              ☐ (d)(5)

☐ (b)(2)                    ☐ (b)(7)(B)              ☐ (j)(2)

☐ (b)(3)                    ☐ (b)(7)(C)              ☐ (k)(1)

_____            ☐ (b)(7)(D)              ☐ (k)(2)

_____            ☐ (b)(7)(E)              ☐ (k)(3)

_____            ☐ (b)(7)(F)              ☐ (k)(4)

☐ (b)(4)                    ☐ (b)(8)                 ☐ (k)(5)

☐ (b)(5)                    ☐ (b)(9)                 ☐ (k)(6)

☐ (b)(6)                                             ☐ (k)(7)

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_13_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 685 through SINGH 697 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee   X
X    for this page        X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    **7-13-88**

On July 6, 1988, SA[                    ]reviewed charts and    b6 -1
documents recovered from the Piper PA-32R-301 Saratoga stolen from    b7C -1
Frederick Municipal Airport and recovered in Aruba, Netherlands,
Antilles.   These documents include aeronautical charts, flight
information publications, a notebook and a Supplemental Type
Certificate.

The following charts were provided:

The following World Aeronautical Charts (WAC) were
available:

| CHART NUMBER | DESCRIPTION |
|---|---|
| CG-21 | Middle Atlantic United States |
| CH-25 | Southeast United States and Bahamas |
| CK-26 | Panama - Venezuela |
| CJ-26 | Cuba, Jamaica, and Haiti |
| CJ-27 | Hispanola - Antilles |
| CK-27 | Lesser Antilles and Venezuela |



The following National Ocean Survey (NOS) Low Altitude En
route charts were recovered:

| CHART NUMBER | DESCRIPTION |
|---|---|
| L-27 | Instrument Flight Rules - East Coast |
| L-19 | Instrument Flight Rules - Southeast U.S. |

The following Defense Mapping Agency, Central and South
America Series Charts, were recovered:

| CHART NUMBER | DESCRIPTION |
|---|---|
| A-1 - A-2 | Caribbean and South America Area Chart |
| L-1 - L-2 | Mexico through Panama |



Investigation on  **7-6-88**  b6 -1    **Baltimore, Maryland**    File # **26B-56765**
                              b7C -1

by  **SA**[                    ]**:mtc**                    Date dictated  **7-10-88**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

Continuation of FD-302 of  **REVIEW**                                                    ,On  **7/6/88**    ,Page    2

| CHART NUMBER | DESCRIPTION |
|---|---|
| L-3 - L-4 | Gulf of Mexico |
| L-5 - L-6 | Northeast Caribbean |
| L-7 - L-8 | Panama through Venezuela |
| L-9 - L-10 | Northwest South America |
| L-11 - L-12 | Central South America |
| L-13 - L-14 | Northeast South America |
| L-15 - L-16 | Buenas Aires to Rio Dejanero |
| L-17 - L-18 | Southern South America |

A Defense Mapping Agency, Flight Information Publication En route - Caribbean and South America Supplement, effective March 10, 1988 was recovered.  The following Overseas Navigation Charts (ONC) were recovered in connection with this matter:

1.  ONC N-26
2.  ONC N-25
3.  ONC P-26
4.  ONC L-26
5.  ONC L-27
6.  ONC P-27
7.  ONC M-26

A Washington Sectional Chart with an effective date of March 12, 1987, was recovered.

A copy of Supplemental Type Certificate SA157NE for the installation of a Graphic Engine Monitor System.

A black and white composition book was located and reviewed. The first page of this book lists the VHF radio frequency for Miami Flight Service Station as 118.4 megahertz.  This page further lists the magnetic bearing and distance between the following points:

| | |
|---|---|
| Homestead, Florida to Nassau | 100 degrees/170 nautical miles |
| Nassau to Grand Turk | No bearing given/420 nautical miles |
| Grand Turk to Santiago | 120 nautical miles |

SINGH-699

FD-392a (Rev. 11-15-83)

Continuation of FD-302 of  REVIEW                                    On  7/6/88    Page   3

Santiago to Aruba                    450 nautical miles

        Subtotals are noted for the Homestead, Florida to Grand Turk
leg, as well as the Grand Turk to Aruba leg.  A total of 1,160 miles
is noted.  No other flight planning information was obtained from the
composition book.

        A review of the Overseas Navigation Charts does not reveal
any flight planning information.

        A review of the Defense Mapping Agency, Caribbean and South
America Charts do not reveal any flight planning indications.  No
marks indicating flight planning were identified with charts L-19/L-20
or L-27/L-28.

        A review of World Aeronautical Chart CG-21 revealed course
lines plotted between the Frederick, Maryland Airport and the Ocean
City, Maryland Airport.  A triangular course was outlined between
Manassas, Virginia, Newport News, Virginia (Patrick Henry
International Airport), Lynchburg, Virginia (Glenn Airport), and
returning to Manassas.  The above course lines were noted in black
pencil.  It should be noted that the course lines described in this
paragraph are not marked with either elapsed time or distance
markings.

        A review of World Aeronautical Chart CH-25 revealed two
apparent attempts at flight planning.  The Marathon, Florida Airport
is circled in red ink and a course line approximately due south is
noted.  A second set of course lines is noted in blue ink.  This
course line originated at Homestead General Airport, in Florida,
proceeds direct to the Nassau International Airport, in the Bahamas,
and continues further southeast.  This course line ends approximately
ten miles south of Hawks Nest Creek Airport, Cat Island, Bahamas.  It
should be noted that the course lines described in this paragraph are
not marked with either elapsed time or distance markings.

        A review of World Aeronautical Chart CJ-26 reveals a blue
ink course line laid out in a southeasterly direction originates
approximately ten miles east of Little Fowl Cay and proceeds southeast
bound to Mayaguana Island.  This course line is the hash marks noted
measured at 170 nautical miles between the two hash marks.  A red ink
course line is noted from the northern point of the map at
approximately 81 degrees west longitude.  This course line proceeds
south to the Giron Non-Directional Radio Beacon, located in Giron,
Cuba.  The red course line continues southeast bound along airway 511
to the Gerrard Smith Airport, Cayman Brac, the Cayman Islands.  The
course line continues due south to a position 79 degrees, 53 minutes
west and 16 degrees north latitude.

SINGH-700

FD-302a (Rev. 11-15-83)

Continuation of FD-302 of  REVIEW _____    .On  7/6/88    .Page    4*

     -      A review of World Aeronautical Chart CJ-27 reveals a blue ink course line laid out, which beings at the Santiago, Hade Airport and proceeds due south below the southern coast of Hade.  The course continues southeast bound and is noted 145 degrees.  This course line intersects the A567 airway, which is defined as the 189 degree radial from the Punta Caucedovor.  The course lines continues south along a 157 to the termination of the chart.

         A review of World Aeronautical Chart CK-26 reveals that a red course line proceeding due south from just north of the Cayaod Serranilla Bank to a point just northwest of the Colon Airport, Panama.

         A review of World Aeronautical Chart CK-27 reveals that the course line along A567 is continued south until approximately 130 miles north of the Island of Aruba.  The course line then proceeds slightly west and terminates at the Reina Beatrix International Airport, Oranjestad, Aruba.  The course line contains hash marks indicating 20 miles and 95 miles north of the airport.  No further flight planning marks were noted on this chart.

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__35__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
      *SINGH 702 through SINGH 736*

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_10_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☑  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Pages were not considered for release as they are duplicative.

_____  Page(s) withheld for the following reason(s): _____

☑  The following number is to be used for reference regarding these pages: _SINGH  737  through  SINGH  746_

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
## DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__15__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 747 through SINGH 761 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

# Memorandum

 

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC/BAW/STP/CLS

To     :

From   :

Subject :

Date 10/17/88

SAC, WASHINGTON METROPOLITAN FIELD OFFICE
(26B-48866) (P) (C-4)

SA[                    ]     b6 -1
                            b7C -1

ROGER SCOT SNYDER;
SATNAM SINGH, aka;
ITSA, NARCOTICS, PF, FPC;
OO:BALTIMORE

The following documents are attached for enclosing in
the captioned file:

b6 -4
b7C -4
b3

1) Copy of Plea agreement for subject [        ] in the
District of Maryland.

2) Transcript of testimony of subject's [        ] before
Grand Jury in the District of Columbia on June 9, 1988.

3) Grand Jury indictments of subject SINGH dated June
23, 1988.

INS

4) Exserts from subject SINGH's file.

(1)-WMFO

DJK:cas

26B.48866.51

SEARCHED____INDEXED____
SERIALIZED____FILED____

OCT 17 1988

FBI—WASH. FIELD OFFICE

SINGH-762

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_6_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☑ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _SINGH 763 through SINGH 768_

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

- - - - - - - - - - - - - - x
                             :
UNITED STATES OF AMERICA     :
                             :
        v.                   :
                             :
SATNAM SINGH a/k/a           :
SING DESILVA                 :
                             :
- - - - - - - - - - - - - - x
                                          b3

                        Grand Jury Room No. 3
                        United States District Courthouse
                        3rd & Constitution Avenue, N.W.
                        Washington, D.C.

        The proceedings in the above-entitled matter were

taken in the presence of a full quorum of Grand Jury ⬚

impaneled on ⬚              commencing at 2:51 p.m., before:


                MARK DUBESTER
                Assistant United States Attorney

OPCA-20 (12-3-96)

XXXXXXX
XXXXXXX
XXXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
#### DELETED PAGE INFORMATION SHEET

**33** Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _Rule 6(e) of the_ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _Federal Rules of_ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _Criminal Procedure_ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_SINGH 770 through SINGH 802_

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

35

## CERTIFICATE OF REPORTER

I, [                    ] the reporter for the United States Attorney's Office, do hereby certify that the witness whose testimony appears in the foregoing pages was first duly sworn by the foreperson or the deputy foreperson of the grand jury when there was a full quorum of the grand jury present; that the testimony of said witness was taken by me by stenomask and thereafter reduced to typewritten form; and that the transcript is a true record of the testimony given by said witness.

b6 -3
b7C -3

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAW/STP/CLS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn In On January 8, 1987    88-023

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | Mag. No. 88-0295m-01(cr) |
| v. | : | VIOLATION: 21 U.S.C. §963 |
| | : | (Conspiracy To Import Cocaine) |
| SATNAM SINGH, also known as | : | 18 U.S.C. §1542 |
| Singh DeSilva | : | (False Statements In |
| | : | Application and Use of |
| | : | Passport) |
| | : | 18 U.S.C. §2 |
| | : | (Aiding and Abetting) |

PENN, J.

I N D I C T M E N T

**FILED IN OPEN COURT**

The Grand Jury charges that:

**JUN 2 3 1988**

COUNT ONE

**CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA**

The Conspiracy

From on or about January 1, 1988, the exact date being
unknown to the Grand Jury, and continuing thereafter up to and
including March 22, 1988, within the District of Columbia, the
State of Maryland, the Commonwealth of Virginia, the State of
Florida, and elsewhere, the defendant SATNAM SINGH, also known as
Singh DeSilva, and unindicted coconspirator Roger Snyder,
unlawfully, knowingly, and wilfully did combine, conspire,
confederate and agree together and with each other and with
persons whose identities are unknown to the Grand Jury to import
cocaine, a Schedule II narcotic drug controlled substance, in
violation of Title 21 U.S. Code, Section 960.

## Manner and Means to Accomplish
## The Goals of the Conspiracy

The goal of the conspiracy was to import cocaine from Bolivia for distribution in the United States. The manner and means used to accomplish this goal were as follows: Defendant **SATNAM SINGH**, also known as Singh DeSilva arranged to purchase cocaine from persons in Bolivia; unindicted coconspirator Roger Snyder, who is a pilot, stole an airplane in Frederick, Maryland and flew it to Leesburg, Virginia; defendant **SATNAM SINGH**, also known as Singh DeSilva, boarded the plane in Virginia; the two then flew to Florida, then to Aruba, en route to Bolivia; in preparation for the trip, the defendant **SATNAM SINGH**, also known as Singh DeSilva, procured a false passport; and during the trip, defendant **SATNAM SINGH**, also known as Singh DeSilva, carried with him approximately $28,000 in currency to purchase the cocaine, and carried with him firearms for security.

## OVERT ACTS

In furtherance of the aforesaid conspiracy and in order to effect the object of the conspiracy, defendant **SATNAM SINGH**, also known as Singh DeSilva, and unindicted coconspirator Roger Snyder, committed, among others, the following overt acts:

1) On several occasions between January 1, 1988 and March 18, 1988, the defendant **SATNAM SINGH**, also known as Singh DeSilva, and unindicted coconspirator Roger S. Snyder met in restaurants in Washington D.C. to discuss and agree on the goals

- 3 -

of the conspiracy, the means and methods to accomplish the goals, and the financial arrangements upon the accomplishment of the conspiracy;

2)    In late February or early March of 1988, in Washington, D.C., unindicted coconspirator Roger S. Snyder, obtained a visa from the Columbian embassy, in anticipation of landing in Columbia en route to Bolivia;

3)    On or about March 8, 1988, the defendant **SATNAM SINGH**, also known as Singh DeSilva, arranged to purchase three firearms from unindicted coconspirator Roger Snyder;

4)    On March 11, 1988, in the District of Columbia, the defendant **SATNAM SINGH**, also known as Singh DeSilva, applied for a passport at the passport agency in Washington, D.C., falsely stating and representing that he was one "John M. Guattery," and providing false identifying information as to date of birth and social security number;

5)    Several days prior to March 18, 1988, the defendant **SATNAM SINGH**, also known as Singh DeSilva, paid unindicted coconspirator Roger Snyder $5,000 as payment "up front" for Roger Snyder's participation in the conspiracy;

6)    On the morning of March 18, 1988, unindicted coconspirator Roger S. Snyder went to Frederick Memorial Airport, in Frederick, Maryland, where he stole the keys to a Piper Saratoga airplane that was parked at the airport;

7)    In the early morning hours of March 19, 1988, unindicted coconspirator Roger Snyder returned to Frederick Memorial Airport where he:  1) entered the Piper Saratoga aircraft and taxied it

to the end of the runway; 2) changed the identifying numbers on the airplane, and 3) took off and piloted the plane to Leesburg, Virginia.

8)   In Virginia, defendant **SATNAM SINGH**, also known as Singh DeSilva, met unindicted coconspirator Roger Snyder at Snyder's residence, where Snyder transferred to the defendant the firearms that the defendant had previously ordered from Snyder; they then left the defendant's car at another location, drove to the airport at Leesburg, Virginia, then flew to Marathon, Florida where they arrived in the evening of March 19, 1988;

9)   On March 22, 1988, defendant **SATNAM SINGH**, also known as Singh DeSilva, and unindicted coconspirator Roger Snyder flew to Aruba in the stolen airplane;

10)   From departure on March 19, 1988, until March 22, 1988, the defendant **SATNAM SINGH**, also known as Singh DeSilva, possessed firearms and ammunition for purposes of security when making the drug purchase and approximately $28,000 to be used to purchase the cocaine.

(In Violation of Title 21 U.S. Code, Section 963 & Title 18 U.S. Code, Section 2)

## COUNT TWO

On or about March 11, 1988, within the District of Columbia, **SATNAM SINGH** also known as, Singh DeSilva, did knowingly and wilfully make false statements in an application for a passport with intent to induce and secure the issuance of a passport under the authority of the United States contrary to the laws regulating the issuance of passports and the rules prescribed

pursuant to such laws, in that, in such application, executed at the Washington Passport Agency, 1425 K Street, N.W., Washington, D.C., a passport agency of the United States, in the name of John M. Guattery, the defendant **SATNAM SINGH**, also known as Singh DeSilva, stated that he was John M. Guattery, date of birth July 20, 1959, place of birth Canadaiqua, New York, social security number 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, whereas in truth and in fact, as he then knew, he was not said John M. Guattery and was not born on July 20, 1959 in Canadaiqua, New York, and was not assigned social security number 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.

(In Violation of Title 18 U.S. Code, Section 1542)


                                    A TRUE BILL:


                                    _____
                                            FOREPERSON.

Attorney of the United States in
and for the District of Columbia


MHD:amm

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_12_ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☑ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative.

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages: _____
_____ SINGH 809 through SINGH 820 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X      for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

C-4

FD-36 (Rev. 8-29-85)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

Date  10/18/88

b6 -4
b7C -

1   TO    : DIRECTOR, FBI
           (Attn:  INTD)

2   FROM  : SAC, BALTIMORE (26B-56765) (SQ. 10) -P-

3   SUBJECT: ROGER SCOT SNYDER;
4            SATNAM SINGH, aka
             Singh DeSilva,
5            John Marshall Guattery;
             ITSA; NARCOTICS MATTER; PASSPORT FRAUD;
6            OO:  BALTIMORE

GENERAL INDICES:
☒ Automated Search
☐ Neg    ☒ Pos
☐ Manual Search
☐ Neg    ☐ Pos

7
8         Re:  Legat, Bridgetown teletype to the Bureau and
    Baltimore, dated 10/6/88.

b6 -4
b7C -4

9         On 9/22/88

10                        who was being tried in U. S. District Court,
11  Washington, D.C.  SINGH was charged with a passport violation and
    a narcotics violation.

b6 -6
b7C -6

12        On 9/29/88.
13  and                              traveled to the United States
    to testify in SINGH's trial.  They returned on 10/4/88.

b7D -3

14        On 10/13/88, it was determined that SINGH was acquitted
15  on the narcotics charge but convicted on the passport violation.
    A sentencing date has yet to be set.            will be sentenced on
16  1/5/89.

b6 -4
b7C -4

17        Legat, Bridgetown should note this case is being jointly
    pursued by both Baltimore and WMFO.

18

19  6 - Bureau
20     (1 - Liaison Unit)
       (1 - Legat, Bridgetown) (26-1)
21     (1 - Interpol/Foreign Police Cooperation Unit, Room 7458)
    2 - WMFO
    2 - Baltimore
    JED:ml
    (10)

26B-48866-52

Approved: _____    Transmitted _____    Per _____
                             (Number)    (Time)

SINGH-821

b6 -1
b7C -1

FD-263 (Rev. 4-30-85)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAU/STP/CLS

C-4

# FEDERAL BUREAU OF INVESTIGATION

| REPORTING OFFICE | OFFICE OF ORIGIN | DATE | INVESTIGATIVE PERIOD |
|---|---|---|---|
| BALTIMORE | BALTIMORE | 10/24/88 | 3/20/88-9/22/88 |

| TITLE OF CASE | REPORT MADE BY | TYPED BY |
|---|---|---|
| | SA | sp |

TITLE OF CASE

ROGER SCOT SNYDER;
SATNAM SINGH, aka
Singh DeSilva
John Marshall Guattery

CHARACTER OF CASE

ITSA, NARCOTICS, PF
INTERPOL - FOREIGN
POLICE COOPERATION

b6 -1
b7C -1

REFERENCE:

Baltimore teletype to WMFO, 3/21/88;
Baltimore airtel to Bureau, 9/27/88.

- P -

ADMINISTRATIVE DATA:

A copy of this report is being designated to Legat,
Bridgetown in the event the legat desires to disseminate any portion
to the Aruba Police force.

LEAD:

BALTIMORE OFFICE

AT BALTIMORE, MARYLAND

Will report sentencing of SNYDER in USDC.

| APPROVED | SPECIAL AGENT IN CHARGE | DO NOT WRITE IN SPACES BELOW |
|---|---|---|

COPIES MADE:

5 - Bureau
    (1 - Liaison Unit)
    (2 - Legat, Bridgetown) (26-1)
1 - WMFO (26-48866)
1 - U.S. Attorney, Baltimore
    (Attn: AUSA PETE SEMEL)
2 - Baltimore (26B-56765) (SQ 10)

b6 -1
b7C -1

26-48866-53

OCT 31 1988

| Dissemination Record of Attached Report | | | | Notations |
|---|---|---|---|---|
| Agency | | | | |
| Request Recd. | | | | |
| Date Fwd. | | | | |
| How Fwd. | | | | |
| By | | | | |

COVER PAGE

* U.S.G.P.O.: 1986-491-509/45733

SINGH-822

FD-204 (Rev. 3-3-59)

## UNITED STATES DEPARTMENT OF JUSTICE
### Federal Bureau of Investigation

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**Copy to:**        1 - U.S. Attorney, Baltimore

**Report of:**      SA [                    ]    **Office:** b6 -1    BALTIMORE
**Date:**           10/24/88                              b7C -1

**Field Office File #:**   BA 26B-56765        **Bureau File #:**

**Title:**          ROGER SCOT SNYDER;
                    SATNAM SINGH

**Character:**      INTERSTATE TRANSPORTATION OF STOLEN AIRCRAFT,
                    NARCOTICS, PUBLIC FACILITIES
                    INTERPOL - FOREIGN POLICE COOPERATION        b6 -4
                                                                 b7C -4
**Synopsis:**

On March 18-19, 1988, a Piper Saratoga aircraft,
registration number N-8006Q was stolen at the Frederick,
Maryland, airport.  On March 22, 988, [        ] and second
person using name of JOHN MARSHALL GUATTERY were arrested
with aircraft in Aruba.  Aircraft had an altered
registration number, weapons and disguises on board and
GUATTERY was carrying in excess of $29,000 in cash.
Aruba authorities requested FBI to handle matter, as both
subjects appeared to be U.S. citizen.  On March 30, 1988,
warrants were signed charging both subjects with theft of
aircraft from District of Maryland.  [        ] furnished a
partial false statement to FBI in Aruba and GUATTERY
refused to be interviewed.  On April 28, 1988, [        ]
waived removal from Miami to Baltimore and on April 29,
1988, GUATTERY, now identified positively as SATNAM
SINGH, was ordered removed to Washington, D.C., to face
drug conspiracy and false passport violations. [        ]
interviewed [                                          ]
[                                                        ] On
[                                                            ]
[                                          ] On October 11, 1988, SINGH was
acquitted on the drug count but convicted on the passport
fraud.

- P -

SINGH-823

1

*This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.*

BA 26B-56765

## **TABLE OF CONTENTS**

| | Page |
|---|---|
| Description of Subjects | 3 |
| Prosecutive Status | 4 |
| List of Witnesses | 5 |
| 302's of Witnesses | 6 |

2

SINGH-824

BA 26B-56765

## DESCRIPTION OF SUBJECTS



1. 

b6 -4
b7C -4

    Race:                        White
    Sex:                         Male
    Date of Birth:

    Social Security
      Account Number:
    Residence:

    Spouse:
    Height:                      6'0"
    Weight:                      145 pounds

2. SATNAM SINGH
    Aliases:                     Singh DeSilva,
                                 John Marshall Guattery
    Date of Birth:               April 26, 1960 at Singapore
    Race:                        Sikh
    Sex:                         Male
    Height:                      5'8"
    Weight:                      150 pounds
    Residence:                   Unknown
    Citizenship:                 Singapore

3

BA 26B-56765

### PROSECUTIVE STATUS

1. On March 30, 1988, warrants for SNYDER and DeSILVA (SINGH) were signed by U.S. Magistrate PAUL M. ROSENBERG, Baltimore, Maryland, charging each with violation of Title 18, U.S. Code, Section 2312, for the transporting of the Piper Saratoga aircraft from Frederick, Maryland, to Aruba.

2. On April 21, 1988, both subjects were expelled from Aruba to the United States and arrived in Miami, Florida, in the custody of the U.S. Marshals.

3. On April 28, 1988, SNYDER waived his removal hearing in Miami, Florida, and flew to Baltimore, Maryland.

4. On April 29, 1988, a Federal Magistrate in Miami, Florida, ordered DeSILVA (SINGH) to Washington, D.C., as his identity was determined to be the same in the March 30, 1988, warrant.

5. In May, 1988, DeSILVA (SINGH) was indicted by a Federal Grand Jury in Washington, D.C., on a drug conspiracy violation and a false passport violation. The Federal warrant in the District of Maryland was then dismissed.

6. On September 22, 1988, SNYDER pled guilty to an information in U.S. District Court, Baltimore, and will be sentenced on January 5, 1989.

7. On October 11, 1988, SINGH was acquitted on the drug violation but convicted on the passport violation in Washington, D.C.

4

BA 26B-56765

## LIST OF WITNESSES AND STATEMENTS FROM FD-302's

b6 -1,4,6
b7C -1,4,6
b7D -3

1. [                                                              ]
   Frederick, Maryland, would testify to the existence of a theft
   report for a Piper Saratoga aircraft N8006Q.

2. [                    ] Frederick Aviation, Frederick Airport, could
   testify to the above aircraft missing and the existence of
   rental records for aircraft by [                              ]

3. [                                          ] could testify to recovery
   of the aircraft, weapons, disguises and $29,000 cash from
   SINGH.

4. [                                          ] could testify to
   the recovery of the aircraft, weapons disguises and $29,000
   cash from SINGH.  Also, could testify to statements by both
   [          ] and SINGH.

5. Special Agent (SA) [                ] Federal Bureau of
   Investigation (FBI), Frederick, Maryland, could testify to the
   results of three interviews of [          ] the examination of the
   stolen aircraft, chain of custody for the evidence.

6. [                                ] could testify [                    ]

7. [                                ] could testify [                    ]

5

SINGH-827

BA 26B-56765

## FD-302's OF WITNESSES

6

SINGH-828

OPCA-20 (12-3-96)

XXXXXXX
XXXXXX
XXXXXXX

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

Section 552                                                                     Section 552a

☐ (b)(1)              ☐ (b)(7)(A)              ☐ (d)(5)

☐ (b)(2)              ☐ (b)(7)(B)              ☐ (j)(2)

☐ (b)(3)              ☐ (b)(7)(C)              ☐ (k)(1)

_____              ☐ (b)(7)(D)              ☐ (k)(2)

_____              ☐ (b)(7)(E)              ☐ (k)(3)

_____              ☐ (b)(7)(F)              ☐ (k)(4)

☐ (b)(4)              ☐ (b)(8)              ☐ (k)(5)

☐ (b)(5)              ☐ (b)(9)              ☐ (k)(6)

☐ (b)(6)                                                ☐ (k)(7)

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__4__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number is to be used for reference regarding these pages:
___ _SINGH 829_ through _SINGH 832_ _____

XXXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X  No Duplication Fee  X
X     for this page     X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

# FEDERAL BUREAU OF INVESTIGATION

b6 -5
b7C -5

Date of transcription    3/31/88



Frederick
Municipal Airport, Frederick, Md. (662-8156, 800-545-9393), advised
that the Piper Saratoga, bearing tail number [        ] and owned by
[        ] of Catoctin Capital Corp., was last rented on
Thursday, March 17, 1988, and returned to its parking place near
Frederick Aviation. The aircraft was not utilized on Friday or
Saturday, March 18-19, 1988, and was discovered missing during the
morning of March 20, 1988. [        ] believes that the aircraft
was there during the morning and afternoon of Friday, March 18,
1988, but indicated it could have been stolen on the evening of the
18th or again on the evening of the 19th. Because the airport is
not guarded, and anyone has access to the airport and/or the
aircraft, the most logical time to steal an aircraft is during the
evening.

---

Investigation on  3/20/88        at  Frederick, Md.        File # BA 26A-56765

b6 -1
b7C -1

by _____ SA [        ] th        Date dictated  3/25/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.        SINGH-833

//

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

__11__ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☐ The following number is to be used for reference regarding these pages: _____

_____ *SINGH 834 through SINGH 844* _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X  No Duplication Fee   X
X    for this page      X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

## FEDERAL BUREAU OF INVESTIGATION

b6 -6
b7C -6
b7D -3

Date of transcription_____ 4/12/88

was interviewed with his partner

Investigation on _____ 4/6/88 _____ at _____                    File # _____ BA 26B-56765  b7D -3

by _____ SA _____ sp    b6 -1
b7C -1    _____ Date dictated _____ 4/7/88

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

23        SINGH-845

FD-302s (Rev. 11-15-83)

b6 -6
b7C -6

4/6/88          2*

Continuation of FD-302 of _____, On _____, Page



b6 -6
b7C -
b7D -

☐ stated that ☐

b6 -6
b7C -6
b7D -3

These items, as well as ☐

b7D -3

24      SINGH-846

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_51_ Pages were not considered for release as they are duplicative

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
_____ SINGH 847 through SINGH 897 _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

FD-302 (REV. 3-10-82)

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    7-8-88

advised that she is the                                    Frederick, Maryland
She stated they were separated and divorced approximately
two years ago and that his only means of employment was a
stated that he is currently                              working for himself in         b6 -3,4
th                      but he does spend the weekends in Frederick,        b7C -3,4
Maryland.  On the weekend he resides with his girlfriend,
who lives on                    and during the week he
can be contacted through a                      who lives in Washington,
D.C. off of the intersection of                    and

        She advised that she did not know her ex-husband to have
been involved in the sale or importation of drugs.  She reviewed
two photographs, one of                      and SATNAM SINGH.  She
stated she, to the best of her knowledge, had never seen either
individual before.  She stated both individual's names were        b6 -4
unfamiliar to her.  She further advised that she did not know her    b7C -4
ex-husband to utilize illegal drugs while they were married and
indicated that he did drink when he was unable to accept their
splitting up.  She stated that he did not drink to the point that
he needed alcoholic counseling, but it was an escape method.  She
further added that he was known to                      and
                      and that he was known in the community
as                      until the time of their separation and divorce,
no one knew his true name to be                      After
the separation and subsequent divorce, he became known to the
community as                      She stated that he
never owned a Porche.

        She believes that on several occasions in the past she and
her ex-husband went to Nathan's Restaurant, in Washington, D.C.,
but once again indicated that neither      nor SINGH were
familiar to her.  She also added that her ex-husband had little to    b6 -4
no money when they were first married and that she was the        b7C -4
individual who had the money to enable her to open a restaurant in
Frederick, Maryland.  At the time of the divorce, he received
                      and left the rest to her.  She does not know him
to own an automobile and indicated that the only vehicle he owned
previously was a                      truck that he used for moving.

Investigation on    6-30-88    at    Frederick, Maryland    File #    26B-56765

by    SA                    :mtc    b6 -1    Date dictated    7-4-88
                                    b7C -1

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned
to your agency; it and its contents are not to be distributed outside your agency.

76X

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**AIRTEL**

12/09/88

TO:    DIRECTOR, FBI
       (ATTN:  IDENTIFICATION DIVISION)

FROM:  SAC, WMFO (26B-48866)(RUC)(C-4)

ROGER SCOT SNYDER;
SATNAM SINGH, AKA;
ITSA;
NARCOTICS MATTER;
PASSPORT FRAUD;
OO: BALTIMORE

        Enclosed for the Bureau are two FD-429 fingerprint
cards and one R-84 final disposition report regarding the
subject SINGH.

        Enclosed for Baltimore are photographs of the
subject SINGH.

        For the information of the Bureau and Baltimore,
on 10/7/88, the subject SINGH was convicted of violation of
Title 18 USC 1542, False Statements in Application and Use
of a Passport.  He was acquitted of charges relating to
Title 21 USC 963, Conspiracy to Import Cocaine.  Sentencing
was held on 12/5/88, and Judge J. PENN sentenced the subject
to three years, suspended, and three years probation. Note
was made that the subject has been in custody since March,
1988.  It is also noted that Immigration of Naturalization
Services has a detainer for the subject and he was not
released from custody at sentencing.  The judge commented
about the subject's aquittal of the cocaine conspiracy
charge and implied that he felt the jury had been generous
in its presumption of innocence.

4-Bureau
   (2-Identification Division)
   (1-Intelligence Division Liaison Unit)
   (1-Legat Bridgetown)
2-Baltimore (26B-56765)(Sq. 10)
1-WMFO

DJK:tlm
(7)

26B. 48866 -54

Searched _____
Serialized _____
Indexed _____
Filed _____

SINGH-899

WMFO 26B-48866

As no further investigation remains outstanding WMFO
considers this matter RUC'D.

2*

SINGH-900

FD-515 (Rev. 6-8-85)
**ACCOMPLISHMENT REPORT**
(Effective 10/1/85)
(Submit within 30 days from date of accomplishment)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

**TO:**    **DIRECTOR, FBI**

Date    12/8/88

Bureau File Number
26B-48866

**FROM:**    SAC, WMFO (C-4)
**SUBJECT:**

Field Office File Number
C-4

Squad or RA Number

Agent's Social Security No.

ROGER SCOTT SNYDER;
SATNAM SINGH, AKA;
ITSA, NARCOTICS,
PF, INTERPOL-
FOREIGN POLICE    b6 -1
COOPERATION    b7C -1

**Investigative Assistance or Technique Used**
Were any of the investigative assistance or techniques listed below used in connection with accomplishment being claimed? ☒ No ☐ Yes - If Yes, rate each used as follows:
1 = Used, but did not help    3 = Helped, substantially
2 = Helped, but only minimally    4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygram | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Used | | 25. UC Other | |
| 5. ELSUR - FISC | | 12. Lab Div Exams | | 19. Surveil. Sqd. (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR - Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

☐ X if a joint operation with:

☐ X if case involves corruption of a public official (Federal, State or Local).

(Identity of other agency)

**A. Preliminary Judicial Process** (Number of subjects) | Complaints | Informations | Indictments
**D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP)** | (Explain valuation in remarks)

| | Property Type Code* | Recoveries | PELP Type Code* | Potential Economic Loss Prevented |
|---|---|---|---|---|
| | | $ | | $ |

**B. Arrests, Locates, Summonses or Subpoenas Served (No. of Subj.)**

| | Subject Priority* | | | | Restitutions | |
|---|---|---|---|---|---|---|
| | A | B | C | | | |
| FBI Arrests - | | | | Subpoenas Served | $ | $ |
| FBI Locates - | | | | Criminal Summons | $ | $ |
| Local Arrests - | | | | Local Crim. Summons | $ | $ |
| FBI Subj. Resisted _____ : Armed _____ | | | | | $ | $ |

**C. Release of Children Located:** (Number of Hostages or Children Located)
Hostages Held By Terrorists _____ : All Other Hostage Situations _____
Missing or Kidnaped Children Located _____

**E. Civil Matters**
Amount of Suit
Settlement or Award

Government Defendant    $
Government Plaintiff    $
Enter AFA Payment Here

**F. Final Judicial Process:**    Judicial District    DC
District    State    Conviction or Pretrial Div. Date    12/5/88
No. of Subjects    Acquitted    Dismissed
Conviction or Pretrial Div. Date    Sentence Date

| Subject 1 | Subject Description Code* — | 3B | | | | | | | | Subject 3 | Subject Description Code* — | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Subject 1** Subject Description Code* — 3B

☒ Felony
☐ Misdemeanor

Conviction: Title 18, Section 1542, Counts 1
Combined Sentence: In-Jail Yrs 3 Mos —, Suspended Yrs 3 Mos —, Probation

☐ Plea
☐ Trial
☐ Pretrial Diversion

Total Fines $ 2,000
Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. in-Jail.

**Subject 3** Subject Description Code* —
☐ Felony
☐ Misdemeanor
☐ Plea
☐ Trial
☐ Pretrial Diversion
Total Fines $
Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. in-Jail.

**Subject 2** Subject Description Code* —
☐ Felony
☐ Misdemeanor
☐ Plea
☐ Trial
☐ Pretrial Diversion
Total Fines $
Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. in-Jail.

**Subject 4** Subject Description Code* —
☐ Felony
☐ Misdemeanor
☐ Plea
☐ Trial
☐ Pretrial Diversion
Total Fines $
Add consecutive sentences together.
Enter longest single concurrent sentence.
Do not add concurrent sentences together.
Sentence 10 yrs.-8 yrs. susp. = 2 yrs. in-Jail.

**Attach additional forms if reporting final judicial process on more than four subjects, and submit a final disposition for (R-84) for each subject.**

Remarks: (For every subject reported in Sections A, B or F above, provide name, DOB, race*, sex, and POB and SSAN if available.)

On 12/5/88, SATNAM (NMN) SINGH, DOB: 4/26/60, Male, POB: Singapore,
INS No. A23299828 was sentenced to three years (suspended) and three years
probation.  SINGH was convicted of Title 18 USC 1542, False Statements in
Application and Use of a Passport.  He was acquitted of Conspiracy to
Inport Cocaine, Title 21 USC 963.  SINGH was retained in custody on an
INS detainer as an illegal alien.

26B-48866-55

Searched
Serialized
Indexed
Filed

1-Baltimore (26B-56765)

DJK:rlw

SINGH-901

2-Bureau
2-Field Office
See codes on reverse side.

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

## UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
### IDENTIFICATION DIVISION
### WASHINGTON, D.C. 20537

PAGE     1

☐ Manual Search
☐ Neg 12/27/88

Use of the following FBI record, NUMBER   105 031 CA2   is REGULATED BY LAW. It is furnished FOR
OFFICIAL USE ONLY and should ONLY BE USED FOR PURPOSE REQUESTED. When further explanation of arrest charge     64
or disposition is needed, communicate directly with the agency that contributed the fingerprints.

| Contributor: Identifier (ORI) Name Case Number (OCA) | Subject: Name State Number (SID) | Arrested or Received | C — Charge D — Disposition |
|---|---|---|---|
| NATIONAL CRIME INFORMATION CENTER FGPT. | | CLASS: | 15 10 14 12 05 16 12 10 CI 06 |
| NY1150100 STATE POLICE RAYBROOK,NY 559-B-2-5 | SATNAM, SINGH NY5100605P | 07/19/83 | C-CRIMINAL POSSESSION OF CONTROL SUBSTANCE 7TH C-UNLAW POSS MARIHUANA |
| DCFBIWF00 FBI WFO WASHINGTON,DC | SINGH, SATNAM | 06/23/88 | C-CONSPIRACY TO IMPORT COCAINE-ARREST CHARGE C-FALSE STATEMENTS IN APPLICATION OF PASSPORT D-12/05/88 3Y SUSP AND 3Y PROB |
| CONTRIBUTOR COPY DCFBIWF00 FBI WFO WASHINGTON,DC | | | |

26 - 488606 56

b6 -1
b7C -1

SEARCHED ___ INDEXED ___
SERIALIZED _Yes_ FILED _I.s_

JAN 05 1989

SINGH-902

15458-25230

2/11/13/89

FORM X343 (1-83)



1-4e (Rev 11-22-77)

# UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
### IDENTIFICATION DIVISION
PAGE      1                     WASHINGTON, D.C. 20537              12/27/88

Use of the following FBI record, NUMBER   105 031 CA2       is REGULATED BY LAW.  It is furnished FOR
OFFICIAL USE ONLY and should ONLY BE USED FOR PURPOSE REQUESTED.  When further explanation of arrest charge   65
or disposition is needed, communicate directly with the agency that contributed the fingerprints.

| Contributor: Identifier (ORI) Name Case Number (OCA) | Subject Name State Number (SID) | Arrested or Received | C – Charge D – Disposition |
|---|---|---|---|
| NATIONAL CRIME INFORMATION CENTER FGPT | CLASS: | | 15 10 14 12 05 16 12 10 CI 06 |
| NY1150100 STATE POLICE RAYBROOK, NY 559-B-2-5 | SATNAM, SINGH NY5100605P | 07/19/83 | C-CRIMINAL POSSESSION OF   CONTROL SUBSTANCE 7TH C-UNLAW POSS MARIHUANA |
| DCFBIWF00 FBI WFO WASHINGTON, DC | SINGH, SATNAM | 06/23/88 | C-CONSPIRACY TO IMPORT COCAINE-   ARREST CHARGE C-FALSE STATEMENTS IN   APPLICATION OF PASSPORT D-12/05/88   3Y SUSP AND 3Y PROB |
| CONTRIBUTOR COPY DCFBIWF00 FBI WFO WASHINGTON, DC | | | |

SINGH-903

15458-25230

FORM X302 (1-83)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-16-2007 BY 60324 AUC BAW/STP/CLS

FD-36 (Rev. 8-29-85)

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ __AIRTEL__ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |

Date ___1/10/89___

TO:       DIRECTOR, FBI

FROM:     SAC, BALTIMORE (BA 26B-56765) (SQ. 10) (C)

SUBJECT:  ROGER SCOT SNYDER;
          Et Al;
          ITSA;
          NARCOTICS MATTER;
          OO: Baltimore

        For the information of Legat, Barbados, on 1/5/89,
SNYDER was sentenced in U.S. District Court, Baltimore,
Maryland.  He received a 5 month sentence to the custody of
the Attorney General, 2 years probation upon completion of
that sentence and ordered not to fly aircraft.
Additionally, he was ordered to pay a total of $23,350.00 in
restitution to the aircraft owner and insurance carrier.

        No further investigation is being conducted.

GENERAL INDICES:
☑ Automated Search
   ☐ Yes    ☑ No
☐ Manual Search
   ☐ Yes    ☐ No

5-Bureau
   (1- Liaison Unit)
   (2- Legat, Barbados) (26-1)
(1-)WMFO
1-Baltimore
JED:jp
   (7)

26-4886-57

SEARCHED _____ INDEXED _____
SERIALIZED _KAM_ FILED _KAM_
JEN 13 1989

b6 -1
b7C -1

Approved: _____ Transmitted _____ Per _____
                        (Number)    (Time)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
Satnam Singh,                                           )
                                                        )
                    Plaintiff,                          )
                                                        )        CIVIL ACTION NO. 07-1064
             v.                                         )
                                                        )
U.S. Department of Justice,                             )
Federal Bureau of Investigation                         )
                                                        )
                    Defendant.                          )
_____)

DECLARATION OF AVERILL P. GRAHAM
CHIEF, DISCLOSURE DIVISION,
<u>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES</u>

I, Averill P. Graham, do hereby depose and say:

1.      I am the Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), United States Department of Justice.  In this capacity, I receive all requests

made of ATF under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy

Act (PA), 5 U.S.C. § 552a.  I also receive all requests referred to ATF from agencies that have

identified ATF-originated documents in their records while processing their FOIA and PA

requests.  I am responsible for processing all FOIA and PA requests, initiating searches relevant

to such requests, supervising the determination of what records should be disclosed, processing

all ATF documents referred to ATF by other agencies, and recording all administrative appeals

filed with ATF.  This includes administering the statutory fee processing requirements applicable

to all requests made under the FOIA or PA.

2.      I declare that the statements made herein are based on knowledge acquired by me

through the performance of my official duties.

3.      I am familiar with the current lawsuit filed by Mr. Satnam Singh.  ATF believes

that it properly withheld certain information in response to Mr. Singh's (Plaintiff) request under

Exemption (b)(3) of the FOIA.

<div align="center">CORRESPONDENCE</div>

4.      On November 29, 2007, ATF's Disclosure Division received a referral of one

document, consisting of 2 pages, from the Federal Bureau of Investigation (FBI) by mail in

response to a FOIA request filed with the FBI by Mr. Singh.  (A copy of the November 29, 2007,

letter is attached as Exhibit A).

5.      By letter dated January 14, 2008, ATF's Disclosure Division responded to Mr.

Singh and denied the request pursuant to 5 U.S.C. § 552(b)(3) and the Consolidated

Appropriations Act, Public Law 108-447.   Furthermore, ATF's Disclosure Division provided

Mr. Singh with instructions on how to file an administrative appeal.  (A copy of the January 14,

2008, letter is attached as Exhibit B).

<div align="center">FOIA EXEMPTION (b) (3)<br>DISCLOSURE PROHIBITED BY STATUTE</div>

6.      The Disclosure Division withheld the following documents pursuant to

Exemption 3, the Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat.

2809[1], and/or Exemption 3, the Consolidated Appropriations Act of 2008, Pub. L. No. 110-161.

➢  Firearms Transaction Record

7.      Exemption (b)(3) of the FOIA permits the withholding of information prohibited

from disclosure by another statute only if one of two disjunctive requirements are met:  the

statute either (A) requires that the matters be withheld from the public in such a manner as to

---

[1] Although Public Law 108-447 continues to be good law, we are additionally citing the current year's appropriation
restriction, P.L. 110-161, which contains the same restriction on the release of trace data and records required to be
kept under 18 U.S.C. 923(g).

leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  A statute thus falls within the exemption's coverage if it satisfies any one of its disjunctive requirements.  Responsive information to Mr. Singh's FOIA request contained material subject to Public Laws 108-447 and 110-161, which squarely fall within Subpart (A) of FOIA Exemption (b)(3).

<div align="center">Exemption (b)(3),<br>P.L. 108-447, (118 Stat. 2809)</div>

9.    Exemption 3, Public Law 108-447 (118 Stat. 2809) reads in pertinent part:

> "That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding."

10.    The information withheld-in-full pursuant to Exemption (b)(3) is a Firearms Transaction Record which is a record required to be kept and maintained by a Federal Firearms Licensee under 18 U.S.C. 923(g)(3) and (7), referenced in Public Law 108-447 above.  Transaction Records are based and derived from information required to be kept by a Federal Firearms Licensee (FFL) pursuant to 18 U.S.C. § 923(g).  As such, and through the language of P.L. 108-447 and 110-161, Congress has expressly prohibited ATF from releasing such

documents to the public and has made them ultimately immune from legal process. Therefore, the Disclosure Division believes it properly withheld the referred documents under FOIA Exemption (b)(3).

I declare under penalty of perjury that the foregoing is true and correct. Executed this _3_ day of March, 2008.

Averill P. Graham
Chief, Disclosure Division



**U.S. Department of Justice**

08-313

**Federal Bureau of Investigation**

*Washington, D.C. 20535*



To:    Averill P. Graham
Acting FOIA/PA Officer
Chief, Disclosure Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives       11/29/07
650 Massachusetts Avenue N.W.
Washington, D.C. 20026

From:   David M. Hardy
Record/Information Dissemination Section
Records Management Division

Subject: FOI/PA Request of SING, SATNAM
FBI FOI/PA # 1005633- 002    Re: SINGH, SATNAM

In connection with review of FBI files responsive to the above request, the following was surfaced:

☒   **1**   unclassified document(s) which originated with your agency is/are being referred to you for direct response to the requester. The requester has been advised of this referral. Please furnish this Bureau a copy of your disclosure letter to the requester. (See index A).

☐      FBI document(s) containing information (outlined in red) concerning your agency.
☐ We will advise the requester to expect a direct response from your agency regarding this matter.

☐ Please review this information and return the documents to us, making any deletions you deem appropriate.  (See index B).

☐      classified document(s) which originated with your agency is/are being referred to you for direct response to the requester. The requester ☐ has ☐ has not been advised of this referral. Please furnish this Bureau a copy of your disclosure letter to the requester, and advise us if the classification of the documents(s) changed so that we may amend our files. (See index C).

☐      classified FBI document(s) containing information (outlined in red) concerning your agency.
☐ We will advise the requester to expect a direct response from your agency regarding this matter.

☐ Please review this information and return the document(s) to us, making any deletions you deem appropriate, citing the exemption(s) claimed. Please advise this Bureau if the document(s) still warrant classification. (See index D).

☐ Please note that some of the enclosed documents contain deletions made by this Bureau. The appropriate exemption appears next to the redacted information. The requester may appeal these denials by writing to the following address within sixty days of your release: Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001.

A copy of the requester's initial letter and other significant correspondence is enclosed for your convenience. If you have any questions concerning this referral, please contact Beverly Gaston (202) 324 - 3198. The FBI's FOIPA number as well as on the Index Listing (see reverse) should be utilized during any consultation with this Bureau concerning this referral.

Additional Remarks:

Enclosures(2)          **( INDEX LISTING ON REVERSE)**

**EXHIBIT A**

Index A:

**26B-48866 (2 pages) Sec. 2 FDPS pages 154-155**

Index B:

Index C:

Index D:

Satnam Singh
No. 79538
Northwest State Correctional Facility
3649 Lower Newton Road
Swanton, Vt 05488
October 30th 2006.


Mr David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Av, NW.
Washington, DC 20535-0001


<div align="center">

**Re: Appeal No. 05-1679**
**Request No. 1005633**
**ADW : JTR**

</div>

Dear Mr Hardy:

    Enclose is the letter from Director Daniel J. Metcalfe of the Office of Information and Privacy. I would sincerely appreciate if your office could give me an update on when I could expect to receive my F.O.I.A file. **I have requested this information since 2004.**

    My other option , as instructed by Director Metcalfe is to file a judicial review in the accordance with  5 U.S.C.  522(a) (4) (B). In the next 30 days.

    I anxiously await your response and thank you in advance for it.



Sincerely,


Satnam Singh

U.S. Department of Justice 1:07-cv-01064-RJL    Document 14-11    Filed 03/05/2008    Page 8 of 8
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Correspondence Approval and Clearance**

JAN 14 2008

REFER TO: 08-313

Santnam Singh
No. 75938
Northwest State Correctional Facility
3649 Lower Newton Road
Swanton, VT  05488

This in response to your Freedom of Information Act (FOIA) request, to the Federal Bureau of Investigation (FBI), dated October 30, 2006.  While processing your FOIA request, 2 (two) pages were referred to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), for disclosure determination and direct response to you.

We have reviewed the referred 2 pages. Do be advised the ATF 2005 Appropriation Bill prohibits ATF from expending appropriated funds to disclose to the public the contents or any portion thereof of any information maintained in the Firearms Trace Database or information required to be maintained by Federal Firearms Licensees.  You have requested records that fall within this restriction.  Therefore, your request is denied pursuant to Title 5 U.S.C. 552(b)(3) and the Consolidated Appropriations Act, Public law 108-447.

Insofar as your request has been denied, you may file an Administrative Appeal to the Office of Privacy and Information, U.S. Department of Justice, 1425 New York Avenue, Suite 11050, Washington, DC 20530-0001.  Please refer to the number at the upper right of this letter, and state your concerns are with ATF.

Sincerely yours,

**Alma D. McCoy
(Signed)**

Alma McCoy
Disclosure Specialist

| Code | Initiator CD0060 | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|------|------------------|----------|----------|----------|----------|----------|----------|
| Surname | McCoy | LeBrun | | | | | |
| Date | 1/10/07 | 1/14/08 | | | | | |

ATF Form 9310. 3A

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SATNAM SINGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1064 RJL |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF WILLIAM C. LITTLE, JR.

I, William C. Little, Jr., hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

1. I am an Attorney admitted in and a member in good standing in the Bar of the State of Pennsylvania.

2. I am currently employed as a practicing attorney by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), where I am assigned to the Office of Chief Counsel, Administrative Law Section.

3. Within the DEA Office of Chief Counsel, I am an attorney whose primary responsibilities are matters involving the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and Privacy Act (PA), 5 U.S.C. § 552a, litigation in which DEA is an interested party. I have served in this capacity since about April 26, 1999. In addition, between April 26, 1999 and November 18, 2003, I served as the DEA Privacy Officer.

4. As an attorney, I have been involved in FOI/PA since 1994. I have received formal, informal and on the job training in the FOI/PA, and the administration of Federal records and PA Systems of Records.

5. I am familiar with the Department of Justice (DOJ) and DEA policies, practices and procedures regarding the administration of, and processing and release of information requested under the FOIA and PA, and DEA PA Systems of Records.

6. Within the DEA Office of Chief Counsel, I am responsible for review, for litigation purposes in cases to which I am assigned, of both the initially processed and appealed, FOI/PA requests that are received by DEA, and to provide litigation support for matters arising under the FOIA and the PA in which DEA is an interested party.

7. I prepare, and review and supervise the preparation of affidavits, declarations, responses to discovery motions, interrogatories and other court pleadings, and conduct all necessary legal

2

research related to issues arising during the course of the prosecution or defense of FOI/PA

actions in which DEA is an interested party.

8. As the DEA Privacy Officer, I became familiar with, and provided support and guidance to

DEA employees and offices in matters relating to DEA's administration of the Privacy Act and

the maintenance of Privacy Act Systems of Records. The support also included the

administration of DEA's Privacy Act System Notices, and training of DEA employees in FOIA

and PA. In addition, I adjudicate Requests for Amendment of Records submitted to DEA, under

the Privacy Act and other Federal statutes.

9. The purpose of this declaration is to respond to the plaintiff's brought under the FOI/PA.

10. In preparing this declaration, I read and am familiar with the complaint in the above entitled

action.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

11. By facsimile dated February 8, 2008, the Federal Bureau of Investigation forwarded a

document, consisting of two (2) pages, to DEA for review and a direct response to the requester.

A copy of the FBI facsimile dated February 8, 2008, is attached as Exhibit A.

12. By letter dated March 3, 2007, DEA released portions of one page and one page in its entirety to the plaintiff. Information was withheld pursuant to the PA, Exemption (j)(2) and the FOIA, Exemptions (b)(2) and (b)(7)(C). A copy of the DEA letter dated March 3, 2008, is attached as Exhibit B.

13. Once a FOI/PA action is filed in Federal court, the responsibility to respond to and perform any actions regarding the processing of a FOI/PA request is the DEA attorney assigned. As the attorney assigned this matter, I personally conducted a review of the two-page document referred by the FBI and made the determination to release or withhold information.

### Description of Material Referred by EOUSA

14. The document referred by the FBI was a messages, also known as a "Cable." "Cables" are messages sent by teletype or radio that are used at times in lieu of a memorandum or letter sent by mail or messenger. The "Cable" is constructed in a memorandum format that includes routing and transmission information, a "from" and "to" identifying the sender and recipient(s), with numbered paragraphs describing events, conveying information or expressing opinions.

15. In this instance, the cable was used to convey information from the El Paso Intelligence Center to FBI Headquarters, Washington, D.C., related to an aircraft that stolen and recovered. DEA withheld information on page 2 of the cable. On the second line of paragraph 3, the names of two third-parties were withheld pursuant to FOIA Exemption (b)(7)(C). On the first, second ,

4

third and fourth lines of paragraph 5 internal DEA telephone numbers, and on the bottom a

computer identifier code was withheld pursuant to FOIA Exemption (b)(2). A detailed

discussion of the basis for the withholding is as follows.

## JUSTIFICATION FOR WITHHOLDINGS

16. DEA is component of the Department of Justice whose primary responsibility is the

enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and

chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et*

*seq*. See 28 C.F.R. § 0.100.

17. The stated subject of the cable relates to "SA-88-0039" and "GFAP-88-9999." The

referenced numbers are DEA investigative file numbers that are used to identify files maintained

in the DEA Investigative Reporting and Filing System (IRFS).

18. IRFS is a Privacy Act System of Records that contains all administrative, general and

investigative files compiled by DEA for law enforcement purposes. The Attorney General

promulgated rules exempting the IRFS from the access provisions of the PA, pursuant to 5

U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.98 (2005).

19. In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request

by, or with prior written consent of, the individual to whom the record pertains, no information

relating to a third-party contained in the system can be released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information. Thus, the release of information is only that which is required by the FOIA.

## INTERNAL AGENCY RULES AND PRACTICES

20. The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency. Pursuant to FOIA Exemption (b)(2), the internal telephone numbers and a computer terminal code were withheld. The telephone numbers were withheld since the numbers are internal to DEA, there is no public interest in their release and, if released, the use of the numbers by the public would interfere with the daily operations of DEA. Similarly, the computer terminal codes are internal, there is no public interest in their release and, if released to the public, knowledge of the codes would allow individuals to interfere with DEA computer operations by providing information that would assist individuals in circumventing information security measures.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### Exemption (b)(7) Threshold

21. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.*, (hereinafter, the Act) which authorizes DEA

to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control. The referred records are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and/or third parties.

### Exemption (b)(7)(C) - Invasion of Privacy

22. The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

23. The document contains the names of and discloses personal information about two (2) third-parties. The release of the information would allow a person familiar with the facts and circumstances of the investigation to identify the individuals.

24. In making the determination to withhold the names, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. The release of these individuals' names in the context of a criminal investigation can reasonably be expected to cause embarrassment and humiliation and would add nothing to the public's

7

understanding of the inner workings of the government.   Thus, the individual's privacy interests

outweighed the public interest in the release of the names.


I declare under the penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.


_March 3, 2008_
DATE

William C. Little, Jr.
Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C.  20537

# EXHIBIT A

| FD-448
Revised
10-27-2004 | FEDERAL BUREAU OF INVESTIGATION
**FACSIMILE COVER SHEET** |

| PRECEDENCE |
|---|
| (•) Immediate     ( ) Priority     ( ) Routine |

| CLASSIFICATION |
|---|
| ( ) Top Secret    ( ) Secret    ( ) Confidential    (•) Sensitive    ( ) Unclassified |

| TO |
|---|

| Name of Office:
**Drug Enforcement** | Facsimile Number:
**(202)307-8556** | Date:
**02/08/2008** |
|---|---|---|
| Attn:
**Angela Hilliard** | Room: | Telephone Number:
**(202)307-7626** |

| FROM |
|---|

| Name of Office:
**Litigation** | | Number of Pages: (including cover) |
|---|---|---|
| Originator's Name:
**Sandra Coleman** | Originator's Telephone Number:
**(202)324-1710** | Originator's Facsimile Number:
**(202)324-3752** |
| Approved: | | |

| DETAILS |
|---|

Subject:
**Per our conversation, attached is a referral that originated with your agency. This is part of an ongoing litigation and any information that is withheld in the document has to be justified in a Vaughn Index from your agency. The FBI has a court ordered deadline of March 3, 2008. The name of the case is SATNUM SINGH v FBI (07-CV-1064) and the AUSA is Benton Peterson (202)514-7238 . Please advise**

Special Handling Instructions:
**of your decision. If a Vaughn Index is prepared, please e-mail a copy to Sandra.Coleman@ic.fbi.gov. and the AUSA, his email address is Benton.Peterson@usdoj.gov. Thanks**

Brief Description of Communication Faxed:

**WARNING**

Information attached to the cover sheet is U.S. Government Property. If you are not the intended recipient of this information disclosure, reproduction, distribution, or use of this information is prohibited (18.USC, § 641). Please notify the originator or local FBI Office immediately to arrange for proper disposition.

# EXHIBIT B



**U. S. Department of Justice**

Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

---

*www.dea.gov*

MAR 0 3 2008

Mr. Satnam Singh
Inmate # 79538
Northwest State Correctional Facility
Swanton, Vermont 05488

     Re: *Satnam Singh v. Federal Bureau of Investigation,* C.A. 07-1064 (RJL)
         FBI FOI/PA # 1005633-002
         DEA FOIA Request No. 08-0580-P

Dear Mr. Singh:

     Enclosed please find a two-page document consisting of portions of one (1) page and one
(1) page in its entirety. These pages are released in response to your Freedom of Information
Act (FOIA)/ Privacy Act (PA) request, dated September 21, 2004, to the Federal Bureau of
Investigation (FBI), assigned FBI FOI/PA # 1005633-002. The pages were referred to the
Drug Enforcement Administration (DEA) by facsimile dated February 8, 2008, for a direct
response and assigned DEA FOIA Request No. 08-0580-P. As a matter in litigation, the pages
were forwarded to my office for action.

     After review, the names of third-parties, internal telephone numbers and computer
terminal codes were withheld. The information was withheld pursuant to Freedom of
Information Act (FOIA) exemptions (b)(2) and (b)(7)(C).

                    Sincerely,

                    William C. Little, Jr.
                    Senior Attorney
                    Administrative Law Section

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DITRICT OF COLUMBIA

SATNAM SINGH,                                    )
                                                 )
            Plaintiff,                           )
                                                 )
      v.                                         )     Civil No.: 1:07-CV-01064 (RJL)
                                                 )
FEDERAL BUREAU OF INVESTIGATION,                 )
DEPARTMEN OF JUSTICE                             )
            Defendants.                          )
_____)

## DECLARATION OF GLORIA L. MARSHALL

I, Gloria L. Marshall, pursuant to 28 U.S.C. §1746, hereby declare and state as follows:

1.     I am the Unit Chief of the Information Disclosure Unit (IDU), Mission Support Division,

Office of Investigations (OI), GS-15, U.S. Immigration and Customs Enforcement (ICE) within

the U.S. Department of Homeland Security (DHS).  I have held the position of Unit Chief since

March 1, 2003.  My office is located at 425 I Street, NW, Washington, DC 20536.

2.     As the Unit Chief of the IDU, my official duties and responsibilities include the general

management, oversight, and supervision of the IDU, which includes the Freedom of Information

Act/Privacy Act (FOIA/PA) Section.  The FOIA/PA Section processes FOIA/PA requests

received by OI in ICE Headquarters and has oversight of the FOIA/PA functions in the twenty-

six (26) Offices of the Special Agents in Charge ("SAC Offices") of OI, within ICE.

3.     Effective March 1, 2003, the United States Customs Service (USCS) (formerly an agency

component of the United States Department of Treasury) became part of DHS.  Functions

previously performed by USCS transferred to two components of DHS: U.S. Customs and

Border Protection (CBP), which has primary inspection responsibility at U.S. airports, seaports,

*2.27.08*

and land border crossings; and ICE, which has primary investigative jurisdiction in the

enforcement of immigration and customs laws, including those duties that were formerly

assigned to the Immigration and Naturalization Service (INS) within the U.S. Department of

Justice (USDOJ).

4.      I am familiar with Satnam Singh's ("Plaintiff") request for information from the U.S.

Department of Justice, Federal Bureau of Investigation ("FBI") pursuant to the Freedom of

Information Act ("FOIA"), of which, the FBI referred 20 pages to ICE for disclosure

determination and a direct response to the Plaintiff. The statements contained in this Declaration

are based on my personal knowledge and experience, review of documents kept in the course of

business, and information conveyed to me in the course of my official duties.

5.      The purpose of this Declaration is to describe for the Court, ICE's handling of Plaintiff's

FOIA request, and to provide the Court and Plaintiff with a Vaughn Index, identifying

information responsive to Plaintiff's FOIA request, but exempt from disclosure under the FOIA,

in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977

(1974). *See* Attachment A (identifying documents redacted and released to, or withheld from,

Plaintiff. This Declaration, along with the Vaughn Index, provide the Court and Plaintiff with a

description of the information that is withheld, the statutory exemption(s) claimed, and the

justification for asserting the exemptions used to withhold certain information contained in the

record at issue.

## I.     SUMMARY OF RELEVANT FACTS AND CORRESPONDENCE CONCERNING PLAINTIFF'S FOIA REUQEST

6.      In a letter dated November 29, 2007, the U.S. Department of Justice, Federal Bureau of

Investigation ("FBI"), forwarded Plaintiff's October 30, 2006, FOIA request and 20 pages to this

office for review, determination of disclosure, and direct response to the Plaintiff. A true and

2.27.08

2

complete copy of the FBI's November 29, 2007, referral letter is attached to this declaration as Exhibit A.

7.    On December 12, 2007, I sent an acknowledgment letter to the Plaintiff informing the Plaintiff that ICE received Plaintiff's FOIA request and referred documents from the FBI, and that ICE would process the request according to the order in which it was received. A true and complete copy of ICE's December 12, 2007, letter is attached to this declaration as Exhibit B.

8.    After our review of the 20 pages referred to the ICE by the FBI, ICE made the following determinations:  six (6) pages were released in part with redactions made pursuant to exemptions (b)(2), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the Privacy Act (PA); three (3) pages were released in full; and the remaining eleven 11 pages were withheld in their entirety pursuant to exemptions (b)(2), (b)(5), (b)(6) and (b)(7)(C) of the FOIA and (j)(2) of the PA.

9.    ICE responded to Plaintiff's request by releasing nine (9) pages of releasable records in a letter dated December 20, 2007.   A true and complete copy of ICE's December 20, 2007, letter is attached to this declaration as Exhibit C.

10.    Exercising due diligence ICE reexamined its original disclosure determinations and determined that nine (9) of the eleven (11) pages withheld in their entirety should have been released in part.

11.    In a letter dated February 27, 2008, ICE made a second disclosure to Plaintiff releasing nine (9) pages in part with redactions pursuant to exemptions (b)(2), (b)(7)(C) of the FOIA as a supplemental release to its December 20, 2007, release. A true and correct copy of ICE's February 27, 2008 letter is attached to this declaration as Exhibit D.

## II.    JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER THE FREEDOM OF INFORMATION ACT AND THE PRIVACY ACT

*fmr* 2.27.08

3

12.    Exemption (b)(2) - 5 U.S.C. 552(b)(2): This exemption allows for the withholding from mandatory disclosure records or information that relate solely to the internal personnel rules and practices of an agency. This exemption encompasses both internal matters of a relatively trivial nature, low (b)(2), the disclosure of which would place an administrative burden on the agency to process and internal matters of a far more substantial nature, high (b)(2), the disclosure of which would risk circumvention of a legal requirement. ICE used both categories of this exemption to withhold exempted information and records.

13.    Low (b)(2): ICE asserted this FOIA exemption with respect to internal agency codes that appear on printouts from the Immigration and Naturalization Services Central Index System that are responsive to Plaintiff's request. Specifically, ICE exempted from disclosure the following types of codes that appeared in records: case/file/identification numbers, source symbol numbers, case program codes, and other administrative codes. The codes appearing on the printouts are used for the purposes of indexing, storing, locating, retrieving and distributing information in ICE investigative files. While these codes have internal significance, they are trivial in nature and bear no relation to the substantive contents of the records. Therefore, the disclosure of these codes to the public would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Accordingly, these codes have been withheld under the "low (b)(2)" standard.

14.    High (b)(2): ICE asserted this category of the exemption with respect to some of the codes appearing in the aforementioned database printouts, including distribution and apprehension codes. Some of these codes serve a dual purpose. Aside from the purposes of indexing, storing, locating, retrieving and distributing information these codes also indicate various aspects of the enforcement case, such as the type and location of the case; whether or not

the subject should undergo close inspection; and the distribution of information relating to the

case, which would indicate the scope and relative size of the investigation in terms of agency

resources, types of activity being investigated, location of investigative efforts, and techniques to

access agency information. The disclosure of these codes could, along with the database

function commands, assist third parties in deciphering the meanings of the codes, which could

potentially impede an ongoing investigation as well as pose a danger to ICE personnel. The

disclosure could also assist unauthorized parties in gaining improper access to computer systems

and enable them to navigate the system. Such improper access would reveal sensitive law

enforcement information relating to ongoing investigations and could result in the alteration or

deletion of valuable information contained in the system. This would jeopardize the integrity of

the system. Accordingly, these codes are being withheld under both the low (b)(2) and the high

(b)(2) exemption.

15.     Exemption (b)(5)- 5 U.S.C. 552(b)(5): ICE asserted this exemption to withhold from

disclosure inter-agency or intra-agency documents that are normally privileged in the civil

discovery context. One such privilege is the deliberative process privilege, which ICE used to

protect the integrity of the decision-making process within the agency by exempting opinions,

conclusions, and recommendations. ICE used this exemption to protect the integrity of the

decision-making process and agency rational in support of a final agency decision.

16.     Exemption (b)(6) - 5 U.S.C. 552(b)(6): ICE asserted this exemption to withhold from

disclosure personnel or medical files and similar files the release of which would cause a clearly

unwarranted invasion of personal privacy. This requires a balancing of the public's right to

disclosure against the individual's right to privacy. The types of information that were withheld

pursuant to this exemption consist of names, identities, and other personal information relating to

5

third parties appearing in the documents. Third parties who were, and possibly still are, subjects

of investigations or who provided information or other cooperation to the government could be

humiliated by being identified in connection with a criminal investigation, as well as become

targets of harassment or physical danger. The privacy interests of these individuals outweigh

any minimal public interest in disclosure of the information. Any private interest the requester

may have in the information does not factor into the aforementioned balancing test. Release of

their identities would constitute an unwarranted invasion of their personal privacy.

17.     Exemption (b)(7)(C) - 5 U.S.C. 552(b)(7)(C): ICE asserted this exemption to withhold

from disclosure information compiled for law enforcement purposes that could reasonably be

expected to constitute an unwarranted invasion of personal privacy. This exemption allows the

withholding of information that identifies agency employees and third parties in law enforcement

records. ICE withheld the names of ICE Special Agents, other agency employees and third

parties appearing in database printouts, and inter- and intra- agency correspondence. Special

Agents handle a myriad of tasks relating to official investigations into the criminal activities of

third parties. They were, and still are, in positions of access to information regarding official law

enforcement investigations. If their identities are released, they could become targets of

harassing inquiries for unauthorized access to information pertaining to ongoing and closed

investigations. There is no public interest to be served by releasing the identities of Special

Agents. ICE also used this exemption to withhold the names, identities, and other personal

information of third parties appearing in the documents. Third parties who were, and possibly

still are, subjects of investigations or who provided information or other cooperation to the

government could be humiliated by being identified in connection with a criminal investigation;

as well as become targets of harassment or physical danger. Also release of their identities

2-27-08

6

would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of third parties.

18.    Exemption (j)(2) - 5 U.S.C. 552a(j)(2): This exemption of the Privacy Act was asserted to withhold from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, reduce crime or apprehend criminals. ICE asserted this exemption to withhold the names of agents and other agency employees included records compiled for law enforcement purposes.

## V. SEGREGABILITY

19.    I have reviewed all the FBI referred documents responsive to Plaintiff's FOIA request, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemptions could be applied. In my determination, any release of the exempted materials could reasonably compromise an ongoing investigation, lead to the identification of individuals, techniques and methods, or other items that are properly protected by the exemptions asserted.

## V.  JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 27th day of February, 2008.

GLORIA L. MARSHALL, Unit Chief
Information Disclosure Unit
Mission Support Division
Office of Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

To:    Marshall Fields
       Section Chief
       425 I. Street, N.W. Room 4038          11/29/07
       Washington, D.C. 20536

From:  David M. Hardy
       Record/Information Dissemination Section      **BY COURIER**
       Records Management Division                   RCVD DEC 4 '07

Subject: FOI/PA Request of SINGH, SATNAM
         FBI FOI/PA #  1005633- 002      Re:  SINGH, SATNAM

 In connection with review of FBI files responsive to the above request, the following was surfaced:

 ☒  **2**  unclassified document(s) which originated with your agency is/are being referred to you for
direct response to the requester. The requester has been advised of this referral. Please
furnish this Bureau a copy of your disclosure letter to the requester. (See index A).

 ☐  FBI document(s) containing information (outlined in red) concerning your agency.
 ☐ We will advise the requester to expect a direct response from your agency regarding this matter.

 ☐ Please review this information and return the documents to us, making any deletions you deem
appropriate.  (See index B).

 ☐  classified document(s) which originated with your agency is/are being referred to you for
direct response to the requester. The requester ☐ has ☐ has not been advised of this referral. Please
furnish this Bureau a copy of your disclosure letter to the requester, and advise us if the classification
of the documents(s) changed so that we may amend our files. (See index C).

 ☐  classified FBI document(s) containing information (outlined in red) concerning your agency.
 ☐ We will advise the requester to expect a direct response from your agency regarding this matter.

 ☐ Please review this information and return the document(s) to us, making any deletions you deem
appropriate, citing the exemption(s) claimed.  Please advise this Bureau if the document(s) still
warrant classification. (See index D).

 ☐ Please note that some of the enclosed documents contain deletions made by this Bureau. The
appropriate exemption appears next to the redacted information. The requester may appeal these
denials by writing to the following address within sixty days of your release: Co-Director, Office of
Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050,
Washington, D.C. 20530-0001.

 A copy of the requester's initial letter and other significant correspondence is enclosed for your
convenience. If you have any questions concerning this referral, please contact Beverly Gaston (202) 324 - 3198.
The FBI's FOIPA number as well as on the Index Listing (see reverse) should be utilized during any consultation
with this Bureau concerning this referral.

 Additional Remarks:

Enclosures(3)                    **( INDEX LISTING ON REVERSE)**

Index A:

26B-48866 Sec. 2 Document A (8 pages) FDPS pages 156-163

26B-48866 Sec. 2 Document B (12 pages) FDPS pages 226-239

Index B:

Index C:

Index D:

Exhibit B

*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC  20536



**U.S. Immigration
and Customs
Enforcement**

Mr. Satnam Singh                    DEC  2 0  2007
No. 79538
Northwest State Correctional Facility
3649 Lower Newton Road
Swanton, Vermont 05488

Re:  DIS 2-01 OI:MS:ID
      08-FOIA-632  SLG

Dear Mr. Singh:

This is the final response to your Freedom of Information Act (FOIA) request to the Federal Bureau
of Investigations, dated October 30, 2006, and seeking documents relating to you.  While processing
your request, the Federal Bureau of Investigations located records that fall under the purview of the
Department of Homeland Security, Immigration and Customs Enforcement.  Accordingly, your
request, along with twenty (20) pages of responsive documents, was referred to this office for
processing and direct response to you.  Your request was received in this office on December 12,
2007.

To provide you with the greatest degree of access authorized by law, we have considered your
request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Information
about an individual that is maintained in a Privacy Act system of records may be accessed by that
individual[1] unless the agency has exempted the system of records from the access provisions of the
Privacy Act.[2] The information you are requesting is maintained in the Treasury Enforcement
Communications System (TECS).  Information in this system of records is exempt from access
pursuant to 5 U.S.C. § 552a(k)(2).  **Privacy Act Exemption (j)(2)** permits the government to
withhold material reporting investigative efforts pertaining to enforcement of criminal law including
efforts to prevent, control, or reduce crime or apprehend criminals.

I have determined that eleven (11) pages are being withheld in their entirety pursuant to Title 5
U.S.C. § 552 (b)(2) (high), (b)(5), (b)(6), and (b)(7)(C).  Nine (9) pages are partially releasable
pursuant to Title 5 U.S.C. § 552 (b)(2)(low), (b)(6), and (b)(7)(C).  Enclosed are nine (9) pages with
certain information withheld as described below.

---

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

Mr. Singh
Page 2

**FOIA Exemption 2(low)** protects information applicable to internal administrative personnel matters to the extent that the information is of a relatively trivial nature and there is no public interest in the document.

**FOIA Exemption 2(high)** protects information applicable to internal administrative and personnel matters, such as operating rules, guidelines, and manual of procedures of examiners or adjudicators, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk. Whether there is any public interest in disclosure is legally irrelevant. Rather, the concern under high 2 is that a FOIA disclosure should not benefit those attempting to violate the law and avoid detection.

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. After carefully reviewing the responsive documents, I determined that [portions of] the responsive documents qualify for protection under the **Deliberative Process Privilege.** The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. *[The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.]* The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in

Mr. Singh
Page 3

the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination. *The types of information that we have withheld could consist of names and telephone numbers that are considered personal.*

You have a right to appeal the above withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge. 6 CFR § 5.11(d)(4).

If you need to contact our office again about this matter, please refer to 08-FOIA-632. This office can be reached at (202) 305-1106.

Sincerely,

Reba A. McGinnis
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations

Enclosures – 9 pages

U.S. Department of Homeland Security
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

December 12, 2007

Satnam Singh
No. 79538, Northwest State Correctional Facility
3469 Lower Newton Road
Swanton, VT  05488

**Re: DHS FOIA Case # 2008FOIA632**
    **Federal Bureau of Investigations FOIA Case #1005633-002**

Dear Mr. Singh :

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the Federal Bureau of
Investigations, dated October 30, 2006, and seeking documents relating to you.  While processing your
request, the Federal Bureau of Investigations located records that fall under the purview of the Department
of Homeland Security (DHS), Immigration and Customs Enforcement.  Accordingly, your request and  20
pages of responsive records were referred to this office for processing and direct response to you.  Your
request was received in this office on December 12, 2007.

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request.  Per §5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the
Department processes FOIA requests according to their order of receipt.  Although DHS' goal is
to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day
extension of this time period.  As the subject matter of your request is of substantial interest to
two or more components of this Department or of substantial interest to another agency, we will
need to consult with those entities before we issue a final response.  Due to these unusual
circumstances, DHS will invoke a 10-day extension for your request, as allowed by Title 5
U.S.C. § 552(a)(6)(B).  We will make every effort to comply with your request in a timely
manner; however, there are currently 226 open requests ahead of yours.

We will construe the submission of your request as an agreement to pay up to $25.00. You will be
contacted before any further fees are accrued.

Your request has been assigned reference number **2008FOIA632**.  Please refer to this identifier

in any future correspondence.  Please be assured that one of the processors in our office will respond to your request as expeditiously as possible.  You may contact this office at (202) 732-0300 or (866) 633-1182.  Thank you for your patience as we proceed with your request.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

*Office of Investigations*
U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20528

FEB 2 7 2008



**U.S. Immigration
and Customs
Enforcement**

Mr. Satnam Singh
Inmate No. 79538
Northwest State Correctional Facility
3649 Lower Newton Road
Swanton, VT 05488

Re: <u>08 FOIA 632 (08 LITI 52959)</u>

Dear Mr. Singh:

Exercising due diligence ICE reexamined its original disclosure determinations and determined that nine (9) of the eleven (11) pages withheld in their entirety should have been released in part. Accordingly, enclosed you will find records numbered 011 through 018 and 020 with deletions pursuant to Freedom of Information Act (FOIA), 5 U.S.C. § 552 exemptions (b)(2), (b)(7)(C) and (j)(2) of the Privacy Act (PA), 5 U.S.C. § 552a.

**FOIA Exemption 2(low)** protects information applicable to internal administrative personnel matters to the extent that the information is of a relatively trivial nature and there is no public interest in the document.

**FOIA Exemption 2(high)** protects information applicable to internal administrative and personnel matters, such as operating rules, guidelines, and manual of procedures of examiners or adjudicators, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk. Whether there is any public interest in disclosure is legally irrelevant. Rather, the concern under high 2 is that a FOIA disclosure should not benefit those attempting to violate the law and avoid detection.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination. The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual[1] unless the agency has exempted the system of records from the access provisions of the Privacy Act.[2] **Privacy Act Exemption (j)(2)** permits the government to withhold material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

Sincerely,

Gloria L. Marshall
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations

Enclosures: Supplemental Disclosure, Nine (9) pages.

---

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

| Immigration and Customs Enforcement (ICE) |||
|---|---|---|
| Satnam Singh v. Federal Bureau of Investigations, 1:07 -CV 01064 (RJL) |||
| Vaughn Index |||
| Document Description | Page No. | Disposition and Exemptions |
| Record of Deportable Alien 07/19/83 | 001-003 | Record released in part pursuant to exemptions (b)(6) and (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA).  Low (b)(2) is asserted to protect from mandatory disclosure mundane or trivial administrative data that lends no transparency to governmental operations.  ICE asserted this exemption to withhold distribution codes, and other administrative data. (b)(6) is asserted to protect from mandatory disclosure personal information that could constitute an unwarranted invasion of personal privacy. ICE asserted this exemption to withhold third party personally identifiable information, including names and addresses. (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy.  ICE asserted this exemption to withhold the name of an agent and a third party.  The disclosure of the third party may subject that individual to humiliation, harassment, or physical danger, by being identified in connection with a criminal investigation.  The release of this individual's identity would constitute an unwarranted invasion of their personal privacy.  Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.  ICE asserted this exemption to withhold the name of an agent and a third party included in a record compiled for law enforcement purposes. |
| U.S. Department of Justice, Immigration and Naturalization Service Form I-210 7/19/83 | 004 | Record released in part pursuant to exemption (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA).  (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy.  ICE asserted this exemption to withhold the name and initials of an agent.  Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.  ICE asserted this exemption to withhold the name and initials of an agent included in a record compiled for law enforcement purposes. |
| Final Disposition Report 7/19/83 | 005 | Released in full. |

| Immigration and Customs Enforcement (ICE) |||
| Satnam Singh v. Federal Bureau of Investigations, 1:07 -CV-01064 (RJL) |||
| Vaughn Index |||

| Document Description | Page No. | Disposition and Exemptions |
|---|---|---|
| Immigration and Naturalization Service Central Index System – Detailed Search Display Printout 5/31/88 | 006 | Record released in part pursuant to exemption (b)(2) of the Freedom of Information Act (FOIA).  High (b)(2) is asserted to protect from mandatory disclosure internal agency information of a substantial nature that if disclosed would risk circumvention of the law. ICE asserted this exemption to protect from disclosure database navigation commands and investigative guidelines. Release of this information to the public could assist criminals in understanding the focus of ICE investigations as well as how to navigate an agency database and risk circumventing the investigations. |
| Immigration and Naturalization Service Form I-247 6/2/88 | 007 | Record released in part pursuant to exemption (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA).  (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy.  ICE asserted this exemption to withhold the names of agents.  Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.  ICE asserted this exemption to withhold the names of agents included in a record compiled for law enforcement purposes. |
| U.S. Department of Justice Immigration and Naturalization Service Form 1-214 7/19/83 | 008 | Record released in part pursuant to exemption (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA).  (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy.  ICE asserted this exemption to withhold the names of agents and officers.  Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.  ICE asserted this exemption to withhold the names of agents and officers included in a record compiled for law enforcement purposes. |
| Immigration and Naturalization Service Central Index System – Status/History Data Printout 5/31/88 | 009 | Record released in part pursuant to exemption (b)(2) of the Freedom of Information Act (FOIA).  High (b)(2) is asserted to protect from mandatory disclosure internal agency information of a substantial nature that if disclosed would risk circumvention of the law. ICE asserted this exemption to protect from disclosure database navigation commands. Release of this information to the public could assist criminals in understanding how to navigate an agency database and risk circumventing the investigations. |

| Immigration and Customs Enforcement (ICE) Satnam Singh v. Federal Bureau of Investigations, 1:07 -CV 01064 (RJL) Vaughn Index | | |
|---|---|---|
| **Document Description** | **Page No.** | **Disposition and Exemptions** |
| Fax Transmission Cover Sheet 4/25/88 | 010 | Record withheld in its entirety pursuant to exemption (b)(2) of the Freedom of Information Act (FOIA). Low (b)(2) is asserted to protect from mandatory disclosure mundane or trivial administrative data that lends no transparency to governmental operations. ICE asserted this exemption to withhold this cover *sheet that* contains no information about the subject of investigation. |
| Witness Statements 4/25/88 | 011-017 | Record released in part pursuant to exemption (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA). (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy. ICE asserted this exemption to withhold the names of agents, officers and third parties. Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals. ICE asserted this exemption to withhold the names of agents, officers and third parties included in a record compiled for law enforcement purposes. |
| Reference Request- Federal Records Center (Undated) | 018 | Record released in part pursuant to exemptions (b)(2) and (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA). Low (b)(2) is asserted to protect from mandatory disclosure mundane or trivial administrative data that lends no transparency to governmental operations. ICE asserted this exemption to withhold an inter-agency form containing administrative coding. (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy. ICE asserted this exemption to withhold the name of an agent. Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals. ICE asserted this exemption to withhold the name of an agent included in a record compiled for law enforcement purposes. |
| Immigration and Naturalization Service Form I-210 (Undated) | 019 | Record withheld in its entirety pursuant to exemptions (b)(2), (b)(5) and (b)(7)(C) of the Freedom of Information Act (FOIA) and (j)(2) of the Privacy Act (PA). High (b)(2) is asserted to protect from mandatory disclosure internal agency information of a substantial nature that if disclosed would risk circumvention of the law. ICE asserted this exemption to protect from disclosure the types of investigative checks performed by investigators and Special Agents. Release of this information to the public could assist criminals in |

| Immigration and Customs Enforcement (ICE) |||
|---|---|---|
| Satnam Singh v. Federal Bureau of Investigations, 1:07 -CV 01064 (RJL) |||
| Vaughn Index |||
| Document Description | Page No. | Disposition and Exemptions |
| | | understanding how the agency conducts investigations and potentially disrupt those investigations.  Low (b)(2) is asserted to protect from mandatory disclosure mundane or trivial administrative data that lends no transparency to governmental operations.  ICE asserted this exemption to withhold a location code.  (b)(5) is asserted to protect from mandatory disclosure inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.  ICE asserted the deliberative process privilege to protect the integrity of the decision-making process and exclude agency rationale behind a final decision.   (b)(7)(C) is asserted to protect from mandatory disclosure information complied for a law enforcement purpose that would constitute an unwarranted invasion of personal privacy.  ICE asserted this exemption to withhold the name and/or initials of an agent.  Similarly, exemption (j)(2) of the PA is asserted to protect from mandatory disclosure material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.  ICE asserted this exemption to withhold the name and/or initials of an agent included in a record compiled for law enforcement purposes. |
| Immigration and Naturalization Service Central Index System – Multiple Finds From Sounds-Like Search Printout 5/31/88 | 020 | Record released in part pursuant to exemption (b)(2) of the Freedom of Information Act (FOIA).  High (b)(2) is asserted to protect from mandatory disclosure internal agency information of a substantial nature that if disclosed would risk circumvention of the law. ICE asserted this exemption to protect from disclosure database navigation commands. Release of this information to the public could assist criminals in understanding how to navigate an agency database and risk circumventing the investigations.   Low (b)(2) is asserted to protect from mandatory disclosure mundane or trivial administrative data that lends no transparency to governmental operations.  ICE asserted this exemption to withhold office codes, and other administrative data. |

*Supplemental Disclosure*

-4-

| REFERENCE REQUEST—FEDERAL RECORDS CENTERS | NOTE: Use a separate form for each request. |
|---|---|

**SECTION I—TO BE COMPLETED BY REQUESTING AGENCY**

| RECORD GROUP NO. | ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|---|
| | | | |

DESCRIPTION OF RECORDS OR INFORMATION REQUESTED (Include file number and title)

A 23-277-878    (b)(2)

REMARKS

*INV /* ████ (b)(2)

NATURE OF SERVICE

| FURNISH COPY OF RECORD(S) ONLY | ☒ PERMANENT WITHDRAWAL | ☐ TEMPORARY LOAN OF RECORD(S) | ☐ REVIEW | ☐ OTHER (Specify) |

| TELEPHONE NO. | DATE 6/1/8? | RECEIPT OF RECORDS |

ADDRESS AGENCY

████ (b)(2)

████ ████ ████
ARLINGTON, VA. 22203

(In Washington, D.C. area also include STOP number)

Requester please sign, date and return this form, for file item(s) listed above, ONLY if the block to right has been checked by the Records Center. ☐

| SIGNATURE | DATE |

**SECTION II—FOR USE BY RECORDS CENTER**

☐ RECORDS DESTROYED    REMARKS

A 23 299. 828

INV /    (b)(7)(C)
(b)(2)

████ (b)(2)

| DATE |



**SECTION III—TO BE COMPLETED BY REQUESTING**

General Services Administration
Federal Records Center NARS

| (City) | (State) | (Zip Code) |

018

)(2)

1

```
            IMMIGRATION AND NATURALIZATION SERVICE          05/31/88
            CENTRAL INDEX SYSTEM - MULTIPLE FINDS FROM      16:20:04
              S O U N D S - L I K E   SEARCH
CORDS READ =▓▓▓▓▓▓ (b)(2)                      ▓▓▓▓▓▓▓▓▓▓▓▓▓

                           A-NUMBER    DOB     COB   POE  FCO
              ,SATNAM      023299828  042660  SINGA  CHI  WAS   (b)(2)
```



*Supplemental Disclosure*

Ø24

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-09-2007 BY 60324 AUC BAU/STP/CLS

**WITNESS STATEMENT**
**April 25, 1988**

SYNOPSIS

On March 20, 1988 ███████ at approximately ████ █30 hours, U.S. Custom█
Service Investigators████████████████ and ██████████ in█████ted airoraf█ fro█
the Marathon Office of Enforcement █████ped █ ██████tion Airpor█ Marathon
bearing tail number N8007B at the ████ation f███ the direction of Cub█
Florida. The aircraft was retu█ning u██ ██SECTOR.
according to information received ████████ative result █oncernin█
The aircraft inspection turned u█ ██ ██nger█ were informed of th█
contraband. The pilot and pass█████ an inbound currency █
reporting requirement for outbou██ with va███/ over $10,000.00 b█
negotiable instruments
Investigator █████████████████

Criminal Investi████
U.S. Customs Servi██
Marathon Office of Enf███
Marathon, Florida

All deletions pursuant to exemption
(b)(7)(C) of the FOIA and (j)(2)
of the PA.

*Supplemental Disclosure*

Ø1|

APR 25 '88 16:27    USCS O.E. MARATHON                      PAGE.02

-2-

### NARRATIVE

On Sunday March 20, 1988 about 1430 hours, I received a telephone call from SECTOR and responded to the Marathon Airport to intercept an unidentified incoming aircraft from Cuban airspace. Soon after arriving at the airport, I saw a tan single-engine aircraft land at the Marathon Airport as SECTOR radioed that the plane had just landed. The tan aircraft with blue, gold and red trim stripes bearing number N8007B proceded to the west end of the parking ramp where it stopped.

I approached the plane and identified myself as U.S. Customs to a white male, later identified as the pilot ███████ and a latin male, later identified as ████████ as they exited the aircraft. ████████ produced a letter written by the apparent owner authorizing ████████ to operate the aircraft, his pilot's license bearing a Washington DC address, a Michigan driver's license ████████ bearing address████████ and ████████ passport. ████████ produced a Virginia Identification Card bearing address ████████ produced a passport for identification. After contacting SECTOR to run system checks on the tail number ████████ and the two occupants, I was contacted by Investigator ████████ U.S. Customs Service, via radio and I requested his assistance.

████████ explained that they had left Marathon about noon that day enroute to Jamaica for a vacation; and when they tried to cross Cuba, they were denied access and returned to Marathon. ████████ produced a gas receipt from the Marathon Airport dated that day to support his tale. The aircraft check returned with Failure to File an FAA Flight plan and when ████████ was asked about the situation he was adamant that he had submitted a flight plan. After obtaining a verbal consent to search the aircraft from ████████ I looked through the aircraft and noted nothing unusual.

When INV ████████ arrived and after being briefed on the situation, he questioned ████████ and ████████ and obtained the same information as above. The SECTOR checks requested returned negative for warrants on both ████████ and ████████.

Upon an exterior inspection of the aircraft, the only odd thing was the apparent alteration of the tail number. When ████████ was asked about the problem, he stated that he did not know since the aircraft had been recently purchased by the owner and was changed.

All deletions pursuant to exemption (b)(7)(C) of the FOIA and (j)(2) of the PA.

***Supplemental Disclosure***

Ø12

APR 25 '88 16:28    USCS O.E. MARATHON                PAGE.03

-3-

**page 2**

As we were closing the aircraft stop, Investigator ████
asked the two subjects how much money they had. ████ and
████ looked at each other briefly before ████ said "Not
much, why?" INV ████ then informed them about the currency
reporting requirement whereby ████ responded that they were
traveling by credit and showed us several credit cards. ████
also responded that they wouldn't know what to do if they had
that much money and both subjects chuckled. He then asked us if
we knew a good cheap hotel to spend the night and told us that
they would probably head back home tomorrow. We recommended a
couple of places and left the area.

████████ Investigator
U.S. CUSTOMS SERVICE
Marathon Office of Enforcement
P.O. Box 2387
Marathon Shores, FL 33052

All deletions pursuant to exemption (b)(7)(C)
of the FOIA and (j)(2) of the PA.

*Supplemental Disclosure*

013

APR 25 '88 10:28   USCS O.E. MARATHON                    PAGE.04

-4-

## WITNESS STATEMENT
### April 25, 1988

#### SYNOPSIS

On March 20, 1988, at approximately 3:00 P.M., Investigator ▮▮▮▮▮▮ assisted Investigator ▮▮▮▮▮▮ on the inspection of an aircraft with tail number N8007B. This aircraft was returning from the direction of Cuba according to information received from Sector.

This inspection turned up negative results concerning contraband aboard the aircraft. The pilot and passenger were informed by Investigator ▮▮▮▮▮ of 31 CFR 103.23, Reports of Transportation of Currency or Monetary Instruments.

▮▮▮▮▮▮▮▮▮▮
CRIMINAL INVESTIGATOR
U.S. CUSTOMS SERVICE
MARATHON, FL.
OFFICE OF ENFORCEMENT

All deletions are pursuant to exemption (b)(7)(C) of the FOIA and (j)(2) of the PA.

*Supplemental Disclosure*

014

APR 25 '88 16:29    USCS O.E. MARATHON                    PAGE.05

All deletions are pursuant to exemption⁵ (b)(7)(C)
of the FOIA and (j)(2) of the PA.

NARRATIVE

On March 20, 1988, at approximately 2:50 P.M., I, Investigator ▓▓▓▓ of the U.S. Customs Service in Marathon, Florida, assisted Investigator ▓▓▓▓ of the same office, in the inspection of an aircraft of tail number N8007B. This aircraft was reported to have traveled into the United States from the direction of Cuba.

Upon arrival at the airport in Marathon, Florida, I conferred with Investigator ▓▓▓▓ as to what the situation was. Investigator ▓▓▓▓ informed me that he had received the above information from Sector. He also stated that he had ran the tail number with sector and the aircraft was negative in the system. Investigator ▓▓▓▓ stated that he had looked through the belongings of the two occupants and the aircraft and was satisfied.

At that point he showed me the identification of the two individuals. The identifications showed the individuals to be ▓▓▓▓ His date of birth was listed as ▓▓▓▓ This information was listed on a Virginia identification card. The other was identified as ▓▓▓▓ of ▓▓▓▓ This was on a driver license with the number of ▓▓▓▓ and his date of birth was listed as ▓▓▓▓ notes of I transferred this information from Investigator ▓▓▓▓ that day. I did not have the information written down since I saw that Investigator ▓▓▓▓ did at that time.

After looking at the identification on these two individuals, I asked them for more I.D., which they produced in the form of passports. I then asked them what had happened, and ▓▓▓▓ recounted the same story that he had told Investigator ▓▓▓▓ I asked them where they worked and they both stated that they worked in a restaurant. ▓▓▓▓ produced a business card that stated he was a chef. One of the two said that they were on vacation.

The aircraft looked to be all in order and both individuals seemed to have their stories together. Due to the above and since the aircraft and the individuals were not wanted according to Sector, Investigator ▓▓▓▓ and ▓▓▓▓ decided to discontinue th▓ inspection.

As we were about to depart the scene, I turned to ▓▓▓▓ an▓ asked something to the effect of, "By the way, how much cash d▓ you guys have on you?" Snyder gave me an uncomfortable look an▓ said something like, "Not much, why?" At that time I sai▓ (possibly not in these exact words), "Because you have to declar▓ anything you have if it is in excess of $10,000 when you ar▓ entering or leaving the United States." ▓▓▓▓ and ▓▓▓▓ looked at each other at that time and laughed. ▓▓▓▓ the stated that they wouldn't know what to do with that much money

*Supplemental Disclosure*

Ø15

They proceeded to show Investigator ▮▮▮▮ and me all of their credit cards and ▮▮▮▮ stated that about all they possessed was credit cards. ▮▮▮▮ further asked us if we knew of a cheap motel where they could stay for the night. At that point we recommended a couple and departed the airport.
At this point (April 25, 1988) I have not made any further contact with these individuals.



CRIMINAL INVESTIGATOR
U.S. CUSTOMS SERVICE
MARATHON, FL. O.E.

All deletions are pursuant to exemption (b)(7)(cc)
of the FOIA and (j)(2) of the PA.

**Supplemental Disclosure**

Ø16

APR 25 '88 16:30    USCS O.E. MARATHON                    PAGE.07

-7-

WITNESS STATEMENT
April 25, 1988


SYNOPSIS

On March 20, 1988 at approximately 1430 hours, U.S. Customs Service Investigators ███████████ and ███████████ from the Marathon Office of Enforcement stopped and inspected aircraft bearing tail number N8007B at the Marathon Airport, Marathon, Florida. The aircraft was returning from the direction of Cuba according to information received from SECTOR.

The aircraft inspection turned up a negative result concerning contraband. The pilot and passenger were informed of the reporting requirement for outbound and inbound currency or negotiable instruments with values over $10,000.00 by Investigator ███████████

███████████

Criminal Investigator
U.S. Customs Service
Marathon Office of Enforcement
Marathon, Florida

All deletions are pursuant to exemption
(b)(7)(c) of the FOIA and (j)(2) of the PA.

*Supplemental Disclosure*

Ø17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH,                          )
                                      )
            Plaintiff,                 )
                                      )
      v.                               )      Civil Action No. 07-01064 (RJL)
                                      )
FEDERAL BUREAU OF                      )
INVESTIGATION,                         )
                                      )
            Defendant.                 )
_____      )

DECLARATION OF JOHN W. KORNMEIER

I, John W. Kornmeier declare the following to be a true and correct statement of facts:

1) I am an attorney advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice. In that capacity, my responsibilities include: acting as liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to requests and the litigation filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (1988), and the Privacy Act of 1974, 5 U.S.C. §552a (1988) ("PA"); the review of FOIA/PA requests for access to records located in this office and 94 United States Attorney's offices ("USAO's") and the case files arising therefrom; the review of correspondence related to requests; the review of searches conducted in response to requests; the location of responsive records; and preparation of responses thereto by the EOUSA to assure that determinations to withhold (or to release) such responsive records are in accordance with the provisions of both the FOIA and the PA, as well as the Department of Justice regulations (28 C.F.R. §§16.3 et. seq. and §16.40 et. seq.).

2) As an attorney advisor of the FOIA/PA Unit, EOUSA, I have authority to release and/or withhold records requested under the FOIA/PA, and to advocate the position of the EOUSA in actions brought under these Acts. The statements I make hereinafter are made on the basis of my review of the official files and records of EOUSA, on my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3) Due to the nature of my official duties, I am familiar with the procedures followed by this office in responding to the FOIA/PA request made to by the above-captioned Plaintiff, Satnam Singh, (hereinafter referred to as "Mr.Singh ") .

4) On January 25, 2008, the FBI referred a six page document to EOUSA to review, make a determination about disclosure, and respond directly to Mr. Singh.

5) After having reviewed the document, EOUSA, by letter dated January 28, 2008 informed Mr. Singh that it was withholding the document in full; see Exhibit A for a copy of this letter.

6) The document that EOUSA withheld is a six page plea agreement letter from the U.S. Attorney's Office to attorneys of a third party. The plea agreement letter is unsigned by the third party. Mr. Singh provided no release or Privacy Act Waiver from the third party.

7) EOUSA asserts exemption (b)(7)(C) of the FOIA to withhold this document.

8) Exemption (b)(7)(C) of the FOIA exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. The plea agreement letter is part of a criminal case file and thus compiled for law enforcement purposes.

9) Exemption (b)(7)(C) is applied to withhold the identity of and personal information about a third party individual, the release of which could subject this person to an unwarranted invasion of his personal privacy.  Release of the plea agreement letter could result in unwanted and even unlawful efforts to gain further access to this person or to personal information about him, or cause him harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from his connection to the case, all to his detriment.

10)  The EOUSA determined that there was no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of the EOUSA or the U.S. Attorney's Office.   No public interest would counterbalance the individual's privacy right in the information withheld under this exemption.  Indeed, Mr. Singh provided no authorization or consent to release otherwise personal privacy protected material from this third party individual.

11) Since the entire plea agreement is about a third party there is no non-exempt information to segregate.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 27, 2008.

John W. Kornmeier

**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

Requester: <u>Satnum Singh</u>                    Request No.: <u>08-138-R</u>

Government Component that referred material: <u>Federal Bureau of Investigation</u>

Dear Requester:                                                    JAN 28 2008

     This is in reply to your Freedom of Information Act/Privacy Act request of September 21, 2004. Records were referred to us by the government component above for direct response to you.

     The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| <u>Section 552</u> | | | <u>Section 552a</u> | |
|---|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [   ] (j)(2) |
| [   ] (b)(2) | [   ] (b)(5) | [ X ] (b)(7)(C) | [   ] (k)(2) |
| [   ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) |
| _____ | [   ] (b)(7)(A) | [   ] (b)(7)(E) | [   ] _____ |
| _____ | | [   ] (b)(7)(F) | |

     We have reviewed approximately___<u>6</u>___ page(s) of material:

____ page(s) are being released in full (RIF);
____ page(s) are being released in part (RIP);
_<u>6</u>_ page(s) are withheld in full (WIF) and
____ pages were duplicate copies of material already processed.

     This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

               Sincerely,

               William G. Stewart II
               Assistant Director

Enclosure(s)                                            Form No. 024 - 3/07

GOVERNMENT
EXHIBIT
A