# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SATNAM SINGH,                                   :
                                                :
                        Plaintiff,              :
        v.                                      :        Civil Action No. 07-1064 (RJL)
                                                :
FEDERAL BUREAU OF INVESTIGATION,                :
                                                :
                        Defendant.              :

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for summary judgment, which the

Court will grant in part and deny in part without prejudice for the reasons discussed herein.

### I.  BACKGROUND

In September 2004, plaintiff submitted a request for information to the Federal Bureau of

Investigation's Washington, DC headquarters ("FBIHQ") under the Freedom of Information Act

("FOIA"), *see* 5 U.S.C. § 552.  Defendant's Status Report, Declaration of David M. Hardy

("Hardy Decl.") ¶ 5 & Ex. A (September 21, 2004 Freedom of Information/Privacy Act Request).

Specifically, plaintiff stated:

> I request a copy of all records wherein my name is utilized, and this
> request is all inclusive.  I will expect information from every
> retrievable source to include every system of records (including
> systems CS-.021; CS-.043; CS-.053, CS-.058[;] CS-.125; CS-.127;
> CS-.129; CS-.133; CS-.156; CS-.212; CS-.224; CS-.244; CS-.258)
> which includes computers. I specifically request all records in regard
> to electronic surveillance.

*Id.*, Ex. A.  FBIHQ assigned the request a tracking number, Request No. 1005633-000, and

acknowledged its receipt.  Compl., ¶ 1 & Ex. (unnumbered) (September 29, 2004 letter from

1

D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBIHQ).  A search of FBIHQ's automated indices to its Central Records System files and its Electronic Surveillance Indices "located no records responsive to [his] FOIPA request to indicate [he] ha[d] ever been of investigatory interest to the FBI."  Compl., Ex. (unnumbered) (April 14, 2005 letter from D.M. Hardy).

Plaintiff appealed this "no records" response to the Office of Information and Privacy ("OIP"), United States Department of Justice ("DOJ").  Compl., Ex. (unnumbered) (April 28, 2005 Information Appeal).  In response to the appeal, which had been assigned Appeal No. 05-1679, FBIHQ "conducted a further search and located records responsive to [his] request."  *Id.*, Ex. (unnumbered) (August 25, 2005 letter from R.L. Huff, Co-Director, OIP).  Accordingly, OIP remanded the matter to FBIHQ for processing those records.  *Id.*  The records were not available at that time, however, and "had been placed on 'special locate.'"  Hardy Decl. ¶ 24.  Ultimately, on November 28, 2007, FBIHQ "released to plaintiff 390 of 904 pages of responsive material with redactions taken pursuant to 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D)."  Memorandum of Points and Authorities in Support of Motion for Summary Judgment for Defendant Federal Bureau of Investigation ("Def.'s Mot."), Second Declaration of David M. Hardy ("Hardy II Decl.") ¶ 4.  In addition, FBIHQ referred two pages to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), two pages to the Drug Enforcement Administration ("DEA"), twenty pages to U.S. Citizenship and Immigration Services (now known as U.S. Immigration and Customs Enforcement ("ICE")), and six pages to DOJ's Civil Division.  *Id.* ¶¶ 57-60.  The six-page document referred to the Civil Division evidently was sent to the Executive Office for United States Attorneys ("EOUSA").  *See* Def.'s Mot., Declaration of

John W. Kornmeier ("Kornmeier Decl.") ¶ 4.

On December 20, 2007, ICE released three pages in full and withheld 11 pages in full.

Def.'s Mot., Declaration of Gloria L. Marshall ("Marshall Decl.") ¶ 8.  In addition, it released 6

pages in part, after having redacted information under FOIA Exemptions 2, 6, and 7(C).  *Id.*

BATFE denied plaintiff's request, withheld in full two pages of records under FOIA Exemption

3, and notified plaintiff of its decision by letter dated January 14, 2008.  *Id.*, Declaration of

Averill P. Graham ("Graham Decl.") ¶ 5.  By letter dated January 28, 2008, EOUSA notified

plaintiff of its decision to withhold the six-page document in full.  Kornmeier Decl. ¶ 5.  DEA

released one page in part and one page in full on March 3, 2008.  *Id.*, Declaration of William C.

Little, Jr. ("Little Decl.") ¶ 12.

In this action, plaintiff demands that defendant release "all information obtain[ed] by the

FBI legally or illegally on him" and "[a]n itemization and index of all documents claimed to be

exempt."  Compl. at 2.  In addition, he demands an award of costs associated with this litigation.

*Id.*

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

The Court may grant a motion for summary judgment if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits or declarations, show

that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party opposing a motion for summary judgment "may not rest upon the mere allegations or

denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jackson v.*

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

Factual assertions in the moving party's affidavits may be accepted as true unless the opposing

party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v.*

*Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

      In a FOIA case, the Court may grant summary judgment based on the information

provided in affidavits or declarations when the affidavits or declarations describe "the documents

and the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit*

*Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F.

Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of

good faith, which cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d

1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*,

692 F.2d 770, 771 (D.C. Cir. 1981)).

      Although plaintiff did not file a proper opposition to defendant's summary judgment

motion, it is clear that he objects to FBIHQ's decision to withhold any of the information he

requested. *See, e.g.,* Motion for Summary Judgment at 1.  Accordingly, the Court does not treat

defendant's motion as conceded and herein addresses defendant's response to his FOIA request.

*B. FBIHQ's Searches for Responsive Records*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-*

*Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v.*

*Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. United States Dep't of Justice*,

164 F.3d 20, 27 (D.C. Cir. 1998). The agency bears the burden of showing that its search was

calculated to uncover all relevant documents. *Steinberg v. United States Dep't of Justice*, 23

F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or

declarations that explain in reasonable detail the scope and method of the agency's search. *Perry*

*v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such

affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Id.* at

127. But if the record "leaves substantial doubt as to the sufficiency of the search, summary

judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542.

### 1. FBIHQ's Central Records System

In its Central Records System ("CRS"), the FBI maintains "administrative, applicant,

criminal, personnel, and other files compiled for law enforcement purposes." Hardy I Decl. ¶ 25.

CRS "is organized into a numerical sequence of files, called FBI 'classifications,' which are

broken down according to subject matter." *Id.* A file's subject matter "may correspond to an

individual, organization, company, publication, activity, or foreign intelligence matter (or

program." *Id.* General indices, which consist of index cards arranged in alphabetical order, are

the means by which CRS records are retrieved. *Id.* ¶ 27. Entries in the general indices are either

"main" entries or "reference" entries. *Id.* The former "carr[y] the name corresponding with a

5

subject of a file contained in the CRS," while the latter "are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another 'main' file on a different subject matter." *Id.* The decision to index names other than subjects, suspects, and victims is left to the discretion of the assigned Special Agent, the Supervisory Special Agent at the field office conducting the investigation, and the Supervisory Special Agent at FBIHQ. *Id.* ¶ 30. Without an index, "information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI." *Id.* General indices to the CRS files "are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter[] or individual[.]" *Id.*

Electronic surveillance ("ELSUR") indices "are used to maintain information on a subject whose electronic and/or voice communications have been intercepted" either with a party's consent or pursuant to a court order. Hardy II Decl. ¶ 31. They are maintained in a system of records separate from CRS. *Id.* ¶ 32. ELSUR indices may include individuals who were targets of surveillance, participants in monitored conversations, or were owners of premises where the FBI conducted such surveillance. *Id.* In addition to the individuals' names, ELSUR indices include "the date the voice was monitored, a source number to identify the individual on whom surveillance was installed, and the location of the FBI field office that conducted the monitoring." *Id.*

## 2. File 26-HQ-453872

FBIHQ conducted "a standard search of records in the CRS to identify all potentially

responsive main files" using the name "Satnam Singh." Hardy I Decl. ¶ 36. The search "would locate records using the phonetic sounds of each last and first name relating to the following names: Singh, Satnam, Satnam, Singh, and Singh, S." *Id.* (internal quotation marks omitted). Although this initial search yielded one main file, 26-HQ-453872, staff deemed it unresponsive due to an error in interpreting plaintiff's request as it were "a request for ELSUR records only." *Id.* Its search for ELSUR records pertaining to Satnam Singh yielded none. *Id.* ¶ 17.

Upon realizing its error, on remand from OIP, FBIHQ staff "attempted to retrieve the main file 26-HQ-453872" but was unable to locate it. Hardy I Decl. ¶ 38.

### 3. Files 26B-WF-48866 and 26-BA-56765

"In order to provide plaintiff with available information, FBIHQ staff retrieved "one Washington Field Office ('WFO') main file 26B-WF-48866, and one Baltimore Field Office main file 26-BA-56765, which was consolidated into 26-BA-80228."[1] Hardy I Decl. ¶ 38. Although these records technically were not responsive to plaintiff's FOIA request, "these field office files correspond to the subject of the request." *Id.* FBIHQ also conducted "a search for all records responsive to plaintiff's request to include main files and cross-references," but this search "located no responsive FBIHQ file cross-references." *Id.* ¶ 39.

Plaintiff raises no objection to the adequacy of FBIHQ's search for records responsive to his FOIA request. Having reviewed FBIHQ's supporting declarations, the Court concludes that its search was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180

---

[1]    Ordinarily, a FOIA requester seeking records from a Federal Bureau of Investigation field office must write directly to that field office, not to FBIHQ. 28 C.F.R. § 16.3(a). FBIHQ staff made an exception here because main file 26-HQ-453872, "identified as responsive in the initial search," could not be located "despite a significant search effort." Hardy I Decl. ¶ 38.

F.3d at 325.

### C. Exemptions

Each agency bears the burden of justifying its decision to withhold records or portions of records. *See* 5 U.S.C. § 552(a)(4)(B). Its declarant must describe the records withheld and show that the records fall within the claimed exemption or exemptions. *Canning v. United States Dep't of Justice*, 848 F. Supp. 1037, 1043 (D.D.C. 1994). FBIHQ addresses this obligation by submitting declarations and *Vaughn* indices from which the court may "derive . . . a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Manna v. United States Dep't of Justice*, 832 F. Supp. 866, 873 (D.N.J. 1993) (internal quotation marks and citation omitted).

In this case, FBIHQ submits a copy of the Washington and Baltimore Field Office main files 26B-WF-48866 and 26-BA-56765 with its supporting declaration. *See* Hardy II Decl. ¶ 8 & Ex. B. "[E]ach withholding of information has a coded exemption adjacent to it that details the nature of the information being withheld pursuant to the provisions of the FOIA, as well as a numerical designation which more specifically identifies the exact nature of the withheld information." *Id.* ¶ 8. In addition, defendant submits declarations describing the responses of the other entities to which FBIHQ referred records. *See id.* ¶¶ 57-60.

### 1. Exemption 1

Exemption 1 protects matters that are:

> specifically authorized under criteria established by an Executive order to be kept
> secret in the interest of national defense or foreign policy and . . . are in fact properly
> classified pursuant to such Executive order[.]

5 U.S.C. § 552(b)(1)(A). In a FOIA case, courts determine *de novo* whether an agency properly

8

withholds information under a claimed exemption. *See, e.g., King v. United States Dep't of Justice,* 830 F.2d 210, 217 (D.C. Cir. 1987). This is true even if national security matters are at issue. *See Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980). Courts generally defer to agency expertise in national security matters, however. *See, e.g., Taylor v. Dep't of the Army,* 684 F.2d 99, 109 (D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 464-65 (D.C. Cir. 1993) (acknowledging "unique insights" of executive agencies responsible for national defense and foreign relations).

Pursuant to Executive Order 13292, 68 Fed. Reg. 15,315 (Mar. 28, 2003), information may be classified only if all of the following conditions are met:

(1)    an original classification authority is classifying the information;

(2)    the information is owned by, produced by or for, or is under the control of the United States Government;

(3)    the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4)    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13292 § 1.1(a).[2] The phrase "damage to the national security" means "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information." *Id.* § 6.1(j). Information may be classified either at

---

[2]    Exec. Order No. 13292 further amends Exec. Order No. 12958, 60 Fed. Reg. 19,825 (Apr. 20, 1995), as amended.

the "top secret," "secret" or "confidential" level, *id.* § 1.2(a), and such classified information

must fall within one of the following categories:

(a)     military plans, weapons systems, or operations;
(b)     foreign government information;
(c)     intelligence activities (including special activities), intelligence sources or methods, or cryptology;
(d)     foreign relations or foreign activities of the United States, including confidential sources;
(e)     scientific, technological, or economic matters  relating to the national security, which includes defense against transnational terrorism;
(f)     United States Government programs for safeguarding nuclear materials or facilities;
(g)     vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism; or
(h)     weapons of mass destruction.

*Id.* § 1.4.  The declarant, an original classification authority, *see* Hardy II Decl. ¶ 2, states that he

"personally and independently examined the information withheld from the plaintiff pursuant to

FOIA Exemption 1." *Id.* ¶ 15.  He concludes that all the substantive and procedural requirements

of Exec. Order 12958, as amended, were followed so that the information properly is classified

as "secret." *Id.* ¶ 14.

Under FOIA Exemption 1, FBIHQ redacts two pages of records in part to protect

information pertaining to an intelligence source.  *See* Hardy II Decl. ¶¶ 16-17 & Ex. B at 32-33.

An intelligence source "is an individual who provided or is currently providing information that

pertains to national security matters, the disclosure of which could reasonably be expected to

result in damage to the FBI's intelligence and counterintelligence-gathering capabilities." *Id.* ¶

16.  In this case, FBIHQ redacts a "numerical designator, which serves as a singular identifier for

an intelligence source utilized to provide information on a specific individual or organization

10

determined to be of national security interest." *Id.* ¶ 17.  The singular identifier can be a word,

term or phrase, such as a code name, numerical designator, or a file number.  *Id.*  A numerical

designator "is assigned to [a] specific source and is unique to and solely used for this source,"

and the designator "is usually prefixed with the geographic location of the FBI office from which

the source operated." *Id.*  Disclosure of a numerical designator "could permit a hostile analyst to

correlate the documents and whatever information that can be gleaned from the documents,"

from which he can "discern the true identity of the intelligence source." *Id.* ¶ 18.

The declarant explains that the disclosure of an FBI source's identity "can reasonably be

expected to cause current and potential intelligence sources to fear that their identities will be

publicly revealed at some point, in spite of the FBI's present or express implied assurance of

confidentiality." Hardy II Decl. ¶ 19.  Disclosure also "could jeopardize the well-being of the

source's family or associates or subject them to public ridicule and/or ostracism." *Id.*

For these reasons, the declarant concludes that "the intelligence source numerical

designator is properly is classified at the 'Secret' level, and withheld pursuant to [Exec. Order

No.] 12958, as amended, § 1.4(c), and is exempt from disclosure pursuant to FOIA Exemption

1." Hardy II Decl. ¶ 20.  The Court concurs.

### 2. Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the internal

personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  The phrase "personnel rules

and practices" is interpreted to include not only "minor employment matters" but also "other

rules and practices governing agency personnel." *Crooker v. Bureau of Alcohol, Tobacco and

Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).  The "information need not actually

*be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990) (emphasis in original). Exemption 2 applies if the information sought meets two criteria. First, such information must be "used for predominantly internal purposes." *Crooker*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985). Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id.* at 1208. If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983). "Low 2" exempt materials include such items as "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and other "trivial administrative data such as . . . data processing notations[] and other administrative markings." *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

a. "Low 2" Exempt Information

From the two pages of records referred by FBIHQ to DEA, DEA withheld "internal

telephone numbers and a computer terminal code." Little Decl. ¶ 20. The declarant explained

that telephone numbers and computer terminal code were for the agency's internal use and were

of no interest to the public. *See id.* Their release to the public, the declarant stated, would

interfere with DEA's operations, including potential interference with DEA computer operations.

*Id.*

ICE withheld "internal agency codes that appear on printouts from the Immigration and

Naturalization Services Central Index System" including "case/file/identification numbers,

source symbol numbers, case program codes, and other administrative codes." Marshall Decl. ¶

13. These codes were "used for the purposes of indexing, storing, locating, retrieving and

distributing information in ICE investigative files," *id.*, and, therefore, have only internal

significance. *Id.*

The Court concurs that internal telephone numbers, computer terminal codes, and other

administrative codes are properly withheld as "low 2" exempt material, the disclosure of which is

of no genuine interest to the public. *See, e.g., Antonelli v. Fed. Bureau of Prisons*, __ F. Supp.

2d __, No. 07-2016, 2008 WL 2959931, at *3 (D.D.C. Aug. 4, 2008) (withholding "the last four

digits of direct telephone numbers of agency employees and one file number used for indexing,

storing, retrieving and distributing information in investigative files as internal information of no

genuine public interest"); *Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 496 F.

Supp. 2d 167, 171-72 (D.D.C. 2007) (withholding internal administrative codes, such as

laboratory and property tracking numbers); *NYC Apparel FZE v. U.S. Customs and Border*

13

*Protection*, 484 F. Supp. 2d 77, 91 (D.D.C. 2007) (withholding administrative markings (such as file or tracking numbers) relating to internal agency file control systems and procedures, the identity of particular types of computer systems and system reports, and to key strokes and function codes of internal agency computerized property management systems).

DEA and ICE sufficiently justify their decisions to withhold internal telephone numbers and codes "low 2" exempt information. The numbers are predominantly for internal agency use and are trivial administrative matters of no genuine interest to the public.

b. "High 2" Exempt Information

ICE withheld certain codes, "including distribution and apprehension codes" appearing on computer printouts as "high 2" exempt information. Marshall Decl. ¶ 14; *see Vaughn* Index (Immigration and Naturalization Service Central Index System – Detailed Search Display Printout, Status/History Data Printout, and Multiple Finds From Sounds-Like Search Printout dated 5/31/88; Immigration and Naturalization Service Form I-210 (undated)). In addition to serving indexing, storing, retrieving, and distributing purposes, distribution and apprehension codes "also indicate various aspects of the enforcement case, such as the type and location of the case; whether or not the subject should undergo close inspection; and the distribution of information relating to the case, which would indicate the scope and relative size of the investigation in terms of agency resources, types of activity being investigated, location of investigative efforts, and techniques to access agency information." Marshall Decl. ¶ 14. Release of this information "would reveal sensitive law enforcement information" about ongoing investigations, and could result in "the alteration or deletion of valuable information contained in the system." *Id.*

14

The Court concludes that ICE's decision to redact these distribution and apprehension codes as "high 2" exempt information is proper.  Their disclosure may assist outsiders "in gaining improper access to computer systems and enable them to navigate the system," thus "jeopardiz[ing] the integrity of the system."  Marshall Decl. ¶ 14.

### 3. Exemption 3

Exemption 3 covers records that are "specifically exempted from disclosure by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552 (b)(3); *see also Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

#### i.  Grand Jury Materials

Under Exemption 3, FBIHQ withholds  "the names and identifying information of individuals who were subpoenaed to testify before a [federal grand jury] of the District of Maryland or the District of Columbia, and information that identifies specific records subpoenaed by the [grand jury]."  Hardy II Decl. ¶ 24.  Release of this information "explicitly discloses matters occurring before" a grand jury. *Id.*

The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998).  Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856,

15

867-68 (D.C. Cir. 1981). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of FOIA, the Court of Appeals for the District of Columbia Circuit limits the exception to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

It is clear that the identities of witnesses and the records subpoenaed by a grand jury fall within the scope of Exemption 3. FBIHQ's decision to withhold this information is proper.

ii. Firearms Transaction Records

Of the two pages of records referred by FBIHQ to BATFE, BATFE withheld both pages in full under FOIA Exemption 3. Graham Decl. ¶¶ 4-5. The pages were a Firearms Transaction Record maintained by a Federal Firearms Licensee pursuant to 18 U.S.C. § 923(g)(3), (7). *Id.* ¶ 10.

The Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809, in relevant part provides:

> That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution[.]

16

*Id.* Because Congress prohibits the expenditure of funds for release of Firearms Transaction

Records, BATFE properly withholds them in full under Exemption 3. *See Miller v. United States*

*Dep't of Justice*, __ F. Supp. 2d __, No. 05-1314, 2008 WL 2544659, at *15 (D.D.C. June 24,

2008) (concluding that Firearms Trace Reports wholly derived from Firearms Trace System

Database properly withheld in full "[b]ecause Congress prohibits the expenditure of funds for

release of such records"); *Watkins v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, No.

04cv800, 2005 WL 2334277, *1 (D.D.C. Sept. 1, 2005) (concluding that 2005 appropriations

legislation "prevent[s] the public release of sensitive firearms trace data not so much for

budgetary reasons than out of concern that such disclosures could jeopardize criminal

investigations").

### 4. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or

letters which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5). The deliberative process privilege "shields only government

'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue*

*Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*,

839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the

agency need not identify a specific final agency decision; it is sufficient to establish "what

deliberative process is involved, and the role played by the documents at issue in the course of

that process." *Heggestad v. United States Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000)

(citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). A

document is "deliberative" if it "makes recommendations or expresses opinions on legal or

policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

Under Exemption 5, ICE withholds in part a document described as "Immigration and Naturalization Service Form I-210 (undated), *see* Marshall Decl., *Vaughn* Index at 3-4. Neither the declaration nor the *Vaughn* Index explains the agency's rationale. It is not enough to assert in conclusory fashion that Exemption 5 applies "to protect the integrity of the decision-making process and agency rational [sic] in support of a final agency decision." Marshall Decl. ¶ 15. ICE cannot meet its burden without showing that the information is deliberative in that it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d at 1143-44.

### 5. Exemption 7

#### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

### i. FBIHQ

FBIHQ's declarant states that its records the were compiled in the course of an investigation conducted pursuant to 18 U.S.C. § 2312 of the theft of an aircraft for which Roger Scot Snyder was indicted and charged.[3] Hardy II Decl. ¶ 37. "Investigators learned that the aircraft was stolen from Frederick, Maryland and its identification numbers partially [were] removed. The aircraft was flown by Roger Scot Snyder from Leesburg, Virginia to Miami and subsequently to Aruba with plaintiff as a passenger." *Id.*

### ii. DEA

DEA, a DOJ component, has as its "primary responsibility . . . the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals." Little Decl. ¶ 16. The record relevant to this discussion is a "cable," which is described as a "message[] sent by teletype or radio . . . used at times in lieu of a memorandum or letter sent by mail or messenger." *Id.* ¶ 14. A cable is written in the format of a memorandum and includes "routing and transmission information," such as the sender and recipient(s), "with numbered paragraphs describing events, conveying information or expressing opinions." *Id.* The subject of the cable here is related to investigative files SA-88-0039 and GFAP-88-9999, *id.* ¶ 17, and the cable conveys "information from the El Paso Intelligence Center to [FBIHQ] related to an aircraft that [was] stolen and recovered." *Id.* ¶ 15.

### iii. ICE

Functions previously performed by the United States Customs Service now are performed

---

[3]    "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2312.

by two components of the Department of Homeland Security: U.S. Customs and Border

Protection and ICE. *See* Marshall Decl. ¶ 3. ICE "has primary investigative jurisdiction in the

enforcement of immigration and customs laws, including those duties that were formerly

assigned to the Immigration and Naturalization Service" within the Justice Department. *Id.*

Although ICE's declarant offers scant explanation as to whether the records at issue were

compiled for law enforcement purposes, review of the *Vaughn* Index shows that the records

pertain to law enforcement activities.

iv. EOUSA

The document referred by FBIHQ to EOUSA was "a six page plea agreement letter from

the U.S. Attorney's Office to attorneys of a third party." Kornmeier Decl. ¶ 6. The letter "is part

of a criminal case file." *Id.* ¶ 8.

The Court concurs that the relevant records originating from FBIHQ, DEA, ICE and

EOUSA were was compiled for law enforcement purposes.

b. Exemption 7(C)[4]

Exemption 7(C) protects from disclosure information in law enforcement records that

---

[4]    FBIHQ cites Exemption 6 in conjunction with Exemption 7(C) to protect the
names of and identifying information about : (1) FBI Special Agents, (2) individuals assisting the
FBI by providing information about the stolen aircraft and its pilot, (3) individuals incidentally
mentioned in the records, (4) individuals of investigative interest to the FBI, police in Frederick,
Maryland, or foreign law enforcement authorities, and (5) other federal, Frederick, Maryland and
foreign law enforcement personnel assisting in the investigation. *See* Hardy II Decl. ¶¶ 27, 29,
31, 33, 34. Because the Court concludes that the information properly is withheld under
Exemption 7(C), it need not determine whether that same information is protected under
Exemption 6. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

Similarly, the Court concludes that ICE properly withholds certain information under
Exemption 7(C), *see* Marshall Decl. ¶ 17 & *Vaughn* Index at 1 (Record of Deportable Alien
dated 07/19/83), and does not consider whether Exemption 6 applies to the same information.

"could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of individuals mentioned in the records against the

public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal

activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he

only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens'

right to be informed about what their government is up to.'" *Davis v. United States Dep't of*

*Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm. for Freedom of the*

*Press*, 489 U.S. at 773).

### i. Law Enforcement Officers and Support Personnel

FBIHQ withholds the names of, social security numbers of, and identifying information

about FBI Special Agents "who were responsible for conducting, supervising, and/or maintaining

the investigative activities reported in this theft of aircraft investigation." Hardy II Decl. ¶ 42.

The declarant explains that any publicity surrounding a particular investigation "may seriously

impair [the agents'] effectiveness in conducting future investigations." *Id.* Insofar as these

agents "conduct official inquiries into violations of various criminal statutes and national security

cases," they "come into contact with all strata of society" as they, for example, make arrests or

otherwise disturb the lives of others. *Id.* If their identities were disclosed, they may be subject to

"unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are

currently employed by the FBI." *Id.* In addition, release of their identities "could trigger

hostility" on the part of persons targeted or otherwise affected by law enforcement action

21

involving those agents. *See id.* Weighed against the "strong privacy interest in the identifies of

the [Special Agents] that were involved in this investigation" is the public interest in disclosure.

*See id.* Release of the agents' identities sheds no light on the FBI's operations and activities, the

declarant asserts. *Id.* FBIHQ applies the same rationale to support its decision to withhold the

names of and identifying information about other federal government law enforcement personnel

who assisted in the investigation, *id.* ¶ 48, and the "names, identification numbers, and telephone

numbers of members of the Police Department, of Frederick City, Maryland and a foreign

authority who assisted or investigated in conjunction with the FBI in this investigation." *Id.* ¶ 49.

In addition, FBIHQ withholds the names of FBI support personnel. Hardy II Decl. ¶ 43.

These support personnel "are in positions to access information concerning official law

enforcement investigations," and for this reason they "could become targets of harassing

inquiries for unauthorized access to FBI investigations" if there identities became known. *Id.*

Disclosure of their identities "would not shed light on the operations and activities of the FBI,"

and such disclosure "could constitute an unwarranted invasion" of their personal privacy. *Id.*

Similarly, ICE withholds "the names of ICE Special Agents [and] other agency

employees . . . appearing in database printouts, and inter- and intra-agency correspondence."

Marshall Decl. ¶ 17. "Special agents handle a myriad of tasks relating to official investigations

into the criminal activities of third parties," and they were or remain in "positions of access to

information regarding law enforcement investigations." *Id.* Disclosure of their identities may

result in their becoming "targets of harassing inquiries for unauthorized access to information

pertaining to ongoing and closed investigations." *Id.* Absent a cognizable public interest in

release of this information, the declarant asserts that it properly is withheld because its disclosure

could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See id.*

Redaction of the names of federal law enforcement officers and support personnel under similar circumstances routinely is upheld. *See, e.g., Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1987) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996). The Court concludes that FBIHQ and ICE properly withheld the names of and identifying information about federal, local, and foreign law enforcement and support personnel under Exemption 7(C).

ii. Third Parties

FBIHQ withholds "names, home and work addresses, dates of birth and other identifying data of individuals who assisted the FBI by providing information concerning the theft of the aircraft which led to a guilty plea and sentencing of Roger Scot Snyder." Hardy II Decl. ¶ 44. In addition, FBIHQ withholds the "names, addresses, telephone numbers and any other information which could identify individuals who are only incidentally mentioned in these records," *id.* ¶ 46, as well as information pertaining to "several third-party individuals in whom the FBI, Frederick City, Maryland Police Department, and/or a foreign authority had an investigative interest." *Id.* ¶ 47.

DEA withholds from its cable the names of and personal information about two third parties on the ground that release of the information "would allow a person familiar with the

facts and circumstances of the investigation to identify the individuals." Little Decl. ¶ 23.

Release of these individuals' names "in the context of a criminal investigation can reasonably be

expected to cause [them] embarrassment and humiliation and would add nothing to the public's

understanding of the inner workings of the government." *Id.* ¶ 24.

EOUSA withholds an unsigned six-page "plea agreement letter from the U.S. Attorney's

Office to attorneys of a third party." Kornmeier Decl. ¶ 6. Release of the plea agreement "could

result in unwanted and even unlawful efforts to gain further access to this person or to personal

information about him, or cause him harassment, harm, or exposure to unwanted and/or

derogatory publicity and inferences arising from his connection to the case, all to his detriment."

*Id.* ¶ 9. Absent a public interest to "counterbalance the individual's privacy right in the withheld

information," and without an authorization or consent of this third party to release of the

information, EOUSA withholds the plea agreement in full. *Id.* ¶ 10.

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement

investigation affords broad privacy rights to those who are connected in any way with such an

investigation unless a significant public interest exists for disclosure. *United States Dep't of

Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs.,

Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1205-06. The disclosure of the names of private

individuals mentioned in law enforcement files would serve a significant public interest only

where "there is compelling evidence that the agency denying the FOIA request is engaged in

illegal activity," and that the information sought "is necessary in order to confirm or refute that

evidence." *Davis v. United States Dep't of Justice*, 968 F.2d at 1282. Plaintiff demonstrates no

such public interest with respect to the law enforcement personnel or the third parties mentioned

in responsive records.  Case law fully supports these withholding decisions.  *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1206 (holding that "names and address of private individuals appearing in files within the ambit of Exemption 7(C) . . . is exempt from disclosure).

ii. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential
> source . . . [who] furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation. . .,
> information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation.  *See United States Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality is determined on a case-by-case basis.  *Id*. at 179-80.  "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred."  *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *Landano*, 508 U.S. at 170-74) (internal quotation marks omitted).  In this situation, the Court must determine "whether the particular *source* spoke with

an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172 (emphasis in original). The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Id.* at 179-80; *Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996).

FBIHQ withholds "the names, identifying data and singular information provided by third parties to the FBI during the course of the investigation into plaintiff's activities, under an implied grant of confidentiality." Hardy II Decl. ¶ 53. These third parties "provided specific detailed information that was singular in nature concerning the criminal activities involving plaintiff, his associates, and/or other subjects relevant to this investigation." *Id.* The declarant asserts that, because "plaintiff was indicted on a narcotics smuggling charge," these third parties provided information to the FBI with the expectation that their identities and any singular information they provided would be withheld from the general public. *Id.* ¶ 54. Elsewhere in the declaration, the declarant states that plaintiff "was indicted of conspiracy to import cocaine and passport fraud." *Id.* ¶ 8. It appears that plaintiff only "was convicted of a passport violation, 18 U.S.C. § 1542."[5] *Id.* ¶ 53.

"The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000). Where the relevant crime has been

---

[5]      A person shall be fined or imprisoned or both if he willfully and knowingly "makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws," or "uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement[.]" 18 U.S.C. § 1542.

particularly violent, it may be appropriate to conclude that a source would have cooperated only if his identity were kept confidential. *See, e.g., Miller v. United States Dep't of Justice*, 2008 WL 2544659, at *26 (concluding that third party provided information to FBI under implied assurance of confidentiality given plaintiff's "reported criminal history of kidnapping and the subsequent torture, murder and dismemberment of bodies"); *Peay v. Dep't of Justice*, No. 04-1859, 2007 WL 788871, at *6 (D.D.C. Mar. 14, 2007) (withholding confidential source information under exemption 7(D) on the basis of an implied grant of confidentiality where the FBI attributed four execution-style murders to plaintiff's drug organization); *Shores v. Fed. Bureau of Investigation*, No. 98-2728, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding identities of and identifying information about three cooperating witnesses with knowledge of murder of which plaintiff was convicted). Here, however, FBIHQ does not establish that there is such violence and risk of retaliation attendant to the crime for which plaintiff was convicted.

## III. CONCLUSION

The Court concludes that FBIHQ conducted searches that were reasonably calculated to locate records responsive to plaintiff's FOIA request. Further, the Court concludes that: (1) FBIHQ properly withheld classified information under Exemption 1; (2) DEA and ICE properly withheld information under Exemption 2; (3) FBIHQ and BATFE properly withheld information under Exemption 3; (4) FBIHQ, DEA, ICE, and EOUSA properly withheld information under Exemption 7(C). In these respects, defendant's motion for summary judgment will be granted in part. The motion will be denied in part without prejudice, however, because ICE does not establish that it properly withheld portions of a document described as "Immigration and

27

Naturalization Service Form I-210 (undated)" under Exemption 5, and FBIHQ does not establish that it properly withheld information under Exemption 7(D).  Defendant may file a renewed motion for summary judgment based on additional undisputed facts or by additional legal arguments.

An Order consistent with this Memorandum Opinion is issued separately.


RICHARD J. LEON
United States District Judge

Date:

8/31/08